1  Maria Solomon-Williams  (SBN:  154040)
   msolomon-williams@grsm.com
2  GORDON REES SCULLY MANSUKHANI, LLP
   3 Parkcenter Drive, Suite 200
3  Sacramento, CA 95825
   Telephone:  (916) 565-2900
4  Facsimile:  (916) 920-4402

5  Attorneys for Plaintiff
   JTH TAX, LLC., D/B/A LIBERTY TAX
6  SERVICE, F/K/A JTH TAX, INC

7

8              **UNITED STATES DISTRICT COURT**

9     **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

10

11

12  JTH TAX, LLC., d/b/a LIBERTY TAX          )   Case No.
    SERVICE, f/k/a JTH TAX, INC.              )
13                                            )   **VERIFIED COMPLAINT**
                          Plaintiff,          )   **FOR**
14                                            )
           vs.                                )   1. Breach of Contract
15                                            )   2. Violation of Defend Trade
    AMY LU and EVERGREEN TREE                 )      Secrets Act of 2016
16  INVESTMENTS, INC.,                        )   3. Conversion
                                              )   4. Unjust Enrichment
17                        Defendants.         )
                                              )   **JURY TRIAL DEMANDED**
18                                            )

19

20

21

22

23

24

25

26

27

28

-1-
**VERIFIED COMPLAINT**

Gordon Rees Scully Mansukhani, LLP
3 Parkcenter Drive, Suite 200
Sacramento, CA 95825

**VERIFIED COMPLAINT**

Plaintiff JTH Tax LLC d/b/a Liberty Tax Service f/k/a JTH Tax, Inc. ("Liberty"), for its Verified Complaint against Defendants AMY LU ("Lu") and EVERGREEN TREE INVESTMENTS, INC. ("Evergreen") (together, "Defendants"), alleges as follows:

**INTRODUCTION**

1.      Defendants are former Liberty franchisees who have breached multiple agreements with Liberty (collectively, "Franchise Agreements") by failing to return Liberty client files and confidential information to Liberty—ostensibly to be able to solicit Liberty clients and unlawfully compete with Liberty—and defaulting on promissory notes due and payable to Liberty.

2.      On February 28, 2020, Defendants were notified that their Franchise Agreements had been terminated for failure to cure various material breaches of those agreements.

3.      Under the terms of the Franchise Agreements, Defendants were immediately obligated to, *inter alia*, return all client files and other confidential information to Liberty, pay all amounts due and owing to Liberty and to refrain from offering tax preparation services within 25 miles of their former Liberty offices.

4.      Defendants have failed to pay mid-six-figure debts due and owing to Liberty and to return Liberty's confidential information.

5.      Defendants also continued to offer tax preparation services following the termination of the Franchise Agreements in direct violation of the non-compete provisions therein.

6.      Liberty seeks in this litigation (1) an injunction requiring Defendants to immediately comply with their non-competition obligations and return any Liberty client files and confidential information; (2) compensatory damages related to Defendants' tortious acts and breaches of contract; (3) statutory damages pursuant

1   to the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* ("DTSA"); (4)

2   $365,534.07, plus interest, in accounts receivables and promissory note debt; (5)

3   exemplary/punitive damages; and (6) attorneys' fees and costs.

4                                    **PARTIES**

5          7.     Liberty is a Delaware limited liability company with its principal place

6   of business at 2387 Liberty Way, Virginia Beach, Virginia 23456.

7          8.      Lu is a resident of California, with a last known address of 4233

8   Cypress Ave. El Monte, CA 91731.

9          9.     Evergreen is a dissolved California Corporation with a principal place

10  of business at 1140 E. San Antonio Drive, Long Beach, CA 90807.

11                        **JURISDICTION AND VENUE**

12         10.    This Court has personal jurisdiction over Defendants because Lu is a

13  resident of El Monte, California and Evergreen is a California Corporation with a

14  principal place of business in Long Beach, CA, both of which are located within the

15  boundaries of this District.

16         11.    This Court has federal question jurisdiction over this matter pursuant to

17  the DTSA, as well as supplemental jurisdiction over the state claims pursuant to 28

18  U.S.C. § 1367 because they form part of the same case or controversy.

19         12.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332

20  because complete diversity of citizenship exists.  For purposes of jurisdiction,

21  Plaintiff is a citizen of Canada.  Defendants are citizens of California.  The amount

22  in controversy is over $75,000.

23         13.    This action is properly venued pursuant to 28 U.S.C. §§ 1391(b)(1)

24  because Defendants are residents of this judicial district.

25                        **FACTUAL BACKGROUND**

26         14.    Liberty, one of the largest tax franchisors in the United States, is the

27  franchisor of Liberty Tax Service® income tax preparation service centers located

28  throughout the country, including in California, where Defendants operated their

*Gordon Rees Scully Mansukhani, LLP*
*3 Parkcenter Drive, Suite 200*
*Sacramento, CA 95825*

**VERIFIED COMPLAINT**

1    Liberty franchises.

2        15.    Liberty owns the registered Liberty Tax Service® trademarks, service

3    marks, logos and derivations thereof (collectively, the "Marks"), and has spent

4    substantial time and money developing, advertising and promoting the distinctive

5    and well-known Liberty Tax Service® system, which sells income tax preparation

6    and filing services and products to the public under the Marks.

7        16.    Franchisees, including Defendants, license the Marks pursuant to

8    franchise agreements.

9        17.    Pursuant to the terms of franchise agreements, Liberty discloses certain

10   confidential information and trade secrets, including its confidential Operations

11   Manual, methods of operation of franchise, customer information and records, and

12   marketing information (collectively, "Confidential Information"), to franchisees.

13       18.    Liberty's busiest time of year are the months of January through April,

14   during which time Liberty generates approximately 90% of its annual revenue.

15                    **The Franchise Agreements**

16       19.    On or about October 14, 2016, Lu entered into a franchise agreement

17   with Liberty for a territory located in Long Beach, CA ("CA648 Agreement").  A

18   copy of the CA648 Agreement is attached hereto as **Exhibit A**.

19       20.    On or about October 14, 2016, Lu entered into a franchise agreement

20   with Liberty for an additional territory located in Long Beach, CA ("CA647

21   Agreement").  A copy of the CA647 Agreement is attached hereto as **Exhibit B**.

22       21.    On or about June 12, 2017, Lu entered into a franchise agreement with

23   Liberty for a territory located in Los Angeles, CA ("CA610 Agreement") A copy of

24   the CA610 Agreement is attached hereto as **Exhibit C**.

25       22.    On or about June 12, 2017, Lu assigned her rights under the CA610,

26   CA647 and CA648 Agreements to Evergreen ("Assignment").   A copy of the

27   Assignment is attached hereto as **Exhibit D**.

28       23.    Under the Assignment, Lu agreed to remain a guarantor of the CA610,

Gordon Rees Scully Mansukhani, LLP
3 Parkcenter Drive, Suite 200
Sacramento, CA 95825

**VERIFIED COMPLAINT**

Gordon Rees Scully Mansukhani, LLP
3 Parkcenter Drive, Suite 200
Sacramento, CA 95825

1  CA647 and CA648 Agreements.  *Id*. at ¶ 2.

2  24.    Lu executed a Guaranty in favor of Liberty in her individual capacity
3  and as the President of Evergreen on June 12, 2017 ("Guaranty").  A copy of the
4  Guaranty is attached hereto as **Exhibit E**.

5  25.    On or about October 3, 2017, Evergreen entered into a franchise
6  agreement with Liberty for an additional territory located in Long Beach, CA
7  ("CA178 Agreement").  A copy of the CA178 Agreement is attached hereto as
8  **Exhibit F.**  The CA648, CA647, CA610 and CA178 Agreements are collectively
9  referred to herein as the "Franchise Agreements."

10  26.    Defendants operated a Liberty office pursuant to the CA647
11  Agreement at 795 Long Beach Boulevard in Long Beach, CA.

12  27.    Defendants operated a Liberty office pursuant to the CA648
13  Agreement at 2511 Long Beach Boulevard in Long Beach, CA.

14  28.    Defendants operated a Liberty office pursuant to the CA610
15  Agreement at 279 S. Atlantic Boulevard in Los Angeles, CA.

16  29.    Defendants operated a Liberty office pursuant to the CA178
17  Agreement at 1140 E. San Antonia Drive in Long Beach, CA.

18  30.    Pursuant to the Franchise Agreements, Liberty provided Defendants
19  with training in franchise operation, marketing, advertising, sales, and business
20  systems.  Defendants also received access to and license to use Liberty's Marks and
21  Confidential Information, including its confidential Operations Manual, which is not
22  available to the public or to anyone who is not part of Liberty's system.

23  31.    In exchange for receiving a license to use Liberty's Marks and
24  Confidential Information, and to identify as Liberty franchisee, Defendants agreed
25  to, among other things, pay monthly royalties and fees, exercise best efforts to
26  promote their Liberty franchises, and to abide by in-term and post-term duties to
27  refrain from competing with Liberty and from using Liberty's Confidential
28  Information and Marks for any purpose other than to operate a Liberty franchise.

Ex. A §§ 4(d), 6(e); Ex. B § 4(d), 6(e); Ex. C § 4(d), 6(e); and Ex. D § 4(d), 6(e).

32.    Section 9 of the Franchise Agreements sets forth Defendants' post-termination obligations, which include the obligations to, *inter alia*: (a) immediately stop identifying as a Liberty franchisee and using the Marks upon termination of the Franchise Agreements; (b) refrain from harming or disparaging Liberty; (c) refrain from competing with Liberty for two years within twenty-five miles of her former Liberty franchises, and (d) return and never again use all Confidential Information, including all customer files and Liberty's confidential Operations Manual to Liberty.

33.    Defendants agreed under Section 10(h) of the Franchise Agreements that the post-termination obligations thereunder "are reasonable, valid and not contrary to the public interest" and "shall survive any termination or expiration of this Agreement."  To that end, Defendants agreed to "waive all defenses to the strict enforcement of Section 10," and further agreed that "Liberty is entitled to a temporary restraining order, preliminary and/or permanent injunction for any breach of duties under any of the non-monetary obligations of Sections 9 and 10."

34.    Defendants acknowledged that the Confidential Information was to be used only in connection with the operation of a Liberty franchise, and agreed to refrain from using Liberty's Confidential Information for any purpose other than operating a Liberty franchise.

**The Purchase and Sale Agreements**

35.    On October 14, 2016, Lu entered into three separate Purchase and Sale Agreements with Liberty ("PSAs") in connection with the CA610, CA647 and CA648 Agreements. Copies of the PSAs are attached hereto as **Exhibit G**.

36.    Defendant agreed that Virginia law applies to the enforcement and construction of the PSAs. *Id.* at p. 3.

**The Promissory Notes**

37.    On or about October 14, 2016, Lu entered into a promissory note in favor of Liberty for her purchase of the CA647 franchise territory in the principal

1  amount of $96,077 ("CA647 Note").  A copy of the CA647 Note is attached hereto

2  as **Exhibit H**.

3        38.    On or about October 14, 2016, Lu entered into a promissory note in

4  favor of Liberty for her purchase of the CA648 franchise territory in the principal

5  amount of $27,450 ("CA648 Note").  A copy of the CA648 Note is attached hereto

6  as **Exhibit I**.  Together, the CA647 and CA648 Notes are referred to as the "Notes."

7        39.    Interest accrues under the Notes at a rate of 12% per annum.

8        40.    The Notes provide that Liberty is entitled to any attorneys' fees and

9  costs incurred by Liberty in connection with enforcing the terms of the Notes.

10  **Termination of the Franchise Agreements**

11        41.    In January 2020, Liberty learned that Evergreen had breached the

12  Franchise Agreements by discontinuing active operations without notifying Liberty.

13        42.    On or around January 31, 2021, Liberty sent Evergreen notices to cure

14  several breaches of the Franchise Agreements ("Notices to Cure").  Copies of the

15  Notices to Cure are attached hereto as **Exhibit J**.

16        43.    Evergreen failed to cure the breaches identified in the Notices to Cure.

17        44.    On February 28, 2020, Liberty sent Evergreen a notice that the

18  Franchise Agreements had been terminated ("Termination Notice").  A copy of the

19  Termination Notice is attached hereto as **Exhibit K**.

20  **Defendants' Trade Secret Misappropriation and Breaches of Contract**

21        45.    Liberty has recently learned through data published by the Internal

22  Revenue Service in December 2021 that Defendants are operating a competing tax

23  preparation business at 9234 Valley Boulevard in Rosemead, CA, which is within

24  25 miles of Defendants' former Liberty franchise territories.

25        46.    All preparation providers are required to use an Electronic Filing

26  Identification Number ("EFIN") that is unique to each Electronic Return Originator

27  ("ERO").

28        47.    The IRS tracks and publishes all electronic tax returns submitted by

*Gordon Rees Scully Mansukhani, LLP*
*3 Parkcenter Drive, Suite 200*
*Sacramento, CA 95825*

**VERIFIED COMPLAINT**

1   each EFIN.

2       48.    IRS data published in December 2021 reveals that Evergreen

3   electronically filed 30 tax returns in 2021 within 25 miles of their former Liberty

4   franchises.

5       49.    Upon information and belief, Defendants are currently offering tax

6   preparation services within 25 miles of their former Liberty franchise territories.

7       50.    Following the termination of the Franchise Agreements, Defendants

8   retained Liberty's confidential Operations Manual and Confidential Information,

9   including customer files and records.

10       51.    Upon information and belief, Defendant have used and will continue to

11   use Liberty's Confidential Information to operate their competing tax preparation

12   business.

13       52.    Defendant's use of Liberty's client information to solicit and deceive

14   Liberty's clients has caused and will continue to cause irreparable damage to

15   Liberty's reputation and goodwill, and has also caused and will continue to cause

16   monetary damage.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Breach of Contract – Equitable and Monetary Claims**

20       53.    Liberty repeats and re-alleges the foregoing paragraphs as if fully set

21   forth herein.

22       54.    The Franchise Agreements, Notes, Guaranty and PSAs are valid and

23   enforceable.

24       55.    Liberty has performed every obligation and condition required under

25   the Franchise Agreements and the Notes.

26       56.    Under the Franchise Agreements, Defendants promised to immediately

27   return and cease use of all Confidential Information and the confidential Operations

28   Manual upon the termination of her franchise relationship with Liberty.

*Gordon Rees Scully Mansukhani, LLP*
*3 Parkcenter Drive, Suite 200*
*Sacramento, CA 95825*

-8-
**VERIFIED COMPLAINT**

Gordon Rees Scully Mansukhani, LLP
3 Parkcenter Drive, Suite 200
Sacramento, CA 95825

57.    Under the Franchise Agreements, Defendants promised to refrain from taking any act that is harmful, injurious or prejudicial to Liberty.

58.    Under the Franchise Agreements, Defendants promised to refrain from providing tax preparation services within 25 miles of their former Liberty franchises for two years following the termination of the Franchise Agreements.

59.    Under the Franchise Agreements, Defendants promised to immediately pay all debts due and owing to Liberty upon termination of the Franchise Agreements.

60.    Lu agreed to pay all amounts due and owing under the Notes.

61.    Under the Guaranty, Lu personally guaranteed the payment of all debts owed by Evergreen to Liberty.

62.    Under the PSAs, Lu agreed to pay certain amounts to Liberty.

63.    Defendant breached the Franchise Agreements by:

   A.    Retaining and using Liberty's Confidential Information and Operations Manual following the termination of the Franchise Agreements;

   B.    Taking action that is harmful and injurious to Liberty;

   C.    Offering tax preparation services within 25 miles of the bounds of their former franchise territories following the termination of the Franchise Agreements;

   D.    Soliciting Liberty's clients;

   E.    Failing to pay outstanding accounts receivable debt owed to Liberty; and

   F.    Failing to pay outstanding balances owed to Liberty under the Notes.

64.    Lu breached the Notes by failing to pay outstanding balances owed to Liberty thereunder.

65.    Lu breached the Guaranty by failing to pay amounts due and owing by

VERIFIED COMPLAINT

Gordon Rees Scully Mansukhani, LLP
3 Parkcenter Drive, Suite 200
Sacramento, CA 95825

1   Evergreen to Liberty.

2       66.   Lu breached the PSAs by failing to pay all amounts due and owing to

3   Liberty.

4       67.   As a result of the foregoing breaches, Liberty has been damaged.

5       68.   As a direct and proximate result of the foregoing breaches, Liberty has

6   suffered and will continue to suffer ongoing and irreparable harm to its goodwill,

7   reputation and franchise system.

8

9                        **SECOND CAUSE OF ACTION**
                             **Violation of DTSA**

10

11      69.   Liberty repeats and re-alleges the foregoing paragraphs as if fully set

12   forth herein.

13      70.   The DTSA provides a private civil action for the misappropriation of a

14   trade secret that is related to services used in interstate or foreign commerce.

15      71.   Liberty owns numerous trade secrets, including but not limited to, its

16   confidential Operations Manual and Confidential Information such as client tax

17   returns, records and information.

18      72.   Liberty's trade secrets derive independent economic value from not

19   being generally known to, and not being readily ascertainable through proper means

20   by, another person who can obtain economic value from the disclosure or use of the

21   information.

22      73.   Liberty's trade secrets are not readily ascertainable as they are disclosed

23   only to franchisees in the operation of a franchised business pursuant to a franchise

24   agreement.

25      74.   Liberty's franchisees are licensed to use Liberty's trade secrets and

26   Confidential Information only while their Franchise Agreements remain in effect.

27      75.   Liberty has taken extensive measures to preserve and protect its trade

28   secrets for the purpose of maintaining their competitive advantage in the marketplace,

including requiring franchisees to enter into a franchise agreement before disclosure, requiring franchisees to protect the trade secrets in perpetuity, and initiating legal recourse against those who misappropriate its trade secrets.

76.    Liberty's Confidential Information and proprietary trade secrets were disclosed to Defendants for the sole purpose of operating their Liberty franchises while the Franchise Agreements were in effect.

77.    Defendants agreed to never use, disclose, or permit the use or disclosure of Liberty's trade secrets in any manner whatsoever, and to return all copies of the Operations Manual and client information following the termination of the Franchise Agreements.

78.    Following the termination of the Franchise Agreements, Defendants failed to return Liberty's Confidential Information to Liberty.

79.    Upon information and belief, Defendants are using Operations Manual and Liberty's Confidential Information to secure pecuniary benefits for themselves.

80.    Defendants intentionally and without Liberty's permission or authorization misappropriated and/or disclosed Liberty's trade secrets for their own economic benefit, and with the intention that their conduct would injure Liberty.

81.    As a direct and proximate result of Defendants' willful, improper, and unlawful disclosure and/or use of Liberty's trade secrets, Liberty has suffered and will continue to suffer damages and irreparable injury.

82.    Pursuant to 18 U.S.C. § 1836(b)(3)(A), Defendants' actual and threatened use and misappropriation of Liberty's trade secrets should be enjoined from further disclosure or use.

83.    Defendants' conduct in misappropriating Liberty's trade secrets was and continues to be willful and malicious - warranting an award of exemplary damages in accordance with 18 U.S.C. § 1836(b)(3)(C) and an award of reasonable attorneys' fees in accordance with 18 U.S.C. § 1836(b)(3)(D).

///

**VERIFIED COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gordon Rees Scully Mansukhani, LLP
3 Parkcenter Drive, Suite 200
Sacramento, CA 95825

**THIRD CAUSE OF ACTION**
**Common Law Conversion**

84.     Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

85.     Under the Franchise Agreements, Liberty has the right to possess its Confidential Information, including customer files and its confidential Operations Manual.

86.     Following the termination of the Franchise Agreements, Defendants were no longer authorized to possess or use the Confidential Information or Operations Manual.

87.     Defendants did not return the Confidential Information and Operations Manual to Liberty.

88.     Upon information and belief, Defendants have converted the Confidential Information and Operations Manual for financial gain.

89.     Defendants' interference with Liberty's property by virtue of not returning it to Liberty has deprived Liberty of its possession and use of the Confidential Information and Operations Manual.

90.     As a direct and proximate result of Defendants' conversion of Liberty's property, Liberty has suffered damages and will continue to suffer damages until the property is returned to Liberty.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**

91.     Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

92.     Defendants were enriched by using Liberty's Confidential Information to solicit consumers, including, upon information and belief, Liberty's customers.

93.     The enrichment of Defendants was at the expense of Liberty.

**VERIFIED COMPLAINT**

94.    It is against equity and good conscience to permit Defendants to retain monies they unlawfully diverted from Liberty to themselves.

95.    The benefit to Defendants, as described herein, were substantial and definite.

96.    Liberty has been damaged as a direct and proximate result of Defendants' retention of the benefits described herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Liberty prays for judgment against Defendants as follows:

1.    For an order enjoining Defendants from:

    a.    Operating a tax preparation business within 25 miles of the boundaries of any of their former Liberty franchise territories for a period of two years following the entry of any injunction;

    b.    Using Liberty's Confidential Information;

    c.    Using Liberty's Marks; and

    d.    Identifying as a current or former Liberty franchisee.

2.    For an order requiring Defendants to:

    a.    Return at their expense all Confidential Information, including Liberty's confidential Operational Manual, to Liberty.

3.    For compensatory damages related to Defendants' conversion and breaches of contract;

4.    For a monetary award against Defendants in an amount to be proven at trial, but not less than $365,534.07;

5.    For a monetary award against Defendants for Liberty's attorneys' fees and costs, in an amount to be proven at trial;

6.    For statutory and punitive damages pursuant to the DTSA;

7.    For pre- and post-judgment interest; and

8.    For such other relief as the Court deems just and appropriate.

///

Gordon Rees Scully Mansukhani, LLP
3 Parkcenter Drive, Suite 200
Sacramento, CA 95825

-13-

1

2  Dated:  March 15, 2022                    GORDON REES SCULLY
                                             MANSUKHANI, LLP
3

4                                            By:   /s/ *Maria Solomon-Williams*
5                                                  Maria Solomon-Williams
                                                   Attorney for Plaintiff
6                                                  JTH TAX, LLC., d/b/a LIBERTY
7                                                  TAX SERVICE, f/k/a JTH TAX,
                                                   INC.
8

9
                         **DEMAND FOR JURY TRIAL**
10
              Plaintiff, on behalf of themselves, all other similarly situated, and the
11
    general public, hereby demands a jury trial on all issues so triable.
12

13  Dated:  March 15, 2022                    GORDON REES SCULLY
                                              MANSUKHANI, LLP
14

15

16                                            By:   /s/ *Maria Solomon-Williams*
                                                    Maria Solomon-Williams
17                                                  Attorney for Plaintiff
                                                    JTH TAX, LLC., d/b/a LIBERTY
18                                                  TAX SERVICE, f/k/a JTH TAX,
19                                                  INC.

20

21

22

23

24

25

26

27

28

**VERIFIED COMPLAINT**

Gordon Rees Scully Mansukhani, LLP
3 Parkcenter Drive, Suite 200
Sacramento, CA 95825

Gordon Rees Scully Mansukhani, LLP
3 Parkcenter Drive, Suite 200
Sacramento, CA 95825

## **VERIFICATION**

GEOFF KNAPP does hereby verify and state pursuant to 28 U.S.C. § 1746:

I am a Regional Director for Plaintiff. I have read the foregoing Verified Complaint and know the contents thereof and state the allegations are true. I base this Verification on my own knowledge, except as to matters therein stated to be alleged upon information and belief and, as to those matters, I believe them to be true. The grounds of my knowledge, information, and belief are derived from my position as Regional Director, my personal involvement in the events underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of Plaintiff's records and conversations with Plaintiffs' employees.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 15th day of March, 2022.



Geoff Knapp, Regional Director

# EXHIBIT A

DocuSign Envelope ID: 14DD1FC5-F5BD-496C-A9C9-0B6644AB18D8

CA648(LongBeachCA-5)



**FRANCHISE AGREEMENT**

**EXHIBIT B**

# TABLE OF CONTENTS

| Section | Page |
|---|---|
| 1. GRANT OF FRANCHISE | 1 |
| 2. TERM, RENEWAL AND BUYBACK | 1 |
| 3. TERRITORY | 2 |
| 4. FEES AND PAYMENTS | 3 |
| 5. OBLIGATIONS OF FRANCHISOR | 6 |
| 6. OBLIGATIONS OF FRANCHISEE | 8 |
| 7. REPORTS AND REVIEW | 12 |
| 8. TERMINATION | 13 |
| 9. POST-TERMINATION OBLIGATIONS | 15 |
| 10. ADDITIONAL IN-TERM AND POST-TERM COVENANTS | 15 |
| 11. OPTION TO PURCHASE ASSETS | 17 |
| 12. CONFIDENTIAL INFORMATION | 17 |
| 13. INDEPENDENT CONTRACT AND INDEMNIFICATION | 18 |
| 14. DEATH OR INCAPACITY | 19 |
| 15. ASSIGNABILITY AND FIRST RIGHT OF REFUSAL | 19 |
| 16. NON-WAIVER OF BREACH | 21 |
| 17. GOVERNING LAW | 21 |
| 18. MODIFICATION | 22 |
| 19. RELEASE OF PRIOR CLAIMS | 22 |
| 20. NOTICES | 23 |
| 21. FULL UNDERSTANDING | 23 |
| 22. ACKNOWLEDGMENTS | 23 |
| 23. SEVERABILITY | 23 |
| 24. COUNTERPARTS AND ELECTRONIC SIGNATURE | 24 |
| 25. HEADINGS | 24 |
| 26. GUARANTY | 24 |
| | |
| Signature Page | 25 |
| Schedule A – Territory | A-1 |
| Schedules B-1 to B-5 – Special Stipulations | B-1-B-5 |

DocuSign Envelope ID: 14D01FC5-F5BB-496C-A9C9-0B6641AB18D8

## 1.  GRANT OF FRANCHISE

Liberty Tax Service ("Liberty," "Liberty Tax") has developed a system for the operation of tax return preparation offices. The Liberty system utilizes special marketing techniques and operating procedures to facilitate the provision of tax return preparation and related services.

You, meaning the franchisee and all signators identified on the signature page to this franchise agreement ("Agreement" or "Franchise Agreement"), in your personal capacity and, if applicable, on behalf of the business entity designated by you on the signature page, have applied for a franchise that utilizes Liberty's system and Liberty's trade names, service marks, and trademarks (collectively, the "Marks") ("Franchised Business" or "Franchise"). Subject to the terms of this Agreement, Liberty grants to you a Liberty Tax Service franchise. This Agreement will allow you to operate a tax return preparation business using Liberty's system and Liberty's Marks within the territory described on Schedule A ("Territory"). This agreement shall only grant you a Liberty franchise and grants no rights to you associated with any other brand or concept owned and/or operated by SiempreTax+ LLC ("SiempreTax+"), Liberty Tax, Inc., Liberty's affiliates, or other entities controlling, controlled by or under common control with Liberty ("Affiliated Companies"). You agree to abide by the terms of this Agreement.

You recognize and agree that the nature of the tax return preparation business is such that complete uniformity is not always practical or desirable and that Liberty, in Liberty's sole discretion, may vary the terms of this Agreement and the standards of operation of the Franchised Business to accommodate the peculiarities of a particular situation and/or territory. You have no recourse against Liberty if other franchisees are granted allowances that you are not granted.

## 2.  TERM, RENEWAL AND BUYBACK

    **a.  Term.**  This Agreement will be effective for a five year term beginning on the effective date specified on the signature page of this Agreement ("Effective Date").

    **b.  Renewal.**  You may renew for another five year term by signing Liberty's then current franchise agreement if you have met the Target Volume specified in Section 6(f) of this Agreement, you are otherwise in full compliance with this Agreement, all other agreements with us and the Affiliated Companies, and no event has occurred that would give Liberty the right to terminate this Agreement. You may continue to renew future franchise agreements in this manner if you, and every other entity in which you hold an ownership interest, are in full compliance with all agreements between you and Liberty or you and the Affiliated Companies. To renew, you must execute a general release of all claims that you might have against Liberty and the Affiliated Companies, and must also execute Liberty's then current Franchise Agreement which may contain materially different terms. Liberty may not raise royalties or advertising fees that you pay to Liberty upon any future renewal, or impose a renewal fee. Further, upon renewal, Liberty may not change the boundaries of your Territory, the level and type of territorial exclusivity or the territorial rights you have. Other terms and conditions may vary. If you wish to renew, you must notify Liberty in writing at least one hundred and eighty (180) days before the expiration of this Agreement.

**c. Buyback.** Between May 1 and August 31 of any year, Liberty has the right to purchase your Franchised Business for the greater of $150,000 or 200% of the Gross Receipts of the Territory for the previous twelve months, or such shorter time as an office in the Territory may have been in operation. You understand that this is a premium price above fair value and does not vest any rights in you. The term "Gross Receipts" as used in this Agreement means all revenue from all services and products offered by the Franchised Business (including, but not limited to, revenue from individual, corporate, estate and partnership tax returns), excluding only customer discounts, any transmitter, software or electronic filing fee, and sales tax, but not service fees for credit card transactions.

## 3. TERRITORY

**a. Territory Generally.** Your Territory is described in Schedule A of this Agreement ("Territory").

**b. General Rights & Restrictions.** You may operate as many tax return preparation offices in the Territory as you determine to be appropriate. You may not operate outside your Territory. Liberty may grant franchises for areas outside your Territory or operate company offices in such areas. Except as described below, Liberty may not establish franchised or company owned outlets offering income tax preparation services using the Marks at a physical location in your Territory. Additionally, Liberty may not offer income tax preparation services through other channels of distribution at a physical location in your Territory except as described herein. Liberty and the Affiliated Companies may establish franchised or company owned outlets in your Territory that operate income tax preparation services under different trademarks and may operate or franchise a different line of business. Liberty may distribute Liberty tax return preparation products and services by means other than retail or storefront locations in your Territory, including the sale of gift cards for this service. No other franchisee using the Marks may operate a tax return preparation office in your Territory. Liberty may advertise in your Territory. You may not advertise in areas outside your Territory or in media that extends outside your Territory, without Liberty's express written approval. You agree that in the event of a mapping error, as determined by us, which results in a territory population which exceeds 35,000, Liberty may re-size your Territory.

**c. Misplaced Offices.** If you locate an office outside your Territory, even if Liberty approved such site location, you agree upon discovery of this fact to promptly abandon the office and refrain from any further targeted solicitation (e.g. direct mail, telephone calls, etc.) of customers residing in the territory containing the misplaced office. If Liberty learns that Liberty or another franchisee has erroneously located an office in your Territory, you agree to accept the abandonment of the office and, in the case of a misplaced office operated by another franchisee, the discontinuation of further targeted solicitation of customers located in your Territory, in full satisfaction of any claim against Liberty, Liberty's past and present employees, and Liberty's past and present franchisees, in relation to the misplaced office. Liberty has a reasonable time to correct any such error after Liberty learns of it.

**d. National and Regional Retail Business Outlets.** Liberty may negotiate agreements with national or regional retail businesses. If there is an outlet of such a national or regional business in your Territory that is subject to such an agreement, you may choose to operate a tax return preparation service office in that outlet by communicating that decision to Liberty by December 1 before a given Tax Season, or such earlier date provided by Liberty in order to meet the requirements of that business. If you choose not to operate in an outlet that exists in your Territory, Liberty may operate in that outlet in your Territory and all associated revenue and expenses shall belong to Liberty. Additionally, Liberty will retain the right to

service the customers associated with that outlet in the future. The term "Tax Season" means the time period of January 2 – April 30.

## 4. FEES AND PAYMENTS

**a. Initial and Resale Franchise Fee.** The initial franchise fee and resale franchise fees are $40,000. The resale franchise fee applies to a territory that has been previously sold. If a territory includes existing operations, the total cost will vary depending upon the Gross Receipts of the Territory and other pertinent market and economic factors.

**b. Down Payment and Approval.** You must submit a minimum of 20% of the initial or resale franchise fee as a deposit after you have held the Liberty Franchise Disclosure Document for at least fourteen (14) calendar days and prior to attending Effective Operations Training ("EOT"). Liberty will refund this deposit to you upon your request at any time before you attend EOT. If you receive financing, you will be required to submit a deposit of up to $25,000 for your operational expenses ("Operational Supply Deposit"), and may be required to attend and pass Liberty's Guerilla Marketing Interactive training ("GMi Training") or other required training, prior to closing. We will refund to you the initial or resale franchise fee (including deposits) if we do not approve your application or if you do not pass EOT in accordance with Liberty's passing standards, provided that you return to us all materials that we distributed to you during training. After closing, Liberty will hold and make available for return to you any Operational Supply Deposit that you were required to submit, upon your written request to Liberty with substantiation as to the expenses to be paid by you with the Operational Supply Deposit. We do not pay interest on the Operational Supply Deposit. The initial and resale franchise fee is fully earned and nonrefundable when both parties execute this Agreement.

**c. Reverse Royalty.** If Liberty receives tax preparation fees from individuals located in your Territory through the use of Liberty's online tax preparation services while you have a Liberty Tax Service office open in that Territory, Liberty agrees to use commercially reasonable means to track and identify those revenues and pay or credit to you 14% of those tax preparation fees within sixty (60) days after the end of each Tax Season in its sole discretion.

**d. Royalties.** You must pay a royalty to Liberty in the amount of 14% of Gross Receipts subject to the following minimums ("Minimum Royalties"):

i) **Year One.** For the period ending April 30 following the Effective Date of this Agreement, if you operated or were required to have operated an office in the Territory for any part of Tax Season ending in that April, the minimum royalty is $5,000 per Territory.

ii) **Year Two.** For the period beginning May 1 following the Effective Date of this Agreement through the following April 30, the minimum royalty is $8,000 per Territory.

iii) **Year Three and Beyond.** Thereafter, the minimum royalty is $11,000 per Territory for each successive period beginning May 1 through the following April 30.

iv) **Developed Territory.** For a territory that contains or that had in the most recent Tax Season prior to the Effective Date of this Agreement, an existing company, franchisee or other

Liberty tax preparation office ("Developed Territory"), you must pay royalties as set forth above depending upon how long any office has been operated in the Territory. For example, if it is your first year operating in a territory but an office has been operated in the Territory by Liberty or another franchisee through one Tax Season, then the Territory would be subject to Year Two royalties for the year that you first operate in the Territory. An office includes, but is not limited to, locations such as kiosks or temporary locations where tax return preparation services are provided.

v) **SiempreTax+ Conversion/Opt In.** The definition of Developed Territory also includes a territory that contains or that had in the most recent Tax Season prior to the Effective Date of this Agreement, an existing SiempreTax+ tax preparation office. For such a Territory, you must pay royalties as set forth above depending upon how long any office has been operated in the Territory.

**e. Area Developers.** If you are in or become part of an area covered by an Area Developer, Liberty may pay to the Area Developer a portion of the initial franchisee fee and royalties that you pay to Liberty.

**f. Advertising Fee.** You must pay an advertising fee of 5% of the Gross Receipts each month.

**g. Payment Period.** You must pay the royalty owed by the 5th of each month based on Gross Receipts for the preceding month, and any balance owed to achieve Minimum Royalty on May 5 for each fiscal year ending April 30. You must pay advertising fees by the 5th of each month based on Gross Receipts for the preceding month. Liberty reserves the right to modify this payment schedule in Liberty's Operations Manual.

**h. Interest.** You must pay interest of 12% (compounded daily) per year, or the maximum permitted by law if less, on any amounts owed to Liberty that are more than fifteen (15) days past due.

**i. Transfer Fee.** If you transfer your Franchised Business, or an interest in the Franchised Business that results in a change in control of the Franchised Business, you must pay Liberty a transfer fee of $5,000 at the time of transfer. This fee is subject to increase or decrease in future franchise agreements by the amount of change in the *Consumer Price Index – All Urban Consumers*, published by the U.S. Department of Labor, or a reasonably similar successor index, from the index as of the Effective Date.

**j. Customer Refunds, Penalty and Interest, Send a Friend**. If you do not resolve a customer service complaint or pay penalty and interest on an erroneous return prepared in your office, or misdeliver a customer check, or fail to pay a Send a Friend or E-Send a Friend referral, and the customer contacts Liberty, and Liberty believes there is a reasonable basis for the claim, Liberty may issue a refund of fees paid by the customer, pay to the customer the penalty and interest or amount of misdelivered check, or pay the Send a Friend referral, and bill you. You agree to pay the charges. Your obligation to pay penalty and interest for tax return preparation errors made during the operation of the Franchised Business continues after the expiration, termination or transfer of this Agreement and/or sale of the Franchised Business.

**k. Automatic Payment Transfer**. All of the tax preparation, transmitter, software, and electronic filing fees, and any rebates that you receive from Financial Products or customers who purchase

DocuSign Envelope ID: 14DD1FC5-F5BB-496C-A9C9-0B664DAB18D8

Financial Products, and all other revenue due to Franchisee under this Agreement and all other agreements with Liberty and the Affiliated Companies, shall initially be paid to Liberty. The term "Financial Products" as used in this Agreement means refund-based loan programs and/or a means for customers to obtain a refund using electronic deposit services that Liberty, or a company associated with Liberty, may offer to you. Liberty will remit any remaining balance to you from the above described fees and rebates after deducting monies you owe to Liberty, and/or SiempreTax+ if applicable, and deducting monies to hold for application to upcoming amounts due to Liberty and/or SiempreTax+ including, but not limited to, unbilled royalties or amounts related to an internal review.

   **l.   Sales or Gross Receipts Tax.**  If required by the state or locality where your Territory is located, the initial franchise fee, royalties, and advertising fees will be subject to sales or gross receipts tax. You must pay these taxes to Liberty at the same time and in the same manner as you pay the royalties and fees to Liberty.

   **m. Transmitter, Software, or Electronic Filing Fee.**  Liberty reserves the right to impose a fee charged to you or your customers related to transmission of Financial Products, the provision of software, or the electronic filing of tax returns and, if charged to customers, may rebate a portion of the fee to you. Liberty may vary the dollar amount of the fee and may change its name. Any such fee is not included in your Gross Receipts.

   **n.   Call Center.**  If you elect to use Liberty's call center to handle customer appointments, customer follow up, tax school calls, or other calls, you must pay to Liberty a fee for each such call pursuant to Liberty's schedule of call center charges. This schedule is subject to future modification by Liberty.

   **o.   Cash in a Flash Financing Set up Fee.**  If you elect to apply for cash in a flash financing through Liberty, you must pay to Liberty any set up fee that Liberty imposes pursuant to Liberty's schedule of fees. This schedule is subject to future modification by Liberty.

   **p.   Assessment Related to Understatement of Revenues and Failure to Comply.**  Pursuant to the rights and obligations specified in Section 7 of this Agreement, if Liberty determines that you are underreporting Gross Receipts, you must pay to Liberty additional royalties and interest in the amount of 12% per annum on the undisclosed amount as determined by Liberty. If the excess determined following a review of your operations, books and records is more than two percent (2%) of the Gross Receipts for the period in question, you must also pay the costs of the review. Additionally, if a review results from your failure to maintain and/or provide records as required in Section 7 or if you fail to attend, coordinate or permit Liberty's review, in Liberty's determination, you must pay the costs of the review or attempted review, regardless of the result. All amounts referenced in this paragraph will be billed to your accounts and notes receivable balance with Liberty. The costs of any review pursuant to the terms of this Agreement shall be determined by Liberty. Liberty's acceptance of payments of royalties or Gross Receipts reports shall be without prejudice and shall in no case constitute a waiver of Liberty's rights to claim any delinquent royalties, or to require a review of your operations, books and records, as provided for herein.

## 5.  OBLIGATIONS OF FRANCHISOR

**a.  Training.**  Liberty provides for new franchisees a required five (5) day or longer EOT and a required one (1) day Hands on Training ("HOT") taught by an existing franchisee at their Liberty Tax office. Franchisees that receive financing may also be required to attend and pass Liberty's GMi Training. Liberty does not charge for EOT, HOT or GMi Training unless you register and fail to attend. Additionally, you are responsible for all expenses you incur as a result of training, such as travel, lodging and meals.

**b.  Operations Manual.**  Liberty will loan you a copy of the dual Liberty/SiempreTax+ Operations Manual ("Manual" or "Operations Manual") to offer guidance in the operation of your Franchised Business.

**c.  Site Selection.**  Liberty provides guidance and advice to you regarding the selection of the location of your office(s). You may not sign a lease or locate an office until Liberty approves the location of your office. Liberty's approval of the location of a site is not a guarantee of success in that location or a warranty or assurance as to any aspect of the office or its location.

**d.  Advertising and Marketing.**  Liberty raises fees related to marketing through the advertising fees paid under Liberty's franchise agreements. Liberty will contribute advertising fees from company offices. Liberty disburses advertising fees to develop, produce, distribute and/or conduct advertising programs, marketing programs, public relations, and marketing research. Liberty spends advertising fees on a national, regional or local basis for television, electronic, radio and print advertising as Liberty determines to be appropriate. Liberty may produce advertising in-house and/or through an advertising agency. Liberty pays all costs of such activities, including a share of corporate overhead related to advertising and marketing, with advertising fees. You may also use your own advertising material provided that Liberty first approves it for compliance.

**e.  Software.**  Liberty provides tax return preparation software.

**f.  Tax and Technical Support.**  Liberty provides reasonable telephone and/or internet support for your questions regarding federal and state individual income tax return preparation, electronic filing, and the use of software specified by Liberty. However, Liberty will not provide support on any equipment that does not meet Liberty's then current specifications or issues related to the operating system of a computer.

**g.  Electronic Filing.**  Liberty provides the ability to file individual federal and certain individual state tax returns electronically, if such method of filing is reasonably available from the respective taxing authority. You must have and maintain a valid Electronic Filing Identification Number ("EFIN").

**h.  Financial Products.**  If reasonably available and feasible (in Liberty's sole determination), Liberty will offer you the ability to participate in Financial Products. If offered, your participation in Financial Products programs is subject to mutual agreement between you, Liberty and the Financial Products provider.

**i. Operational Support.** Liberty advises you in the budgeting for and operation of your Franchised Business. Liberty's approval of your budget is not a guarantee of success.

**j. Advanced and Update Training and Conference Calls.** Liberty provides and may require your attendance at advanced training for experienced franchisees. Liberty also provides and requires attendance by all franchisees at update training. Liberty may offer advanced and update training at various sites that Liberty selects across the country, or Liberty may offer such training through the internet or electronically. The agenda for advanced training varies, but often will focus on improving business management skills in order to increase profitability. Liberty does not charge for advanced or update training, but you are responsible for all expenses that you incur as a result of attending training, such as travel, lodging and meals.  Liberty may also require that you attend a reasonable number of toll free conference calls to learn the latest operational and marketing tips. Such calls may either be attended live or through online replay.

**k. Supply Source.** Liberty may offer for sale or locate a source for purchasing supplies, forms and equipment that may be necessary to conduct the Franchised Business, as reasonably determined by Liberty.

**l. Leasing.** Liberty may make arrangements to refer you to a company that offers leasing of furniture, fixtures, signs, equipment, and possibly provides loans for franchise fees and working capital. These leasing or loan programs will be financed and administered by a third party. Liberty cannot guarantee that you will be offered leasing or loans, as the third party company will make individual determinations.

**m. Financing through Liberty.** Liberty may, in Liberty's sole discretion, provide financing for a portion of the initial franchise fee or other costs associated with the Franchised Business. The terms of such financing are subject to change. You must be in compliance with this Agreement to qualify for any such financing and may be required to obtain certain certifications and trainings including, but not limited to, Affordable Care Act certification and completion of GMi Training. If Liberty provides financing, you will be required to enter into a promissory note reflecting the terms of the financing arrangement. If Liberty provides financing, you must submit monthly financial information to Liberty including, but not limited to, income statements, balance sheets, and supporting documents. You agree to submit the required information at the time and in the format specified by Liberty. Liberty reserves the right to adjust this policy to require more frequent financial statements on a continuing basis and you agree to comply with any such change in policy. Liberty also may request personal financial statements. All financial statements must be prepared in conformity with generally accepted accounting principles.

**n. Group Discounts.** Liberty may provide you with the opportunity to participate in group purchasing programs that offer group discounts. The discounts and terms for these opportunities will vary.

**o. Area Developers.** In those areas where Liberty presently or in the future uses an Area Developer, Liberty reserves the right to delegate some portion of the responsibility for certain duties to the Area Developer including, but not limited to, site selection assistance, limited marketing assistance, and operating assistance. Area Developers do not have any authority to approve advertising or marketing material of any kind.

## 6. OBLIGATIONS OF FRANCHISEE

**a. Training.** You must attend and successfully complete Liberty's EOT and HOT before you may operate a Liberty office. Liberty may allow or require a general manager to attend on your behalf.

**b. Use of Liberty Marks.**

(i) **Liberty allows you to use Liberty's Marks**. Liberty allows you to use Liberty's Marks to hold out your Liberty Tax Service business to the public. You agree to exclusively use Liberty's Marks as Liberty develops them for this purpose only.

(ii) **You must obtain prior advertising approval**. You must either use pre-approved advertising templates that Liberty or Liberty's approved vendors provide, or you must obtain Liberty's prior written consent before using the Marks in any way and before using any marketing or promotional material, including internet advertising.

(iii) **No private website allowed.** You may not have a website for your Franchised Business, or utilize mobile apps or other digital marketing, without Liberty's prior written approval.

(iv) **Marketing to National Companies**. You must obtain written permission from Liberty before marketing on the premises (building and parking lot) of any national company. National companies include, by way of example, Wal-Mart, K-mart, and Sears.

(v) **No use of "Liberty" within a company name**. You may not use the word "JTH" "Dona Libertad," "Liberty," "Libtax", "Siempre", "SiempreTax," "SiempreTax+" or the name, or any portion of the name of Liberty's Affiliated Companies, as any part of the name of a corporation, LLC or other entity except as may be agreed between you and such company in a separate franchise agreement for that company. However, "Liberty Tax Service" followed by your entity number shall be your "doing business as" name for an entity that owns this Franchise, sometimes also called your "assumed name," "trading as" name, or "fictitious name."

(vi) **No confusingly similar marks**. You agree not to use any marks which could be confused with Liberty's Marks.

(vii) **Liberty may update or change Liberty's Marks**. Liberty may replace, modify or add to the Marks. If Liberty replaces, modifies or creates additional marks, you agree to update or replace your signs, supplies, etc., to reflect the new marks in the time frame Liberty provides and at your own expense. Liberty will not change exterior signage requirements more than once every four (4) years unless legally required.

**c. Signs.** You must display an exterior lighted sign at each of your offices. Liberty must approve all signs before you order or display them.

**d. Starting Date.** You agree to begin operations and be open for business no later than January 2 following the Effective Date of this Agreement and for every year thereafter.

**e.  Operating Hours.**  You agree to exercise your best efforts to promote the Franchised Business and agree, at a minimum, to be open for business during the hours specified in the Operations Manual.

**f.  Target Volume.**  You must use your best efforts to promote the Franchised Business.  Beginning in your fifth (5th) Tax Season and continuing in each Tax Season thereafter, you must prepare at least 1,000 federal income tax returns in your Territory ("Target Volume").

**g.  Software.**  You must use the software that Liberty provides.  You may not use, install or have any other federal or state personal income tax return preparation or electronic filing software on any computers used in the Franchised Business.

**h.  Telephone Number and Email Account.**  You must obtain and maintain a Liberty Tax Service telephone number to be used solely to transact the Franchised Business. You may purchase a white and yellow page listing through Liberty's approved vendor and may be required to purchase a yellow page advertisement and/or contribute to a group listing or advertisement per Liberty's recommendations. You also must provide and maintain an email account sufficient for communications between you and Liberty.

**i.  Equipment.**  You must obtain and use a computer system that meets Liberty's current specifications and any modifications to these specifications. All work stations must be purchased from Liberty's approved vendor including, but not limited to, tax return preparation and processing computers. Liberty may update the specifications. When the specifications are updated, you must update or upgrade the computer system, at your sole cost.  Specifications will not be updated during a Tax Season except upon an emergency, as reasonably determined by Liberty.  You agree to maintain such computer systems in compliance with industry standards regarding information security and make any necessary updates to ensure that information is secure, including, but not limited to, encryption.

**j.  Insurance.**  During the term of this Agreement, you must procure and maintain an insurance policy or policies with at least the following coverage or such other coverage as may be specified in the Operations Manual:  (i) comprehensive general liability of $1 million per office and (ii) worker's compensation as required by your state law. Liberty may require you to obtain additional insurance, such as errors and omissions insurance, as may be specified in the Manual. You must name Liberty as an additional insured on all policies required by this Agreement or the Manual.

**k.  Electronic Filing.**  If Liberty provides or recommends a source for electronically filing tax returns, you are required to offer electronic filing and to use this source exclusively for all electronic filing.

**l.  Financial Products.**  If Liberty negotiates an agreement with a third party Provider to allow you to offer Financial Products, you are required to exclusively use such Providers as Liberty designates and to offer Financial Products to your customers.

**m. Operations Manual.**  You acknowledge the importance of consistency of quality, service and operation among all Liberty Tax franchised offices and, therefore, agree to operate the Franchised Business in conformity with all standards to be maintained, techniques and operating procedures that Liberty may prescribe in Liberty's manuals or otherwise in writing, and to refrain from deviating

DocuSign Envelope ID: 14DD1FC5-F5BB-496C-A9C9-0B6641AB18D8

therefrom without Liberty's prior written consent. Liberty will loan you a copy of the Manual and provide you with other relevant manuals. Liberty may modify the Manual or any other manual, in order to adjust for competitive changes, technological advancements, legal requirements and attempts to improve in the marketplace. You agree to operate the Franchised Business according to the manuals and any modifications including, but not limited to, the Manual, as may be updated or supplemented by memoranda, bulletin, email or other similar mechanism that together with the Manual, contain the mandatory and suggested procedures and specifications that are prescribed for the Franchised Business.

**n. Participation.** You agree that the services of the Franchised Business will be provided under your direct supervision and control and/or under the direct supervision and control of a full-time general manager who has been approved by, and not later disapproved by Liberty. Liberty will not approve a general manager prior to their successful completion of EOT.

**o. Return Check.** You must prepare each income tax return accurately and in accordance with federal, state and local laws. You must check each return thoroughly.

**p. Tax School.** If you complete EOT before September 1 of the year of the Effective Date of this Agreement, and during every year after your first Tax Season regardless of EOT, you must conduct an intensive 6 to 10 week tax course in the period of September through December in accordance with the specifications in the Manual. Additionally, you must conduct a one-week tax course during every January, including the January of your first (1st) Tax Season, in accordance with the specifications in the Manual.

**q. Employee Training.** You shall conduct and require each of your employees to attend an employee policy and procedure training course as specified by Liberty. You are solely responsible for hiring, firing, compensating, paying applicable payroll taxes and day to day supervision and control over your employees. You acknowledge and agree that Liberty shall not, and shall have no right or authority to, control your employees. Liberty shall have no right or authority with respect to the hiring, termination, discipline, work schedules, pay rates or pay methods of your employees. You acknowledge and agree that all employees shall be your exclusive employees and shall not be employees of Liberty nor joint employees of you and Liberty. Liberty neither dictates nor controls labor or employment matters for franchisees and their employees.

**r. Customer Service.** You shall employ and train sufficient personnel to accommodate all customers without undue delay. You shall provide all services and abide by all customer service policies described in the Manual, including, but not limited to, the money back guarantee. You must operate in a manner that protects Liberty's goodwill, reputation and Marks.

**s. Office Condition.** You shall maintain offices that are neat and professional in appearance. Further, you may not offer products or services through your Liberty offices other than the franchise services authorized here (i.e., tax preparation, electronic filing, and Financial Products, all processed and reported through Liberty's systems) without Liberty's prior written approval.

**t. Supplies and Furniture.** You agree that in order to establish a standard and consistent delivery of Liberty Tax services, certain items must be used in the operation of the Franchised Business. You must use the items required in the Manual (e.g. client envelopes and folders, interview worksheets,

interior signs sets). You are responsible for the cost of all items needed to conduct the Franchised Business including, but not limited to, supplies, furniture, equipment, leasing and real estate costs.

**u.  Laws and Regulations.**  You agree to comply with all federal, state and local laws, regulations, ordinances and the like, and to be responsible for such compliance by all employees of the Franchised Business. You will abide by all legal requirements and be solely responsible for securing any necessary permits, certificates, licenses and consents to operate your business. You will not request or require that any customer of the Franchised Business waive, or permit you to disclaim your or any employee's responsibility to comply with any legal requirements or applicable laws. If requested by Liberty, you agree to report any noncompliance with federal or state tax laws or regulations by the Franchised Business and/or its employees to the IRS and/or any applicable state taxing authority. You also agree to provide Liberty with notice of any reports of non-compliance you have filed.

**v.  Audits.**  If the IRS or any governmental agency audits or investigates your Liberty operations, or any tax preparer employed in the Franchised Business, or otherwise requires that you, or such tax preparer, provide documents to the IRS or other governmental agency related to the Franchised Business, you agree to notify Liberty immediately upon receiving notice of the audit, investigation or request for documents and comply and cooperate with any such lawful investigation or demand for information. You further agree to cause all employees of the Franchised Business to comply and cooperate with any such lawful investigation or demand for information. You agree to immediately provide Liberty with a copy of any notice of audit, subpoena or request for documents. You agree to immediately provide Liberty with a copy of the findings of any audit or investigation. You hereby waive any right to privacy, confidentiality and similar protections and restrictions with respect to any such audit or investigation. You authorize the IRS, and any governmental agency, to disclose information to Liberty and its representatives related to any such audit or investigation and provide copies of any requested information. You hereby authorize Liberty to make such requests for information.

**w.  EFIN.**  For a territory that did not have an existing company owned or franchisee owned tax preparation office in the most recent Tax Season ("Undeveloped Territory"), you must obtain an EFIN from the IRS prior to operation and no later than January 2 of your first Tax Season, and provide us with satisfactory documentation, in Liberty's determination, that you have received a valid EFIN.  For a Developed Territory, you will be required to obtain a valid EFIN prior to operation, and provide us with satisfactory documentation, in Liberty's determination, that you have received a valid EFIN. After obtaining an EFIN pursuant to the above provisions, you will be required to maintain a valid EFIN throughout the term of this Agreement. You agree to comply with all of the requirements of IRS Publication 3112, 1345 or any applicable successor publications relevant to EFINs, as well as all applicable state laws and regulations related to electronic filing. You hereby authorize the IRS and any state tax authority to disclose to Liberty the reasons for any EFIN denial or suspension and to provide Liberty with copies of all EFIN application materials, suspension, expulsion and denial notices.

**x.  Site Selection and Leases.**   As described in Section 5.c., Liberty provides guidance to you regarding the selection of the location of your office and all office locations must be approved by Liberty prior to your execution of a lease for that site. Liberty may require the lease to be held in Liberty's name at the option of Liberty. If the lease is held in your name and unless otherwise agreed in writing, you must attempt to include a provision in any lease for an approved location that the lessor consents to an assignment of the lease to Liberty, or its designee, with the right to sublease at Liberty's option. You

agree to provide Liberty with a copy of the lease for each approved location within seven (7) days of execution.

    **xi. Marketable Title.** You represent and warrant that you will maintain good and marketable title to the assets of the franchised business and all leases, and the absolute and unqualified right to sell, assign and transfer them to Liberty, free and clear of all liens, pledges and encumbrances of any kind.

## 7. REPORTS AND REVIEW

    **a. Gross Receipt Report.** You must send Liberty a Gross Receipt report in the manner and form and at the times Liberty specifies. Presently, you must report your Gross Receipts on the fifth (5th) of the month for Gross Receipts received during the prior month. You agree that Liberty has the right to lock your Gross Receipt report at any time.

    **b. Profit and Loss.** By May 30 of each year, you must send Liberty an unaudited profit and loss statement of the Franchised Business, in the manner and form Liberty specifies, for the twelve (12) month period ending April 30.

    **c. Review.** You agree to permit Liberty and/or Liberty's agents the right to enter your Liberty Tax offices during normal, required business hours, without prior notice, and inspect your operations and inspect and copy all of your paper and electronic business books and records related to the Franchised Business and any other operations taking place at your Franchised Business. This includes, but is not limited to, the right to inspect and copy all tax returns and bank statements that may be indicative of revenues from the Franchised Business.

    **d. Mail Reviews.** If Liberty requests a copy of your customer receipts (paper and/or electronic) or any other business records, including, but not limited to customer taxpayer records related to the Franchised Business, you must send Liberty these records at your expense within five (5) days of receiving Liberty's request and within 48 hours of receiving Liberty's request during the Tax Season.

    **e. Electronic Review.** Liberty may cause programs to run on your computer systems that may send information to Liberty and may make changes to the computer systems. Liberty agrees that the use of such programs will not unreasonably interfere with your operation of the Franchised Business and you agree to allow such programs to run without interference by you. You acknowledge that Liberty will use information obtained from your computer system to make business decisions. You hereby grant Liberty the right to access and make changes to the computer systems in your office and authorize Liberty to obtain any and all information related to the Franchised Business. Additionally, following the expiration, termination, transfer or nonrenewal of this Agreement, you grant Liberty the right to remotely access and make changes to the computers used in operation of the franchised business including, but not limited to, removing all Confidential Information from the computers.

    **f. Costs of Review.** Depending on the circumstances, you may be responsible for the costs of a review, or attempted review, as more fully set forth in Section 4(p).

    **g. Background Information.** During the term of this Agreement, you authorize Liberty to obtain background information related to your employment, credit and financial history, as well as your criminal and driving records.

**h. Heightened Supervision.** In the event that Liberty determines there to be abusive tax returns practices related to the operation of your franchised business, Liberty also has the right to require that you implement a plan related to the issues that Liberty discovers. You agree to comply with any such plan imposed. As a part of this plan, you may be subject to various additional requirements including, but not limited to, compliance with heightened monitoring requirements, attending additional trainings and hiring compliance staff with qualifications set out by Liberty.

**8. TERMINATION** Franchisee acknowledges and agrees that all of the obligations under this Agreement are material and essential obligations, that nonperformance of the obligations herein will adversely and substantially affect Liberty and the Liberty system and that Liberty's exercise of the rights and remedies herein are appropriate and reasonable.

**a. Nonrenewal.** You may terminate this Agreement by not renewing; that is, by not notifying Liberty in writing of your desire to renew at least one hundred eighty (180) days prior to the expiration of this Agreement.  If you terminate pursuant to this Section, you must still comply with all of the post-termination provisions of this Agreement.

**b. Termination Without Notice and Opportunity to Cure.** Liberty may terminate this Agreement without notice and the opportunity to cure for any of the following reasons:

(i)   If you become insolvent, are unable to pay debts as they come due or take any steps to seek protection from creditors, or if a receiver (permanent or temporary) is appointed by a creditor or a court of competent authority, or if you make a general assignment for the benefit of creditors;

(ii)  If a final judgment of record against you or your Franchised Business remains unsatisfied for thirty (30) days or longer;

(iii) If you breach 6(v) of this Agreement, or if you fail to immediately notify us about or comply with any governmental investigation or audit or, if we determine that you, or someone acting under your supervision and control, has committed a material violation of any law, ordinance, rule or regulation of a governmental agency or department reasonably associated with the operation of the Franchised Business, committed any act that is or could be, in Liberty's determination, harmful, prejudicial or injurious to the Liberty brand or any of the Affiliated Companies or any employee, franchisee, area developer or agent of such companies, or if the IRS or any federal, state or local governmental entity or agency initiates a criminal, civil or administrative proceeding or takes any administrative action against you or the Franchised Business relating to compliance with applicable tax laws and regulations, and such proceeding or action is not resolved or dismissed in favor of you, or the Franchised Business, within thirty (30) days of its initiation;

(iv)  If you abandon the Franchised Business or discontinue the active operation of any active office of the Franchised Business for three (3) business days during any Tax Season or seven (7) business days otherwise, except where active operation was not reasonably possible or where specifically approved by Liberty in writing prior thereto;

DocuSign Envelope ID: 14DD1FC5-F5BB-496C-A9C9-0B6641AB18D8

(v)     If you fail to open for business in the Territory by January 2, as specified pursuant to Section 6(d);

(vi)    If you operate any offices or advertise outside the Territory without Liberty's permission;

(vii)   If you fail to meet the Target Volume specified in Section 6(f) above in the Territory during your fifth Tax Season or in any Tax Season thereafter;

(viii)  If you fail to use the software, electronic filing services or Financial Products Liberty provides or recommends;

(ix)    If you do not obtain an EFIN from the IRS for each office in the Territory prior to operation or, at the latest, by January 2 of your first Tax Season, if any EFIN application to which you are a party is denied at any time, or if any of your EFINs are suspended by the IRS or any state taxing authority for any reason at any time thereafter or you are expelled from the e-file program;

(xi)    If you include a materially false representation or omission of fact in your Confidential Franchise Application to Liberty or if you under-report Gross Receipts, falsify financial data, make a false submission with regard to any required reports or otherwise commit an act of fraud with respect to your acquisition or operation of the Franchised Business or your rights or obligations under this Agreement;

(xii)   If you commit three (3) or more breaches of this Agreement, the Operations Manual, or any other agreement (including promissory notes) with Liberty or the Affiliated Companies, in any twelve (12) month period regardless of whether such breaches were cured after notice; or

(xiii)  If you fail to timely execute all documents necessary for renewal.

**c.    Termination with Notice and Opportunity to Cure.** No fewer than seven (7) days after Liberty has sent you notice of your opportunity to cure, Liberty may terminate this Agreement if:

(i)     You, or any entity in which you are affiliated, violate any term or condition of this Agreement, the Operations Manual, or any other agreement with Liberty or the Affiliated Companies;

(ii)    Any amount owing to Liberty or the Affiliated Companies, whether related to the Territory or not, is more than thirty (30) days past due, or Liberty determines that you have materially and substantively underreported revenue;

(iii)   You fail to comply with IRS standards applicable to e-file providers as stated in IRS Publications 3112, 1345 or another or successor IRS publication applicable to e-file providers or you fail to comply with state or local regulations related to electronic filing; or

(iv)   You are more than sixty (60) days in default of any loan, lease or sublease agreement with a third party, affecting the Franchised Business.

## 9.   POST-TERMINATION OBLIGATIONS

Upon expiration, termination, transfer or nonrenewal of this Agreement for any reason by any party, including a sale of the Franchised Business, you must immediately:

**a.**   Sell to Liberty (if Liberty elects pursuant to Section 11) any or all equipment, signs, trade fixtures, and furnishings used in the Franchised Business, or if Liberty does not so elect, remove all Marks or other distinguishing indicia from all of your offices and other premises; and

**b.**   Stop identifying yourself as a Liberty Tax franchisee, never hold out as a former Liberty Tax franchisee and forever cease the use of any of the Marks or any other marks that may be confused with the Marks; and

**c.**   Stop using all literature and forms received from Liberty and other items bearing the Marks; and

**d.**   Pay to Liberty all amounts owing to Liberty, whether related to the Territory or not; and

**e.**   Transfer to Liberty all telephone numbers, listings and advertisements used in relation to the Franchised Business and deliver to Liberty copies of such documents of transfer; and

**f.**   Assign to Liberty (if Liberty elects) any interest that you have in any lease, sublease or any other agreement related to the Franchised Business; and

**g.**   Deliver to Liberty any original and all copies, including electronic copies and media, of lists and other sources of information containing the names, addresses, e-mail addresses, or phone numbers of customers of the Franchised Business; and

**h.**   Deliver to Liberty any original and all copies, including electronic copies and media, containing customer tax returns, files, and records; and

**i.**   Deliver to Liberty all copies of the Manual and any updates; and

**j.**   Cancel all fictitious name listings which you have filed that utilize any of the Marks; and

**k.**   Adhere to all applicable provisions contained herein including, but not limited to, the post-term covenants not to compete and not to solicit.

## 10.   ADDITIONAL IN-TERM AND POST-TERM COVENANTS

**a.   In-Term Covenant Not to Compete.**   During the term of this Agreement, you agree not to directly or indirectly, for a fee or charge, in the United States or Canada, prepare or electronically file income tax returns, or offer Financial Products, except, if applicable, in your capacity as a SiempreTax+ or Liberty Tax franchisee pursuant to a valid SiempreTax+ or Liberty franchise agreement.

DocuSign Envelope ID: 14DD1FC5-F5BB-496C-A9C9-0B6641AB18D8

**b.  Post-Term Covenant Not to Compete.**  For a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, or your removal as a signator to this Agreement, you agree not to directly or indirectly, for a fee or charge, prepare or electronically file income tax returns, or offer Financial Products, within the Territory or within twenty-five (25) miles of the boundaries of the Territory except, if applicable, in your capacity as a SiempreTax+ or Liberty Tax franchisee pursuant to a valid SiempreTax+ or Liberty franchise agreement.

**c.  Liquidated Monetary Damages.**  If you fail to comply with either of the above covenants not to compete, you agree to pay Liberty, as partial liquidated monetary damages, royalties and advertising fees as set forth in Section 4 of this Agreement against the greater of: (1) the total Gross Receipts during your last fiscal year (May 1- April 30) of operation for each Territory in which you are in breach; or (2) the total revenue you received in breach of a covenant not to compete. The greater of these two dollar figures shall be multiplied by two (2) to give consideration to lost repeat and referral business to Liberty. You acknowledge that any breach of the covenants not to compete causes damage to the integrity of Liberty's franchised system, loss of franchisee and customer goodwill and irreparable harm. You specifically acknowledge that the full measure of these damages is greater than that specified herein.

**d.  Covenant Not to Solicit.**  For a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, or your removal as a signator to this Agreement, you agree that you will not, within the Territory or within twenty-five (25) miles of the boundaries of the Territory, directly or indirectly solicit any person or entity served by any of your prior Liberty offices within the last twelve (12) months that were a Liberty franchisee, for the purpose of offering such person or entity, for a fee or charge, income tax preparation, electronic filing of tax returns, or Financial Products except, if applicable, in your capacity as a SiempreTax+ or Liberty Tax franchisee pursuant to a valid SiempreTax+ or Liberty franchise agreement. You further agree for a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, or your removal as a signator to this Agreement, not to employ or solicit for employment without Liberty's prior written consent any of Liberty's employees or those of any other of Liberty's franchisees, or induce any such employee to leave his or her employ.

**e.  Covenant Not to Lease.**  You agree that during the term of this Agreement, you will not lease, sub-lease, assign or guaranty a lease in the Territory to or for a person or entity who will offer income tax preparation at such an office. You also agree that upon the termination or expiration of this Agreement, if Liberty or a duly authorized Liberty franchisee desires to use any of your former Liberty office locations in the Territory, you will use reasonable good faith efforts to help Liberty secure possession of the office locations through a lease assignment or otherwise. Otherwise, you agree to use reasonable, good faith efforts to ensure that, for a twenty-four (24) month period after non-renewal or termination of this Agreement, no person or entity will offer income tax preparation at the properties where your former Liberty offices were located. Good faith efforts include a duty not to sub-lease or assign the leases of your office location to a person or entity who will offer income tax preparation at such office locations.

**f.  No Harmful Acts.**  You agree not to disparage Liberty or the Affiliated Companies, including their current and former employees, directors or agents. You also agree not to do any act that is, in

DocuSign Envelope ID: 14DD1FC5-F5BB-486C-A9C9-0B6641AB18D8

Liberty's determination, harmful, prejudicial or injurious to Liberty or the Affiliated Companies, including their current and former employees, directors or agents.

**g. Section 10 Conditions Required for Grant of Franchise.** You hereby acknowledge that the qualifications to be a Liberty franchisee are special, unique and extraordinary, and that Liberty would not enter into this Agreement without the inclusion of the conditions set forth in Section 10.

**h. Waivers.** You acknowledge and agree that the provisions of Section 10 are reasonable, valid and not contrary to the public interest. You waive all defenses to the strict enforcement of Section 10. You further agree that Liberty is entitled to a temporary restraining order, preliminary and/or permanent injunction for any breach of duties under any of the non-monetary obligations of Sections 9 and 10. You hereby waive any requirement that Liberty post a bond related to any temporary restraining order or injunctions requested as a result of an alleged violation of Sections 9 and 10.

**i. Survival.** The covenants contained in Section 10 shall survive any termination or expiration of this Agreement.

**j. Severability.** If any covenant or provision within Section 10 is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not affect or impair the validity of any other covenant or provision of this Agreement. Further, these obligations are considered independent of any other provision in this Agreement, and the existence of any claim or cause of action by either party to this Agreement against the other, whether based upon this Agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

## 11. OPTION TO PURCHASE ASSETS

Upon termination or expiration of this Agreement, you hereby grant Liberty or its assignee the option to purchase from you some or all of the assets (including, but not limited to, supplies, equipment, signs, furnishings and fixtures) of the Franchised Business. Liberty may exercise this option by transmitting notice to you within thirty (30) days from the effective date of expiration or termination. If Liberty elects to exercise this option, the purchase price for the assets of the Franchised Business, will be the "adjusted book value" as described below. Liberty will have the right to set off and reduce the purchase price by any and all amounts owed by you to Liberty or any of Liberty's affiliates. The "adjusted book value" is the book value of the assets of the Franchised Business as listed on the balance sheet in the financial statements of the Franchised Business as of the date of the termination or expiration. There shall be no allocation for goodwill or any similar adjustment in the adjusted book value.

## 12. CONFIDENTIAL INFORMATION

**a. Disclosure.** Liberty possesses confidential information including, but not limited to, methods of operation, service and other methods, techniques, formats, specifications, procedures, information, systems, knowledge of and experience in operating and franchising offices, customer information and marketing information ("Confidential Information"). Liberty may disclose some or all of the Confidential Information to you and your representatives while you operate the Franchised Business. During the term of this Agreement and following the expiration or termination of this Agreement, you covenant not to directly or indirectly communicate, divulge, or use any Confidential Information for

your personal benefit or the benefit of any other person or legal entity except as specifically provided by the terms of this Agreement or permitted by Liberty in writing prior to disclosure. Upon the transfer, expiration, termination or nonrenewal of this Agreement, you agree that you will never use or disclose, and will not permit any of your representatives to use or disclose, Liberty's Confidential Information in any manner whatsoever, including, without limitation, in the design, development or operation of any business substantially similar to the Franchised Business. This provision shall not apply to information that: (i) at the time of disclosure is readily available to the public; (ii) after disclosure becomes readily available to the trade or public other than through breach of this Agreement; (iii) is subsequently lawfully and in good faith obtained by you from an independent third party without breach of this Agreement; (iv) was in your possession prior to the date of Liberty's disclosure to you; or (v) is disclosed to others in accordance with the terms of a prior written authorization between you and Liberty.  The protections granted in this Section shall be in addition to all other protections for Confidential Information provided by law or equity.

**b.  Interest.**  You will acquire no interest in Liberty's Confidential Information, but are provided the right to use Confidential Information disclosed to you for the purposes of developing and operating the Franchised Business pursuant to this Agreement. You acknowledge that it would be an unfair method of competition to use or duplicate any Confidential Information other than in connection with the operation of the Franchised Business. No part of the Liberty Tax franchise system nor any document or exhibit forming any part thereof shall be distributed, utilized or reproduced in any form or by any means, without Liberty's prior written consent.

**c.  Use.**  You agree that you will: (i) refrain from using Confidential Information for any purpose other than the operation of the Franchised Business pursuant to this Agreement; (ii) maintain absolute confidentiality of Confidential Information during and after the term of this Agreement; (iii) not make unauthorized copies of any portion of Confidential Information; and (iv) adopt and implement all reasonable procedures, including, but not limited to, those required by Liberty, to prevent unauthorized use of or disclosure of Confidential Information, including, but not limited to, restrictions on disclosure to your employees and the use of nondisclosure and non-competition clauses in employment agreements with employees that have access to Confidential Information.

**d.  Disclosure Required by Law.**  If disclosure of any Confidential information is required by law, then you may make such disclosure after providing Liberty with reasonable notice so that Liberty, at its expense, may seek a protective order or other relief.

## 13.  INDEPENDENT CONTRACT AND INDEMNIFICATION

You and Liberty are independent contractors to each other. Neither you nor Liberty are an agent, fiduciary, partner, employee, or a participant in a joint venture and neither you nor Liberty have the authority to hold out as such to third parties. You do not have any authority to bind or obligate Liberty. Liberty is not and will not be liable for any act, omission, debt, or other obligation of yours.

You are responsible for all claims, demands, losses, damages and/or contractual liability to third parties which may arise at any time related to your operation of the Franchised Business. You agree to defend, indemnify and hold Liberty, Liberty's parent company and Affiliated Companies and their employees harmless from all claims, demands, losses, damages, and/or contractual liability (including attorney's

fees) to third parties. You agree to reasonable cooperation in the defense of any claim. Liberty and the Affiliated Companies shall have the right to control settlement and selection of counsel and defense of any claim.

## 14. DEATH OR INCAPACITY

    **a. Assistance and Reimbursement.** In the event of the death or incapacity of Franchisee, Liberty is entitled, but not required, to render assistance to maintain smooth and continued operation of the Franchised Business.  Liberty shall be entitled to reimbursement from Franchisee or Franchisee's estate for reasonable expenditures incurred.

    **b. Time Requirements.** Pursuant to this Section, death or incapacity shall not be grounds for termination of this Agreement unless:

      i) Franchisee or his/her legal representative fails for a period of one hundred eighty (180) days after such death or incapacity to commence action to assign this Agreement according to controlling state law regarding the affairs of a deceased or incapacitated person and the terms of this Agreement; or

      ii) Such assignment is not completed within one (1) year after death or incapacity.

    **c. Termination.**  Liberty shall have the right to terminate this Agreement if one of the conditions listed in 14(b) are not satisfied within the time frame provided. Nothing in this Section shall be construed to limit the provisions of Section 8 regarding termination. Further, the terms and conditions of Section 15 apply to a transfer upon death or incapacity.

    **d. Disclosure Required by Law.**    If disclosure of any Confidential information is required by law, then you may make such disclosure after providing Liberty with reasonable notice so that Liberty, at its expense, may seek a protective order or other relief.

## 15. ASSIGNABILITY AND FIRST RIGHT OF REFUSAL

    **a. Assignability Generally.**  Liberty may assign this Agreement to an assignee who agrees to remain bound by its terms.  Liberty does not permit a sub-license of the Franchise. Your interest under this Agreement or your ownership in the Franchise may be transferred or assigned only if you comply with the provisions in this Section and such transfer is approved by Liberty in writing. No interest may be transferred unless you are in full compliance with this Agreement and current in all monies owed to Liberty. Liberty may require any transfer of an ownership interest in this Agreement to be joined by all signatories to this Agreement, except in the case of death or legal disability.

    **b. First Right of Refusal.**  If you have received and desire to accept a signed, bona fide offer to purchase or otherwise transfer the Franchise or any interest in the Franchise, Liberty shall have the option ("Right of First Refusal") to purchase the Franchise or interest. You shall offer the Right of First Refusal by providing written notice to Liberty and including a copy of the signed offer to purchase that you received (collectively "Notice"). Liberty shall have the right to purchase the Franchise or interest in the

Franchise for the price and upon the terms set out in the Notice; however, Liberty may substitute cash for any non-cash form of payment proposed and Liberty shall have sixty (60) days after the exercise of Liberty's Right of First Refusal to close the purchase. Liberty will notify you in writing within fifteen (15) days of receipt of the Notice if it plans to exercise the Right of First Refusal. Upon the transmission of notice by Liberty that it plans to exercise the Right of First Refusal, there shall immediately arise between Liberty and Franchisee, or its owners, a binding contract of purchase and sale at the price and terms contained in the Notice previously provided by you.

    **c. Transfer to Controlled Entity.** A transfer to a "Controlled Entity" shall not trigger the Right of First Refusal. A "Controlled Entity" is an entity in which Franchisee (or Franchisee's managers, members, owners, partners, shareholders or officers as of the date of this Agreement) is the beneficial owner of 100% of each class of voting ownership interest. At the time of the desired transfer of interest to a Controlled Entity, you must notify Liberty in writing of the name of the Controlled Entity and the name and address of each officer, director, shareholder, member, partner, or similar person and their respective ownership interest, and provide Liberty with the applicable organizational documents of the business entity. Each such person of the Controlled Entity shall sign, on behalf of the business entity and in their respective individual capacity, the amendment and release forms and/or franchise agreement as required by Liberty at the time of transfer. Currently, Liberty does not charge a transfer fee for this type of transaction. Upon transfer, a new EFIN must be obtained pursuant to Section 6(w) herein.

    **d. Transfer of Interest Within Franchisee.** A transfer of interest within a Franchisee that is an entity shall not trigger the Right of First Refusal provided that only the percentage ownership is changing and not the identity of the owners. At the time of the desired transfer of interest within an entity, you must notify Liberty in writing of the name and address of each officer, director, shareholder, member, partner or similar person and their respective ownership interest prior to and following the proposed transfer and provide Liberty with the applicable organizational documents of the business entity. Each such person of the Controlled Entity shall sign, on behalf of the business entity and in their individual capacity, the amendment and release forms and/or franchise agreement as required by Liberty at the time of transfer. Further, if the transfer of interest results in a change in control of the entity, you must pay to Liberty the transfer fee required at the time of transfer.

    **e. Right of First Refusal Not Exercised By Liberty.** If Liberty does not exercise the Right of First Refusal, you may transfer the Franchise or ownership interest therein according to the terms set forth in the Notice, provided that you satisfy the conditions of Sections 15(f) below and complete the sale within ninety (90) days from the date that Liberty received Notice from you. If you do not conclude the proposed sale transaction within this ninety (90) day period, Liberty's Right of First Refusal shall continue in full force and effect.

    **f. Additional Requirements and Restrictions Regarding Transfers.**

    i) The proposed transferee(s) must complete Liberty's franchise application and pass Liberty's application screening in place at the time of transfer;

    ii) The proposed transferee(s) must sign the Liberty amendment forms and/or the then current franchise agreement and must personally assume and be bound by all of the terms, covenants and conditions therein;

iii) The proposed transferee(s) must attend and successfully complete EOT and HOT;

iv) You shall sign the transfer and release forms required by Liberty at the time of transfer and pay the transfer fee described in Section 4(i) of this Agreement; and

v) Except as to approved transfers within the Liberty system as described in this Section, you may not give, transfer or sell all or substantially all of the assets of your Franchised Business during the term of this Agreement, or for a two (2) year period after its expiration or termination, to a person or entity who might be reasonably expected to use any such assets to offer income tax preparation in the Territory or within ten (10) miles of the boundaries of the Territory.

**g. Writing Required.** No amendment, change, or modification of this Agreement and no waiver of any right under this Agreement will be effective unless in a written document that is signed by an authorized representative of Liberty.

## 16. NON-WAIVER OF BREACH

The failure of either party hereto to enforce any of the terms or conditions of this Agreement shall not be deemed a waiver of such terms or conditions or of either party's rights thereafter to enforce each and every term and condition of this Agreement.

## 17. GOVERNING LAW

**a. Virginia Law.** This Agreement is effective upon its acceptance in Virginia by Liberty's authorized officer. Virginia law governs all claims that in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto, or dealings between you and any of the Affiliated Companies. Liberty, the Affiliated Companies and their respective present or former employees, agents, officers and directors are collectively referred to in this Section as the "Liberty Parties." However, the Virginia Retail Franchising Act does not apply to any claims by or on your behalf if the Territory shown on Schedule A is outside of Virginia.

**b. Jurisdiction and Venue.** In any suit brought by any or all of the Liberty Parties, that in any way relates to or arises out of this Agreement or any of the dealings of the dealings between you and any or all of the Liberty Parties, you consent to venue and personal jurisdiction in the state and federal court of the city or county of Liberty's National Office (presently Virginia Beach, Virginia state courts and the United States District Court in Norfolk, Virginia). In any suit brought against any or all of the Liberty Parties, including their present or former employees or agents, that in any way relates to or arises out of this Agreement or any of the dealings between you and any or all of the Liberty Parties, venue shall be proper only in the federal court district and division located nearest Liberty's National Office (presently the U.S. District Court in Norfolk, Virginia), or if neither federal subject matter nor diversity jurisdiction exists, in the city or county state court where Liberty's National Office is located (presently the City of Virginia Beach, Virginia).

DocuSign Envelope ID: 14DD1FC5-F5BD-496C-A9C9-0B664FAB18D8

    **c.  Jury Waiver.**  In any trial between you and any or all of the Liberty Parties, that in any way relates to or arises out of this Agreement or any of the dealings between you and any or all of the Liberty Parties, you and Liberty waive the rights to a jury trial and agree to have such action tried by a judge.

    **d.  Class Action Waiver.**  You agree that any claim you may have against any or all of the Liberty Parties shall be brought individually and you shall not join such claim with claims of any other person or entity or bring, join or participate in a class action against any or all of the Liberty Parties.

    **e.  No Punitive Damages.**  In any lawsuit, dispute or claim between or against you or the Liberty Parties that in any way relates to or arises out of this Agreement or any of the dealings between you and the Liberty parties, you and Liberty waive the rights, if any, to seek or recover punitive or exemplary damages.

    **f.  Anti-Terror.**  Franchisee represents and warrants that no Franchisee signatory to this Agreement is identified, either by name or an alias, pseudonym or nickname, on the lists of "Specially Designated Nationals" maintained by the U.S. Treasury Department's Office of Foreign Assets Control (texts currently available at www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx. Further, Franchisee represents and warrants that no Franchisee signatory to this Agreement has violated, and agrees not to violate, any law prohibiting corrupt business practices, money laundering or the aid or support of Persons who conspire to commit acts of terror against any Person or government, including acts prohibited by the U.S. Patriot Act, U.S. Executive Order 13224, or any similar law.  The foregoing constitutes continuing representations and warranties, and Franchisee shall immediately notify Liberty in writing of the occurrence of any event or the development of any circumstance that might render any of the foregoing representations and warranties false, inaccurate or misleading.

    **g.  Area Developers.**  If your Territory is or becomes located in an Area Developer area, you agree not to bring any claim, including a lawsuit, against the Area Developer, or its owners, employees or independent contractors, except as to a claim unrelated to the Liberty franchise, such as an automobile accident.  Area Developers are a third party beneficiary of this clause.  Further, you agree that if you breach this clause, you will pay to Liberty and/or the Area Developer all attorney fees and other costs that Liberty and the Area Developer incur to defend the Area Developer in such an action, regardless of who prevails.

    **h.  Survival.**  Any provisions of this Agreement that by their nature extend beyond the expiration or termination of this Agreement, shall survive termination or expiration of this Agreement and be fully binding and enforceable as though termination or expiration had not occurred.

## 18.  MODIFICATION

No modifications to this Agreement will have any effect unless such modification is in writing and signed by you and by Liberty's authorized officer.  However, Liberty may modify the provisions of the Operations Manual without your consent.

## 19.  RELEASE OF PRIOR CLAIMS

DocuSign Envelope ID: 14DD1FC5-F5BB-496C-A9C9-0B6641AB18D8

By executing this Agreement, the undersigned entity, if any, and individuals, on behalf of yourselves and your heirs, legal representatives, successors and assigns, and each assignee of this Agreement, hereby forever release and discharge Liberty, its past and present employees, agents, area developers, officers and directors, including Liberty's parent, subsidiary and affiliated corporations, their respective past and present employees, agents, officers and directors, from any and all claims relating to or arising out of any franchise agreement between the parties executed prior to the date of this Agreement, and all other claims relating to any dealings between any of the parties. However, this release does not apply to Liberty's renewal obligations the same or similar to those in Section 2(b) above, as contained in any prior or other franchise agreement.

## 20. NOTICES

You shall give any notice or request hereunder by mail or courier, postage fully prepaid, delivered personally to Liberty's CEO at Liberty's National Office, presently 1716 Corporate Landing Parkway, Virginia Beach, Virginia, 23454, Telephone: (757) 493-8855. Liberty may also give any such notice to you in the same manner at the address indicated below the Franchisee's signature on this Agreement, or such other more current address as Liberty may have for you. Liberty may also give notice to you by e-mail.

## 21. FULL UNDERSTANDING

This Agreement is the entire agreement between you and Liberty. This Agreement supersedes all other prior oral and written agreements and understandings between you and Liberty with respect to the subject matter herein. Nothing in this or in any related agreement, however, is intended to disclaim the representations Liberty made in the Franchise Disclosure Document Liberty furnished to you.

## 22. ACKNOWLEDGMENTS

You acknowledge that you have read Liberty's franchise disclosure document and this Agreement and that you are familiar with their contents. You acknowledge that you have independently investigated the business offered hereunder and base your decision to purchase solely on such investigation. Except as may be stated in Item 19 of Liberty's Franchise Disclosure Document, you acknowledge that no person is authorized to make and no person has made any representations to you as to the actual, projected or potential sales, volumes, revenues, profits or success of any Liberty Tax franchise. You further acknowledge and agree that you are not a third party beneficiary to any agreement between Liberty and any other franchisee.

## 23. SEVERABILITY

If any covenant or provision within this Agreement is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not effect or impair the validity of any other covenant or provision of this Agreement and no covenant or provision of this Agreement shall be deemed to be dependent upon any other unless specifically expressed herein.

## 24. COUNTERPARTS AND ELECTRONIC SIGNATURE

This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (e.g. "pdf") format shall be effective as delivery of a manually executed counterpart of this Franchise Agreement. The words "execution," "signed," "signature," and words of similar import in the Franchise Agreement shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed signatures or a paper-based recordkeeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 USC § 7001 et seq.) or any other similar state or federal laws.

## 25. HEADINGS

The headings of the various sections of this Agreement have been inserted for reference only and shall not be deemed to have any legal effect or meaning.

## 26. GUARANTY

The Franchisee named at the top of the following page agrees to abide by the terms of this Agreement. The Franchisee signature of an individual or individuals constitutes their personal agreement to such terms. The Franchisee signature of an individual or individuals on behalf of an entity constitutes the entity's agreement to such terms.

The individual signators signing on behalf of Franchisee also agree jointly and severally to perform all the obligations in and relating to this Agreement, including, but not limited to, all obligations related to the covenants not to compete, covenants not to solicit, confidentiality obligations, obligations to make payments specified herein, pay any other promissory notes and other debts due to Liberty, pay for products later ordered from Liberty and the obligations stated in **Section 17 above concerning governing law, including but not limited to, the application of Virginia law, the jurisdiction and venue clause, the jury waiver, the class action waiver, and the limitation to compensatory damages only.** If the Franchise Agreement is held in the name of a business entity and it is later determined by Liberty that the entity is no longer valid or in good standing with the laws of the applicable state of organization or that an individual has been removed as a part of the business entity pursuant to applicable state law or otherwise, Liberty shall have the right to modify the Franchise Agreement to reflect the then current business structure with the signatures of only those that remain as valid members, officers, partners, directors or sole proprietor of the then current business structure. All Franchisee signators specifically agree to indemnify Liberty, pursuant to the terms of Section 13, related to the removal of parties under this provision. All Franchisee signators waive any right to presentment, demand or notice

of non-performance and the right to require Liberty to proceed against the other  Franchisee signators. Except as specified herein, no person or entity is a third-party beneficiary of this Agreement.

*Signatures on Following Page*

Franchisee: __Amy Lu_____    Entity Number: __8543_____

**SIGNATORS:**

By: _____    By: _____
(Signature)                                (Signature)

85A8AC88...

Amy Lu

_____    _____
(Printed Name)                            (Printed Name)

Title: _____    Title: _____

Address: _____    Address: _____

_____    _____

Ownership Percentage:_____%    Ownership Percentage:_____%


By: _____    By: _____
(Signature)                                (Signature)

_____    _____
(Printed Name)                            (Printed Name)

Title: _____    Title: _____

Address: _____    Address: _____

_____    _____

Ownership Percentage:_____%    Ownership Percentage:_____%


**JTH TAX, INC. d/b/a
LIBERTY TAX SERVICE**

By: _____
935C50573184405

Printed Name: __John Hewitt_____

Title: __CEO_____

Effective Date: __10/14/2016_____

## SCHEDULE "A" TO THE FRANCHISE AGREEMENT

### Territory

The Franchise Territory* is as follows:

CA648(LongBeachCA-5)

NORTH of and including E Hill St continuing onto NORTH of and including W Hill St from Walnut Ave to Los Angeles River.
EAST of and including Los Angeles River from W Hill St to I-405/San Diego Fwy.
SOUTH of and excluding I-405/San Diego Fwy from Los Angeles River to Walnut Ave.
WEST of and excluding Walnut Ave from I-405/San Diego Fwy to E Hill St.



*Note: When a Territory description includes a road, avenue, street, parkway, highway, route or similar roadway, the Territory includes the U.S. Postal addresses assigned to either side of the roadway. When a Territory description excludes a road, avenue, street, parkway, highway, route or similar roadway, the Territory excludes the U.S. Postal addresses assigned to either side of such roadway. If a map of the Territory is attached, the map approximates the Territory, but the above legal description controls as to the Territory's precise boundaries.

**EXHIBIT B**

CA647(LongBeachCA-4)



**FRANCHISE AGREEMENT**

**EXHIBIT B**

# TABLE OF CONTENTS

**Section** **Page**

1. GRANT OF FRANCHISE ........................................................................... 1
2. TERM, RENEWAL AND BUYBACK ......................................................... 1
3. TERRITORY ............................................................................................. 2
4. FEES AND PAYMENTS ............................................................................ 3
5. OBLIGATIONS OF FRANCHISOR ........................................................... 6
6. OBLIGATIONS OF FRANCHISEE ............................................................ 8
7. REPORTS AND REVIEW ......................................................................... 12
8. TERMINATION ........................................................................................ 13
9. POST-TERMINATION OBLIGATIONS ..................................................... 15
10. ADDITIONAL IN-TERM AND POST-TERM COVENANTS ....................... 15
11. OPTION TO PURCHASE ASSETS ........................................................... 17
12. CONFIDENTIAL INFORMATION ........................................................... 17
13. INDEPENDENT CONTRACT AND INDEMNIFICATION ......................... 18
14. DEATH OR INCAPACITY ....................................................................... 19
15. ASSIGNABILITY AND FIRST RIGHT OF REFUSAL ............................... 19
16. NON-WAIVER OF BREACH ................................................................... 21
17. GOVERNING LAW .................................................................................. 21
18. MODIFICATION ...................................................................................... 22
19. RELEASE OF PRIOR CLAIMS ................................................................ 22
20. NOTICES ................................................................................................. 23
21. FULL UNDERSTANDING ....................................................................... 23
22. ACKNOWLEDGMENTS .......................................................................... 23
23. SEVERABILITY ....................................................................................... 23
24. COUNTERPARTS AND ELECTRONIC SIGNATURE .............................. 24
25. HEADINGS .............................................................................................. 24
26. GUARANTY ............................................................................................. 24

Signature Page ....................................................................................... 25
Schedule A – Territory ............................................................................ A-1
Schedules B-1 to B-5 – Special Stipulations ......................................... B-1-B-5

## 1. GRANT OF FRANCHISE

Liberty Tax Service ("Liberty," "Liberty Tax") has developed a system for the operation of tax return preparation offices. The Liberty system utilizes special marketing techniques and operating procedures to facilitate the provision of tax return preparation and related services.

You, meaning the franchisee and all signators identified on the signature page to this franchise agreement ("Agreement" or "Franchise Agreement"), in your personal capacity and, if applicable, on behalf of the business entity designated by you on the signature page, have applied for a franchise that utilizes Liberty's system and Liberty's trade names, service marks, and trademarks (collectively, the "Marks") ("Franchised Business" or "Franchise"). Subject to the terms of this Agreement, Liberty grants to you a Liberty Tax Service franchise. This Agreement will allow you to operate a tax return preparation business using Liberty's system and Liberty's Marks within the territory described on Schedule A ("Territory"). This agreement shall only grant you a Liberty franchise and grants no rights to you associated with any other brand or concept owned and/or operated by SiempreTax+ LLC ("SiempreTax+"), Liberty Tax, Inc., Liberty's affiliates, or other entities controlling, controlled by or under common control with Liberty ("Affiliated Companies"). You agree to abide by the terms of this Agreement.

You recognize and agree that the nature of the tax return preparation business is such that complete uniformity is not always practical or desirable and that Liberty, in Liberty's sole discretion, may vary the terms of this Agreement and the standards of operation of the Franchised Business to accommodate the peculiarities of a particular situation and/or territory. You have no recourse against Liberty if other franchisees are granted allowances that you are not granted.

## 2. TERM, RENEWAL AND BUYBACK

    **a. Term.** This Agreement will be effective for a five year term beginning on the effective date specified on the signature page of this Agreement ("Effective Date").

    **b. Renewal.** You may renew for another five year term by signing Liberty's then current franchise agreement if you have met the Target Volume specified in Section 6(f) of this Agreement, you are otherwise in full compliance with this Agreement, all other agreements with us and the Affiliated Companies, and no event has occurred that would give Liberty the right to terminate this Agreement. You may continue to renew future franchise agreements in this manner if you, and every other entity in which you hold an ownership interest, are in full compliance with all agreements between you and Liberty or you and the Affiliated Companies. To renew, you must execute a general release of all claims that you might have against Liberty and the Affiliated Companies, and must also execute Liberty's then current Franchise Agreement which may contain materially different terms. Liberty may not raise royalties or advertising fees that you pay to Liberty upon any future renewal, or impose a renewal fee. Further, upon renewal, Liberty may not change the boundaries of your Territory, the level and type of territorial exclusivity or the territorial rights you have. Other terms and conditions may vary. If you wish to renew, you must notify Liberty in writing at least one hundred and eighty (180) days before the expiration of this Agreement.

DocuSign Envelope ID: 21B2A048-461B-42BF-AEC8-BBBD1D91DEDB

**c. Buyback.** Between May 1 and August 31 of any year, Liberty has the right to purchase your Franchised Business for the greater of $150,000 or 200% of the Gross Receipts of the Territory for the previous twelve months, or such shorter time as an office in the Territory may have been in operation. You understand that this is a premium price above fair value and does not vest any rights in you. The term "Gross Receipts" as used in this Agreement means all revenue from all services and products offered by the Franchised Business (including, but not limited to, revenue from individual, corporate, estate and partnership tax returns), excluding only customer discounts, any transmitter, software or electronic filing fee, and sales tax, but not service fees for credit card transactions.

## 3. TERRITORY

**a. Territory Generally.** Your Territory is described in Schedule A of this Agreement ("Territory").

**b. General Rights & Restrictions.** You may operate as many tax return preparation offices in the Territory as you determine to be appropriate. You may not operate outside your Territory. Liberty may grant franchises for areas outside your Territory or operate company offices in such areas. Except as described below, Liberty may not establish franchised or company owned outlets offering income tax preparation services using the Marks at a physical location in your Territory. Additionally, Liberty may not offer income tax preparation services through other channels of distribution at a physical location in your Territory except as described herein. Liberty and the Affiliated Companies may establish franchised or company owned outlets in your Territory that operate income tax preparation services under different trademarks and may operate or franchise a different line of business. Liberty may distribute Liberty tax return preparation products and services by means other than retail or storefront locations in your Territory, including the sale of gift cards for this service. No other franchisee using the Marks may operate a tax return preparation office in your Territory. Liberty may advertise in your Territory. You may not advertise in areas outside your Territory or in media that extends outside your Territory, without Liberty's express written approval. You agree that in the event of a mapping error, as determined by us, which results in a territory population which exceeds 35,000, Liberty may re-size your Territory.

**c. Misplaced Offices.** If you locate an office outside your Territory, even if Liberty approved such site location, you agree upon discovery of this fact to promptly abandon the office and refrain from any further targeted solicitation (e.g. direct mail, telephone calls, etc.) of customers residing in the territory containing the misplaced office. If Liberty learns that Liberty or another franchisee has erroneously located an office in your Territory, you agree to accept the abandonment of the office and, in the case of a misplaced office operated by another franchisee, the discontinuation of further targeted solicitation of customers located in your Territory, in full satisfaction of any claim against Liberty, Liberty's past and present employees, and Liberty's past and present franchisees, in relation to the misplaced office. Liberty has a reasonable time to correct any such error after Liberty learns of it.

**d. National and Regional Retail Business Outlets.** Liberty may negotiate agreements with national or regional retail businesses. If there is an outlet of such a national or regional business in your Territory that is subject to such an agreement, you may choose to operate a tax return preparation service office in that outlet by communicating that decision to Liberty by December 1 before a given Tax Season, or such earlier date provided by Liberty in order to meet the requirements of that business.  If you choose not to operate in an outlet that exists in your Territory, Liberty may operate in that outlet in your Territory and all associated revenue and expenses shall belong to Liberty. Additionally, Liberty will retain the right to

DocuSign Envelope ID: 21B2A048-461B-42BF-AEC8-BBBD1D91DEDB

service the customers associated with that outlet in the future. The term "Tax Season" means the time period of January 2 – April 30.

## 4.  FEES AND PAYMENTS

**a.  Initial and Resale Franchise Fee.**  The initial franchise fee and resale franchise fees are $40,000. The resale franchise fee applies to a territory that has been previously sold. If a territory includes existing operations, the total cost will vary depending upon the Gross Receipts of the Territory and other pertinent market and economic factors.

**b.  Down Payment and Approval.**   You must submit a minimum of 20% of the initial or resale franchise fee as a deposit after you have held the Liberty Franchise Disclosure Document for at least fourteen (14) calendar days and prior to attending Effective Operations Training ("EOT"). Liberty will refund this deposit to you upon your request at any time before you attend EOT. If you receive financing, you will be required to submit a deposit of up to $25,000 for your operational expenses ("Operational Supply Deposit"), and may be required to attend and pass Liberty's Guerilla Marketing Interactive training ("GMi Training") or other required training, prior to closing. We will refund to you the initial or resale franchise fee (including deposits) if we do not approve your application or if you do not pass EOT in accordance with Liberty's passing standards, provided that you return to us all materials that we distributed to you during training. After closing, Liberty will hold and make available for return to you any Operational Supply Deposit that you were required to submit, upon your written request to Liberty with substantiation as to the expenses to be paid by you with the Operational Supply Deposit. We do not pay interest on the Operational Supply Deposit. The initial and resale franchise fee is fully earned and nonrefundable when both parties execute this Agreement.

**c.  Reverse Royalty.**   If Liberty receives tax preparation fees from individuals located in your Territory through the use of Liberty's online tax preparation services while you have a Liberty Tax Service office open in that Territory,  Liberty agrees to use commercially reasonable means to track and identify those revenues and pay or credit to you 14% of those tax preparation fees within sixty (60) days after the end of each Tax Season in its sole discretion.

**d.  Royalties.**  You must pay a royalty to Liberty in the amount of 14% of Gross Receipts subject to the following minimums ("Minimum Royalties"):

 i)  **Year One.**  For the period ending April 30 following the Effective Date of this Agreement, if you operated or were required to have operated an office in the Territory for any part of Tax Season ending in that April, the minimum royalty is $5,000 per Territory.

 ii)  **Year Two.** For the period beginning May 1 following the Effective Date of this Agreement through the following April 30, the minimum royalty is $8,000 per Territory.

 iii) **Year Three and Beyond.**  Thereafter, the minimum royalty is $11,000 per Territory for each successive period beginning May 1 through the following April 30.

 iv) **Developed Territory.** For a territory that contains or that had in the most recent Tax Season prior to the Effective Date of this Agreement, an existing company, franchisee or other

Liberty tax preparation office ("Developed Territory"), you must pay royalties as set forth above depending upon how long any office has been operated in the Territory. For example, if it is your first year operating in a territory but an office has been operated in the Territory by Liberty or another franchisee through one Tax Season, then the Territory would be subject to Year Two royalties for the year that you first operate in the Territory. An office includes, but is not limited to, locations such as kiosks or temporary locations where tax return preparation services are provided.

v) **SiempreTax+ Conversion/Opt In.** The definition of Developed Territory also includes a territory that contains or that had in the most recent Tax Season prior to the Effective Date of this Agreement, an existing SiempreTax+ tax preparation office. For such a Territory, you must pay royalties as set forth above depending upon how long any office has been operated in the Territory.

**e. Area Developers.** If you are in or become part of an area covered by an Area Developer, Liberty may pay to the Area Developer a portion of the initial franchisee fee and royalties that you pay to Liberty.

**f. Advertising Fee.** You must pay an advertising fee of 5% of the Gross Receipts each month.

**g. Payment Period.** You must pay the royalty owed by the 5th of each month based on Gross Receipts for the preceding month, and any balance owed to achieve Minimum Royalty on May 5 for each fiscal year ending April 30. You must pay advertising fees by the 5th of each month based on Gross Receipts for the preceding month. Liberty reserves the right to modify this payment schedule in Liberty's Operations Manual.

**h. Interest.** You must pay interest of 12% (compounded daily) per year, or the maximum permitted by law if less, on any amounts owed to Liberty that are more than fifteen (15) days past due.

**i. Transfer Fee.** If you transfer your Franchised Business, or an interest in the Franchised Business that results in a change in control of the Franchised Business, you must pay Liberty a transfer fee of $5,000 at the time of transfer. This fee is subject to increase or decrease in future franchise agreements by the amount of change in the *Consumer Price Index – All Urban Consumers*, published by the U.S. Department of Labor, or a reasonably similar successor index, from the index as of the Effective Date.

**j. Customer Refunds, Penalty and Interest, Send a Friend**. If you do not resolve a customer service complaint or pay penalty and interest on an erroneous return prepared in your office, or misdeliver a customer check, or fail to pay a Send a Friend or E-Send a Friend referral, and the customer contacts Liberty, and Liberty believes there is a reasonable basis for the claim, Liberty may issue a refund of fees paid by the customer, pay to the customer the penalty and interest or amount of misdelivered check, or pay the Send a Friend referral, and bill you. You agree to pay the charges. Your obligation to pay penalty and interest for tax return preparation errors made during the operation of the Franchised Business continues after the expiration, termination or transfer of this Agreement and/or sale of the Franchised Business.

**k. Automatic Payment Transfer**. All of the tax preparation, transmitter, software, and electronic filing fees, and any rebates that you receive from Financial Products or customers who purchase

Financial Products, and all other revenue due to Franchisee under this Agreement and all other agreements with Liberty and the Affiliated Companies, shall initially be paid to Liberty. The term "Financial Products" as used in this Agreement means refund-based loan programs and/or a means for customers to obtain a refund using electronic deposit services that Liberty, or a company associated with Liberty, may offer to you. Liberty will remit any remaining balance to you from the above described fees and rebates after deducting monies you owe to Liberty, and/or SiempreTax+ if applicable, and deducting monies to hold for application to upcoming amounts due to Liberty and/or SiempreTax+ including, but not limited to, unbilled royalties or amounts related to an internal review.

l. **Sales or Gross Receipts Tax.** If required by the state or locality where your Territory is located, the initial franchise fee, royalties, and advertising fees will be subject to sales or gross receipts tax. You must pay these taxes to Liberty at the same time and in the same manner as you pay the royalties and fees to Liberty.

m. **Transmitter, Software, or Electronic Filing Fee.** Liberty reserves the right to impose a fee charged to you or your customers related to transmission of Financial Products, the provision of software, or the electronic filing of tax returns and, if charged to customers, may rebate a portion of the fee to you. Liberty may vary the dollar amount of the fee and may change its name. Any such fee is not included in your Gross Receipts.

n. **Call Center.** If you elect to use Liberty's call center to handle customer appointments, customer follow up, tax school calls, or other calls, you must pay to Liberty a fee for each such call pursuant to Liberty's schedule of call center charges. This schedule is subject to future modification by Liberty.

o. **Cash in a Flash Financing Set up Fee.** If you elect to apply for cash in a flash financing through Liberty, you must pay to Liberty any set up fee that Liberty imposes pursuant to Liberty's schedule of fees. This schedule is subject to future modification by Liberty.

p. **Assessment Related to Understatement of Revenues and Failure to Comply.** Pursuant to the rights and obligations specified in Section 7 of this Agreement, if Liberty determines that you are underreporting Gross Receipts, you must pay to Liberty additional royalties and interest in the amount of 12% per annum on the undisclosed amount as determined by Liberty. If the excess determined following a review of your operations, books and records is more than two percent (2%) of the Gross Receipts for the period in question, you must also pay the costs of the review. Additionally, if a review results from your failure to maintain and/or provide records as required in Section 7 or if you fail to attend, coordinate or permit Liberty's review, in Liberty's determination, you must pay the costs of the review or attempted review, regardless of the result. All amounts referenced in this paragraph will be billed to your accounts and notes receivable balance with Liberty. The costs of any review pursuant to the terms of this Agreement shall be determined by Liberty. Liberty's acceptance of payments of royalties or Gross Receipts reports shall be without prejudice and shall in no case constitute a waiver of Liberty's rights to claim any delinquent royalties, or to require a review of your operations, books and records, as provided for herein.

## 5. OBLIGATIONS OF FRANCHISOR

**a. Training.** Liberty provides for new franchisees a required five (5) day or longer EOT and a required one (1) day Hands on Training ("HOT") taught by an existing franchisee at their Liberty Tax office. Franchisees that receive financing may also be required to attend and pass Liberty's GMi Training. Liberty does not charge for EOT, HOT or GMi Training unless you register and fail to attend. Additionally, you are responsible for all expenses you incur as a result of training, such as travel, lodging and meals.

**b. Operations Manual.** Liberty will loan you a copy of the dual Liberty/SiempreTax+ Operations Manual ("Manual" or "Operations Manual") to offer guidance in the operation of your Franchised Business.

**c. Site Selection.** Liberty provides guidance and advice to you regarding the selection of the location of your office(s). You may not sign a lease or locate an office until Liberty approves the location of your office. Liberty's approval of the location of a site is not a guarantee of success in that location or a warranty or assurance as to any aspect of the office or its location.

**d. Advertising and Marketing.** Liberty raises fees related to marketing through the advertising fees paid under Liberty's franchise agreements. Liberty will contribute advertising fees from company offices. Liberty disburses advertising fees to develop, produce, distribute and/or conduct advertising programs, marketing programs, public relations, and marketing research. Liberty spends advertising fees on a national, regional or local basis for television, electronic, radio and print advertising as Liberty determines to be appropriate. Liberty may produce advertising in-house and/or through an advertising agency. Liberty pays all costs of such activities, including a share of corporate overhead related to advertising and marketing, with advertising fees. You may also use your own advertising material provided that Liberty first approves it for compliance.

**e. Software.** Liberty provides tax return preparation software.

**f. Tax and Technical Support.** Liberty provides reasonable telephone and/or internet support for your questions regarding federal and state individual income tax return preparation, electronic filing, and the use of software specified by Liberty. However, Liberty will not provide support on any equipment that does not meet Liberty's then current specifications or issues related to the operating system of a computer.

**g. Electronic Filing.** Liberty provides the ability to file individual federal and certain individual state tax returns electronically, if such method of filing is reasonably available from the respective taxing authority. You must have and maintain a valid Electronic Filing Identification Number ("EFIN").

**h. Financial Products.** If reasonably available and feasible (in Liberty's sole determination), Liberty will offer you the ability to participate in Financial Products. If offered, your participation in Financial Products programs is subject to mutual agreement between you, Liberty and the Financial Products provider.

DocuSign Envelope ID: 21B2A048-461B-42BF-AEC8-BBBD1D91DEDB

**i.   Operational Support.**  Liberty advises you in the budgeting for and operation of your Franchised Business. Liberty's approval of your budget is not a guarantee of success.

**j.   Advanced and Update Training and Conference Calls.**  Liberty provides and may require your attendance at advanced training for experienced franchisees. Liberty also provides and requires attendance by all franchisees at update training. Liberty may offer advanced and update training at various sites that Liberty selects across the country, or Liberty may offer such training through the internet or electronically. The agenda for advanced training varies, but often will focus on improving business management skills in order to increase profitability. Liberty does not charge for advanced or update training, but you are responsible for all expenses that you incur as a result of attending training, such as travel, lodging and meals.  Liberty may also require that you attend a reasonable number of toll free conference calls to learn the latest operational and marketing tips. Such calls may either be attended live or through online replay.

**k.   Supply Source.**  Liberty may offer for sale or locate a source for purchasing supplies, forms and equipment that may be necessary to conduct the Franchised Business, as reasonably determined by Liberty.

**l.   Leasing.**  Liberty may make arrangements to refer you to a company that offers leasing of furniture, fixtures, signs, equipment, and possibly provides loans for franchise fees and working capital. These leasing or loan programs will be financed and administered by a third party. Liberty cannot guarantee that you will be offered leasing or loans, as the third party company will make individual determinations.

**m.   Financing through Liberty.**  Liberty may, in Liberty's sole discretion, provide financing for a portion of the initial franchise fee or other costs associated with the Franchised Business. The terms of such financing are subject to change. You must be in compliance with this Agreement to qualify for any such financing and may be required to obtain certain certifications and trainings including, but not limited to, Affordable Care Act certification and completion of GMi Training. If Liberty provides financing, you will be required to enter into a promissory note reflecting the terms of the financing arrangement. If Liberty provides financing, you must submit monthly financial information to Liberty including, but not limited to, income statements, balance sheets, and supporting documents. You agree to submit the required information at the time and in the format specified by Liberty. Liberty reserves the right to adjust this policy to require more frequent financial statements on a continuing basis and you agree to comply with any such change in policy. Liberty also may request personal financial statements. All financial statements must be prepared in conformity with generally accepted accounting principles.

**n.   Group Discounts.**  Liberty may provide you with the opportunity to participate in group purchasing programs that offer group discounts. The discounts and terms for these opportunities will vary.

**o.   Area Developers.**  In those areas where Liberty presently or in the future uses an Area Developer, Liberty reserves the right to delegate some portion of the responsibility for certain duties to the Area Developer including, but not limited to, site selection assistance, limited marketing assistance, and operating assistance. Area Developers do not have any authority to approve advertising or marketing material of any kind.

## 6. OBLIGATIONS OF FRANCHISEE

**a. Training.** You must attend and successfully complete Liberty's EOT and HOT before you may operate a Liberty office. Liberty may allow or require a general manager to attend on your behalf.

**b. Use of Liberty Marks.**

(i) **Liberty allows you to use Liberty's Marks**. Liberty allows you to use Liberty's Marks to hold out your Liberty Tax Service business to the public. You agree to exclusively use Liberty's Marks as Liberty develops them for this purpose only.

(ii) **You must obtain prior advertising approval**. You must either use pre-approved advertising templates that Liberty or Liberty's approved vendors provide, or you must obtain Liberty's prior written consent before using the Marks in any way and before using any marketing or promotional material, including internet advertising.

(iii) **No private website allowed.** You may not have a website for your Franchised Business, or utilize mobile apps or other digital marketing, without Liberty's prior written approval.

(iv) **Marketing to National Companies**. You must obtain written permission from Liberty before marketing on the premises (building and parking lot) of any national company. National companies include, by way of example, Wal-Mart, K-mart, and Sears.

(v) **No use of "Liberty" within a company name**. You may not use the word "JTH" "Dona Libertad," "Liberty," "Libtax", "Siempre", "SiempreTax," "SiempreTax+" or the name, or any portion of the name of Liberty's Affiliated Companies, as any part of the name of a corporation, LLC or other entity except as may be agreed between you and such company in a separate franchise agreement for that company. However, "Liberty Tax Service" followed by your entity number shall be your "doing business as" name for an entity that owns this Franchise, sometimes also called your "assumed name," "trading as" name, or "fictitious name."

(vi) **No confusingly similar marks**. You agree not to use any marks which could be confused with Liberty's Marks.

(vii) **Liberty may update or change Liberty's Marks**. Liberty may replace, modify or add to the Marks. If Liberty replaces, modifies or creates additional marks, you agree to update or replace your signs, supplies, etc., to reflect the new marks in the time frame Liberty provides and at your own expense. Liberty will not change exterior signage requirements more than once every four (4) years unless legally required.

**c. Signs.** You must display an exterior lighted sign at each of your offices. Liberty must approve all signs before you order or display them.

**d. Starting Date.** You agree to begin operations and be open for business no later than January 2 following the Effective Date of this Agreement and for every year thereafter.

**e.  Operating Hours.**  You agree to exercise your best efforts to promote the Franchised Business and agree, at a minimum, to be open for business during the hours specified in the Operations Manual.

**f.  Target Volume.**  You must use your best efforts to promote the Franchised Business.  Beginning in your fifth (5th) Tax Season and continuing in each Tax Season thereafter, you must prepare at least 1,000 federal income tax returns in your Territory ("Target Volume").

**g.  Software.**  You must use the software that Liberty provides.  You may not use, install or have any other federal or state personal income tax return preparation or electronic filing software on any computers used in the Franchised Business.

**h.  Telephone Number and Email Account.**  You must obtain and maintain a Liberty Tax Service telephone number to be used solely to transact the Franchised Business. You may purchase a white and yellow page listing through Liberty's approved vendor and may be required to purchase a yellow page advertisement and/or contribute to a group listing or advertisement per Liberty's recommendations. You also must provide and maintain an email account sufficient for communications between you and Liberty.

**i.  Equipment.**  You must obtain and use a computer system that meets Liberty's current specifications and any modifications to these specifications. All work stations must be purchased from Liberty's approved vendor including, but not limited to, tax return preparation and processing computers. Liberty may update the specifications. When the specifications are updated, you must update or upgrade the computer system, at your sole cost.  Specifications will not be updated during a Tax Season except upon an emergency, as reasonably determined by Liberty.  You agree to maintain such computer systems in compliance with industry standards regarding information security and make any necessary updates to ensure that information is secure, including, but not limited to, encryption.

**j.  Insurance.**  During the term of this Agreement, you must procure and maintain an insurance policy or policies with at least the following coverage or such other coverage as may be specified in the Operations Manual:  (i) comprehensive general liability of $1 million per office and (ii) worker's compensation as required by your state law. Liberty may require you to obtain additional insurance, such as errors and omissions insurance, as may be specified in the Manual. You must name Liberty as an additional insured on all policies required by this Agreement or the Manual.

**k.  Electronic Filing.**  If Liberty provides or recommends a source for electronically filing tax returns, you are required to offer electronic filing and to use this source exclusively for all electronic filing.

**l.  Financial Products.**  If Liberty negotiates an agreement with a third party Provider to allow you to offer Financial Products, you are required to exclusively use such Providers as Liberty designates and to offer Financial Products to your customers.

**m.  Operations Manual.**  You acknowledge the importance of consistency of quality, service and operation among all Liberty Tax franchised offices and, therefore, agree to operate the Franchised Business in conformity with all standards to be maintained, techniques and operating procedures that Liberty may prescribe in Liberty's manuals or otherwise in writing, and to refrain from deviating

DocuSign Envelope ID: 21B2A048-461B-42BE-AEC8-BBBD1D91DEDB

therefrom without Liberty's prior written consent. Liberty will loan you a copy of the Manual and provide you with other relevant manuals. Liberty may modify the Manual or any other manual, in order to adjust for competitive changes, technological advancements, legal requirements and attempts to improve in the marketplace. You agree to operate the Franchised Business according to the manuals and any modifications including, but not limited to, the Manual, as may be updated or supplemented by memoranda, bulletin, email or other similar mechanism that together with the Manual, contain the mandatory and suggested procedures and specifications that are prescribed for the Franchised Business.

**n.  Participation.**  You agree that the services of the Franchised Business will be provided under your direct supervision and control and/or under the direct supervision and control of a full-time general manager who has been approved by, and not later disapproved by Liberty. Liberty will not approve a general manager prior to their successful completion of EOT.

**o.  Return Check.**  You must prepare each income tax return accurately and in accordance with federal, state and local laws. You must check each return thoroughly.

**p.  Tax School.**  If you complete EOT before September 1 of the year of the Effective Date of this Agreement, and during every year after your first Tax Season regardless of EOT, you must conduct an intensive 6 to 10 week tax course in the period of September through December in accordance with the specifications in the Manual. Additionally, you must conduct a one-week tax course during every January, including the January of your first (1st) Tax Season, in accordance with the specifications in the Manual.

**q.  Employee Training.**  You shall conduct and require each of your employees to attend an employee policy and procedure training course as specified by Liberty. You are solely responsible for hiring, firing, compensating, paying applicable payroll taxes and day to day supervision and control over your employees. You acknowledge and agree that Liberty shall not, and shall have no right or authority to, control your employees. Liberty shall have no right or authority with respect to the hiring, termination, discipline, work schedules, pay rates or pay methods of your employees. You acknowledge and agree that all employees shall be your exclusive employees and shall not be employees of Liberty nor joint employees of you and Liberty. Liberty neither dictates nor controls labor or employment matters for franchisees and their employees.

**r.  Customer Service.**  You shall employ and train sufficient personnel to accommodate all customers without undue delay. You shall provide all services and abide by all customer service policies described in the Manual, including, but not limited to, the money back guarantee. You must operate in a manner that protects Liberty's goodwill, reputation and Marks.

**s.  Office Condition.**  You shall maintain offices that are neat and professional in appearance. Further, you may not offer products or services through your Liberty offices other than the franchise services authorized here (i.e., tax preparation, electronic filing, and Financial Products, all processed and reported through Liberty's systems) without Liberty's prior written approval.

**t.  Supplies and Furniture.**  You agree that in order to establish a standard and consistent delivery of Liberty Tax services, certain items must be used in the operation of the Franchised Business. You must use the items required in the Manual (e.g. client envelopes and folders, interview worksheets,

interior signs sets). You are responsible for the cost of all items needed to conduct the Franchised Business including, but not limited to, supplies, furniture, equipment, leasing and real estate costs.

**u. Laws and Regulations.** You agree to comply with all federal, state and local laws, regulations, ordinances and the like, and to be responsible for such compliance by all employees of the Franchised Business. You will abide by all legal requirements and be solely responsible for securing any necessary permits, certificates, licenses and consents to operate your business. You will not request or require that any customer of the Franchised Business waive, or permit you to disclaim your or any employee's responsibility to comply with any legal requirements or applicable laws. If requested by Liberty, you agree to report any noncompliance with federal or state tax laws or regulations by the Franchised Business and/or its employees to the IRS and/or any applicable state taxing authority. You also agree to provide Liberty with notice of any reports of non-compliance you have filed.

**v. Audits.** If the IRS or any governmental agency audits or investigates your Liberty operations, or any tax preparer employed in the Franchised Business, or otherwise requires that you, or such tax preparer, provide documents to the IRS or other governmental agency related to the Franchised Business, you agree to notify Liberty immediately upon receiving notice of the audit, investigation or request for documents and comply and cooperate with any such lawful investigation or demand for information. You further agree to cause all employees of the Franchised Business to comply and cooperate with any such lawful investigation or demand for information. You agree to immediately provide Liberty with a copy of any notice of audit, subpoena or request for documents. You agree to immediately provide Liberty with a copy of the findings of any audit or investigation. You hereby waive any right to privacy, confidentiality and similar protections and restrictions with respect to any such audit or investigation. You authorize the IRS, and any governmental agency, to disclose information to Liberty and its representatives related to any such audit or investigation and provide copies of any requested information. You hereby authorize Liberty to make such requests for information.

**w. EFIN.** For a territory that did not have an existing company owned or franchisee owned tax preparation office in the most recent Tax Season ("Undeveloped Territory"), you must obtain an EFIN from the IRS prior to operation and no later than January 2 of your first Tax Season, and provide us with satisfactory documentation, in Liberty's determination, that you have received a valid EFIN. For a Developed Territory, you will be required to obtain a valid EFIN prior to operation, and provide us with satisfactory documentation, in Liberty's determination, that you have received a valid EFIN. After obtaining an EFIN pursuant to the above provisions, you will be required to maintain a valid EFIN throughout the term of this Agreement. You agree to comply with all of the requirements of IRS Publication 3112, 1345 or any applicable successor publications relevant to EFINs, as well as all applicable state laws and regulations related to electronic filing. You hereby authorize the IRS and any state tax authority to disclose to Liberty the reasons for any EFIN denial or suspension and to provide Liberty with copies of all EFIN application materials, suspension, expulsion and denial notices.

**x. Site Selection and Leases.** As described in Section 5.c., Liberty provides guidance to you regarding the selection of the location of your office and all office locations must be approved by Liberty prior to your execution of a lease for that site. Liberty may require the lease to be held in Liberty's name at the option of Liberty. If the lease is held in your name and unless otherwise agreed in writing, you must attempt to include a provision in any lease for an approved location that the lessor consents to an assignment of the lease to Liberty, or its designee, with the right to sublease at Liberty's option. You

agree to provide Liberty with a copy of the lease for each approved location within seven (7) days of execution.

    **xi. Marketable Title.** You represent and warrant that you will maintain good and marketable title to the assets of the franchised business and all leases, and the absolute and unqualified right to sell, assign and transfer them to Liberty, free and clear of all liens, pledges and encumbrances of any kind.

## 7. REPORTS AND REVIEW

    **a. Gross Receipt Report.** You must send Liberty a Gross Receipt report in the manner and form and at the times Liberty specifies. Presently, you must report your Gross Receipts on the fifth (5th) of the month for Gross Receipts received during the prior month. You agree that Liberty has the right to lock your Gross Receipt report at any time.

    **b. Profit and Loss.** By May 30 of each year, you must send Liberty an unaudited profit and loss statement of the Franchised Business, in the manner and form Liberty specifies, for the twelve (12) month period ending April 30.

    **c. Review.** You agree to permit Liberty and/or Liberty's agents the right to enter your Liberty Tax offices during normal, required business hours, without prior notice, and inspect your operations and inspect and copy all of your paper and electronic business books and records related to the Franchised Business and any other operations taking place at your Franchised Business. This includes, but is not limited to, the right to inspect and copy all tax returns and bank statements that may be indicative of revenues from the Franchised Business.

    **d. Mail Reviews.** If Liberty requests a copy of your customer receipts (paper and/or electronic) or any other business records, including, but not limited to customer taxpayer records related to the Franchised Business, you must send Liberty these records at your expense within five (5) days of receiving Liberty's request and within 48 hours of receiving Liberty's request during the Tax Season.

    **e. Electronic Review.** Liberty may cause programs to run on your computer systems that may send information to Liberty and may make changes to the computer systems. Liberty agrees that the use of such programs will not unreasonably interfere with your operation of the Franchised Business and you agree to allow such programs to run without interference by you. You acknowledge that Liberty will use information obtained from your computer system to make business decisions. You hereby grant Liberty the right to access and make changes to the computer systems in your office and authorize Liberty to obtain any and all information related to the Franchised Business. Additionally, following the expiration, termination, transfer or nonrenewal of this Agreement, you grant Liberty the right to remotely access and make changes to the computers used in operation of the franchised business including, but not limited to, removing all Confidential Information from the computers.

    **f. Costs of Review.** Depending on the circumstances, you may be responsible for the costs of a review, or attempted review, as more fully set forth in Section 4(p).

    **g. Background Information.** During the term of this Agreement, you authorize Liberty to obtain background information related to your employment, credit and financial history, as well as your criminal and driving records.

**h. Heightened Supervision.** In the event that Liberty determines there to be abusive tax returns practices related to the operation of your franchised business, Liberty also has the right to require that you implement a plan related to the issues that Liberty discovers. You agree to comply with any such plan imposed. As a part of this plan, you may be subject to various additional requirements including, but not limited to, compliance with heightened monitoring requirements, attending additional trainings and hiring compliance staff with qualifications set out by Liberty.

**8. TERMINATION** Franchisee acknowledges and agrees that all of the obligations under this Agreement are material and essential obligations, that nonperformance of the obligations herein will adversely and substantially affect Liberty and the Liberty system and that Liberty's exercise of the rights and remedies herein are appropriate and reasonable.

    **a. Nonrenewal.** You may terminate this Agreement by not renewing; that is, by not notifying Liberty in writing of your desire to renew at least one hundred eighty (180) days prior to the expiration of this Agreement.  If you terminate pursuant to this Section, you must still comply with all of the post-termination provisions of this Agreement.

    **b. Termination Without Notice and Opportunity to Cure.** Liberty may terminate this Agreement without notice and the opportunity to cure for any of the following reasons:

    (i)    If you become insolvent, are unable to pay debts as they come due or take any steps to seek protection from creditors, or if a receiver (permanent or temporary) is appointed by a creditor or a court of competent authority, or if you make a general assignment for the benefit of creditors;

    (ii)    If a final judgment of record against you or your Franchised Business remains unsatisfied for thirty (30) days or longer;

    (iii)    If you breach 6(v) of this Agreement, or if you fail to immediately notify us about or comply with any governmental investigation or audit or, if we determine that you, or someone acting under your supervision and control, has committed a material violation of any law, ordinance, rule or regulation of a governmental agency or department reasonably associated with the operation of the Franchised Business, committed any act that is or could be, in Liberty's determination, harmful, prejudicial or injurious to the Liberty brand or any of the Affiliated Companies or any employee, franchisee, area developer or agent of such companies, or if the IRS or any federal, state or local governmental entity or agency initiates a criminal, civil or administrative proceeding or takes any administrative action against you or the Franchised Business relating to compliance with applicable tax laws and regulations, and such proceeding or action is not resolved or dismissed in favor of you, or the Franchised Business, within thirty (30) days of its initiation;

    (iv)    If you abandon the Franchised Business or discontinue the active operation of any active office of the Franchised Business for three (3) business days during any Tax Season or seven (7) business days otherwise, except where active operation was not reasonably possible or where specifically approved by Liberty in writing prior thereto;

(v)     If you fail to open for business in the Territory by January 2, as specified pursuant to Section 6(d);

(vi)    If you operate any offices or advertise outside the Territory without Liberty's permission;

(vii)   If you fail to meet the Target Volume specified in Section 6(f) above in the Territory during your fifth Tax Season or in any Tax Season thereafter;

(viii)  If you fail to use the software, electronic filing services or Financial Products Liberty provides or recommends;

(ix)    If you do not obtain an EFIN from the IRS for each office in the Territory prior to operation or, at the latest, by January 2 of your first Tax Season, if any EFIN application to which you are a party is denied at any time, or if any of your EFINs are suspended by the IRS or any state taxing authority for any reason at any time thereafter or you are expelled from the e-file program;

(xi)    If you include a materially false representation or omission of fact in your Confidential Franchise Application to Liberty or if you under-report Gross Receipts, falsify financial data, make a false submission with regard to any required reports or otherwise commit an act of fraud with respect to your acquisition or operation of the Franchised Business or your rights or obligations under this Agreement;

(xii)   If you commit three (3) or more breaches of this Agreement, the Operations Manual, or any other agreement (including promissory notes) with Liberty or the Affiliated Companies, in any twelve (12) month period regardless of whether such breaches were cured after notice; or

(xiii)  If you fail to timely execute all documents necessary for renewal.

**c.     Termination with Notice and Opportunity to Cure.** No fewer than seven (7) days after Liberty has sent you notice of your opportunity to cure, Liberty may terminate this Agreement if:

(i)     You, or any entity in which you are affiliated, violate any term or condition of this Agreement, the Operations Manual, or any other agreement with Liberty or the Affiliated Companies;

(ii)    Any amount owing to Liberty or the Affiliated Companies, whether related to the Territory or not, is more than thirty (30) days past due, or Liberty determines that you have materially and substantively underreported revenue;

(iii)   You fail to comply with IRS standards applicable to e-file providers as stated in IRS Publications 3112, 1345 or another or successor IRS publication applicable to e-file providers or you fail to comply with state or local regulations related to electronic filing; or

(iv)   You are more than sixty (60) days in default of any loan, lease or sublease agreement with a third party, affecting the Franchised Business.

## 9.   POST-TERMINATION OBLIGATIONS

Upon expiration, termination, transfer or nonrenewal of this Agreement for any reason by any party, including a sale of the Franchised Business, you must immediately:

**a.**   Sell to Liberty (if Liberty elects pursuant to Section 11) any or all equipment, signs, trade fixtures, and furnishings used in the Franchised Business, or if Liberty does not so elect, remove all Marks or other distinguishing indicia from all of your offices and other premises; and

**b.**   Stop identifying yourself as a Liberty Tax franchisee, never hold out as a former Liberty Tax franchisee and forever cease the use of any of the Marks or any other marks that may be confused with the Marks; and

**c.**   Stop using all literature and forms received from Liberty and other items bearing the Marks; and

**d.**   Pay to Liberty all amounts owing to Liberty, whether related to the Territory or not; and

**e.**   Transfer to Liberty all telephone numbers, listings and advertisements used in relation to the Franchised Business and deliver to Liberty copies of such documents of transfer; and

**f.**   Assign to Liberty (if Liberty elects) any interest that you have in any lease, sublease or any other agreement related to the Franchised Business; and

**g.**   Deliver to Liberty any original and all copies, including electronic copies and media, of lists and other sources of information containing the names, addresses, e-mail addresses, or phone numbers of customers of the Franchised Business; and

**h.**   Deliver to Liberty any original and all copies, including electronic copies and media, containing customer tax returns, files, and records; and

**i.**   Deliver to Liberty all copies of the Manual and any updates; and

**j.**   Cancel all fictitious name listings which you have filed that utilize any of the Marks; and

**k.**   Adhere to all applicable provisions contained herein including, but not limited to, the post-term covenants not to compete and not to solicit.

## 10.   ADDITIONAL IN-TERM AND POST-TERM COVENANTS

**a.   In-Term Covenant Not to Compete.**   During the term of this Agreement, you agree not to directly or indirectly, for a fee or charge, in the United States or Canada, prepare or electronically file income tax returns, or offer Financial Products, except, if applicable, in your capacity as a SiempreTax+ or Liberty Tax franchisee pursuant to a valid SiempreTax+ or Liberty franchise agreement.

DocuSign Envelope ID: 21B2A048-461B-42BF-AEC8-BBBD1D91DEDB

**b. Post-Term Covenant Not to Compete.** For a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, or your removal as a signator to this Agreement, you agree not to directly or indirectly, for a fee or charge, prepare or electronically file income tax returns, or offer Financial Products, within the Territory or within twenty-five (25) miles of the boundaries of the Territory except, if applicable, in your capacity as a SiempreTax+ or Liberty Tax franchisee pursuant to a valid SiempreTax+ or Liberty franchise agreement.

**c. Liquidated Monetary Damages.** If you fail to comply with either of the above covenants not to compete, you agree to pay Liberty, as partial liquidated monetary damages, royalties and advertising fees as set forth in Section 4 of this Agreement against the greater of: (1) the total Gross Receipts during your last fiscal year (May 1- April 30) of operation for each Territory in which you are in breach; or (2) the total revenue you received in breach of a covenant not to compete. The greater of these two dollar figures shall be multiplied by two (2) to give consideration to lost repeat and referral business to Liberty. You acknowledge that any breach of the covenants not to compete causes damage to the integrity of Liberty's franchised system, loss of franchisee and customer goodwill and irreparable harm. You specifically acknowledge that the full measure of these damages is greater than that specified herein.

**d. Covenant Not to Solicit.** For a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, or your removal as a signator to this Agreement, you agree that you will not, within the Territory or within twenty-five (25) miles of the boundaries of the Territory, directly or indirectly solicit any person or entity served by any of your prior Liberty offices within the last twelve (12) months that were a Liberty franchisee, for the purpose of offering such person or entity, for a fee or charge, income tax preparation, electronic filing of tax returns, or Financial Products except, if applicable, in your capacity as a SiempreTax+ or Liberty Tax franchisee pursuant to a valid SiempreTax+ or Liberty franchise agreement. You further agree for a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, or your removal as a signator to this Agreement, not to employ or solicit for employment without Liberty's prior written consent any of Liberty's employees or those of any other of Liberty's franchisees, or induce any such employee to leave his or her employ.

**e. Covenant Not to Lease.** You agree that during the term of this Agreement, you will not lease, sub-lease, assign or guaranty a lease in the Territory to or for a person or entity who will offer income tax preparation at such an office. You also agree that upon the termination or expiration of this Agreement, if Liberty or a duly authorized Liberty franchisee desires to use any of your former Liberty office locations in the Territory, you will use reasonable good faith efforts to help Liberty secure possession of the office locations through a lease assignment or otherwise. Otherwise, you agree to use reasonable, good faith efforts to ensure that, for a twenty-four (24) month period after non-renewal or termination of this Agreement, no person or entity will offer income tax preparation at the properties where your former Liberty offices were located. Good faith efforts include a duty not to sub-lease or assign the leases of your office location to a person or entity who will offer income tax preparation at such office locations.

**f. No Harmful Acts.** You agree not to disparage Liberty or the Affiliated Companies, including their current and former employees, directors or agents. You also agree not to do any act that is, in

DocuSign Envelope ID: 21B2A048-461B-42BF-AEC8-BBBD1D91DEDB

Liberty's determination, harmful, prejudicial or injurious to Liberty or the Affiliated Companies, including their current and former employees, directors or agents.

    **g. Section 10 Conditions Required for Grant of Franchise.** You hereby acknowledge that the qualifications to be a Liberty franchisee are special, unique and extraordinary, and that Liberty would not enter into this Agreement without the inclusion of the conditions set forth in Section 10.

    **h. Waivers.** You acknowledge and agree that the provisions of Section 10 are reasonable, valid and not contrary to the public interest. You waive all defenses to the strict enforcement of Section 10. You further agree that Liberty is entitled to a temporary restraining order, preliminary and/or permanent injunction for any breach of duties under any of the non-monetary obligations of Sections 9 and 10. You hereby waive any requirement that Liberty post a bond related to any temporary restraining order or injunctions requested as a result of an alleged violation of Sections 9 and 10.

    **i. Survival.** The covenants contained in Section 10 shall survive any termination or expiration of this Agreement.

    **j. Severability.** If any covenant or provision within Section 10 is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not affect or impair the validity of any other covenant or provision of this Agreement. Further, these obligations are considered independent of any other provision in this Agreement, and the existence of any claim or cause of action by either party to this Agreement against the other, whether based upon this Agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

## 11. OPTION TO PURCHASE ASSETS

Upon termination or expiration of this Agreement, you hereby grant Liberty or its assignee the option to purchase from you some or all of the assets (including, but not limited to, supplies, equipment, signs, furnishings and fixtures) of the Franchised Business. Liberty may exercise this option by transmitting notice to you within thirty (30) days from the effective date of expiration or termination. If Liberty elects to exercise this option, the purchase price for the assets of the Franchised Business, will be the "adjusted book value" as described below. Liberty will have the right to set off and reduce the purchase price by any and all amounts owed by you to Liberty or any of Liberty's affiliates. The "adjusted book value" is the book value of the assets of the Franchised Business as listed on the balance sheet in the financial statements of the Franchised Business as of the date of the termination or expiration. There shall be no allocation for goodwill or any similar adjustment in the adjusted book value.

## 12. CONFIDENTIAL INFORMATION

    **a. Disclosure.** Liberty possesses confidential information including, but not limited to, methods of operation, service and other methods, techniques, formats, specifications, procedures, information, systems, knowledge of and experience in operating and franchising offices, customer information and marketing information ("Confidential Information"). Liberty may disclose some or all of the Confidential Information to you and your representatives while you operate the Franchised Business. During the term of this Agreement and following the expiration or termination of this Agreement, you covenant not to directly or indirectly communicate, divulge, or use any Confidential Information for

your personal benefit or the benefit of any other person or legal entity except as specifically provided by the terms of this Agreement or permitted by Liberty in writing prior to disclosure. Upon the transfer, expiration, termination or nonrenewal of this Agreement, you agree that you will never use or disclose, and will not permit any of your representatives to use or disclose, Liberty's Confidential Information in any manner whatsoever, including, without limitation, in the design, development or operation of any business substantially similar to the Franchised Business. This provision shall not apply to information that: (i) at the time of disclosure is readily available to the public; (ii) after disclosure becomes readily available to the trade or public other than through breach of this Agreement; (iii) is subsequently lawfully and in good faith obtained by you from an independent third party without breach of this Agreement; (iv) was in your possession prior to the date of Liberty's disclosure to you; or (v) is disclosed to others in accordance with the terms of a prior written authorization between you and Liberty.  The protections granted in this Section shall be in addition to all other protections for Confidential Information provided by law or equity.

   **b.   Interest.**  You will acquire no interest in Liberty's Confidential Information, but are provided the right to use Confidential Information disclosed to you for the purposes of developing and operating the Franchised Business pursuant to this Agreement. You acknowledge that it would be an unfair method of competition to use or duplicate any Confidential Information other than in connection with the operation of the Franchised Business. No part of the Liberty Tax franchise system nor any document or exhibit forming any part thereof shall be distributed, utilized or reproduced in any form or by any means, without Liberty's prior written consent.

   **c.   Use.**    You agree that you will: (i) refrain from using Confidential Information for any purpose other than the operation of the Franchised Business pursuant to this Agreement; (ii) maintain absolute confidentiality of Confidential Information during and after the term of this Agreement; (iii) not make unauthorized copies of any portion of Confidential Information; and (iv) adopt and implement all reasonable procedures, including, but not limited to, those required by Liberty, to prevent unauthorized use of or disclosure of Confidential Information, including, but not limited to, restrictions on disclosure to your employees and the use of nondisclosure and non-competition clauses in employment agreements with employees that have access to Confidential Information.

   **d.   Disclosure Required by Law.**    If disclosure of any Confidential information is required by law, then you may make such disclosure after providing Liberty with reasonable notice so that Liberty, at its expense, may seek a protective order or other relief.

## 13.  INDEPENDENT CONTRACT AND INDEMNIFICATION

You and Liberty are independent contractors to each other. Neither you nor Liberty are an agent, fiduciary, partner, employee, or a participant in a joint venture and neither you nor Liberty have the authority to hold out as such to third parties. You do not have any authority to bind or obligate Liberty. Liberty is not and will not be liable for any act, omission, debt, or other obligation of yours.

You are responsible for all claims, demands, losses, damages and/or contractual liability to third parties which may arise at any time related to your operation of the Franchised Business. You agree to defend, indemnify and hold Liberty, Liberty's parent company and Affiliated Companies and their employees harmless from all claims, demands, losses, damages, and/or contractual liability (including attorney's

fees) to third parties. You agree to reasonable cooperation in the defense of any claim. Liberty and the Affiliated Companies shall have the right to control settlement and selection of counsel and defense of any claim.

## 14.  DEATH OR INCAPACITY

**a.  Assistance and Reimbursement.** In the event of the death or incapacity of Franchisee, Liberty is entitled, but not required, to render assistance to maintain smooth and continued operation of the Franchised Business.  Liberty shall be entitled to reimbursement from Franchisee or Franchisee's estate for reasonable expenditures incurred.

**b.  Time Requirements.** Pursuant to this Section, death or incapacity shall not be grounds for termination of this Agreement unless:

i)  Franchisee or his/her legal representative fails for a period of one hundred eighty (180) days after such death or incapacity to commence action to assign this Agreement according to controlling state law regarding the affairs of a deceased or incapacitated person and the terms of this Agreement; or

ii)  Such assignment is not completed within one (1) year after death or incapacity.

**c.  Termination.**  Liberty shall have the right to terminate this Agreement if one of the conditions listed in 14(b) are not satisfied within the time frame provided. Nothing in this Section shall be construed to limit the provisions of Section 8 regarding termination. Further, the terms and conditions of Section 15 apply to a transfer upon death or incapacity.

**d.  Disclosure Required by Law.**    If disclosure of any Confidential information is required by law, then you may make such disclosure after providing Liberty with reasonable notice so that Liberty, at its expense, may seek a protective order or other relief.

## 15.  ASSIGNABILITY AND FIRST RIGHT OF REFUSAL

**a.  Assignability Generally.**  Liberty may assign this Agreement to an assignee who agrees to remain bound by its terms.  Liberty does not permit a sub-license of the Franchise. Your interest under this Agreement or your ownership in the Franchise may be transferred or assigned only if you comply with the provisions in this Section and such transfer is approved by Liberty in writing. No interest may be transferred unless you are in full compliance with this Agreement and current in all monies owed to Liberty. Liberty may require any transfer of an ownership interest in this Agreement to be joined by all signatories to this Agreement, except in the case of death or legal disability.

**b.  First Right of Refusal.**  If you have received and desire to accept a signed, bona fide offer to purchase or otherwise transfer the Franchise or any interest in the Franchise, Liberty shall have the option ("Right of First Refusal") to purchase the Franchise or interest. You shall offer the Right of First Refusal by providing written notice to Liberty and including a copy of the signed offer to purchase that you received (collectively "Notice"). Liberty shall have the right to purchase the Franchise or interest in the

Franchise for the price and upon the terms set out in the Notice; however, Liberty may substitute cash for any non-cash form of payment proposed and Liberty shall have sixty (60) days after the exercise of Liberty's Right of First Refusal to close the purchase. Liberty will notify you in writing within fifteen (15) days of receipt of the Notice if it plans to exercise the Right of First Refusal. Upon the transmission of notice by Liberty that it plans to exercise the Right of First Refusal, there shall immediately arise between Liberty and Franchisee, or its owners, a binding contract of purchase and sale at the price and terms contained in the Notice previously provided by you.

**c. Transfer to Controlled Entity.** A transfer to a "Controlled Entity" shall not trigger the Right of First Refusal. A "Controlled Entity" is an entity in which Franchisee (or Franchisee's managers, members, owners, partners, shareholders or officers as of the date of this Agreement) is the beneficial owner of 100% of each class of voting ownership interest. At the time of the desired transfer of interest to a Controlled Entity, you must notify Liberty in writing of the name of the Controlled Entity and the name and address of each officer, director, shareholder, member, partner, or similar person and their respective ownership interest, and provide Liberty with the applicable organizational documents of the business entity. Each such person of the Controlled Entity shall sign, on behalf of the business entity and in their respective individual capacity, the amendment and release forms and/or franchise agreement as required by Liberty at the time of transfer. Currently, Liberty does not charge a transfer fee for this type of transaction. Upon transfer, a new EFIN must be obtained pursuant to Section 6(w) herein.

**d. Transfer of Interest Within Franchisee.** A transfer of interest within a Franchisee that is an entity shall not trigger the Right of First Refusal provided that only the percentage ownership is changing and not the identity of the owners. At the time of the desired transfer of interest within an entity, you must notify Liberty in writing of the name and address of each officer, director, shareholder, member, partner or similar person and their respective ownership interest prior to and following the proposed transfer and provide Liberty with the applicable organizational documents of the business entity. Each such person of the Controlled Entity shall sign, on behalf of the business entity and in their individual capacity, the amendment and release forms and/or franchise agreement as required by Liberty at the time of transfer. Further, if the transfer of interest results in a change in control of the entity, you must pay to Liberty the transfer fee required at the time of transfer.

**e. Right of First Refusal Not Exercised By Liberty.** If Liberty does not exercise the Right of First Refusal, you may transfer the Franchise or ownership interest therein according to the terms set forth in the Notice, provided that you satisfy the conditions of Sections 15(f) below and complete the sale within ninety (90) days from the date that Liberty received Notice from you. If you do not conclude the proposed sale transaction within this ninety (90) day period, Liberty's Right of First Refusal shall continue in full force and effect.

**f. Additional Requirements and Restrictions Regarding Transfers.**

i) The proposed transferee(s) must complete Liberty's franchise application and pass Liberty's application screening in place at the time of transfer;

ii) The proposed transferee(s) must sign the Liberty amendment forms and/or the then current franchise agreement and must personally assume and be bound by all of the terms, covenants and conditions therein;

iii) The proposed transferee(s) must attend and successfully complete EOT and HOT;

iv) You shall sign the transfer and release forms required by Liberty at the time of transfer and pay the transfer fee described in Section 4(i) of this Agreement; and

v) Except as to approved transfers within the Liberty system as described in this Section, you may not give, transfer or sell all or substantially all of the assets of your Franchised Business during the term of this Agreement, or for a two (2) year period after its expiration or termination, to a person or entity who might be reasonably expected to use any such assets to offer income tax preparation in the Territory or within ten (10) miles of the boundaries of the Territory.

**g.  Writing Required.** No amendment, change, or modification of this Agreement and no waiver of any right under this Agreement will be effective unless in a written document that is signed by an authorized representative of Liberty.

## 16.  NON-WAIVER OF BREACH

The failure of either party hereto to enforce any of the terms or conditions of this Agreement shall not be deemed a waiver of such terms or conditions or of either party's rights thereafter to enforce each and every term and condition of this Agreement.

## 17.  GOVERNING LAW

**a.  Virginia Law.**  This Agreement is effective upon its acceptance in Virginia by Liberty's authorized officer. Virginia law governs all claims that in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto, or dealings between you and any of the Affiliated Companies. Liberty, the Affiliated Companies and their respective present or former employees, agents, officers and directors are collectively referred to in this Section as the "Liberty Parties." However, the Virginia Retail Franchising Act does not apply to any claims by or on your behalf if the Territory shown on Schedule A is outside of Virginia.

**b.  Jurisdiction and Venue.**  In any suit brought by any or all of the Liberty Parties, that in any way relates to or arises out of this Agreement or any of the dealings of the dealings between you and any or all of the Liberty Parties, you consent to venue and personal jurisdiction in the state and federal court of the city or county of Liberty's National Office (presently Virginia Beach, Virginia state courts and the United States District Court in Norfolk, Virginia). In any suit brought against any or all of the Liberty Parties, including their present or former employees or agents, that in any way relates to or arises out of this Agreement or any of the dealings between you and any or all of the Liberty Parties, venue shall be proper only in the federal court district and division located nearest Liberty's National Office (presently the U.S. District Court in Norfolk, Virginia), or if neither federal subject matter nor diversity jurisdiction exists, in the city or county state court where Liberty's National Office is located (presently the City of Virginia Beach, Virginia).

c.  **Jury Waiver.**  In any trial between you and any or all of the Liberty Parties, that in any way relates to or arises out of this Agreement or any of the dealings between you and any or all of the Liberty Parties, you and Liberty waive the rights to a jury trial and agree to have such action tried by a judge.

d.  **Class Action Waiver.**  You agree that any claim you may have against any or all of the Liberty Parties shall be brought individually and you shall not join such claim with claims of any other person or entity or bring, join or participate in a class action against any or all of the Liberty Parties.

e.  **No Punitive Damages.**  In any lawsuit, dispute or claim between or against you or the Liberty Parties that in any way relates to or arises out of this Agreement or any of the dealings between you and the Liberty parties, you and Liberty waive the rights, if any, to seek or recover punitive or exemplary damages.

f.  **Anti-Terror.**  Franchisee represents and warrants that no Franchisee signatory to this Agreement is identified, either by name or an alias, pseudonym or nickname, on the lists of "Specially Designated Nationals" maintained by the U.S. Treasury Department's Office of Foreign Assets Control (texts currently available at www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx. Further, Franchisee represents and warrants that no Franchisee signatory to this Agreement has violated, and agrees not to violate, any law prohibiting corrupt business practices, money laundering or the aid or support of Persons who conspire to commit acts of terror against any Person or government, including acts prohibited by the U.S. Patriot Act, U.S. Executive Order 13224, or any similar law.  The foregoing constitutes continuing representations and warranties, and Franchisee shall immediately notify Liberty in writing of the occurrence of any event or the development of any circumstance that might render any of the foregoing representations and warranties false, inaccurate or misleading.

g.  **Area Developers.**  If your Territory is or becomes located in an Area Developer area, you agree not to bring any claim, including a lawsuit, against the Area Developer, or its owners, employees or independent contractors, except as to a claim unrelated to the Liberty franchise, such as an automobile accident.  Area Developers are a third party beneficiary of this clause.  Further, you agree that if you breach this clause, you will pay to Liberty and/or the Area Developer all attorney fees and other costs that Liberty and the Area Developer incur to defend the Area Developer in such an action, regardless of who prevails.

h.  **Survival.**  Any provisions of this Agreement that by their nature extend beyond the expiration or termination of this Agreement, shall survive termination or expiration of this Agreement and be fully binding and enforceable as though termination or expiration had not occurred.

## 18.  MODIFICATION

No modifications to this Agreement will have any effect unless such modification is in writing and signed by you and by Liberty's authorized officer.  However, Liberty may modify the provisions of the Operations Manual without your consent.

## 19.  RELEASE OF PRIOR CLAIMS

DocuSign Envelope ID: 11B2A048-461B-42BE-AEC8-BBBD1D91DEDB

By executing this Agreement, the undersigned entity, if any, and individuals, on behalf of yourselves and your heirs, legal representatives, successors and assigns, and each assignee of this Agreement, hereby forever release and discharge Liberty, its past and present employees, agents, area developers, officers and directors, including Liberty's parent, subsidiary and affiliated corporations, their respective past and present employees, agents, officers and directors, from any and all claims relating to or arising out of any franchise agreement between the parties executed prior to the date of this Agreement, and all other claims relating to any dealings between any of the parties. However, this release does not apply to Liberty's renewal obligations the same or similar to those in Section 2(b) above, as contained in any prior or other franchise agreement.

## 20. NOTICES

You shall give any notice or request hereunder by mail or courier, postage fully prepaid, delivered personally to Liberty's CEO at Liberty's National Office, presently 1716 Corporate Landing Parkway, Virginia Beach, Virginia, 23454, Telephone:  (757) 493-8855. Liberty may also give any such notice to you in the same manner at the address indicated below the Franchisee's signature on this Agreement, or such other more current address as Liberty may have for you. Liberty may also give notice to you by e-mail.

## 21. FULL UNDERSTANDING

This Agreement is the entire agreement between you and Liberty. This Agreement supersedes all other prior oral and written agreements and understandings between you and Liberty with respect to the subject matter herein. Nothing in this or in any related agreement, however, is intended to disclaim the representations Liberty made in the Franchise Disclosure Document Liberty furnished to you.

## 22. ACKNOWLEDGMENTS

You acknowledge that you have read Liberty's franchise disclosure document and this Agreement and that you are familiar with their contents. You acknowledge that you have independently investigated the business offered hereunder and base your decision to purchase solely on such investigation. Except as may be stated in Item 19 of Liberty's Franchise Disclosure Document, you acknowledge that no person is authorized to make and no person has made any representations to you as to the actual, projected or potential sales, volumes, revenues, profits or success of any Liberty Tax franchise. You further acknowledge and agree that you are not a third party beneficiary to any agreement between Liberty and any other franchisee.

## 23. SEVERABILITY

If any covenant or provision within this Agreement is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not effect or impair the validity of any other covenant or provision of this Agreement and no covenant or provision of this Agreement shall be deemed to be dependent upon any other unless specifically expressed herein.

## 24. COUNTERPARTS AND ELECTRONIC SIGNATURE

This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (e.g. "pdf") format shall be effective as delivery of a manually executed counterpart of this Franchise Agreement. The words "execution," "signed," "signature," and words of similar import in the Franchise Agreement shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed signatures or a paper-based recordkeeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 USC § 7001 et seq.) or any other similar state or federal laws.

## 25. HEADINGS

The headings of the various sections of this Agreement have been inserted for reference only and shall not be deemed to have any legal effect or meaning.

## 26. GUARANTY

The Franchisee named at the top of the following page agrees to abide by the terms of this Agreement. The Franchisee signature of an individual or individuals constitutes their personal agreement to such terms. The Franchisee signature of an individual or individuals on behalf of an entity constitutes the entity's agreement to such terms.

The individual signators signing on behalf of Franchisee also agree jointly and severally to perform all the obligations in and relating to this Agreement, including, but not limited to, all obligations related to the covenants not to compete, covenants not to solicit, confidentiality obligations, obligations to make payments specified herein, pay any other promissory notes and other debts due to Liberty, pay for products later ordered from Liberty and the obligations stated in **Section 17 above concerning governing law, including but not limited to, the application of Virginia law, the jurisdiction and venue clause, the jury waiver, the class action waiver, and the limitation to compensatory damages only.** If the Franchise Agreement is held in the name of a business entity and it is later determined by Liberty that the entity is no longer valid or in good standing with the laws of the applicable state of organization or that an individual has been removed as a part of the business entity pursuant to applicable state law or otherwise, Liberty shall have the right to modify the Franchise Agreement to reflect the then current business structure with the signatures of only those that remain as valid members, officers, partners, directors or sole proprietor of the then current business structure. All Franchisee signators specifically agree to indemnify Liberty, pursuant to the terms of Section 13, related to the removal of parties under this provision. All Franchisee signators waive any right to presentment, demand or notice

of non-performance and the right to require Liberty to proceed against the other  Franchisee signators. Except as specified herein, no person or entity is a third-party beneficiary of this Agreement.

*Signatures on Following Page*

Franchisee: _Amy Lu_____    Entity Number: _8543_____

## SIGNATORS:

By: _____    By: _____
        (Signature)                       (Signature)

_Amy Lu_____    _____
        (Printed Name)                    (Printed Name)

Title: _____    Title: _____

Address: _4233 CYPRESS AVE_____    Address: _____

_EL MONTE, CA  91731_____    _____

Ownership Percentage: _____%    Ownership Percentage: _____%

By: _____    By: _____
        (Signature)                       (Signature)

_____    _____
        (Printed Name)                    (Printed Name)

Title: _____    Title: _____

Address: _____    Address: _____

_____    _____

Ownership Percentage: _____%    Ownership Percentage: _____%

**JTH TAX, INC. d/b/a**
**LIBERTY TAX SERVICE**

By: _____

Printed Name: _John Hewitt_____

Title: _CEO_____

Effective Date: _10/14/2016_____

## SCHEDULE "A" TO THE FRANCHISE AGREEMENT

## Territory

The Franchise Territory* is as follows:

CA647(LongBeachCA-4)

NORTH of and including E 3rd St continuing onto NORTH of and including W 3rd St continuing onto NORTH of and including Latitude 33.77051°N from Alamitos Ave to Los Angeles River.
 EAST of and including Los Angeles River from Latitude 33.77051°N to Latitude 33.77893°N.
 SOUTH of and excluding Latitude 33.77893°N from Los Angeles River to W 10th St.
 SOUTH of and excluding W 10th St continuing onto SOUTH of and excluding E 10th St from Latitude 33.77893°N to Alamitos Ave.
 WEST of and excluding Alamitos Ave from E 10th St to E 3rd St.



*Note: When a Territory description includes a road, avenue, street, parkway, highway, route or similar roadway, the Territory includes the U.S. Postal addresses assigned to either side of the roadway. When a Territory description excludes a road, avenue, street, parkway, highway, route or similar roadway, the Territory excludes the U.S. Postal addresses assigned to either side of such roadway. If a map of the Territory is attached, the map approximates the Territory, but the above legal description controls as to the Territory's precise boundaries.

**EXHIBIT C**

CA610(LosAngelesCA-25)



**FRANCHISE AGREEMENT**

**EXHIBIT B**

# TABLE OF CONTENTS

| Section | Page |
|---|---|
| 1. GRANT OF FRANCHISE | 1 |
| 2. TERM, RENEWAL AND BUYBACK | 1 |
| 3. TERRITORY | 2 |
| 4. FEES AND PAYMENTS | 3 |
| 5. OBLIGATIONS OF FRANCHISOR | 6 |
| 6. OBLIGATIONS OF FRANCHISEE | 8 |
| 7. REPORTS AND REVIEW | 12 |
| 8. TERMINATION | 13 |
| 9. POST-TERMINATION OBLIGATIONS | 15 |
| 10. ADDITIONAL IN-TERM AND POST-TERM COVENANTS | 16 |
| 11. OPTION TO PURCHASE ASSETS | 17 |
| 12. CONFIDENTIAL INFORMATION | 18 |
| 13. INDEPENDENT CONTRACT AND INDEMNIFICATION | 19 |
| 14. DEATH OR INCAPACITY | 19 |
| 15. ASSIGNABILITY AND FIRST RIGHT OF REFUSAL | 20 |
| 16. NON-WAIVER OF BREACH | 21 |
| 17. GOVERNING LAW | 22 |
| 18. MODIFICATION | 23 |
| 19. RELEASE OF PRIOR CLAIMS | 23 |
| 20. NOTICES | 23 |
| 21. FULL UNDERSTANDING | 23 |
| 22. ACKNOWLEDGMENTS | 24 |
| 23. SEVERABILITY | 24 |
| 24. COUNTERPARTS AND ELECTRONIC SIGNATURE | 24 |
| 25. HEADINGS | 24 |
| 26. GUARANTY | 25 |
| | |
| Signature Page | 26 |
| Schedule A – Territory | A-1 |
| Schedules B-1 to B-5 – Special Stipulations | B-1-B-5 |

## 1.  GRANT OF FRANCHISE

Liberty Tax Service ("Liberty," "Liberty Tax") has developed a system for the operation of tax return preparation offices. The Liberty system utilizes special marketing techniques and operating procedures to facilitate the provision of tax return preparation and related services.

You, meaning the franchisee and all signators identified on the signature page to this franchise agreement ("Agreement" or "Franchise Agreement"), in your personal capacity and, if applicable, on behalf of the business entity designated by you on the signature page, have applied for a franchise that utilizes Liberty's system and Liberty's trade names, service marks, and trademarks (collectively, the "Marks") ("Franchised Business" or "Franchise"). Subject to the terms of this Agreement, Liberty grants to you a Liberty Tax Service franchise. This Agreement will allow you to operate a tax return preparation business using Liberty's system and Liberty's Marks within the territory described on Schedule A ("Territory"). This agreement shall only grant you a Liberty franchise and grants no rights to you associated with any other brand or concept owned and/or operated by SiempreTax+ LLC ("SiempreTax+"), Liberty Tax, Inc., Liberty's affiliates, or other entities controlling, controlled by or under common control with Liberty ("Affiliated Companies"). You agree to abide by the terms of this Agreement.

You recognize and agree that the nature of the tax return preparation business is such that complete uniformity is not always practical or desirable and that Liberty, in Liberty's sole discretion, may vary the terms of this Agreement and the standards of operation of the Franchised Business to accommodate the peculiarities of a particular situation and/or territory. You have no recourse against Liberty if other franchisees are granted allowances that you are not granted.

## 2.  TERM, RENEWAL AND BUYBACK

**a.  Term.**  This Agreement will be effective for a five year term beginning on the effective date specified on the signature page of this Agreement ("Effective Date").

**b.  Renewal.**  You may renew for another five year term by signing Liberty's then current franchise agreement if you have met the Target Volume specified in Section 6(f) of this Agreement, you are otherwise in full compliance with this Agreement, all other agreements with us and the Affiliated Companies, and no event has occurred that would give Liberty the right to terminate this Agreement. You may continue to renew future franchise agreements in this manner if you, and every other entity in which you hold an ownership interest, are in full compliance with all agreements between you and Liberty or you and the Affiliated Companies. To renew, you must execute a general release of all claims that you might have against Liberty and the Affiliated Companies, and must also execute Liberty's then current Franchise Agreement which may contain materially different terms. Liberty may not raise royalties or advertising fees that you pay to Liberty upon any future renewal, or impose a renewal fee. Further, upon renewal, Liberty may not change the boundaries of your Territory, the level and type of territorial exclusivity or the territorial rights you have. Other terms and conditions may vary. If you wish to renew, you must notify Liberty in writing at least one hundred and eighty (180) days before the expiration of this Agreement.

DocuSign Envelope ID: 6E6A9F19-F0F9-4E32-9592-D6DAA4058A2D

**c.   Buyback.**  Between May 1 and August 31 of any year, Liberty has the right to purchase your Franchised Business for the greater of $150,000 or 200% of the Gross Receipts of the Territory for the previous twelve months, or such shorter time as an office in the Territory may have been in operation. You understand that this is a premium price above fair value and does not vest any rights in you. The term "Gross Receipts" as used in this Agreement means all revenue from all services and products offered by the Franchised Business (including, but not limited to, revenue from individual, corporate, estate and partnership tax returns), excluding only customer discounts, any transmitter, software or electronic filing fee, and sales tax, but not service fees for credit card transactions.

## 3.   TERRITORY

**a.   Territory Generally.**  Your Territory is described in Schedule A of this Agreement ("Territory").

**b.   General Rights & Restrictions.**  You may operate as many tax return preparation offices in the Territory as you determine to be appropriate. You may not operate outside your Territory. Liberty may grant franchises for areas outside your Territory or operate company offices in such areas. Except as described below, Liberty may not establish franchised or company owned outlets offering income tax preparation services using the Marks at a physical location in your Territory. Additionally, Liberty may not offer income tax preparation services through other channels of distribution at a physical location in your Territory except as described herein. Liberty and the Affiliated Companies may establish franchised or company owned outlets in your Territory that operate income tax preparation services under different trademarks and may operate or franchise a different line of business. Liberty may distribute Liberty tax return preparation products and services by means other than retail or storefront locations in your Territory, including the sale of gift cards for this service. No other franchisee using the Marks may operate a tax return preparation office in your Territory. Liberty may advertise in your Territory. You may not advertise in areas outside your Territory or in media that extends outside your Territory, without Liberty's express written approval. You agree that in the event of a mapping error, as determined by us, which results in a territory population which exceeds 35,000, Liberty may re-size your Territory.

**c.   Misplaced Offices.**  If you locate an office outside your Territory, even if Liberty approved such site location, you agree upon discovery of this fact to promptly abandon the office and refrain from any further targeted solicitation (e.g. direct mail, telephone calls, etc.) of customers residing in the territory containing the misplaced office. If Liberty learns that Liberty or another franchisee has erroneously located an office in your Territory, you agree to accept the abandonment of the office and, in the case of a misplaced office operated by another franchisee, the discontinuation of further targeted solicitation of customers located in your Territory, in full satisfaction of any claim against Liberty, Liberty's past and present employees, and Liberty's past and present franchisees, in relation to the misplaced office. Liberty has a reasonable time to correct any such error after Liberty learns of it.

**d. National and Regional Retail Business Outlets.**  Liberty may negotiate agreements with national or regional retail businesses. If there is an outlet of such a national or regional business in your Territory that is subject to such an agreement, you may choose to operate a tax return preparation service office in that outlet by communicating that decision to Liberty by December 1 before a given Tax Season, or such earlier date provided by Liberty in order to meet the requirements of that business.

DocuSign Envelope ID: 9E6A2F19-F0F0-4E32-9592-D6DAA4058A2D

If you choose not to operate in an outlet that exists in your Territory, Liberty may operate in that outlet in your Territory and all associated revenue and expenses shall belong to Liberty. Additionally, Liberty will retain the right to service the customers associated with that outlet in the future. The term "Tax Season" means the time period of January 2 – April 30.

## 4. FEES AND PAYMENTS

    **a. Initial and Resale Franchise Fee.** The initial franchise fee and resale franchise fees are $40,000. The resale franchise fee applies to a territory that has been previously sold. If a territory includes existing operations, the total cost will vary depending upon the Gross Receipts of the Territory and other pertinent market and economic factors.

    **b. Down Payment and Approval.** You must submit a minimum of 20% of the initial or resale franchise fee as a deposit after you have held the Liberty Franchise Disclosure Document for at least fourteen (14) calendar days and prior to attending Effective Operations Training ("EOT"). Liberty will refund this deposit to you upon your request at any time before you attend EOT. If you receive financing, you will be required to submit a deposit of up to $25,000 for your operational expenses ("Operational Supply Deposit"), and may be required to attend and pass Liberty's Guerilla Marketing Interactive training ("GMi Training") or other required training, prior to closing. We will refund to you the initial or resale franchise fee (including deposits) if we do not approve your application or if you do not pass EOT in accordance with Liberty's passing standards, provided that you return to us all materials that we distributed to you during training. After closing, Liberty will hold and make available for return to you any Operational Supply Deposit that you were required to submit, upon your written request to Liberty with substantiation as to the expenses to be paid by you with the Operational Supply Deposit. We do not pay interest on the Operational Supply Deposit. The initial and resale franchise fee is fully earned and nonrefundable when both parties execute this Agreement.

    **c. Reverse Royalty.** If Liberty receives tax preparation fees from individuals located in your Territory through the use of Liberty's online tax preparation services while you have a Liberty Tax Service office open in that Territory, Liberty agrees to use commercially reasonable means to track and identify those revenues and pay or credit to you 14% of those tax preparation fees within sixty (60) days after the end of each Tax Season in its sole discretion.

    **d. Royalties.** You must pay a royalty to Liberty in the amount of 14% of Gross Receipts subject to the following minimums ("Minimum Royalties"):

    i) **Year One.** For the period ending April 30 following the Effective Date of this Agreement, if you operated or were required to have operated an office in the Territory for any part of Tax Season ending in that April, the minimum royalty is $5,000 per Territory.

    ii) **Year Two.** For the period beginning May 1 following the Effective Date of this Agreement through the following April 30, the minimum royalty is $8,000 per Territory.

    iii) **Year Three and Beyond.** Thereafter, the minimum royalty is $11,000 per Territory for each successive period beginning May 1 through the following April 30.

DocuSign Envelope ID: 9E6A9F19-F0F0-4E32-9592-D6DAA4058A2D

iv) **Developed Territory.** For a territory that contains or that had in the most recent Tax Season prior to the Effective Date of this Agreement, an existing company, franchisee or other Liberty tax preparation office ("Developed Territory"), you must pay royalties as set forth above depending upon how long any office has been operated in the Territory. For example, if it is your first year operating in a territory but an office has been operated in the Territory by Liberty or another franchisee through one Tax Season, then the Territory would be subject to Year Two royalties for the year that you first operate in the Territory. An office includes, but is not limited to, locations such as kiosks or temporary locations where tax return preparation services are provided.

v) **SiempreTax+ Conversion/Opt In.** The definition of Developed Territory also includes a territory that contains or that had in the most recent Tax Season prior to the Effective Date of this Agreement, an existing SiempreTax+ tax preparation office. For such a Territory, you must pay royalties as set forth above depending upon how long any office has been operated in the Territory.

**e. Area Developers.** If you are in or become part of an area covered by an Area Developer, Liberty may pay to the Area Developer a portion of the initial franchisee fee and royalties that you pay to Liberty.

**f. Advertising Fee.** You must pay an advertising fee of 5% of the Gross Receipts each month.

**g. Payment Period.** You must pay the royalty owed by the 5th of each month based on Gross Receipts for the preceding month, and any balance owed to achieve Minimum Royalty on May 5 for each fiscal year ending April 30. You must pay advertising fees by the 5th of each month based on Gross Receipts for the preceding month. Liberty reserves the right to modify this payment schedule in Liberty's Operations Manual.

**h. Interest.** You must pay interest of 12% (compounded daily) per year, or the maximum permitted by law if less, on any amounts owed to Liberty that are more than fifteen (15) days past due.

**i. Transfer Fee.** If you transfer your Franchised Business, or an interest in the Franchised Business that results in a change in control of the Franchised Business, you must pay Liberty a transfer fee of $5,000 at the time of transfer. This fee is subject to increase or decrease in future franchise agreements by the amount of change in the *Consumer Price Index – All Urban Consumers*, published by the U.S. Department of Labor, or a reasonably similar successor index, from the index as of the Effective Date.

**j. Customer Refunds, Penalty and Interest, Send a Friend**. If you do not resolve a customer service complaint or pay penalty and interest on an erroneous return prepared in your office, or misdeliver a customer check, or fail to pay a Send a Friend or E-Send a Friend referral, and the customer contacts Liberty, and Liberty believes there is a reasonable basis for the claim, Liberty may issue a refund of fees paid by the customer, pay to the customer the penalty and interest or amount of misdelivered check, or pay the Send a Friend referral, and bill you. You agree to pay the charges. Your obligation to pay penalty and interest for tax return preparation errors made during the operation

of the Franchised Business continues after the expiration, termination or transfer of this Agreement and/or sale of the Franchised Business.

**k.  Automatic Payment Transfer**.  All of the tax preparation, transmitter, software, and electronic filing fees, and any rebates that you receive from Financial Products or customers who purchase Financial Products, and all other revenue due to Franchisee under this Agreement and all other agreements with Liberty and the Affiliated Companies, shall initially be paid to Liberty. The term "Financial Products" as used in this Agreement means refund-based loan programs and/or a means for customers to obtain a refund using electronic deposit services that Liberty, or a company associated with Liberty, may offer to you. Liberty will remit any remaining balance to you from the above described fees and rebates after deducting monies you owe to Liberty, and/or SiempreTax+ if applicable, and deducting monies to hold for application to upcoming amounts due to Liberty and/or SiempreTax+ including, but not limited to, unbilled royalties or amounts related to an internal review.

**l.  Sales or Gross Receipts Tax.**  If required by the state or locality where your Territory is located, the initial franchise fee, royalties, and advertising fees will be subject to sales or gross receipts tax. You must pay these taxes to Liberty at the same time and in the same manner as you pay the royalties and fees to Liberty.

**m. Transmitter, Software, or Electronic Filing Fee.**  Liberty reserves the right to impose a fee charged to you or your customers related to transmission of Financial Products, the provision of software, or the electronic filing of tax returns and, if charged to customers, may rebate a portion of the fee to you. Liberty may vary the dollar amount of the fee and may change its name. Any such fee is not included in your Gross Receipts.

**n.  Call Center.**  If you elect to use Liberty's call center to handle customer appointments, customer follow up, tax school calls, or other calls, you must pay to Liberty a fee for each such call pursuant to Liberty's schedule of call center charges. This schedule is subject to future modification by Liberty.

**o.  Cash in a Flash Financing Set up Fee.**  If you elect to apply for cash in a flash financing through Liberty, you must pay to Liberty any set up fee that Liberty imposes pursuant to Liberty's schedule of fees. This schedule is subject to future modification by Liberty.

**p.  Assessment Related to Understatement of Revenues and Failure to Comply.**  Pursuant to the rights and obligations specified in Section 7 of this Agreement, if Liberty determines that you are underreporting Gross Receipts, you must pay to Liberty additional royalties and interest in the amount of 12% per annum on the undisclosed amount as determined by Liberty. If the excess determined following a review of your operations, books and records is more than two percent (2%) of the Gross Receipts for the period in question, you must also pay the costs of the review. Additionally, if a review results from your failure to maintain and/or provide records as required in Section 7 or if you fail to attend, coordinate or permit Liberty's review, in Liberty's determination, you must pay the costs of the review or attempted review, regardless of the result. All amounts referenced in this paragraph will be billed to your accounts and notes receivable balance with Liberty. The costs of any review pursuant to the terms of this Agreement shall be determined by Liberty. Liberty's acceptance of payments of royalties or Gross Receipts reports shall be without prejudice and shall in no case constitute a waiver

DocuSign Envelope ID: 6E9A9F19-F0F0-4E32-9592-D6DAA40F8A2D

of Liberty's rights to claim any delinquent royalties, or to require a review of your operations, books and records, as provided for herein.

## 5. OBLIGATIONS OF FRANCHISOR

**a. Training.** Liberty provides for new franchisees a required five (5) day or longer EOT and a required one (1) day Hands on Training ("HOT") taught by an existing franchisee at their Liberty Tax office. Franchisees that receive financing may also be required to attend and pass Liberty's GMi Training. Liberty does not charge for EOT, HOT or GMi Training unless you register and fail to attend. Additionally, you are responsible for all expenses you incur as a result of training, such as travel, lodging and meals.

**b. Operations Manual.** Liberty will loan you a copy of the dual Liberty/SiempreTax+ Operations Manual ("Manual" or "Operations Manual") to offer guidance in the operation of your Franchised Business.

**c. Site Selection.** Liberty provides guidance and advice to you regarding the selection of the location of your office(s). You may not sign a lease or locate an office until Liberty approves the location of your office. Liberty's approval of the location of a site is not a guarantee of success in that location or a warranty or assurance as to any aspect of the office or its location.

**d. Advertising and Marketing.** Liberty raises fees related to marketing through the advertising fees paid under Liberty's franchise agreements. Liberty will contribute advertising fees from company offices. Liberty disburses advertising fees to develop, produce, distribute and/or conduct advertising programs, marketing programs, public relations, and marketing research. Liberty spends advertising fees on a national, regional or local basis for television, electronic, radio and print advertising as Liberty determines to be appropriate. Liberty may produce advertising in-house and/or through an advertising agency. Liberty pays all costs of such activities, including a share of corporate overhead related to advertising and marketing, with advertising fees. You may also use your own advertising material provided that Liberty first approves it for compliance.

**e. Software.** Liberty provides tax return preparation software.

**f. Tax and Technical Support.** Liberty provides reasonable telephone and/or internet support for your questions regarding federal and state individual income tax return preparation, electronic filing, and the use of software specified by Liberty. However, Liberty will not provide support on any equipment that does not meet Liberty's then current specifications or issues related to the operating system of a computer.

**g. Electronic Filing.** Liberty provides the ability to file individual federal and certain individual state tax returns electronically, if such method of filing is reasonably available from the respective taxing authority. You must have and maintain a valid Electronic Filing Identification Number ("EFIN").

**h. Financial Products.** If reasonably available and feasible (in Liberty's sole determination), Liberty will offer you the ability to participate in Financial Products. If offered, your participation in

Financial Products programs is subject to mutual agreement between you, Liberty and the Financial Products provider.

**i.    Operational Support.**  Liberty advises you in the budgeting for and operation of your Franchised Business. Liberty's approval of your budget is not a guarantee of success.

**j.    Advanced and Update Training and Conference Calls.**  Liberty provides and may require your attendance at advanced training for experienced franchisees. Liberty also provides and requires attendance by all franchisees at update training. Liberty may offer advanced and update training at various sites that Liberty selects across the country, or Liberty may offer such training through the internet or electronically. The agenda for advanced training varies, but often will focus on improving business management skills in order to increase profitability. Liberty does not charge for advanced or update training, but you are responsible for all expenses that you incur as a result of attending training, such as travel, lodging and meals.  Liberty may also require that you attend a reasonable number of toll free conference calls to learn the latest operational and marketing tips. Such calls may either be attended live or through online replay.

**k.  Supply Source.**  Liberty may offer for sale or locate a source for purchasing supplies, forms and equipment that may be necessary to conduct the Franchised Business, as reasonably determined by Liberty.

**l.    Leasing.**  Liberty may make arrangements to refer you to a company that offers leasing of furniture, fixtures, signs, equipment, and possibly provides loans for franchise fees and working capital. These leasing or loan programs will be financed and administered by a third party. Liberty cannot guarantee that you will be offered leasing or loans, as the third party company will make individual determinations.

**m.  Financing through Liberty.**  Liberty may, in Liberty's sole discretion, provide financing for a portion of the initial franchise fee or other costs associated with the Franchised Business. The terms of such financing are subject to change. You must be in compliance with this Agreement to qualify for any such financing and may be required to obtain certain certifications and trainings including, but not limited to, Affordable Care Act certification and completion of GMi Training. If Liberty provides financing, you will be required to enter into a promissory note reflecting the terms of the financing arrangement. If Liberty provides financing, you must submit monthly financial information to Liberty including, but not limited to, income statements, balance sheets, and supporting documents. You agree to submit the required information at the time and in the format specified by Liberty. Liberty reserves the right to adjust this policy to require more frequent financial statements on a continuing basis and you agree to comply with any such change in policy. Liberty also may request personal financial statements. All financial statements must be prepared in conformity with generally accepted accounting principles.

**n.  Group Discounts.**  Liberty may provide you with the opportunity to participate in group purchasing programs that offer group discounts. The discounts and terms for these opportunities will vary.

**o.  Area Developers.**   In those areas where Liberty presently or in the future uses an Area Developer, Liberty reserves the right to delegate some portion of the responsibility for certain duties to the Area Developer including, but not limited to, site selection assistance, limited marketing assistance, and operating assistance. Area Developers do not have any authority to approve advertising or marketing material of any kind.

## 6.  OBLIGATIONS OF FRANCHISEE

**a.  Training.**   You must attend and successfully complete Liberty's EOT and HOT before you may operate a Liberty office.  Liberty may allow or require a general manager to attend on your behalf.

**b.  Use of Liberty Marks.**

(i)    **Liberty allows you to use Liberty's Marks**.  Liberty allows you to use Liberty's Marks to hold out your Liberty Tax Service business to the public. You agree to exclusively use Liberty's Marks as Liberty develops them for this purpose only.

(ii)   **You must obtain prior advertising approval**.   You must either use pre-approved advertising templates that Liberty or Liberty's approved vendors provide, or you must obtain Liberty's prior written consent before using the Marks in any way and before using any marketing or promotional material, including internet advertising.

(iii)   **No private website allowed.**  You may not have a website for your Franchised Business, or utilize mobile apps or other digital marketing, without Liberty's prior written approval.

(iv)   **Marketing to National Companies**.  You must obtain written permission from Liberty before marketing on the premises (building and parking lot) of any national company. National companies include, by way of example, Wal-Mart, K-mart, and Sears.

(v)    **No use of "Liberty" within a company name**.  You may not use the word "JTH" "Dona Libertad," "Liberty," "Libtax", "Siempre", "SiempreTax," "SiempreTax+" or the name, or any portion of the name of Liberty's Affiliated Companies, as any part of the name of a corporation, LLC or other entity except as may be agreed between you and such company in a separate franchise agreement for that company. However, "Liberty Tax Service" followed by your entity number shall be your "doing business as" name for an entity that owns this Franchise, sometimes also called your "assumed name," "trading as" name, or "fictitious name."

(vi)   **No confusingly similar marks**.   You agree not to use any marks which could be confused with Liberty's Marks.

(vii)  **Liberty may update or change Liberty's Marks**.  Liberty may replace, modify or add to the Marks. If Liberty replaces, modifies or  creates additional marks, you agree to update or replace your signs, supplies, etc., to reflect the new marks in the time frame Liberty provides and at your own expense. Liberty will not change exterior signage requirements more than once every four (4) years unless legally required.

**c.  Signs.**  You must display an exterior lighted sign at each of your offices. Liberty must approve all signs before you order or display them.

**d.  Starting Date.**  You agree to begin operations and be open for business no later than January 2 following the Effective Date of this Agreement and for every year thereafter.

**e.  Operating Hours.**  You agree to exercise your best efforts to promote the Franchised Business and agree, at a minimum, to be open for business during the hours specified in the Operations Manual.

**f.  Target Volume.**  You must use your best efforts to promote the Franchised Business. Beginning in your fifth (5th) Tax Season and continuing in each Tax Season thereafter, you must prepare at least 1,000 federal income tax returns in your Territory ("Target Volume").

**g.  Software.**  You must use the software that Liberty provides.  You may not use, install or have any other federal or state personal income tax return preparation or electronic filing software on any computers used in the Franchised Business.

**h.  Telephone Number and Email Account.**  You must obtain and maintain a Liberty Tax Service telephone number to be used solely to transact the Franchised Business. You may purchase a white and yellow page listing through Liberty's approved vendor and may be required to purchase a yellow page advertisement and/or contribute to a group listing or advertisement per Liberty's recommendations.  You also must provide and maintain an email account sufficient for communications between you and Liberty.

**i.  Equipment.**  You must obtain and use a computer system that meets Liberty's current specifications and any modifications to these specifications. All work stations must be purchased from Liberty's approved vendor including, but not limited to, tax return preparation and processing computers. Liberty may update the specifications. When the specifications are updated, you must update or upgrade the computer system, at your sole cost.  Specifications will not be updated during a Tax Season except upon an emergency, as reasonably determined by Liberty.    You    agree    to maintain such computer systems in compliance with industry standards regarding information security and make any necessary updates to ensure that information is secure, including, but not limited to, encryption.

**j.  Insurance.**  During the term of this Agreement, you must procure and maintain an insurance policy or policies with at least the following coverage or such other coverage as may be specified in the Operations Manual:  (i) comprehensive general liability of $1 million per office and (ii) worker's compensation as required by your state law. Liberty may require you to obtain additional insurance, such as errors and omissions insurance, as may be specified in the Manual. You must name Liberty as an additional insured on all policies required by this Agreement or the Manual.

**k.  Electronic Filing.**  If Liberty provides or recommends a source for electronically filing tax returns, you are required to offer electronic filing and to use this source exclusively for all electronic filing.

DocuSign Envelope ID: 6E6A9F19-F0E9-4E32-9592-D6DAA4058A2D

**l. Financial Products.** If Liberty negotiates an agreement with a third party Provider to allow you to offer Financial Products, you are required to exclusively use such Providers as Liberty designates and to offer Financial Products to your customers.

**m. Operations Manual.** You acknowledge the importance of consistency of quality, service and operation among all Liberty Tax franchised offices and, therefore, agree to operate the Franchised Business in conformity with all standards to be maintained, techniques and operating procedures that Liberty may prescribe in Liberty's manuals or otherwise in writing, and to refrain from deviating therefrom without Liberty's prior written consent. Liberty will loan you a copy of the Manual and provide you with other relevant manuals. Liberty may modify the Manual or any other manual, in order to adjust for competitive changes, technological advancements, legal requirements and attempts to improve in the marketplace. You agree to operate the Franchised Business according to the manuals and any modifications including, but not limited to, the Manual, as may be updated or supplemented by memoranda, bulletin, email or other similar mechanism that together with the Manual, contain the mandatory and suggested procedures and specifications that are prescribed for the Franchised Business.

**n. Participation.** You agree that the services of the Franchised Business will be provided under your direct supervision and control and/or under the direct supervision and control of a full-time general manager who has been approved by, and not later disapproved by Liberty. Liberty will not approve a general manager prior to their successful completion of EOT.

**o. Return Check.** You must prepare each income tax return accurately and in accordance with federal, state and local laws. You must check each return thoroughly.

**p. Tax School.** If you complete EOT before September 1 of the year of the Effective Date of this Agreement, and during every year after your first Tax Season regardless of EOT, you must conduct an intensive 6 to 10 week tax course in the period of September through December in accordance with the specifications in the Manual. Additionally, you must conduct a one-week tax course during every January, including the January of your first (1st) Tax Season, in accordance with the specifications in the Manual.

**q. Employee Training.** You shall conduct and require each of your employees to attend an employee policy and procedure training course as specified by Liberty. You are solely responsible for hiring, firing, compensating, paying applicable payroll taxes and day to day supervision and control over your employees. You acknowledge and agree that Liberty shall not, and shall have no right or authority to, control your employees. Liberty shall have no right or authority with respect to the hiring, termination, discipline, work schedules, pay rates or pay methods of your employees. You acknowledge and agree that all employees shall be your exclusive employees and shall not be employees of Liberty nor joint employees of you and Liberty. Liberty neither dictates nor controls labor or employment matters for franchisees and their employees.

**r. Customer Service.** You shall employ and train sufficient personnel to accommodate all customers without undue delay. You shall provide all services and abide by all customer service policies described in the Manual, including, but not limited to, the money back guarantee. You must operate in a manner that protects Liberty's goodwill, reputation and Marks.

**s.  Office Condition.**  You shall maintain offices that are neat and professional in appearance. Further, you may not offer products or services through your Liberty offices other than the franchise services authorized here (i.e., tax preparation, electronic filing, and Financial Products, all processed and reported through Liberty's systems) without Liberty's prior written approval.

**t.  Supplies and Furniture.**  You agree that in order to establish a standard and consistent delivery of Liberty Tax services, certain items must be used in the operation of the Franchised Business. You must use the items required in the Manual (e.g. client envelopes and folders, interview worksheets, interior signs sets). You are responsible for the cost of all items needed to conduct the Franchised Business including, but not limited to, supplies, furniture, equipment, leasing and real estate costs.

**u.  Laws and Regulations.**  You agree to comply with all federal, state and local laws, regulations, ordinances and the like, and to be responsible for such compliance by all employees of the Franchised Business. You will abide by all legal requirements and be solely responsible for securing any necessary permits, certificates, licenses and consents to operate your business. You will not request or require that any customer of the Franchised Business waive, or permit you to disclaim your or any employee's responsibility to comply with any legal requirements or applicable laws. If requested by Liberty, you agree to report any noncompliance with federal or state tax laws or regulations by the Franchised Business and/or its employees to the IRS and/or any applicable state taxing authority. You also agree to provide Liberty with notice of any reports of non-compliance you have filed.

**v.  Audits.**  If the IRS or any governmental agency audits or investigates your Liberty operations, or any tax preparer employed in the Franchised Business, or otherwise requires that you, or such tax preparer, provide documents to the IRS or other governmental agency related to the Franchised Business, you agree to notify Liberty immediately upon receiving notice of the audit, investigation or request for documents and comply and cooperate with any such lawful investigation or demand for information. You further agree to cause all employees of the Franchised Business to comply and cooperate with any such lawful investigation or demand for information. You agree to immediately provide Liberty with a copy of any notice of audit, subpoena or request for documents. You agree to immediately provide Liberty with a copy of the findings of any audit or investigation. You hereby waive any right to privacy, confidentiality and similar protections and restrictions with respect to any such audit or investigation. You authorize the IRS, and any governmental agency, to disclose information to Liberty and its representatives related to any such audit or investigation and provide copies of any requested information. You hereby authorize Liberty to make such requests for information.

**w.  EFIN.**  For a territory that did not have an existing company owned or franchisee owned tax preparation office in the most recent Tax Season ("Undeveloped Territory"), you must obtain an EFIN from the IRS prior to operation and no later than January 2 of your first Tax Season, and provide us with satisfactory documentation, in Liberty's determination, that you have received a valid EFIN.  For a Developed Territory, you will be required to obtain a valid EFIN prior to operation, and provide us with satisfactory documentation, in Liberty's determination, that you have received a valid EFIN. After obtaining an EFIN pursuant to the above provisions, you will be required to maintain a valid EFIN

throughout the term of this Agreement. You agree to comply with all of the requirements of IRS Publication 3112, 1345 or any applicable successor publications relevant to EFINs, as well as all applicable state laws and regulations related to electronic filing. You hereby authorize the IRS and any state tax authority to disclose to Liberty the reasons for any EFIN denial or suspension and to provide Liberty with copies of all EFIN application materials, suspension, expulsion and denial notices.

**x.   Site Selection and Leases.**   As described in Section 5.c., Liberty provides guidance to you regarding the selection of the location of your office and all office locations must be approved by Liberty prior to your execution of a lease for that site. Liberty may require the lease to be held in Liberty's name at the option of Liberty. If the lease is held in your name and unless otherwise agreed in writing, you must attempt to include a provision in any lease for an approved location that the lessor consents to an assignment of the lease to Liberty, or its designee, with the right to sublease at Liberty's option. You agree to provide Liberty with a copy of the lease for each approved location within seven (7) days of execution.

**xi.   Marketable Title.** You represent and warrant that you will maintain good and marketable title to the assets of the franchised business and all leases, and the absolute and unqualified right to sell, assign and transfer them to Liberty, free and clear of all liens, pledges and encumbrances of any kind.

## 7.   REPORTS AND REVIEW

**a.   Gross Receipt Report.**   You must send Liberty a Gross Receipt report in the manner and form and at the times Liberty specifies. Presently, you must report your Gross Receipts on the fifth (5th) of the month for Gross Receipts received during the prior month. You agree that Liberty has the right to lock your Gross Receipt report at any time.

**b.   Profit and Loss.**   By May 30 of each year, you must send Liberty an unaudited profit and loss statement of the Franchised Business, in the manner and form Liberty specifies, for the twelve (12) month period ending April 30.

**c.   Review.**   You agree to permit Liberty and/or Liberty's agents the right to enter your Liberty Tax offices during normal, required business hours, without prior notice, and inspect your operations and inspect and copy all of your paper and electronic business books and records related to the Franchised Business and any other operations taking place at your Franchised Business. This includes, but is not limited to, the right to inspect and copy all tax returns and bank statements that may be indicative of revenues from the Franchised Business.

**d.   Mail Reviews.**   If Liberty requests a copy of your customer receipts (paper and/or electronic) or any other business records, including, but not limited to customer taxpayer records related to the Franchised Business, you must send Liberty these records at your expense within five (5) days of receiving Liberty's request and within 48 hours of receiving Liberty's request during the Tax Season.

**e.   Electronic Review.**   Liberty may cause programs to run on your computer systems that may send information to Liberty and may make changes to the computer systems.  Liberty agrees that the use of such programs will not unreasonably interfere with your operation of the Franchised Business and you agree to allow such programs to run without interference by you. You acknowledge that

DocuSign Envelope ID: 6E5A9F19-F0F0-4E32-9592-D6DAA405BA2D

Liberty will use information obtained from your computer system to make business decisions. You hereby grant Liberty the right to access and make changes to the computer systems in your office and authorize Liberty to obtain any and all information related to the Franchised Business. Additionally, following the expiration, termination, transfer or nonrenewal of this Agreement, you grant Liberty the right to remotely access and make changes to the computers used in operation of the franchised business including, but not limited to, removing all Confidential Information from the computers.

**f. Costs of Review.**  Depending on the circumstances, you may be responsible for the costs of a review, or attempted review, as more fully set forth in Section 4(p).

**g. Background Information.**  During the term of this Agreement, you authorize Liberty to obtain background information related to your employment, credit and financial history, as well as your criminal and driving records.

**h. Heightened Supervision.**  In the event that Liberty determines there to be abusive tax returns practices related to the operation of your franchised business, Liberty also has the right to require that you implement a plan related to the issues that Liberty discovers. You agree to comply with any such plan imposed. As a part of this plan, you may be subject to various additional requirements including, but not limited to, compliance with heightened monitoring requirements, attending additional trainings and hiring compliance staff with qualifications set out by Liberty.

**8. TERMINATION** Franchisee acknowledges and agrees that all of the obligations under this Agreement are material and essential obligations, that nonperformance of the obligations herein will adversely and substantially affect Liberty and the Liberty system and that Liberty's exercise of the rights and remedies herein are appropriate and reasonable.

**a. Nonrenewal.**  You may terminate this Agreement by not renewing; that is, by not notifying Liberty in writing of your desire to renew at least one hundred eighty (180) days prior to the expiration of this Agreement.  If you terminate pursuant to this Section, you must still comply with all of the post-termination provisions of this Agreement.

**b. Termination Without Notice and Opportunity to Cure.**  Liberty may terminate this Agreement without notice and the opportunity to cure for any of the following reasons:

(i)     If you become insolvent, are unable to pay debts as they come due or take any steps to seek protection from creditors, or if a receiver (permanent or temporary) is appointed by a creditor or a court of competent authority, or if you make a general assignment for the benefit of creditors;

(ii)    If a final judgment of record against you or your Franchised Business remains unsatisfied for thirty (30) days or longer;

(iii)   If you breach 6(v) of this Agreement, or if you fail to immediately notify us about or comply with any governmental investigation or audit or, if we determine that you, or someone acting under your supervision and control, has committed a material violation of any law, ordinance, rule or regulation of a governmental agency or department reasonably associated with the operation of the Franchised Business, committed any act that is or

could be, in Liberty's determination, harmful, prejudicial or injurious to the Liberty brand or any of the Affiliated Companies or any employee, franchisee, area developer or agent of such companies, or if the IRS or any federal, state or local governmental entity or agency initiates a criminal, civil or administrative proceeding or takes any administrative action against you or the Franchised Business relating to compliance with applicable tax laws and regulations, and such proceeding or action is not resolved or dismissed in favor of you, or the Franchised Business, within thirty (30) days of its initiation;

(iv)   If you abandon the Franchised Business or discontinue the active operation of any active office of the Franchised Business for three (3) business days during any Tax Season or seven (7) business days otherwise, except where active operation was not reasonably possible or where specifically approved by Liberty in writing prior thereto;

(v)    If you fail to open for business in the Territory by January 2, as specified pursuant to Section 6(d);

(vi)   If you operate any offices or advertise outside the Territory without Liberty's permission;

(vii)  If you fail to meet the Target Volume specified in Section 6(f) above in the Territory during your fifth Tax Season or in any Tax Season thereafter;

(viii) If you fail to use the software, electronic filing services or Financial Products Liberty provides or recommends;

(ix)   If you do not obtain an EFIN from the IRS for each office in the Territory prior to operation or, at the latest, by January 2 of your first Tax Season, if any EFIN application to which you are a party is denied at any time, or if any of your EFINs are suspended by the IRS or any state taxing authority for any reason at any time thereafter or you are expelled from the e-file program;

(x)    If you include a materially false representation or omission of fact in your Confidential Franchise Application to Liberty or if you under-report Gross Receipts, falsify financial data, make a false submission with regard to any required reports or otherwise commit an act of fraud with respect to your acquisition or operation of the Franchised Business or your rights or obligations under this Agreement;

(xi)   If you commit three (3) or more breaches of this Agreement, the Operations Manual, or any other agreement (including promissory notes) with Liberty or the Affiliated Companies, in any twelve (12) month period regardless of whether such breaches were cured after notice; or

(xii)  If you fail to timely execute all documents necessary for renewal.

**c. Termination with Notice and Opportunity to Cure.** No fewer than seven (7) days after Liberty has sent you notice of your opportunity to cure, Liberty may terminate this Agreement if:

(i)     You, or any entity in which you are affiliated, violate any term or condition of this Agreement, the Operations Manual, or any other agreement with Liberty or the Affiliated Companies;

(ii)    Any amount owing to Liberty or the Affiliated Companies, whether related to the Territory or not, is more than thirty (30) days past due, or Liberty determines that you have materially and substantively underreported revenue;

(iii)   You fail to comply with IRS standards applicable to e-file providers as stated in IRS Publications 3112, 1345 or another or successor IRS publication applicable to e-file providers or you fail to comply with state or local regulations related to electronic filing; or

(iv)    You are more than sixty (60) days in default of any loan, lease or sublease agreement with a third party, affecting the Franchised Business.

## 9.  POST-TERMINATION OBLIGATIONS

Upon expiration, termination, transfer or nonrenewal of this Agreement for any reason by any party, including a sale of the Franchised Business, you must immediately:

**a.**  Sell to Liberty (if Liberty elects pursuant to Section 11) any or all equipment, signs, trade fixtures, and furnishings used in the Franchised Business, or if Liberty does not so elect, remove all Marks or other distinguishing indicia from all of your offices and other premises; and

**b.**  Stop identifying yourself as a Liberty Tax franchisee, never hold out as a former Liberty Tax franchisee and forever cease the use of any of the Marks or any other marks that may be confused with the Marks; and

**c.**  Stop using all literature and forms received from Liberty and other items bearing the Marks; and

**d.**  Pay to Liberty all amounts owing to Liberty, whether related to the Territory or not; and

**e.**  Transfer to Liberty all telephone numbers, listings and advertisements used in relation to the Franchised Business and deliver to Liberty copies of such documents of transfer; and

**f.**  Assign to Liberty (if Liberty elects) any interest that you have in any lease, sublease or any other agreement related to the Franchised Business; and

**g.**  Deliver to Liberty any original and all copies, including electronic copies and media, of lists and other sources of information containing the names, addresses, e-mail addresses, or phone numbers of customers of the Franchised Business; and

**h.**  Deliver to Liberty any original and all copies, including electronic copies and media, containing customer tax returns, files, and records; and

    **i.**  Deliver to Liberty all copies of the Manual and any updates; and

    **j.**  Cancel all fictitious name listings which you have filed that utilize any of the Marks; and

    **k.**  Adhere to all applicable provisions contained herein including, but not limited to, the post-term covenants not to compete and not to solicit.

## 10. ADDITIONAL IN-TERM AND POST-TERM COVENANTS

    **a. In-Term Covenant Not to Compete.** During the term of this Agreement, you agree not to directly or indirectly, for a fee or charge, in the United States or Canada, prepare or electronically file income tax returns, or offer Financial Products, except, if applicable, in your capacity as a SiempreTax+ or Liberty Tax franchisee pursuant to a valid SiempreTax+ or Liberty franchise agreement.

    **b. Post-Term Covenant Not to Compete.** For a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, or your removal as a signator to this Agreement, you agree not to directly or indirectly, for a fee or charge, prepare or electronically file income tax returns, or offer Financial Products, within the Territory or within twenty-five (25) miles of the boundaries of the Territory except, if applicable, in your capacity as a SiempreTax+ or Liberty Tax franchisee pursuant to a valid SiempreTax+ or Liberty franchise agreement.

    **c. Liquidated Monetary Damages.** If you fail to comply with either of the above covenants not to compete, you agree to pay Liberty, as partial liquidated monetary damages, royalties and advertising fees as set forth in Section 4 of this Agreement against the greater of: (1) the total Gross Receipts during your last fiscal year (May 1- April 30) of operation for each Territory in which you are in breach; or (2) the total revenue you received in breach of a covenant not to compete. The greater of these two dollar figures shall be multiplied by two (2) to give consideration to lost repeat and referral business to Liberty. You acknowledge that any breach of the covenants not to compete causes damage to the integrity of Liberty's franchised system, loss of franchisee and customer goodwill and irreparable harm. You specifically acknowledge that the full measure of these damages is greater than that specified herein.

    **d. Covenant Not to Solicit.** For a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, or your removal as a signator to this Agreement, you agree that you will not, within the Territory or within twenty-five (25) miles of the boundaries of the Territory, directly or indirectly solicit any person or entity served by any of your prior Liberty offices within the last twelve (12) months that were a Liberty franchisee, for the purpose of offering such person or entity, for a fee or charge, income tax preparation, electronic filing of tax returns, or Financial Products except, if applicable, in your capacity as a SiempreTax+ or Liberty Tax franchisee pursuant to a valid SiempreTax+ or Liberty franchise agreement. You further agree for a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, or your removal as a signator to this Agreement, not to employ or solicit for

DocuSign Envelope ID: 6E6A9F19-F0F9-4E32-8593-D6DAA4058A3D

employment without Liberty's prior written consent any of Liberty's employees or those of any other of Liberty's franchisees, or induce any such employee to leave his or her employ.

**e. Covenant Not to Lease.** You agree that during the term of this Agreement, you will not lease, sub-lease, assign or guaranty a lease in the Territory to or for a person or entity who will offer income tax preparation at such an office. You also agree that upon the termination or expiration of this Agreement, if Liberty or a duly authorized Liberty franchisee desires to use any of your former Liberty office locations in the Territory, you will use reasonable good faith efforts to help Liberty secure possession of the office locations through a lease assignment or otherwise. Otherwise, you agree to use reasonable, good faith efforts to ensure that, for a twenty-four (24) month period after non-renewal or termination of this Agreement, no person or entity will offer income tax preparation at the properties where your former Liberty offices were located. Good faith efforts include a duty not to sub-lease or assign the leases of your office location to a person or entity who will offer income tax preparation at such office locations.

**f. No Harmful Acts.** You agree not to disparage Liberty or the Affiliated Companies, including their current and former employees, directors or agents. You also agree not to do any act that is, in Liberty's determination, harmful, prejudicial or injurious to Liberty or the Affiliated Companies, including their current and former employees, directors or agents.

**g. Section 10 Conditions Required for Grant of Franchise.** You hereby acknowledge that the qualifications to be a Liberty franchisee are special, unique and extraordinary, and that Liberty would not enter into this Agreement without the inclusion of the conditions set forth in Section 10.

**h. Waivers.** You acknowledge and agree that the provisions of Section 10 are reasonable, valid and not contrary to the public interest. You waive all defenses to the strict enforcement of Section 10. You further agree that Liberty is entitled to a temporary restraining order, preliminary and/or permanent injunction for any breach of duties under any of the non-monetary obligations of Sections 9 and 10. You hereby waive any requirement that Liberty post a bond related to any temporary restraining order or injunctions requested as a result of an alleged violation of Sections 9 and 10.

**i. Survival.** The covenants contained in Section 10 shall survive any termination or expiration of this Agreement.

**j. Severability.** If any covenant or provision within Section 10 is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not affect or impair the validity of any other covenant or provision of this Agreement. Further, these obligations are considered independent of any other provision in this Agreement, and the existence of any claim or cause of action by either party to this Agreement against the other, whether based upon this Agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

## 11. OPTION TO PURCHASE ASSETS

Upon termination or expiration of this Agreement, you hereby grant Liberty or its assignee the option to purchase from you some or all of the assets (including, but not limited to, supplies, equipment,

signs, furnishings and fixtures) of the Franchised Business. Liberty may exercise this option by transmitting notice to you within thirty (30) days from the effective date of expiration or termination. If Liberty elects to exercise this option, the purchase price for the assets of the Franchised Business, will be the "adjusted book value" as described below. Liberty will have the right to set off and reduce the purchase price by any and all amounts owed by you to Liberty or any of Liberty's affiliates. The "adjusted book value" is the book value of the assets of the Franchised Business as listed on the balance sheet in the financial statements of the Franchised Business as of the date of the termination or expiration. There shall be no allocation for goodwill or any similar adjustment in the adjusted book value.

## 12. CONFIDENTIAL INFORMATION

**a. Disclosure.**    Liberty possesses confidential information including, but not limited to, methods of operation, service and other methods, techniques, formats, specifications, procedures, information, systems, knowledge of and experience in operating and franchising offices, customer information and marketing information ("Confidential Information"). Liberty may disclose some or all of the Confidential Information to you and your representatives while you operate the Franchised Business. During the term of this Agreement and following the expiration or termination of this Agreement, you covenant not to directly or indirectly communicate, divulge, or use any Confidential Information for your personal benefit or the benefit of any other person or legal entity except as specifically provided by the terms of this Agreement or permitted by Liberty in writing prior to disclosure. Upon the transfer, expiration, termination or nonrenewal of this Agreement, you agree that you will never use or disclose, and will not permit any of your representatives to use or disclose, Liberty's Confidential Information in any manner whatsoever, including, without limitation, in the design, development or operation of any business substantially similar to the Franchised Business. This provision shall not apply to information that: (i) at the time of disclosure is readily available to the public; (ii) after disclosure becomes readily available to the trade or public other than through breach of this Agreement; (iii) is subsequently lawfully and in good faith obtained by you from an independent third party without breach of this Agreement; (iv) was in your possession prior to the date of Liberty's disclosure to you; or (v) is disclosed to others in accordance with the terms of a prior written authorization between you and Liberty.  The protections granted in this Section shall be in addition to all other protections for Confidential Information provided by law or equity.

**b. Interest.**  You will acquire no interest in Liberty's Confidential Information, but are provided the right to use Confidential Information disclosed to you for the purposes of developing and operating the Franchised Business pursuant to this Agreement. You acknowledge that it would be an unfair method of competition to use or duplicate any Confidential Information other than in connection with the operation of the Franchised Business. No part of the Liberty Tax franchise system nor any document or exhibit forming any part thereof shall be distributed, utilized or reproduced in any form or by any means, without Liberty's prior written consent.

**c. Use.**    You agree that you will: (i) refrain from using Confidential Information for any purpose other than the operation of the Franchised Business pursuant to this Agreement; (ii) maintain absolute confidentiality of Confidential Information during and after the term of this Agreement; (iii) not make unauthorized copies of any portion of Confidential Information; and (iv) adopt and implement all reasonable procedures, including, but not limited to, those required by Liberty, to prevent unauthorized

use of or disclosure of Confidential Information, including, but not limited to, restrictions on disclosure to your employees and the use of nondisclosure and non-competition clauses in employment agreements with employees that have access to Confidential Information.

**d. Disclosure Required by Law.** If disclosure of any Confidential information is required by law, then you may make such disclosure after providing Liberty with reasonable notice so that Liberty, at its expense, may seek a protective order or other relief.

## 13. INDEPENDENT CONTRACT AND INDEMNIFICATION

You and Liberty are independent contractors to each other. Neither you nor Liberty are an agent, fiduciary, partner, employee, or a participant in a joint venture and neither you nor Liberty have the authority to hold out as such to third parties. You do not have any authority to bind or obligate Liberty. Liberty is not and will not be liable for any act, omission, debt, or other obligation of yours.

You are responsible for all claims, demands, losses, damages and/or contractual liability to third parties which may arise at any time related to your operation of the Franchised Business. You agree to defend, indemnify and hold Liberty, Liberty's parent company and Affiliated Companies and their employees harmless from all claims, demands, losses, damages, and/or contractual liability (including attorney's fees) to third parties. You agree to reasonable cooperation in the defense of any claim. Liberty and the Affiliated Companies shall have the right to control settlement and selection of counsel and defense of any claim.

## 14. DEATH OR INCAPACITY

**a. Assistance and Reimbursement.** In the event of the death or incapacity of Franchisee, Liberty is entitled, but not required, to render assistance to maintain smooth and continued operation of the Franchised Business.  Liberty shall be entitled to reimbursement from Franchisee or Franchisee's estate for reasonable expenditures incurred.

**b. Time Requirements.** Pursuant to this Section, death or incapacity shall not be grounds for termination of this Agreement unless:

    i) Franchisee or his/her legal representative fails for a period of one hundred eighty (180) days after such death or incapacity to commence action to assign this Agreement according to controlling state law regarding the affairs of a deceased or incapacitated person and the terms of this Agreement; or

    ii) Such assignment is not completed within one (1) year after death or incapacity.

**c. Termination.** Liberty shall have the right to terminate this Agreement if one of the conditions listed in 14(b) are not satisfied within the time frame provided. Nothing in this Section shall be construed to limit the provisions of Section 8 regarding termination. Further, the terms and conditions of Section 15 apply to a transfer upon death or incapacity.

    **d.  Disclosure Required by Law.**    If disclosure of any Confidential information is required by law, then you may make such disclosure after providing Liberty with reasonable notice so that Liberty, at its expense, may seek a protective order or other relief.

## 15.  ASSIGNABILITY AND FIRST RIGHT OF REFUSAL

    **a.  Assignability Generally.**  Liberty may assign this Agreement to an assignee who agrees to remain bound by its terms.  Liberty does not permit a sub-license of the Franchise.  Your interest under this Agreement or your ownership in the Franchise may be transferred or assigned only if you comply with the provisions in this Section and such transfer is approved by Liberty in writing. No interest may be transferred unless you are in full compliance with this Agreement and current in all monies owed to Liberty. Liberty may require any transfer of an ownership interest in this Agreement to be joined by all signatories to this Agreement, except in the case of death or legal disability.

    **b.  First Right of Refusal.**  If you have received and desire to accept a signed, bona fide offer to purchase or otherwise transfer the Franchise or any interest in the Franchise, Liberty shall have the option ("Right of First Refusal") to purchase the Franchise or interest. You shall offer the Right of First Refusal by providing written notice to Liberty and including a copy of the signed offer to purchase that you received (collectively "Notice"). Liberty shall have the right to purchase the Franchise or interest in the Franchise for the price and upon the terms set out in the Notice; however, Liberty may substitute cash for any non-cash form of payment proposed and Liberty shall have sixty (60) days after the exercise of Liberty's Right of First Refusal to close the purchase. Liberty will notify you in writing within fifteen (15) days of receipt of the Notice if it plans to exercise the Right of First Refusal. Upon the transmission of notice by Liberty that it plans to exercise the Right of First Refusal, there shall immediately arise between Liberty and Franchisee, or its owners, a binding contract of purchase and sale at the price and terms contained in the Notice previously provided by you.

    **c.  Transfer to Controlled Entity.**  A transfer to a "Controlled Entity" shall not trigger the Right of First Refusal. A "Controlled Entity" is an entity in which Franchisee (or Franchisee's managers, members, owners, partners, shareholders or officers as of the date of this Agreement) is the beneficial owner of 100% of each class of voting ownership interest.  At the time of the desired transfer of interest to a Controlled Entity, you must notify Liberty in writing of the name of the Controlled Entity and the name and address of each officer, director, shareholder, member, partner, or similar person and their respective ownership interest, and provide Liberty with the applicable organizational documents of the business entity. Each such person of the Controlled Entity shall sign, on behalf of the business entity and in their respective individual capacity, the amendment and release forms and/or franchise agreement as required by Liberty at the time of transfer. Currently, Liberty does not charge a transfer fee for this type of transaction. Upon transfer, a new EFIN must be obtained pursuant to Section 6(w) herein.

    **d.  Transfer of Interest Within Franchisee.**  A transfer of interest within a Franchisee that is an entity shall not trigger the Right of First Refusal provided that only the percentage ownership is changing and not the identity of the owners.  At the time of the desired transfer of interest within an entity, you must notify Liberty in writing of the name and address of each officer, director, shareholder, member, partner or similar person and their respective ownership interest prior to and

DocuSign Envelope ID: 6E6A9F19-F0F0-4E32-9592-D6DAA4058A2D

following the proposed transfer and provide Liberty with the applicable organizational documents of the business entity. Each such person of the Controlled Entity shall sign, on behalf of the business entity and in their individual capacity, the amendment and release forms and/or franchise agreement as required by Liberty at the time of transfer. Further, if the transfer of interest results in a change in control of the entity, you must pay to Liberty the transfer fee required at the time of transfer.

**e. Right of First Refusal Not Exercised By Liberty.** If Liberty does not exercise the Right of First Refusal, you may transfer the Franchise or ownership interest therein according to the terms set forth in the Notice, provided that you satisfy the conditions of Sections 15(f) below and complete the sale within ninety (90) days from the date that Liberty received Notice from you. If you do not conclude the proposed sale transaction within this ninety (90) day period, Liberty's Right of First Refusal shall continue in full force and effect.

**f. Additional Requirements and Restrictions Regarding Transfers.**

i) The proposed transferee(s) must complete Liberty's franchise application and pass Liberty's application screening in place at the time of transfer;

ii) The proposed transferee(s) must sign the Liberty amendment forms and/or the then current franchise agreement and must personally assume and be bound by all of the terms, covenants and conditions therein;

iii) The proposed transferee(s) must attend and successfully complete EOT and HOT;

iv) You shall sign the transfer and release forms required by Liberty at the time of transfer and pay the transfer fee described in Section 4(i) of this Agreement; and

v) Except as to approved transfers within the Liberty system as described in this Section, you may not give, transfer or sell all or substantially all of the assets of your Franchised Business during the term of this Agreement, or for a two (2) year period after its expiration or termination, to a person or entity who might be reasonably expected to use any such assets to offer income tax preparation in the Territory or within ten (10) miles of the boundaries of the Territory.

**g. Writing Required.** No amendment, change, or modification of this Agreement and no waiver of any right under this Agreement will be effective unless in a written document that is signed by an authorized representative of Liberty.

## 16. NON-WAIVER OF BREACH

The failure of either party hereto to enforce any of the terms or conditions of this Agreement shall not be deemed a waiver of such terms or conditions or of either party's rights thereafter to enforce each and every term and condition of this Agreement.

## 17. GOVERNING LAW

**a.  Virginia Law.**  This Agreement is effective upon its acceptance in Virginia by Liberty's authorized officer. Virginia law governs all claims that in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto, or dealings between you and any of the Affiliated Companies. Liberty, the Affiliated Companies and their respective present or former employees, agents, officers and directors are collectively referred to in this Section as the "Liberty Parties." However, the Virginia Retail Franchising Act does not apply to any claims by or on your behalf if the Territory shown on Schedule A is outside of Virginia.

**b.  Jurisdiction and Venue.**  In any suit brought by any or all of the Liberty Parties, that in any way relates to or arises out of this Agreement or any of the dealings of the dealings between you and any or all of the Liberty Parties, you consent to venue and personal jurisdiction in the state and federal court of the city or county of Liberty's National Office (presently Virginia Beach, Virginia state courts and the United States District Court in Norfolk, Virginia). In any suit brought against any or all of the Liberty Parties, including their present or former employees or agents, that in any way relates to or arises out of this Agreement or any of the dealings between you and any or all of the Liberty Parties, venue shall be proper only in the federal court district and division located nearest Liberty's National Office (presently the U.S. District Court in Norfolk, Virginia), or if neither federal subject matter nor diversity jurisdiction exists, in the city or county state court where Liberty's National Office is located (presently the City of Virginia Beach, Virginia).

**c.  Jury Waiver.**  In any trial between you and any or all of the Liberty Parties, that in any way relates to or arises out of this Agreement or any of the dealings between you and any or all of the Liberty Parties, you and Liberty waive the rights to a jury trial and agree to have such action tried by a judge.

**d.  Class Action Waiver.**  You agree that any claim you may have against any or all of the Liberty Parties shall be brought individually and you shall not join such claim with claims of any other person or entity or bring, join or participate in a class action against any or all of the Liberty Parties.

**e.  No Punitive Damages.**  In any lawsuit, dispute or claim between or against you or the Liberty Parties that in any way relates to or arises out of this Agreement or any of the dealings between you and the Liberty parties, you and Liberty waive the rights, if any, to seek or recover punitive or exemplary damages.

**f.  Anti-Terror.**  Franchisee represents and warrants that no Franchisee signatory to this Agreement is identified, either by name or an alias, pseudonym or nickname, on the lists of "Specially Designated Nationals" maintained by the U.S. Treasury Department's Office of Foreign Assets Control (texts currently available at www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx. Further, Franchisee represents and warrants that no Franchisee signatory to this Agreement has violated, and agrees not to violate, any law prohibiting corrupt business practices, money laundering or the aid or support of Persons who conspire to commit acts of terror against any Person or government, including acts prohibited by the U.S. Patriot Act, U.S. Executive Order 13224, or any similar law. The foregoing constitutes continuing representations and warranties, and Franchisee shall immediately

notify Liberty in writing of the occurrence of any event or the development of any circumstance that might render any of the foregoing representations and warranties false, inaccurate or misleading.

    **g. Area Developers.** If your Territory is or becomes located in an Area Developer area, you agree not to bring any claim, including a lawsuit, against the Area Developer, or its owners, employees or independent contractors, except as to a claim unrelated to the Liberty franchise, such as an automobile accident. Area Developers are a third party beneficiary of this clause. Further, you agree that if you breach this clause, you will pay to Liberty and/or the Area Developer all attorney fees and other costs that Liberty and the Area Developer incur to defend the Area Developer in such an action, regardless of who prevails.

    **h. Survival.** Any provisions of this Agreement that by their nature extend beyond the expiration or termination of this Agreement, shall survive termination or expiration of this Agreement and be fully binding and enforceable as though termination or expiration had not occurred.

## 18. MODIFICATION

No modifications to this Agreement will have any effect unless such modification is in writing and signed by you and by Liberty's authorized officer. However, Liberty may modify the provisions of the Operations Manual without your consent.

## 19. RELEASE OF PRIOR CLAIMS

By executing this Agreement, the undersigned entity, if any, and individuals, on behalf of yourselves and your heirs, legal representatives, successors and assigns, and each assignee of this Agreement, hereby forever release and discharge Liberty, its past and present employees, agents, area developers, officers and directors, including Liberty's parent, subsidiary and affiliated corporations, their respective past and present employees, agents, officers and directors, from any and all claims relating to or arising out of any franchise agreement between the parties executed prior to the date of this Agreement, and all other claims relating to any dealings between any of the parties. However, this release does not apply to Liberty's renewal obligations the same or similar to those in Section 2(b) above, as contained in any prior or other franchise agreement.

## 20. NOTICES

You shall give any notice or request hereunder by mail or courier, postage fully prepaid, delivered personally to Liberty's CEO at Liberty's National Office, presently 1716 Corporate Landing Parkway, Virginia Beach, Virginia, 23454, Telephone: (757) 493-8855. Liberty may also give any such notice to you in the same manner at the address indicated below the Franchisee's signature on this Agreement, or such other more current address as Liberty may have for you. Liberty may also give notice to you by e-mail.

## 21. FULL UNDERSTANDING

This Agreement is the entire agreement between you and Liberty. This Agreement supersedes all other prior oral and written agreements and understandings between you and Liberty with respect to the

subject matter herein. Nothing in this or in any related agreement, however, is intended to disclaim the representations Liberty made in the Franchise Disclosure Document Liberty furnished to you.

## 22.  ACKNOWLEDGMENTS

You acknowledge that you have read Liberty's franchise disclosure document and this Agreement and that you are familiar with their contents. You acknowledge that you have independently investigated the business offered hereunder and base your decision to purchase solely on such investigation. Except as may be stated in Item 19 of Liberty's Franchise Disclosure Document, you acknowledge that no person is authorized to make and no person has made any representations to you as to the actual, projected or potential sales, volumes, revenues, profits or success of any Liberty Tax franchise. You further acknowledge and agree that you are not a third party beneficiary to any agreement between Liberty and any other franchisee.

## 23.  SEVERABILITY

If any covenant or provision within this Agreement is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not effect or impair the validity of any other covenant or provision of this Agreement and no covenant or provision of this Agreement shall be deemed to be dependent upon any other unless specifically expressed herein.

## 24.  COUNTERPARTS AND ELECTRONIC SIGNATURE

This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (e.g. "pdf") format shall be effective as delivery of a manually executed counterpart of this Franchise Agreement.  The words "execution," "signed," "signature," and words of similar import in the Franchise Agreement shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed signatures or a paper-based recordkeeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 USC § 7001 et seq.) or any other similar state or federal laws.

## 25.  HEADINGS

The headings of the various sections of this Agreement have been inserted for reference only and shall not be deemed to have any legal effect or meaning.

## 26. GUARANTY

The Franchisee named at the top of the following page agrees to abide by the terms of this Agreement. The Franchisee signature of an individual or individuals constitutes their personal agreement to such terms. The Franchisee signature of an individual or individuals on behalf of an entity constitutes the entity's agreement to such terms.

The individual signators signing on behalf of Franchisee also agree jointly and severally to perform all the obligations in and relating to this Agreement, including, but not limited to, all obligations related to the covenants not to compete, covenants not to solicit, confidentiality obligations, obligations to make payments specified herein, pay any other promissory notes and other debts due to Liberty, pay for products later ordered from Liberty and the obligations stated in **Section 17 above concerning governing law, including but not limited to, the application of Virginia law, the jurisdiction and venue clause, the jury waiver, the class action waiver, and the limitation to compensatory damages only.** If the Franchise Agreement is held in the name of a business entity and it is later determined by Liberty that the entity is no longer valid or in good standing with the laws of the applicable state of organization or that an individual has been removed as a part of the business entity pursuant to applicable state law or otherwise, Liberty shall have the right to modify the Franchise Agreement to reflect the then current business structure with the signatures of only those that remain as valid members, officers, partners, directors or sole proprietor of the then current business structure. All Franchisee signators specifically agree to indemnify Liberty, pursuant to the terms of Section 13, related to the removal of parties under this provision. All Franchisee signators waive any right to presentment, demand or notice of non-performance and the right to require Liberty to proceed against the other Franchisee signators. Except as specified herein, no person or entity is a third-party beneficiary of this Agreement.

*Signatures on Following Page*

**Franchisee:** _Amy Lu_____   **Entity Number:** _8543_____

**SIGNATORS:**

By:_____          By:_____
       (Signature)                                (Signature)

    Amy Lu

_____              _____
     (Printed Name)                               (Printed Name)

Title:_____          Title:_____

Address:_4233 CYPRESS AVE_____          Address:_____

_EL MONTE, CA 91731_____          _____

Ownership Percentage:_____%              Ownership Percentage:_____%

By:_____          By:_____
       (Signature)                                (Signature)

_____              _____
     (Printed Name)                               (Printed Name)

Title:_____          Title:_____

Address:_____          Address:_____

_____           _____

Ownership Percentage:_____%              Ownership Percentage:_____%

**JTH TAX, INC. d/b/a**
**LIBERTY TAX SERVICE**

By:_____

Printed Name: _John Hewitt_____

Title: _CEO_____

Effective Date: _10/14/2016_____

## SCHEDULE "A" TO THE FRANCHISE AGREEMENT

### Territory

The Franchise Territory* is as follows:

**CA610(LosAngelesCA-25)**
NORTHEAST of and including I-5 from Garfield Ave to S Atlantic Blvd
EAST of and including S Atlantic Blvd from I-5 to SR-60
SOUTH of and excluding SR-60 from S Atlantic Blvd to N Garfield Ave
WEST of and excluding N Garfield Ave from SR-60 to I-5



\*Note: When a Territory description includes a road, avenue, street, parkway, highway, route or similar roadway, the Territory includes the U.S. Postal addresses assigned to either side of the roadway.  When a Territory description excludes a road, avenue, street, parkway, highway, route or similar roadway, the Territory excludes the U.S. Postal addresses assigned to either side of such roadway.  If a map of the Territory is attached, the map approximates the Territory, but the above legal description controls as to the Territory's precise boundaries.

**EXHIBIT D**

DocuSign Envelope ID: B885C874-042E-4518-98B5-FD9F9F35A157
Case 2:22-cv-01715-SB-JC   Document 1   Filed 03/15/22   Page 107 of 265   Page ID
#:107

8543

## ASSIGNMENT AND AMENDMENT TO FRANCHISE AGREEMENT

This ASSIGNMENT AND AMENDMENT to the Franchise Agreements is made on the Effective Date listed below by and between Amy Lu ("Former Franchisee"), Evergreen Tree Investments, Amy Lu, individually and as President of Evergreen Tree Investments (collectively "Amended Franchisee") and JTH Tax, Inc. d/b/a Liberty Tax Service ("Franchisor").

Whereas Former Franchisee has a license to operate certain Liberty Tax Service franchises referred to as CA610, CA647 and CA648, pursuant to written franchise agreements entered into on October 14, 2016, for the franchise territories set forth in the Schedule "A" of the franchise agreements (the "Franchise Agreement", "Franchised Business"); and

Whereas Former Franchisee and Amended Franchisee desire, and Franchisor agrees, to amend the name and ownership type of the Franchise Agreements from Former Franchisee to Amended Franchisee.

Now, therefore, in consideration of the mutual covenants and agreements herein, the parties hereto agree as follows:

1. The Franchise Agreements are changed from Former Franchisee as a sole proprietor to Amended Franchisee as a corporation.

2. Amy Lu, individually and as President of Evergreen Tree Investments shall remain a guarantor of the Franchise Agreements and shall be responsible for all obligations pursuant to the Franchise Agreements, including, but not limited to, the payments of any and all promissory notes or other amounts owed to Franchisor in relation to the Franchise Agreements, whether accrued prior to or after this Agreement.

3. Furthermore, Former Franchisee and Amended Franchisee, warrant that Evergreen Tree Investments is in good standing under the laws of its state of organization, as of the date of this assignment and amendment and, further, confirm that Evergreen Tree Investments shall remain in good standing and shall abide by all laws of its state of organization including, but not limited to, the filing of all required reports and payment of all required fees throughout the duration of ownership.

4. Amended Franchisee agrees, in consideration of Franchisor's consent, to enter into a separate Guaranty Agreement whereby all accounts and notes receivable balances owed by Franchisee shall be guaranteed.

5. Former Franchisee, Amended Franchisee and guarantors hereby further agree on behalf of themselves and all their employees, agents, successors, assigns and affiliates, to fully and finally release and forever discharge Franchisor and its past and present employees, directors, officers, agents, area developers, assigns and affiliates, from any and all claims, actions, causes of action,

8543

demands, damages and costs, which could be asserted against such persons and entities or any of them up through and including the date of this Assignment and Amendment.

6.  This Assignment and Amendment may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (e.g. "pdf") format shall be effective as delivery of a manually executed counterpart of this Agreement. The words "execution," "signed," "signature," and words of similar import in the Agreement shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed signatures or a paper-based record keeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 USC § 7001 et seq.) or any other similar state or federal laws.

Except as modified above, the terms of the Franchise Agreements remain in full force and effect. This Assignment and Amendment shall not be modified except in writing signed by the parties.

**Accepted and Agreed to:**

| **FORMER FRANCHISEE:** | **JTH TAX, INC., d/b/a** |
| **Amy Lu** | **LIBERTY TAX SERVICE** |

By: _____       By: _____
      Amy Lu

                              Print: _____
                                      John Hewitt

                              Title: _____
                                      CEO

                              By: _____

                              Print: _____
                                    Kathy Donovan

**AMENDED FRANCHISEE:**
**Evergreen Tree Investments**

By: _____       Title: _____
                                      VP, CFO
Amy Lu, individually and as President of
Evergreen Tree Investments       Effective Date: _____6/12/2017_____

**EXHIBIT E**

8543

## **ACCOUNTS AND NOTES RECEIVABLE GUARANTY AGREEMENT**

THIS ACCOUNTS AND NOTES RECEIVABLE GUARANTY AGREEMENT is made on the Effective Date listed below by and between Evergreen Tree Investments and Amy Lu, individually and as President of Evergreen Tree Investments ("Guarantor") and JTH TAX, Inc. d/b/a Liberty Tax Service ("JTH").

WHEREAS, Amy Lu ("Former Franchisee") owned or owns certain JTH franchise territories under the entity known as 8543 as a Sole Proprietorship and Former Franchisee is now desirous of effectuating a change of the name and ownership type via separate Amendment to the Franchise Agreements to Evergreen Tree Investments, a corporation; and

WHEREAS, through Former Franchisee's acquisition, ownership and operation of the JTH franchise territories, Former Franchisee has accrued certain amounts owing to JTH and Guarantor may accrue further certain amounts owing to JTH (hereinafter collectively "Accounts and Notes Receivable Balance"); and

WHEREAS, JTH desires and Guarantor has agreed that any obligations or amounts due or owing, whether prior to or after the date of this Agreement as related to the operation of any JTH franchise territories currently owned or to be acquired in the future shall be guaranteed by Guarantor and as such considered due and owing by Guarantor.

NOW, THEREFORE, in consideration and as a condition to JTH's consent to the Amendment to the Franchise Agreements, whether said debts accrue prior to this Agreement or after this Agreement, the Guarantor hereby unconditionally, absolutely and irrevocably guarantees the Accounts and Notes Receivable Balances, past and future, and hereby agrees as follows:

**1.    Assent**.  The Guarantor acknowledges that Guarantor has full knowledge of the principal amount, interest charges and other related fees as well as the additional terms and conditions as set out in all promissory notes and the Accounts and Notes Receivable Balance with JTH, as well as the potential to accrue additional Accounts and Notes Receivable Balances owed to JTH as related to the operation or acquisition of JTH franchise(s). Guarantor hereby unconditionally, absolutely and irrevocably guarantees the performance, as primary obligor and not merely surety, under the terms of the promissory notes and the Accounts and Notes Receivable Balances, current and future.

**2.    Obligation**.  Upon default, Guarantor hereby agrees to assume all obligations and responsibilities for repayment to JTH under this Agreement and any and all accounts and notes receivable balances owed to JTH.  JTH shall not be obliged to seek recourse prior to enforcing the rights under this Guaranty.  The Guarantor agrees to remain fully bound until all monies due to JTH pursuant to the Accounts and Notes Receivable Balance have been paid in full and waives all rights of subrogation and set-off. The Guarantor further waives all defenses based on suretyship.

**3.    Automatic Payment Transfer Program.**  Upon default, pursuant to JTH's Automatic Payment Transfer program, all of the revenue that Guarantor is to receive, under any of Guarantor's agreements with JTH or, if applicable, SiempreTax+ LLC (such as an area developer or franchise agreement), from any and all sources of revenue shall initially be paid directly to JTH,

1

rather than to Guarantor. JTH will deduct from this revenue money that Guarantor owes to JTH and deduct and hold monies to apply to upcoming amounts due to JTH by Guarantor, and remit any remaining balance to Guarantor. All such payments shall be applied first to past-due interest outstanding and then to principal.

**4.    Waiver.** Guarantor hereby unconditionally and irrevocably waives any right to revoke this Agreement and acknowledges that this Agreement is continuing in nature and applies to all presently existing and future obligations. Guarantor further unconditionally and irrevocably waives promptness, diligence, notice of acceptance, presentment, demand for performance, notice of non-performance, default, acceleration, protest or dishonor and any other notice with respect to any of the obligations pursuant to this Agreement.

**5.    Notice**. The Guarantor waives notice of default and agrees that its Guaranty shall become absolute without necessity for the giving of such notice.

**6.    Performance**. The Guaranty herein and any payments herein specified shall continue until full, complete and faithful performance of the terms of all promissory notes and Accounts and Notes Receivable Balances owed to JTH are fully satisfied and completed.

**7.    Default fees.** In the event of default by the Guarantor, all reasonable legal fees, collection and enforcement charges to the extent permissible by law, in addition to other amounts due, shall be payable by the Guarantor.

**8.    Liability**. No relaxation, indulgence, waiver, release or concession extended by JTH and no delay or omission in the enforcement of payment or exercising of any of JTH's rights shall affect the liability of the Guarantor under this guaranty.

**9.    Successors and Assigns.** This guaranty shall be binding upon and accrue to the benefit of the parties, their successors, legal representatives and assigns.

**10.    Governing Law and Severability.** This guaranty shall be construed, interpreted and governed in accordance with the laws of the State of Virginia and should any provision of this guaranty be judged by an appropriate court of law as invalid, it shall not affect any of the remaining provisions whatsoever.

**11.    Release.** By executing this Agreement, Guarantor, and Guarantor's officers, individually and on behalf of Guarantor's heirs, legal representatives, successors and assigns, and each assignee of this agreement by accepting assignment of the same, hereby forever releases and discharges JTH, its past and present employees, area developers, agents, officers, directors, JTH subsidiary and affiliated corporations and franchisees, their respective past and present employees, agents, officers, directors, from any and all claims which could be asserted by Guarantor against any such persons and entities through the date of this Agreement, except obligations set forth or re-affirmed herein.

**12.    Jurisdiction.** Guarantor consents to venue and personal jurisdiction in the state and federal court of the city or county of JTH's National Office, presently Virginia Beach state courts and the

United States District Court in Norfolk, Virginia. In any suit brought against JTH, including JTH's present and former employees and agents, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, the parties agree that venue shall be proper only in the federal court located nearest JTH's National Office (presently the U.S. District in Norfolk, Virginia), or if neither federal subject matter or diversity jurisdiction exists, in the city or county state court located where JTH's National Office is (presently the City of Virginia Beach, Virginia).

**13.      Waiver of Jury Trial.**  In any trial between the parties hereto, including present and former employees and agents of JTH, the parties agree to waive the right to a jury trial and instead have such action tried by a judge.

**14.      Representations and Warranties.**  Guarantor represents and warrants that there are no conditions precedent to the effectiveness of this Agreement that have not been satisfied or waived and that Guarantor has, independently and without reliance, made its own decision to enter into this Agreement

**15.      Taxes.**  Each party agrees to be responsible for any tax consequences affecting said party as a result of this Agreement.

**16.      Entire Agreement.**  This Agreement and the promissory notes, other loan documents and any separate agreements with respect to fees payable to JTH constitutes the entire agreement among the parties with respect to the subject matter hereof and supersede all previous agreements and understandings, oral or written, with respect thereto. This Agreement shall not be modified except in writing signed by the parties.

**17.      Personal and Entity Guaranty.**  The signature of an individual or individuals on behalf of an entity constitutes the entity's agreement to such terms. In addition, the signatures of all individuals below in any capacity, excluding individuals signing as representatives of JTH, also constitute their personal joint and several agreement to perform all the obligations in and relating to this Agreement. All signators below waive any right to require that JTH proceed against the other signators.

**18.      Counterparts and Electronic Signature.**   This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (e.g. "pdf") format shall be effective as delivery of a manually executed counterpart of this Agreement. The words "execution," "signed," "signature," and words of similar import in the Agreement shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed signatures or a paper-based record keeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 USC § 7001 et seq.) or any other similar state or federal laws.

**GUARANTOR:**
**Evergreen Tree Investments**



**Amy Lu, President**
**Evergreen Tree Investments**


Home Address:

4233 Cypress Ave

El Monte, CA. 91731

_____

**JTH TAX, INC. d/b/a**
**LIBERTY TAX SERVICE**

By: _____

Print Name: ____John Hewitt_____

Title: _____CEO_____

By: _____

Print Name: ___Kathy Donovan____

Title: ____VP, CFO_____


**Effective Date:** ___6/12/2017_____

4

**EXHIBIT F**

DocuSign Envelope ID: E8D9782A-53CC-4A0A-900C-4B00AAD47408

CA178 (LongBeachCA-1)



**FRANCHISE AGREEMENT**

**EXHIBIT B**

## TABLE OF CONTENTS

**Section**                                                                                                                          **Page**

1. **GRANT OF FRANCHISE** ........................................................................................................ 1
2. **TERM, RENEWAL AND BUYBACK** ..................................................................................... 1
3. **TERRITORY** ............................................................................................................................. 2
4. **FEES AND PAYMENTS** ........................................................................................................... 3
5. **OBLIGATIONS OF FRANCHISOR** ....................................................................................... 6
6. **OBLIGATIONS OF FRANCHISEE** ........................................................................................ 8
7. **REPORTS AND REVIEW** ....................................................................................................... 12
8. **TERMINATION** ........................................................................................................................ 13
9. **POST-TERMINATION OBLIGATIONS** ............................................................................... 15
10. **ADDITIONAL IN-TERM AND POST-TERM COVENANTS** ............................................ 16
11. **OPTION TO PURCHASE ASSETS** ....................................................................................... 18
12. **CONFIDENTIAL INFORMATION** ....................................................................................... 18
13. **INDEPENDENT CONTRACT AND INDEMNIFICATION** ................................................ 19
14. **DEATH OR INCAPACITY** ..................................................................................................... 20
15. **ASSIGNABILITY AND FIRST RIGHT OF REFUSAL** ...................................................... 20
16. **NON-WAIVER OF BREACH** ................................................................................................. 22
17. **GOVERNING LAW** ................................................................................................................. 22
18. **MODIFICATION** ..................................................................................................................... 24
19. **RELEASE OF PRIOR CLAIMS** ............................................................................................. 24
20. **NOTICES** ................................................................................................................................... 24
21. **FULL UNDERSTANDING** ..................................................................................................... 24
22. **ACKNOWLEDGMENTS** ........................................................................................................ 24
23. **SEVERABILITY** ...................................................................................................................... 25
24. **COUNTERPARTS AND ELECTRONIC SIGNATURE** ..................................................... 25
25. **HEADINGS** ............................................................................................................................... 25
26. **GUARANTY** ............................................................................................................................. 25

     **Signature Page** ......................................................................................................................... 26
     **Schedule A – Territory** ............................................................................................................ A-1
     **Schedules B-1 to B-5 – Special Stipulations** ...................................................................... B-1-B-5

## 1. GRANT OF FRANCHISE

Liberty Tax Service ("Liberty," "Liberty Tax") has developed a system for the operation of tax return preparation offices. The Liberty system utilizes special marketing techniques and operating procedures to facilitate the provision of tax return preparation and related services.

You, meaning the franchisee and all signators identified on the signature page to this franchise agreement ("Agreement" or "Franchise Agreement"), in your personal capacity and, if applicable, on behalf of the business entity designated by you on the signature page, have applied for a franchise that utilizes Liberty's system and Liberty's trade names, service marks, and trademarks (collectively, the "Marks") ("Franchised Business" or "Franchise"). Subject to the terms of this Agreement, Liberty grants to you a Liberty Tax Service franchise. This Agreement will allow you to operate a tax return preparation business using Liberty's system and Liberty's Marks within the territory described on Schedule A ("Territory"). This agreement shall only grant you a Liberty franchise and grants no rights to you associated with any other brand or concept owned and/or operated by SiempreTax+ LLC ("SiempreTax+"), Liberty Tax, Inc., Liberty's affiliates, or other entities controlling, controlled by or under common control with Liberty ("Affiliated Companies"). You agree to abide by the terms of this Agreement.

You recognize and agree that the nature of the tax return preparation business is such that complete uniformity is not always practical or desirable and that Liberty, in Liberty's sole discretion, may vary the terms of this Agreement and the standards of operation of the Franchised Business to accommodate the peculiarities of a particular situation and/or territory. You have no recourse against Liberty if other franchisees are granted allowances that you are not granted.

## 2. TERM, RENEWAL AND BUYBACK

**a. Term.** This Agreement will be effective for a five year term beginning on the effective date specified on the signature page of this Agreement ("Effective Date").

**b. Renewal.** You may renew for another five year term by signing Liberty's then current franchise agreement if you have met the Target Volume specified in Section 6(f) of this Agreement, you are otherwise in full compliance with this Agreement, all other agreements with us and the Affiliated Companies, and no event has occurred that would give Liberty the right to terminate this Agreement. You may continue to renew future franchise agreements in this manner if you, and every other entity in which you hold an ownership interest, are in full compliance with all agreements between you and Liberty or you and the Affiliated Companies. To renew, you must execute a general release of all claims that you might have against Liberty and the Affiliated Companies, and must also execute Liberty's then current Franchise Agreement which may contain materially different terms. Liberty may not raise royalties or advertising fees that you pay to Liberty upon any future renewal, or impose a renewal fee. Further, upon renewal, Liberty may not change the boundaries of your Territory, the level and type of territorial exclusivity or the territorial rights you have. Other terms and conditions may vary. If you wish to renew, you must notify Liberty in writing at least one hundred and eighty (180) days before the expiration of this Agreement.

**c.  Buyback.**  Between May 1 and August 31 of any year, Liberty has the right to purchase your Franchised Business for the greater of $150,000 or 200% of the Gross Receipts of the Territory for the previous twelve months, or such shorter time as an office in the Territory may have been in operation. You understand that this is a premium price above fair value and does not vest any rights in you. The term "Gross Receipts" as used in this Agreement means all revenue from all services and products offered by the Franchised Business (including, but not limited to, revenue from individual, corporate, estate and partnership tax returns) after approved deductions for customer discounts/refunds, send a friends and cash in a flash.

## 3.  TERRITORY

**a.  Territory Generally.**  Your Territory is described in Schedule A of this Agreement ("Territory").

**b.  General Rights & Restrictions.**  You may operate as many tax return preparation offices in the Territory as you determine to be appropriate. You may not operate outside your Territory. Liberty may grant franchises for areas outside your Territory or operate company offices in such areas. Except as described below, Liberty may not establish franchised or company owned outlets offering income tax preparation services using the Marks at a physical location in your Territory. Additionally, Liberty may not offer income tax preparation services through other channels of distribution at a physical location in your Territory except as described herein. Liberty and the Affiliated Companies may establish franchised or company owned outlets in your Territory that operate income tax preparation services under different trademarks and may operate or franchise a different line of business. Liberty may distribute Liberty tax return preparation products and services by means other than retail or storefront locations in your Territory, including the sale of gift cards for this service. No other franchisee using the Marks may operate a tax return preparation office in your Territory. Liberty may advertise in your Territory. You may not advertise in areas outside your Territory or in media that extends outside your Territory, without Liberty's express written approval. You agree that in the event of a mapping error, as determined by us, which results in a territory population which exceeds 35,000, Liberty may re-size your Territory.

**c.  Misplaced Offices.**  If you locate an office outside your Territory, even if Liberty approved such site location, you agree upon discovery of this fact to promptly abandon the office and refrain from any further targeted solicitation (e.g. direct mail, telephone calls, etc.) of customers residing in the territory containing the misplaced office. If Liberty learns that Liberty or another franchisee has erroneously located an office in your Territory, you agree to accept the abandonment of the office and, in the case of a misplaced office operated by another franchisee, the discontinuation of further targeted solicitation of customers located in your Territory, in full satisfaction of any claim against Liberty, Liberty's past and present employees, and Liberty's past and present franchisees, in relation to the misplaced office. Liberty has a reasonable time to correct any such error after Liberty learns of it.

**d.  National and Regional Retail Business Outlets.**  Liberty may negotiate agreements with national or regional retail businesses. If there is an outlet of such a national or regional business in your Territory that is subject to such an agreement, you may choose to operate a tax return preparation service office in that outlet by communicating that decision to Liberty by December 1 before a given Tax Season, or such earlier date provided by Liberty in order to meet the requirements of that business. If you choose not to operate in an outlet that exists in your Territory, Liberty may operate in that outlet

DocuSign Envelope ID: E8D9782A-59CC-4A0A-800C-4B00AAD17108

in your Territory and all associated revenue and expenses shall belong to Liberty. Additionally, Liberty will retain the right to service the customers associated with that outlet in the future. The term "Tax Season" means the time period of January 2 – April 30.

## 4. FEES AND PAYMENTS

**a. Initial and Resale Franchise Fee.**  The initial franchise fee and resale franchise fees are $40,000. The resale franchise fee applies to a territory that has been previously sold. If a territory includes existing operations, the total cost will vary depending upon the Gross Receipts of the Territory and other pertinent market and economic factors.

**b. Down Payment and Approval.**  You must submit a minimum of 20% of the initial or resale franchise fee as a deposit after you have held the Liberty Franchise Disclosure Document for at least fourteen (14) calendar days and prior to attending Effective Operations Training ("EOT"). Liberty will refund this deposit to you upon your request at any time before you attend EOT. If you receive financing, you will be required to submit a deposit of up to $25,000 for your operational expenses ("Operational Supply Deposit"), and may be required to attend and pass Liberty's Guerilla Marketing Interactive training ("GMi Training") or other required training, prior to closing. We will refund to you the initial or resale franchise fee (including deposits) if we do not approve your application or if you do not pass EOT in accordance with Liberty's passing standards, provided that you return to us all materials that we distributed to you during training. After closing, Liberty will hold and make available for return to you any Operational Supply Deposit that you were required to submit, upon your written request to Liberty with substantiation as to the expenses to be paid by you with the Operational Supply Deposit. We do not pay interest on the Operational Supply Deposit. The initial and resale franchise fee is fully earned and nonrefundable when both parties execute this Agreement.

**c. Reverse Royalty.**  If Liberty receives tax preparation fees from individuals located in your Territory through the use of Liberty's online tax preparation services while you have a Liberty Tax Service office open in that Territory,  Liberty agrees to use commercially reasonable means to track and identify those revenues and pay or credit to you 14% of those tax preparation fees within sixty (60) days after the end of each Tax Season in its sole discretion.

**d. Royalties.**  For any year that you operate, or are required to operate an office in the Territory, you must pay a royalty to Liberty in the amount of 14% of Gross Receipts subject to the following minimums ("Minimum Royalties"):

    i)  **Year One.**  For the period ending April 30 following the Effective Date of this Agreement, if you operated or were required to have operated an office in the Territory for any part of Tax Season ending in that April, the minimum royalty is $5,000 per Territory.

    ii)  **Year Two.** For the period beginning May 1 following the Effective Date of this Agreement through the following April 30, the minimum royalty is $8,000 per Territory.

    iii) **Year Three and Beyond.**  Thereafter, the minimum royalty is $11,000 per Territory for each successive period beginning May 1 through the following April 30.

DocuSign Envelope ID: E8D9782A-53CC-4A0A-800C-4B00AAD47108

iv) **Developed Territory.** For a territory that contains or that had in the most recent Tax Season prior to the Effective Date of this Agreement, an existing company, franchisee or other Liberty tax preparation office ("Developed Territory"), you must pay royalties as set forth above depending upon how long any office has been operated in the Territory. For example, if it is your first year operating in a territory but an office has been operated in the Territory by Liberty or another franchisee through one Tax Season, then the Territory would be subject to Year Two royalties for the year that you first operate in the Territory. An office includes, but is not limited to, locations such as kiosks or temporary locations where tax return preparation services are provided.

v) **SiempreTax+ Conversion/Opt In.** The definition of Developed Territory also includes a territory that contains or that had in the most recent Tax Season prior to the Effective Date of this Agreement, an existing SiempreTax+ tax preparation office. For such a Territory, you must pay royalties as set forth above depending upon how long any office has been operated in the Territory.

**e. Area Developers.** If you are in or become part of an area covered by an Area Developer, Liberty may pay to the Area Developer a portion of the initial franchisee fee and royalties that you pay to Liberty.

**f. Advertising Fee.** You must pay an advertising fee of 5% of the Gross Receipts each month.

**g. Payment Period.** You must pay the royalty owed by the 5th of each month based on Gross Receipts for the preceding month, and any balance owed to achieve Minimum Royalty on May 5 for each fiscal year ending April 30. You must pay advertising fees by the 5th of each month based on Gross Receipts for the preceding month. Liberty reserves the right to modify this payment schedule in Liberty's Operations Manual.

**h. Interest.** You must pay interest of 12% (compounded daily) per year, or the maximum permitted by law if less, on any amounts owed to Liberty that are more than fifteen (15) days past due.

**i. Transfer Fee.** If you transfer your Franchised Business, or an interest in the Franchised Business that results in a change in control of the Franchised Business, you must pay Liberty a transfer fee of $5,000 at the time of transfer. This fee is subject to increase or decrease in future franchise agreements by the amount of change in the *Consumer Price Index – All Urban Consumers*, published by the U.S. Department of Labor, or a reasonably similar successor index, from the index as of the Effective Date.

**j. Customer Refunds, Penalty and Interest, Send a Friend**. If you do not resolve a customer service complaint or pay penalty and interest on an erroneous return prepared in your office, or misdeliver a customer check, or fail to pay a Send a Friend or E-Send a Friend referral, and the customer contacts Liberty, and Liberty believes there is a reasonable basis for the claim, Liberty may issue a refund of fees paid by the customer, pay to the customer the penalty and interest or amount of misdelivered check, or pay the Send a Friend referral, and bill you. You agree to pay the charges. Your obligation to pay penalty and interest for tax return preparation errors made during the operation

DocuSign Envelope ID: E0D9782A-53CC-4A0A-B00C-4B00AAD171A8

of the Franchised Business continues after the expiration, termination or transfer of this Agreement and/or sale of the Franchised Business.

**k.  Automatic Payment Transfer**.  All of the tax preparation, transmitter, software, and electronic filing fees, and any rebates that you receive from Financial Products or customers who purchase Financial Products, and all other revenue due to Franchisee under this Agreement and all other agreements with Liberty and the Affiliated Companies, shall initially be paid to Liberty. The term "Financial Products" as used in this Agreement means refund-based loan programs and/or a means for customers to obtain a refund using electronic deposit services that Liberty, or a company associated with Liberty, may offer to you. Liberty will remit any remaining balance to you from the above described fees and rebates after deducting monies you owe to Liberty, and/or SiempreTax+ if applicable, and deducting monies to hold for application to upcoming amounts due to Liberty, SiempreTax+, or affiliated third parties, including, but not limited to, unbilled royalties or amounts related to an internal review.

**l.  Sales or Gross Receipts Tax.**  If required by the state or locality where your Territory is located, the initial franchise fee, royalties, and advertising fees will be subject to sales or gross receipts tax. You must pay these taxes to Liberty at the same time and in the same manner as you pay the royalties and fees to Liberty.

**m. Transmitter, Software, or Electronic Filing Fee.**  Liberty reserves the right to impose a fee charged to you or your customers related to transmission of Financial Products, the provision of software, or the electronic filing of tax returns and, if charged to customers, may rebate a portion of the fee to you. Liberty may vary the dollar amount of the fee and may change its name. Any such fee is not included in your Gross Receipts.

**n.  Call Center.**  If you elect to use Liberty's call center to handle customer appointments, customer follow up, tax school calls, or other calls, you must pay to Liberty a fee for each such call pursuant to Liberty's schedule of call center charges. This schedule is subject to future modification by Liberty.

**o.  Cash in a Flash Financing Set up Fee.**  If you elect to apply for cash in a flash financing through Liberty, you must pay to Liberty any set up fee that Liberty imposes pursuant to Liberty's schedule of fees. This schedule is subject to future modification by Liberty.

**p.  Assessment Related to Understatement of Revenues and Failure to Comply.**  Pursuant to the rights and obligations specified in Section 7 of this Agreement, if Liberty determines that you are underreporting Gross Receipts, you must pay to Liberty additional royalties and interest in the amount of 12% per annum on the undisclosed amount as determined by Liberty. If the excess determined following a review of your operations, books and records is more than two percent (2%) of the Gross Receipts for the period in question, you must also pay the costs of the review. Additionally, if a review results from your failure to maintain and/or provide records as required in Section 7 or if you fail to attend, coordinate or permit Liberty's review, in Liberty's determination, you must pay the costs of the review or attempted review, regardless of the result. All amounts referenced in this paragraph will be billed to your accounts and notes receivable balance with Liberty. The costs of any review pursuant to the terms of this Agreement shall be determined by Liberty. Liberty's acceptance of payments of

royalties or Gross Receipts reports shall be without prejudice and shall in no case constitute a waiver of Liberty's rights to claim any delinquent royalties, or to require a review of your operations, books and records, as provided for herein.

## 5. OBLIGATIONS OF FRANCHISOR

**a. Training.** Liberty provides for new franchisees a required five (5) day or longer EOT and a required one (1) day Hands on Training ("HOT") taught by an existing franchisee at their Liberty Tax office. Franchisees that receive financing may also be required to attend and pass Liberty's GMi Training. Liberty does not charge for EOT, HOT or GMi Training unless you register and fail to attend. Additionally, you are responsible for all expenses you incur as a result of training, such as travel, lodging and meals.

**b. Operations Manual.** Liberty will loan you a copy of the dual Liberty/SiempreTax+ Operations Manual ("Manual" or "Operations Manual") to offer guidance in the operation of your Franchised Business.

**c. Site Selection.** Liberty provides guidance and advice to you regarding the selection of the location of your office(s). You may not sign a lease or locate an office until Liberty approves the location of your office. Liberty's approval of the location of a site is not a guarantee of success in that location or a warranty or assurance as to any aspect of the office or its location.

**d. Advertising and Marketing.** Liberty raises fees related to marketing through the advertising fees paid under Liberty's franchise agreements. Liberty will contribute advertising fees from company offices. Liberty disburses advertising fees to develop, produce, distribute and/or conduct advertising programs, marketing programs, public relations, and marketing research. Liberty spends advertising fees on a national, regional or local basis for television, electronic, radio and print advertising as Liberty determines to be appropriate. Liberty may produce advertising in-house and/or through an advertising agency. Liberty pays all costs of such activities, including a share of corporate overhead related to advertising and marketing, with advertising fees. You may also use your own advertising material provided that Liberty first approves it for compliance.

**e. Software.** Liberty provides tax return preparation software.

**f. Tax and Technical Support.** Liberty provides reasonable telephone and/or internet support for your questions regarding federal and state individual income tax return preparation, electronic filing, and the use of software specified by Liberty. However, Liberty will not provide support on any equipment that does not meet Liberty's then current specifications or issues related to the operating system of a computer.

**g. Electronic Filing.** Liberty provides the ability to file individual federal and certain individual state tax returns electronically, if such method of filing is reasonably available from the respective taxing authority. You must have and maintain a valid Electronic Filing Identification Number ("EFIN").

**h. Financial Products.** If reasonably available and feasible (in Liberty's sole determination), Liberty will offer you the ability to participate in Financial Products. If offered, your participation in Financial Products programs is subject to mutual agreement between you, Liberty and the Financial Products provider.

**i. Operational Support.** Liberty advises you in the budgeting for and operation of your Franchised Business. Liberty's approval of your budget is not a guarantee of success.

**j. Advanced and Update Training and Conference Calls.** Liberty provides and may require your attendance at advanced training for experienced franchisees. Liberty also provides and requires attendance by all franchisees at update training. Liberty may offer advanced and update training at various sites that Liberty selects across the country, or Liberty may offer such training through the internet or electronically. The agenda for advanced training varies, but often will focus on improving business management skills in order to increase profitability. Liberty does not charge for advanced or update training, but you are responsible for all expenses that you incur as a result of attending training, such as travel, lodging and meals. Liberty may also require that you attend a reasonable number of toll free conference calls to learn the latest operational and marketing tips. Such calls may either be attended live or through online replay.

**k. Supply Source.** Liberty may offer for sale or locate a source for purchasing supplies, forms and equipment that may be necessary to conduct the Franchised Business, as reasonably determined by Liberty.

**l. Leasing.** Liberty may make arrangements to refer you to a company that offers leasing of furniture, fixtures, signs, equipment, and possibly provides loans for franchise fees and working capital. These leasing or loan programs will be financed and administered by a third party. Liberty cannot guarantee that you will be offered leasing or loans, as the third party company will make individual determinations.

**m. Financing through Liberty.** Liberty may, in Liberty's sole discretion, provide financing for a portion of the initial franchise fee or other costs associated with the Franchised Business. The terms of such financing are subject to change. You must be in compliance with this Agreement to qualify for any such financing and may be required to obtain certain certifications and trainings including, but not limited to, completion of GMi Training. If Liberty provides financing, you will be required to enter into a promissory note reflecting the terms of the financing arrangement. If Liberty provides financing, you must submit monthly financial information to Liberty including, but not limited to, income statements, balance sheets, and supporting documents. You agree to submit the required information at the time and in the format specified by Liberty. Liberty reserves the right to adjust this policy to require more frequent financial statements on a continuing basis and you agree to comply with any such change in policy. Liberty also may request personal financial statements. All financial statements must be prepared in conformity with generally accepted accounting principles.

**n. Group Discounts.** Liberty may provide you with the opportunity to participate in group purchasing programs that offer group discounts. The discounts and terms for these opportunities will vary.

DocuSign Envelope ID: E8D9782A-53CC-4A0A-800C-4B00AAD17108

**o.  Area Developers.**  In those areas where Liberty presently or in the future uses an Area Developer, Liberty reserves the right to delegate some portion of the responsibility for certain duties to the Area Developer including, but not limited to, site selection assistance, limited marketing assistance, and operating assistance. Area Developers do not have any authority to approve advertising or marketing material of any kind.

## 6. OBLIGATIONS OF FRANCHISEE

**a.  Training.**  You must attend and successfully complete Liberty's EOT and HOT before you may operate a Liberty office.  Liberty may allow or require a general manager to attend on your behalf.

**b.  Use of Liberty Marks.**

(i)  **Liberty allows you to use Liberty's Marks**.  Liberty allows you to use Liberty's Marks to hold out your Liberty Tax Service business to the public. You agree to exclusively use Liberty's Marks as Liberty develops them for this purpose only.

(ii)  **You must obtain prior advertising approval**.  You must either use pre-approved advertising templates that Liberty or Liberty's approved vendors provide, or you must obtain Liberty's prior written consent before using the Marks in any way and before using any marketing or promotional material, including internet advertising.

(iii)  **No private website allowed.**  You may not have a website for your Franchised Business, or utilize mobile apps or other digital marketing, without Liberty's prior written approval.

(iv)  **Marketing to National Companies**.  You must obtain written permission from Liberty before marketing on the premises (building and parking lot) of any national company. National companies include, by way of example, Wal-Mart, K-mart, and Sears.

(v)  **No use of "Liberty" within a company name**.  You may not use the word "JTH," "LTS," "Dona Libertad," "Liberty," "Libtax", "Siempre", "SiempreTax," "SiempreTax+", "360", "360 Accounting" or the name, or any portion of the name of Liberty's Affiliated Companies, as any part of the name of a corporation, LLC or other entity except as may be agreed between you and such company in a separate franchise agreement for that company. However, "Liberty Tax Service" followed by your entity number shall be your "doing business as" name for an entity that owns this Franchise, sometimes also called your "assumed name," "trading as" name, or "fictitious name."

(vi)  **No confusingly similar marks**.  You agree not to use any marks which could be confused with Liberty's Marks.

(vii)  **Liberty may update or change Liberty's Marks**.  Liberty may replace, modify or add to the Marks. If Liberty replaces, modifies or  creates additional marks, you agree to update or replace your signs, supplies, etc., to reflect the new marks in the time frame Liberty provides and at your own expense. Liberty will not change exterior signage requirements more than once every four (4) years unless legally required.

**c. Signs.** You must display an exterior lighted sign at each of your offices. Liberty must approve all signs before you order or display them.

**d. Starting Date.** You agree to begin operations and be open for business no later than January 2 following the Effective Date of this Agreement and for every year thereafter.

**e. Operating Hours.** You agree to exercise your best efforts to promote the Franchised Business and agree, at a minimum, to be open for business during the hours specified in the Operations Manual.

**f. Target Volume.** You must use your best efforts to promote the Franchised Business. Beginning in your fifth (5th) Tax Season and continuing in each Tax Season thereafter, you must prepare at least 1,000 federal income tax returns in your Territory ("Target Volume").

**g. Software.** You must use the software that Liberty provides. You may not use, install or have any other federal or state personal income tax return preparation or electronic filing software on any computers used in the Franchised Business.

**h. Telephone Number and Email Account.** You must obtain and maintain a Liberty Tax Service telephone number to be used solely to transact the Franchised Business. You may purchase a white and yellow page listing through Liberty's approved vendor and may be required to purchase a yellow page advertisement and/or contribute to a group listing or advertisement per Liberty's recommendations. You also must provide and maintain an email account sufficient for communications between you and Liberty.

**i. Equipment.** You must obtain and use a computer system that meets Liberty's current specifications and any modifications to these specifications. All work stations must be purchased from Liberty's approved vendor including, but not limited to, tax return preparation and processing computers. Liberty may update the specifications. When the specifications are updated, you must update or upgrade the computer system, at your sole cost. Specifications will not be updated during a Tax Season except upon an emergency, as reasonably determined by Liberty. You agree to maintain such computer systems in compliance with industry standards regarding information security and make any necessary updates to ensure that information is secure, including, but not limited to, encryption.

**j. Insurance.** During the term of this Agreement, you must procure and maintain an insurance policy or policies with at least the following coverage or such other coverage as may be specified in the Operations Manual: (i) comprehensive general liability of $1 million per office and (ii) worker's compensation as required by your state law. Liberty may require you to obtain additional insurance, such as errors and omissions insurance, as may be specified in the Manual. You must name Liberty as an additional insured on all policies required by this Agreement or the Manual.

**k. Electronic Filing.** If Liberty provides or recommends a source for electronically filing tax returns, you are required to offer electronic filing and to use this source exclusively for all electronic filing.

DocuSign Envelope ID: E8D9782A-53CC-4A0A-B002-4B00AAD471A8

**l.   Financial Products and Credit Cards.**  If Liberty negotiates an agreement with a third party Provider to allow you to offer Financial Products or to process credit card transactions, you are required to exclusively use such providers as Liberty designates and to offer Financial Products and credit card processing to your customers.

**m. Operations Manual.**  You acknowledge the importance of consistency of quality, service and operation among all Liberty Tax franchised offices and, therefore, agree to operate the Franchised Business in conformity with all standards to be maintained, techniques and operating procedures that Liberty may prescribe in Liberty's manuals or otherwise in writing, and to refrain from deviating therefrom without Liberty's prior written consent. Liberty will loan you a copy of the Manual and provide you with other relevant manuals. Liberty may modify the Manual or any other manual, in order to adjust for competitive changes, technological advancements, legal requirements and attempts to improve in the marketplace. You agree to operate the Franchised Business according to the manuals and any modifications including, but not limited to, the Manual, as may be updated or supplemented by memoranda, bulletin, email or other similar mechanism that together with the Manual, contain the mandatory and suggested procedures and specifications that are prescribed for the Franchised Business.

**n.  Participation.**  You agree that the services of the Franchised Business will be provided under your direct supervision and control and/or under the direct supervision and control of a full-time general manager who has been approved by, and not later disapproved by Liberty. Liberty will not approve a general manager prior to their successful completion of EOT. You agree to conduct the Franchised Business with sound business judgment, diligence and efficiency.

**o.  Return Check.**  You must prepare each income tax return accurately and in accordance with federal, state and local laws. You must check each return thoroughly.

**p.  Tax School.**  If you complete EOT before September 1 of the year of the Effective Date of this Agreement, and during every year after your first Tax Season regardless of EOT, you must conduct an intensive 6 to 10 week tax course in the period of September through December in accordance with the specifications in the Manual. Additionally, you must conduct a one-week tax course during every January, including the January of your first (1st) Tax Season, in accordance with the specifications in the Manual.

**q.  Employee Training.**  You shall conduct and require each of your employees to attend an employee policy and procedure training course as specified by Liberty. You are solely responsible for hiring, firing, compensating, paying applicable payroll taxes and day to day supervision and control over your employees. You acknowledge and agree that Liberty shall not, and shall have no right or authority to, control your employees. Liberty shall have no right or authority with respect to the hiring, termination, discipline, work schedules, pay rates or pay methods of your employees. You acknowledge and agree that all employees shall be your exclusive employees and shall not be employees of Liberty nor joint employees of you and Liberty. Liberty neither dictates nor controls labor or employment matters for franchisees and their employees.

**r.  Customer Service.**  You shall employ and train sufficient personnel to accommodate all customers without undue delay. You shall provide all services and abide by all customer service

DocuSign Envelope ID: E0D9782A-53CC-4A0A-800C-4B00AAD47408

policies described in the Manual, including, but not limited to, the written guarantee. You must operate in a manner that protects Liberty's goodwill, reputation and Marks.

    **s. Office Condition.**  You shall maintain offices that are neat and professional in appearance. Further, you may not offer products or services through your Liberty offices other than the franchise services authorized here (i.e., tax preparation, electronic filing, and Financial Products, all processed and reported through Liberty's systems) without Liberty's prior written approval.

    **t. Supplies and Furniture.**  You agree that in order to establish a standard and consistent delivery of Liberty Tax services, certain items must be used in the operation of the Franchised Business. You must use the items required in the Manual (e.g. client envelopes and folders, interview worksheets, interior signs sets). You are responsible for the cost of all items needed to conduct the Franchised Business including, but not limited to, supplies, furniture, equipment, leasing and real estate costs.

    **u. Laws and Regulations.**  You agree to comply with all federal, state and local laws, regulations, ordinances and the like, and to be responsible for such compliance by all employees of the Franchised Business. You will abide by all legal requirements and be solely responsible for securing any necessary permits, certificates, licenses and consents to operate your business. You will not request or require that any customer of the Franchised Business waive, or permit you to disclaim your or any employee's responsibility to comply with any legal requirements or applicable laws. If requested by Liberty, you agree to report any noncompliance with federal or state tax laws or regulations by the Franchised Business and/or its employees to the IRS and/or any applicable state taxing authority. You also agree to provide Liberty with notice of any reports of non-compliance you have filed. Further, you agree to immediately notify Liberty of any claim or litigation related to the Franchised Business.

    **v. Audits.**  If the IRS or any governmental agency audits or investigates your Liberty operations, or any tax preparer employed in the Franchised Business, or otherwise requires that you, or such tax preparer, provide documents to the IRS or other governmental agency related to the Franchised Business, you agree to notify Liberty immediately upon receiving notice of the audit, investigation or request for documents and comply and cooperate with any such lawful investigation or demand for information. You further agree to cause all employees of the Franchised Business to comply and cooperate with any such lawful investigation or demand for information. You agree to immediately provide Liberty with a copy of any notice of audit, subpoena or request for documents. You agree to immediately provide Liberty with a copy of the findings of any audit or investigation. You hereby waive any right to privacy, confidentiality and similar protections and restrictions with respect to any such audit or investigation. You authorize the IRS, and any governmental agency, to disclose information to Liberty and its representatives related to any such audit or investigation and provide copies of any requested information. You hereby authorize Liberty to make such requests for information.

    **w. EFIN.**  For a territory that did not have an existing company owned or franchisee owned tax preparation office in the most recent Tax Season ("Undeveloped Territory"), you must obtain an EFIN from the IRS prior to operation and no later than January 2 of your first Tax Season, and provide us with satisfactory documentation, in Liberty's determination, that you have received a valid EFIN.  For

a Developed Territory, you will be required to obtain a valid EFIN prior to operation, and provide us with satisfactory documentation, in Liberty's determination, that you have received a valid EFIN. After obtaining an EFIN pursuant to the above provisions, you will be required to maintain a valid EFIN throughout the term of this Agreement. You agree to comply with all of the requirements of IRS Publication 3112, 1345 or any applicable successor publications relevant to EFINs, as well as all applicable state laws and regulations related to electronic filing. You agree to immediately notify Liberty of any EFIN suspension, expulsion or denial and provide Liberty with all correspondence and documentation related to such suspension, expulsion or denial. You hereby authorize the IRS and any state tax authority to disclose to Liberty the reasons for any EFIN denial, suspension or expulsion and to provide Liberty with copies of all EFIN application materials, suspension, expulsion and denial notices.

  **x.  Site Selection and Leases.**   As described in Section 5.c., Liberty provides guidance to you regarding the selection of the location of your office and all office locations must be approved by Liberty prior to your execution of a lease for that site. Liberty may require the lease to be held in Liberty's name at the option of Liberty. If the lease is held in your name and unless otherwise agreed in writing, you must attempt to include a provision in any lease for an approved location that the lessor consents to an assignment of the lease to Liberty, or its designee, with the right to sublease at Liberty's option. You agree to provide Liberty with a copy of the lease for each approved location within seven (7) days of execution.

  **xi.  Marketable Title.** You represent and warrant that you will maintain good and marketable title to the assets of the Franchised Business and all leases, and the absolute and unqualified right to sell, assign and transfer them to Liberty, free and clear of all liens, pledges and encumbrances of any kind.

## 7.  REPORTS AND REVIEW

  **a.  Gross Receipt Report.**  You must send Liberty a Gross Receipt report in the manner and form and at the times Liberty specifies. Presently, you must report your Gross Receipts on the fifth (5th) of the month for Gross Receipts received during the prior month. You agree that Liberty has the right to lock your Gross Receipt report at any time.

  **b.  Profit and Loss.**  By May 30 of each year, you must send Liberty an unaudited profit and loss statement of the Franchised Business, in the manner and form Liberty specifies, for the twelve (12) month period ending April 30.

  **c.  Review.**  You agree to permit Liberty and/or Liberty's agents the right to enter your Liberty Tax offices during normal, required business hours, without prior notice, and inspect your operations and inspect and copy all of your paper and electronic business books and records related to the Franchised Business and any other operations taking place at your Franchised Business. This includes, but is not limited to, the right to inspect and copy all tax returns and bank statements that may be indicative of revenues from the Franchised Business.

  **d.  Mail Reviews.**  If Liberty requests a copy of your customer receipts (paper and/or electronic) or any other business records, including, but not limited to customer taxpayer records related to the

Franchised Business, you must send Liberty these records at your expense within five (5) days of receiving Liberty's request and within 48 hours of receiving Liberty's request during the Tax Season.

**e.   Electronic Review.**   Liberty may cause programs to run on your computer systems that may send information to Liberty and may make changes to the computer systems.  Liberty agrees that the use of such programs will not unreasonably interfere with your operation of the Franchised Business and you agree to allow such programs to run without interference by you. You acknowledge that Liberty will use information obtained from your computer system to make business decisions. You hereby grant Liberty the right to access and make changes to the computer systems in your office and authorize Liberty to obtain any and all information related to the Franchised Business. Additionally, following the expiration, termination, transfer or nonrenewal of this Agreement, you grant Liberty the right to remotely access and make changes to the computers used in operation of the franchised business including, but not limited to, removing all Confidential Information from the computers.

**f.   Costs of Review.**   Depending on the circumstances, you may be responsible for the costs of a review, or attempted review, as more fully set forth in Section 4(p).

**g.   Background Information.**   During the term of this Agreement, you authorize Liberty to obtain background information related to your employment, credit and financial history, as well as your criminal and driving records.

**h.   Heightened Supervision.** In the event that Liberty determines there to be abusive tax returns practices related to the operation of your franchised business, Liberty also has the right to require that you implement a plan related to the issues that Liberty discovers. You agree to comply with any such plan imposed. As a part of this plan, you may be subject to various additional requirements including, but not limited to, compliance with heightened monitoring requirements, attending additional trainings and hiring compliance staff with qualifications set out by Liberty.

**8.   TERMINATION** Franchisee acknowledges and agrees that all of the obligations under this Agreement are material and essential obligations, that nonperformance of the obligations herein will adversely and substantially affect Liberty and the Liberty system and that Liberty's exercise of the rights and remedies herein are appropriate and reasonable.

**a.   Nonrenewal.** You may terminate this Agreement by not renewing; that is, by not notifying Liberty in writing of your desire to renew at least one hundred eighty (180) days prior to the expiration of this Agreement.  If you terminate pursuant to this Section, you must still comply with all of the post-termination provisions of this Agreement.

**b.   Termination Without Notice and Opportunity to Cure.** Liberty may terminate this Agreement without notice and the opportunity to cure for any of the following reasons:

(i)   If you become insolvent, are unable to pay debts as they come due or take any steps to seek protection from creditors, or if a receiver (permanent or temporary) is appointed by a creditor or a court of competent authority, or if you make a general assignment for the benefit of creditors;

(ii)   If a final judgment of record against you or your Franchised Business remains unsatisfied for thirty (30) days or longer;

(iii)   If you breach 6(u)-(v) of this Agreement, or if you fail to immediately notify us about or comply with any governmental investigation or audit or, if we determine that you, or someone acting under your supervision and control, has committed a material violation of any law, ordinance, rule or regulation of a governmental agency or department reasonably associated with the operation of the Franchised Business, committed any act that is or could be, in Liberty's determination, harmful, prejudicial or injurious to the Liberty brand or any of the Affiliated Companies or any employee, franchisee, area developer or agent of such companies, or if the IRS or any federal, state or local governmental entity or agency initiates a criminal, civil or administrative proceeding or takes any administrative action against you or the Franchised Business relating to compliance with applicable tax laws and regulations, and such proceeding or action is not resolved or dismissed in favor of you, or the Franchised Business, within thirty (30) days of its initiation;

(iv)   If you abandon the Franchised Business or discontinue the active operation of any active office of the Franchised Business for three (3) business days during any Tax Season or seven (7) business days otherwise, except where active operation was not reasonably possible or where specifically approved by Liberty in writing prior thereto;

(v)   If you fail to open for business in the Territory by January 2, as specified pursuant to Section 6(d);

(vi)   If you operate any offices or advertise outside the Territory without Liberty's permission;

(vii)   If you fail to meet the Target Volume specified in Section 6(f) above in the Territory during your fifth Tax Season or in any Tax Season thereafter;

(viii)   If you fail to use the software, electronic filing services or Financial Products Liberty provides or recommends;

(ix)   If you do not obtain a valid EFIN from the IRS for each office in the Territory prior to operation or by January 2 of your first Tax Season (whichever first occurs), if any EFIN application to which you are a party is denied at any time, or if any of your EFINs are suspended by the IRS or any state taxing authority for any reason at any time thereafter or you are expelled from the e-file program;

(xi)   If you include a materially false representation or omission of fact in your Confidential Franchise Application to Liberty or if you under-report Gross Receipts, falsify financial data, make a false submission with regard to any required reports or otherwise commit an act of fraud with respect to your acquisition or operation of the Franchised Business or your rights or obligations under this Agreement;

(xii)   If you commit three (3) or more breaches of this Agreement, the Operations Manual, or any other agreement (including promissory notes) with Liberty or the Affiliated

Companies, in any twelve (12) month period regardless of whether such breaches were cured after notice; or

(xiii) If you fail to timely execute all documents necessary for renewal.

**c.  Termination with Notice and Opportunity to Cure.** No fewer than seven (7) days after Liberty has sent you notice of your opportunity to cure, Liberty may terminate this Agreement if:

(i)  You, or any entity in which you are affiliated, violate any term or condition of this Agreement, the Operations Manual, or any other agreement with Liberty or the Affiliated Companies;

(ii)  Any amount owing to Liberty or the Affiliated Companies, whether related to the Territory or not, is more than thirty (30) days past due, or Liberty determines that you have materially and substantively underreported revenue;

(iii)  You fail to comply with IRS standards applicable to e-file providers as stated in IRS Publications 3112, 1345 or another or successor IRS publication applicable to e-file providers or you fail to comply with state or local regulations related to electronic filing; or

(iv)  You are more than sixty (60) days in default of any loan, lease or sublease agreement with a third party, affecting the Franchised Business.

## 9.  POST-TERMINATION OBLIGATIONS

Upon expiration, termination, transfer or nonrenewal of this Agreement for any reason by any party, including a sale of the Franchised Business, you must immediately:

**a.**  Sell to Liberty (if Liberty elects pursuant to Section 11) any or all equipment, signs, trade fixtures, and furnishings used in the Franchised Business, or if Liberty does not so elect, remove all Marks or other distinguishing indicia from all of your offices and other premises. If Franchisee fails to remove all Marks or other distinguishing indicia from the Franchised Business, Liberty may enter the premises formerly used by the Franchised Business, without being guilty of trespass or any other crime or tort, to remove such items at the expense of Franchisee, which amount Franchisee agrees to pay upon demand; and

**b.**  Stop identifying yourself as a Liberty Tax franchisee, never hold out as a former Liberty Tax franchisee and forever cease the use of any of the Marks or any other marks that may be confused with the Marks; and

**c.**  Stop using all literature and forms received from Liberty and other items bearing the Marks; and

**d.**  Pay to Liberty all amounts owing to Liberty, whether related to the Territory or not. If termination is for any default by Franchisee, the sums to be paid to Liberty will include all

damages, costs and expenses, including reasonable attorney's fees incurred by Liberty as a result of the default including any enforcement of Franchisee's post termination obligations. This obligation will give rise to a lien in favor of Liberty against any and all personal property, furnishings, equipment, fixtures and inventory owned by Franchisee and used in the operation of the Franchised Business; and

**e.**  Transfer to Liberty all telephone numbers, email accounts, URLs, domain names, internet accounts, cloud server accounts, listings and advertisements used in relation to the Franchised Business, sign any required documentation and deliver to Liberty copies of such documents of transfer. Regardless of the forms and documents that may have been signed by Franchisee under this provision, Franchisee hereby irrevocably grants Liberty full power and authority for the sole purpose of taking any necessary action to complete the transfers required pursuant to this section. This shall in no way obligate Liberty to assume any obligations or liabilities of Franchisee associated with these accounts. This limited power of attorney will survive termination, expiration or nonrenewal of this Agreement; and

**f.**  Assign to Liberty (if Liberty elects) any interest that you have in any lease, sublease or any other agreement related to the Franchised Business. Regardless of the forms and documents that may have been signed by Franchisee under this provision, Franchisee hereby irrevocably appoints Liberty as Franchisee's true and lawful agent and attorney-in-fact with full power and authority for the sole purpose of taking any necessary action to complete the assignments required pursuant to this section. This shall in no way obligate Liberty to assume any obligations or liabilities of Franchisee associated with the leases. This limited power of attorney will survive termination, expiration or nonrenewal of this Agreement; and

**g.**  Deliver to Liberty any original and all copies, including electronic and cloud based copies and media, of lists and other sources of information containing the names, addresses, e-mail addresses, or phone numbers of customers of the Franchised Business; and

**h.**  Deliver to Liberty any original and all copies, including electronic and cloud based copies and media, containing customer tax returns, files, and records; and

**i.**  Deliver to Liberty all copies of the Manual and any updates; and

**j.**  Cancel all fictitious name listings which you have filed that utilize any of the Marks; and

**k.**  Adhere to all applicable provisions contained herein including, but not limited to, the post-term covenants not to compete and not to solicit.

## 10.  ADDITIONAL IN-TERM AND POST-TERM COVENANTS

**a.  In-Term Covenant Not to Compete.**  During the term of this Agreement, you agree not to directly or indirectly, for a fee or charge, in the United States or Canada, prepare or electronically file income tax returns, or offer Financial Products, except, if applicable, in your capacity as a SiempreTax+ or Liberty Tax franchisee pursuant to a valid SiempreTax+ or Liberty franchise agreement.

**b. Post-Term Covenant Not to Compete.** For a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, or your removal as a signator to this Agreement, you agree not to directly or indirectly, for a fee or charge, prepare or electronically file income tax returns, or offer Financial Products, within the Territory or within twenty-five (25) miles of the boundaries of the Territory except, if applicable, in your capacity as a SsiempreTax+ or Liberty Tax franchisee pursuant to a valid SiempreTax+ or Liberty franchise agreement.

**c. Liquidated Monetary Damages.** If you fail to comply with either of the above covenants not to compete, you agree to pay Liberty, as partial liquidated monetary damages, royalties and advertising fees as set forth in Section 4 of this Agreement against the greater of: (1) the total Gross Receipts during your last fiscal year (May 1- April 30) of operation for each Territory in which you are in breach; or (2) the total revenue you received in breach of a covenant not to compete. The greater of these two dollar figures shall be multiplied by two (2) to give consideration to lost repeat and referral business to Liberty. You acknowledge that any breach of the covenants not to compete causes damage to the integrity of Liberty's franchised system, loss of franchisee and customer goodwill and irreparable harm. You specifically acknowledge that the full measure of these damages is greater than that specified herein.

**d. Covenant Not to Solicit.** For a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, or your removal as a signator to this Agreement, you agree that you will not, within the Territory or within twenty-five (25) miles of the boundaries of the Territory, directly or indirectly solicit any person or entity served by any of your prior Liberty offices within the last twelve (12) months that were a Liberty franchisee, for the purpose of offering such person or entity, for a fee or charge, income tax preparation, electronic filing of tax returns, or Financial Products except, if applicable, in your capacity as a SiempreTax+ or Liberty Tax franchisee pursuant to a valid SiempreTax+ or Liberty franchise agreement. You further agree for a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, or your removal as a signator to this Agreement, not to employ or solicit for employment without Liberty's prior written consent any of Liberty's employees or those of any other of Liberty's franchisees, or induce any such employee to leave his or her employ.

**e. Covenant Not to Lease.** You agree that during the term of this Agreement, you will not lease, sub-lease, assign or guaranty a lease in the Territory to or for a person or entity who will offer income tax preparation at such an office. You also agree that upon the termination or expiration of this Agreement, if Liberty or a duly authorized Liberty franchisee desires to use any of your former Liberty office locations in the Territory, you will use reasonable good faith efforts to help Liberty secure possession of the office locations through a lease assignment or otherwise. Otherwise, you agree to use reasonable, good faith efforts to ensure that, for a twenty-four (24) month period after non-renewal or termination of this Agreement, no person or entity will offer income tax preparation at the properties where your former Liberty offices were located. Good faith efforts include a duty not to sub-lease or assign the leases of your office location to a person or entity who will offer income tax preparation at such office locations.

DocuSign Envelope ID: E8D9782A-53CC-4A0A-800C-4B00AD417408

**f. No Harmful Acts.**  You agree not to disparage Liberty or the Affiliated Companies, including their current and former employees, directors or agents. You also agree not to do any act that is, in Liberty's determination, harmful, prejudicial or injurious to Liberty or the Affiliated Companies, including their current and former employees, directors or agents.

**g. Section 10 Conditions Required for Grant of Franchise.**  You hereby acknowledge that the qualifications to be a Liberty franchisee are special, unique and extraordinary, and that Liberty would not enter into this Agreement without the inclusion of the conditions set forth in Section 10.

**h. Waivers.**  You acknowledge and agree that the provisions of Section 10 are reasonable, valid and not contrary to the public interest. You waive all defenses to the strict enforcement of Section 10. You further agree that Liberty is entitled to a temporary restraining order, preliminary and/or permanent injunction for any breach of duties under any of the non-monetary obligations of Sections 9 and 10. You hereby waive any requirement that Liberty post a bond related to any temporary restraining order or injunctions requested as a result of an alleged violation of Sections 9 and 10.

**i. Survival.**  The covenants contained in Section 10 shall survive any termination or expiration of this Agreement.

**j. Severability.**  If any covenant or provision within Section 10 is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not affect or impair the validity of any other covenant or provision of this Agreement. Further, these obligations are considered independent of any other provision in this Agreement, and the existence of any claim or cause of action by either party to this Agreement against the other, whether based upon this Agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

## 11.  OPTION TO PURCHASE ASSETS

Upon termination or expiration of this Agreement, you hereby grant Liberty or its assignee the option to purchase from you some or all of the assets (including, but not limited to, supplies, equipment, signs, furnishings and fixtures) of the Franchised Business. Liberty may exercise this option by transmitting notice to you within thirty (30) days from the effective date of expiration or termination. If Liberty elects to exercise this option, the purchase price for the assets of the Franchised Business, will be the "adjusted book value" as described below. Liberty will have the right to set off and reduce the purchase price by any and all amounts owed by you to Liberty or any of Liberty's affiliates. The "adjusted book value" is the book value of the assets of the Franchised Business as listed on the balance sheet in the financial statements of the Franchised Business as of the date of the termination or expiration. There shall be no allocation for goodwill or any similar adjustment in the adjusted book value.

## 12.  CONFIDENTIAL INFORMATION

**a. Disclosure.**    Liberty possesses confidential information including, but not limited to, methods of operation, service and other methods, techniques, formats, specifications, procedures, information, systems, knowledge of and experience in operating and franchising offices, customer information and

DocuSign Envelope ID: E8D9782A-53CC-4A0A-800C-4B00AAD47108

marketing information ("Confidential Information"). Liberty may disclose some or all of the Confidential Information to you and your representatives while you operate the Franchised Business. During the term of this Agreement and following the expiration or termination of this Agreement, you covenant not to directly or indirectly communicate, divulge, or use any Confidential Information for your personal benefit or the benefit of any other person or legal entity except as specifically provided by the terms of this Agreement or permitted by Liberty in writing prior to disclosure. Upon the transfer, expiration, termination or nonrenewal of this Agreement, you agree that you will never use or disclose, and will not permit any of your representatives to use or disclose, Liberty's Confidential Information in any manner whatsoever, including, without limitation, in the design, development or operation of any business substantially similar to the Franchised Business. This provision shall not apply to information that: (i) at the time of disclosure is readily available to the public; (ii) after disclosure becomes readily available to the trade or public other than through breach of this Agreement; (iii) is subsequently lawfully and in good faith obtained by you from an independent third party without breach of this Agreement; (iv) was in your possession prior to the date of Liberty's disclosure to you; or (v) is disclosed to others in accordance with the terms of a prior written authorization between you and Liberty.  The protections granted in this Section shall be in addition to all other protections for Confidential Information provided by law or equity.

    **b.  Interest.**  You will acquire no interest in Liberty's Confidential Information, but are provided the right to use Confidential Information disclosed to you for the purposes of developing and operating the Franchised Business pursuant to this Agreement. You acknowledge that it would be an unfair method of competition to use or duplicate any Confidential Information other than in connection with the operation of the Franchised Business. No part of the Liberty Tax franchise system nor any document or exhibit forming any part thereof shall be distributed, utilized or reproduced in any form or by any means, without Liberty's prior written consent.

    **c.  Use.**    You agree that you will: (i) refrain from using Confidential Information for any purpose other than the operation of the Franchised Business pursuant to this Agreement; (ii) maintain absolute confidentiality of Confidential Information during and after the term of this Agreement; (iii) not make unauthorized copies of any portion of Confidential Information; and (iv) adopt and implement all reasonable procedures, including, but not limited to, those required by Liberty, to prevent unauthorized use of or disclosure of Confidential Information, including, but not limited to, restrictions on disclosure to your employees and the use of nondisclosure and non-competition clauses in employment agreements with employees that have access to Confidential Information.

    **d.  Disclosure Required by Law.**    If disclosure of any Confidential information is required by law, then you may make such disclosure after providing Liberty with reasonable notice so that Liberty, at its expense, may seek a protective order or other relief.

## 13.  INDEPENDENT CONTRACTOR AND INDEMNIFICATION

You and Liberty are independent contractors to each other. Neither you nor Liberty are an agent, fiduciary, partner, employee, or a participant in a joint venture and neither you nor Liberty have the authority to hold out as such to third parties. You do not have any authority to bind or obligate Liberty. Liberty is not and will not be liable for any act, omission, debt, or other obligation of yours.

You are responsible for all claims, demands, losses, damages and/or contractual liability to third parties which may arise at any time related to your operation of the Franchised Business. You agree to defend, indemnify and hold Liberty, Liberty's parent company and Affiliated Companies and their employees harmless from all claims, demands, losses, damages, and/or contractual liability (including attorney's fees) to third parties. You agree to reasonable cooperation in the defense of any claim. Liberty and the Affiliated Companies shall have the right to control settlement and selection of counsel and defense of any claim.

## 14. DEATH OR INCAPACITY

    **a.  Assistance and Reimbursement.** In the event of the death or incapacity of Franchisee, Liberty is entitled, but not required, to render assistance to maintain smooth and continued operation of the Franchised Business.  Liberty shall be entitled to reimbursement from Franchisee or Franchisee's estate for reasonable expenditures incurred.

    **b.  Time Requirements.** Pursuant to this Section, death or incapacity shall not be grounds for termination of this Agreement unless:

    i)   Franchisee or his/her legal representative fails for a period of one hundred eighty (180) days after such death or incapacity to commence action to assign this Agreement according to controlling state law regarding the affairs of a deceased or incapacitated person and the terms of this Agreement; or

    ii)   Such assignment is not completed within one (1) year after death or incapacity.

    **c.  Termination.**  Liberty shall have the right to terminate this Agreement if one of the conditions listed in 14(b) are not satisfied within the time frame provided. Nothing in this Section shall be construed to limit the provisions of Section 8 regarding termination. Further, the terms and conditions of Section 15 apply to a transfer upon death or incapacity.

## 15. ASSIGNABILITY AND FIRST RIGHT OF REFUSAL

    **a.  Assignability Generally.**  Liberty may assign this Agreement to an assignee who agrees to remain bound by its terms.  Liberty does not permit a sub-license of the Franchise. Your interest under this Agreement or your ownership in the Franchise may be transferred or assigned only if you comply with the provisions in this Section and such transfer is approved by Liberty in writing. No interest may be transferred unless you are in full compliance with this Agreement and current in all monies owed to Liberty. Liberty may require any transfer of an ownership interest in this Agreement to be joined by all signatories to this Agreement, except in the case of death or legal disability.

    **b.  First Right of Refusal.**  If you have received and desire to accept a signed, bona fide offer to purchase or otherwise transfer the Franchise or any interest in the Franchise, Liberty shall have the option ("Right of First Refusal") to purchase the Franchise or interest. You shall offer the Right of First Refusal by providing written notice to Liberty and including a copy of the signed offer to purchase that you received (collectively "Notice"). Liberty shall have the right to purchase the Franchise or interest in the Franchise for the price and upon the terms set out in the Notice; however, Liberty may substitute

DocuSign Envelope ID: E8D9782A-53CC-4A04-B00C-4B00AAD47408

cash for any non-cash form of payment proposed and Liberty shall have sixty (60) days after the exercise of Liberty's Right of First Refusal to close the purchase. Liberty will notify you in writing within fifteen (15) days of receipt of the Notice if it plans to exercise the Right of First Refusal. Upon the transmission of notice by Liberty that it plans to exercise the Right of First Refusal, there shall immediately arise between Liberty and Franchisee, or its owners, a binding contract of purchase and sale at the price and terms contained in the Notice previously provided by you.

    **c. Transfer to Controlled Entity.** A transfer to a "Controlled Entity" shall not trigger the Right of First Refusal. A "Controlled Entity" is an entity in which Franchisee (or Franchisee's managers, members, owners, partners, shareholders or officers as of the date of this Agreement) is the beneficial owner of 100% of each class of voting ownership interest. At the time of the desired transfer of interest to a Controlled Entity, you must notify Liberty in writing of the name of the Controlled Entity and the name and address of each officer, director, shareholder, member, partner, or similar person and their respective ownership interest, and provide Liberty with the applicable organizational documents of the business entity. Each such person of the Controlled Entity shall sign, on behalf of the business entity and in their respective individual capacity, the amendment and release forms and/or franchise agreement as required by Liberty at the time of transfer. Currently, Liberty does not charge a transfer fee for this type of transaction. Upon transfer, a new EFIN must be obtained pursuant to Section 6(w) herein.

    **d. Transfer of Interest Within Franchisee.** A transfer of interest within a Franchisee that is an entity shall not trigger the Right of First Refusal provided that only the percentage ownership is changing and not the identity of the owners. At the time of the desired transfer of interest within an entity, you must notify Liberty in writing of the name and address of each officer, director, shareholder, member, partner or similar person and their respective ownership interest prior to and following the proposed transfer and provide Liberty with the applicable organizational documents of the business entity. Each such person of the Controlled Entity shall sign, on behalf of the business entity and in their individual capacity, the amendment and release forms and/or franchise agreement as required by Liberty at the time of transfer. Further, if the transfer of interest results in a change in control of the entity, you must pay to Liberty the transfer fee required at the time of transfer.

    **e. Right of First Refusal Not Exercised By Liberty.** If Liberty does not exercise the Right of First Refusal, you may transfer the Franchise or ownership interest therein according to the terms set forth in the Notice, provided that you satisfy the conditions of Sections 15(f) below and complete the sale within ninety (90) days from the date that Liberty received Notice from you. If you do not conclude the proposed sale transaction within this ninety (90) day period, Liberty's Right of First Refusal shall continue in full force and effect.

    **f. Additional Requirements and Restrictions Regarding Transfers.**

        i)  The proposed transferee(s) must complete Liberty's franchise application and pass Liberty's application screening in place at the time of transfer;

        ii)  The proposed transferee(s) must sign the Liberty amendment forms and/or the then current franchise agreement and must personally assume and be bound by all of the terms, covenants and conditions therein;

iii) The proposed transferee(s) must attend and successfully complete EOT and HOT;

iv) You shall sign the transfer and release forms required by Liberty at the time of transfer and pay the transfer fee described in Section 4(i) of this Agreement; and

v) Except as to approved transfers within the Liberty system as described in this Section, you may not give, transfer or sell all or substantially all of the assets of your Franchised Business during the term of this Agreement, or for a two (2) year period after its expiration or termination, to a person or entity who might be reasonably expected to use any such assets to offer income tax preparation in the Territory or within ten (10) miles of the boundaries of the Territory.

**g.  Writing Required.** No amendment, change, or modification of this Agreement and no waiver of any right under this Agreement will be effective unless in a written document that is signed by an authorized representative of Liberty.

## 16.  NON-WAIVER OF BREACH AND CHOICE OF REMEDIES

**a.  Non-Waiver of Breach.** The failure of either party hereto to enforce any of the terms or conditions of this Agreement shall not be deemed a waiver of such terms or conditions or of either party's rights thereafter to enforce each and every term and condition of this Agreement.

**b.  Choice of Remedies.**  The remedies provided to Liberty in this Agreement will be cumulative and non-exclusive. The choice to pursue or not pursue any remedy will not preclude Liberty from pursuing a different remedy available to it, or act as a condition precedent to Liberty's pursuing a different remedy available.

## 17.  GOVERNING LAW

**a.  Virginia Law.**  This Agreement is effective upon its acceptance in Virginia by Liberty's authorized officer. Virginia law governs all claims that in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto, or dealings between you and any of the Affiliated Companies. Liberty, the Affiliated Companies and their respective present or former employees, agents, officers and directors are collectively referred to in this Section as the "Liberty Parties." However, the Virginia Retail Franchising Act does not apply to any claims by or on your behalf if the Territory shown on Schedule A is outside of Virginia.

**b.  Jurisdiction and Venue.**  In any suit brought by any or all of the Liberty Parties, that in any way relates to or arises out of this Agreement or any of the dealings of the dealings between you and any or all of the Liberty Parties, you consent to venue and personal jurisdiction in the state and federal court of the city or county of Liberty's National Office (presently Virginia Beach, Virginia state courts and the United States District Court in Norfolk, Virginia). In any suit brought against any or all of the Liberty Parties, including their present or former employees or agents, that in any way relates to or arises out of this Agreement or any of the dealings between you and any or all of the Liberty Parties, venue shall be proper only in the federal court district and division located nearest Liberty's National

Office (presently the U.S. District Court in Norfolk, Virginia), or if neither federal subject matter nor diversity jurisdiction exists, in the city or county state court where Liberty's National Office is located (presently the City of Virginia Beach, Virginia).

    **c. Jury Waiver.** In any trial between you and any or all of the Liberty Parties, that in any way relates to or arises out of this Agreement or any of the dealings between you and any or all of the Liberty Parties, you and Liberty waive the rights to a jury trial and agree to have such action tried by a judge.

    **d. Class Action Waiver.** You agree that any claim you may have against any or all of the Liberty Parties shall be brought individually and you shall not join such claim with claims of any other person or entity or bring, join or participate in a class action against any or all of the Liberty Parties.

    **e. No Punitive Damages.** In any lawsuit, dispute or claim between or against you or the Liberty Parties that in any way relates to or arises out of this Agreement or any of the dealings between you and the Liberty parties, you and Liberty waive the rights, if any, to seek or recover punitive or exemplary damages. Franchisee further waives the right to seek consequential damages.

    **f. Attorneys' Fees and Costs**. Franchisee agrees to reimburse the Liberty Parties for all expenses reasonably incurred (including attorneys' fees and costs): (i) to enforce the terms of this Agreement or any obligation owed to any or all of the Liberty Parties by Franchisee (whether or not the Liberty Parties initiate the legal proceeding, unless the Liberty Parties initiate and fail to substantially prevail in such court or formal legal proceeding); and (ii) in the defense of any claim Franchisee asserts against us on which the Liberty Parties substantially prevail in court or other formal legal proceedings.

    **g. Anti-Terror.** Franchisee represents and warrants that no Franchisee signatory to this Agreement is identified, either by name or an alias, pseudonym or nickname, on the lists of "Specially Designated Nationals" maintained by the U.S. Treasury Department's Office of Foreign Assets Control (texts currently available at www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx. Further, Franchisee represents and warrants that no Franchisee signatory to this Agreement has violated, and agrees not to violate, any law prohibiting corrupt business practices, money laundering or the aid or support of Persons who conspire to commit acts of terror against any Person or government, including acts prohibited by the U.S. Patriot Act, U.S. Executive Order 13224, or any similar law. The foregoing constitutes continuing representations and warranties, and Franchisee shall immediately notify Liberty in writing of the occurrence of any event or the development of any circumstance that might render any of the foregoing representations and warranties false, inaccurate or misleading.

    **h. Area Developers.** If your Territory is or becomes located in an Area Developer area, you agree not to bring any claim, including a lawsuit, against the Area Developer, or its owners, employees or independent contractors, except as to a claim unrelated to the Liberty franchise, such as an automobile accident. Area Developers are a third party beneficiary of this clause. Further, you agree that if you breach this clause, you will pay to Liberty and/or the Area Developer all attorney fees and other costs that Liberty and the Area Developer incur to defend the Area Developer in such an action, regardless of who prevails.

**i. Survival.** Any provisions of this Agreement that by their nature extend beyond the expiration or termination of this Agreement, shall survive termination or expiration of this Agreement and be fully binding and enforceable as though termination or expiration had not occurred.

## 18.  MODIFICATION

No modifications to this Agreement will have any effect unless such modification is in writing and signed by you and by Liberty's authorized officer.  However, Liberty may modify the provisions of the Operations Manual without your consent.

## 19.  RELEASE OF PRIOR CLAIMS

By executing this Agreement, the undersigned entity, if any, and individuals, on behalf of yourselves and your heirs, legal representatives, successors and assigns, and each assignee of this Agreement, hereby forever release and discharge Liberty, its past and present employees, agents, area developers, officers and directors, including Liberty's parent, subsidiary and affiliated corporations, their respective past and present employees, agents, officers and directors, from any and all claims relating to or arising out of any franchise agreement between the parties executed prior to the date of this Agreement, and all other claims relating to any dealings between any of the parties. However, this release does not apply to Liberty's renewal obligations the same or similar to those in Section 2(b) above, as contained in any prior or other franchise agreement.

## 20.  NOTICES

You shall give any notice or request hereunder by mail or courier, postage fully prepaid, delivered personally to Liberty's CEO at Liberty's National Office, presently 1716 Corporate Landing Parkway, Virginia Beach, Virginia, 23454, Telephone:  (757) 493-8855. Liberty may also give any such notice to you in the same manner at the address indicated below the Franchisee's signature on this Agreement, or such other more current address as Liberty may have for you. Liberty may also give notice to you by e-mail.

## 21.  FULL UNDERSTANDING

This Agreement is the entire agreement between you and Liberty. This Agreement supersedes all other prior oral and written agreements and understandings between you and Liberty with respect to the subject matter herein. Nothing in this or in any related agreement, however, is intended to disclaim the representations Liberty made in the Franchise Disclosure Document Liberty furnished to you.

## 22.  ACKNOWLEDGMENTS

You acknowledge that you have read Liberty's franchise disclosure document and this Agreement and that you are familiar with their contents. You acknowledge that you have independently investigated the business offered hereunder and base your decision to purchase solely on such investigation. Except as may be stated in Item 19 of Liberty's Franchise Disclosure Document, you acknowledge that no person is authorized to make and no person has made any representations to you as to the actual, projected or potential sales, volumes, revenues, profits or success of any Liberty Tax franchise. You

further acknowledge and agree that you are not a third party beneficiary to any agreement between
Liberty and any other franchisee.

## 23. SEVERABILITY

If any covenant or provision within this Agreement is determined to be void or unenforceable, in
whole or in part, it shall be deemed severed and removed from this Agreement and shall not effect or
impair the validity of any other covenant or provision of this Agreement and no covenant or provision
of this Agreement shall be deemed to be dependent upon any other unless specifically expressed
herein.

## 24. COUNTERPARTS AND ELECTRONIC SIGNATURE

This Agreement may be executed in any number of counterparts, each of which when so executed and
delivered shall be deemed an original, but such counterparts shall constitute one and the same
instrument. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or
in electronic (e.g. "pdf") format shall be effective as delivery of a manually executed counterpart of
this Franchise Agreement.  The words "execution," "signed," "signature," and words of similar import
in the Franchise Agreement shall be deemed to include electronic or digital signatures or the keeping
of records in electronic form, each of which shall be of the same effect, validity and enforceability as
manually executed signatures or a paper-based recordkeeping system, as the case may be, to the extent
and as provided for under applicable law, including the Electronic Signatures in Global and National
Commerce Act of 2000 (15 USC § 7001 et seq.) or any other similar state or federal laws.

## 25. HEADINGS

The headings of the various sections of this Agreement have been inserted for reference only and shall
not be deemed to have any legal effect or meaning.

## 26. GUARANTY

The Franchisee named at the top of the following page agrees to abide by the terms of this Agreement.
The Franchisee signature of an individual or individuals constitutes their personal agreement to such
terms.  The Franchisee signature of an individual or individuals on behalf of an entity constitutes the
entity's agreement to such terms.

The individual signators signing on behalf of Franchisee also agree jointly and severally to perform all
the obligations in and relating to this Agreement, including, but not limited to, all obligations related to
the covenants not to compete, covenants not to solicit, confidentiality obligations, obligations to make
payments specified herein, pay any other promissory notes and other debts due to Liberty, pay for
products later ordered from Liberty and the obligations stated in **Section 17 above concerning
governing law, including but not limited to, the application of Virginia law, the jurisdiction and
venue clause, the jury waiver, the class action waiver, and the limitation to compensatory
damages only.** If the Franchise Agreement is held in the name of a business entity and it is later
determined by Liberty that the entity is no longer valid or in good standing with the laws of the
applicable state of organization or that an individual has been removed as a part of the business entity
pursuant to applicable state law or otherwise, Liberty shall have the right to modify the Franchise

Agreement to reflect the then current business structure with the signatures of only those that remain as valid members, officers, partners, directors or sole proprietor of the then current business structure. All Franchisee signators specifically agree to indemnify Liberty, pursuant to the terms of Section 13, related to the removal of parties under this provision. All Franchisee signators waive any right to presentment, demand or notice of non-performance and the right to require Liberty to proceed against the other  Franchisee signators. Except as specified herein, no person or entity is a third-party beneficiary of this Agreement.

*Signatures on Following Page*

**Franchisee:** <u>   Evergreen Tree Investments   </u>    **Entity Number:** <u> 8543 </u>

**SIGNATORS:**

By: <u>                  </u>
       (Signature)

  Amy Lu

<u>                       </u>
       (Printed Name)

Title: <u>                 </u>

Address: <u>PO Box 660699       </u>

<u>  Arcadia, CA  91066      </u>

Ownership Percentage: <u>     </u>%

By: <u>                  </u>
       (Signature)

<u>                       </u>
       (Printed Name)

Title: <u>                 </u>

Address: <u>                </u>

<u>                     </u>

Ownership Percentage: <u>     </u>%

By: <u>                  </u>
       (Signature)

By: <u>                  </u>
       (Signature)

<u>                       </u>
       (Printed Name)

<u>                       </u>
       (Printed Name)

Title: <u>                 </u>

Title: <u>                 </u>

Address: <u>                </u>

Address: <u>                </u>

<u>                     </u>

<u>                     </u>

Ownership Percentage: <u>     </u>%

Ownership Percentage: <u>     </u>%

**JTH TAX, INC. d/b/a**
**LIBERTY TAX SERVICE**

By: <u>  Edward L Brunot  </u>

Printed Name: <u>  Edward Brunot  </u>

Title: <u>  CEO         </u>

Effective Date: <u> 10/3/2017   </u>

DocuSign Envelope ID: E8D9782A-59CC-4A0A-800C-4B00AAD47408

## SCHEDULE "A" TO THE FRANCHISE AGREEMENT

### Territory

The Franchise Territory* is as follows:

CA178 (LongBeachCA-1)

NORTH of and including I-405 from Cherry Ave to I-710.
EAST of and including I-710 from I-405 to W Del Amo Blvd.
SOUTH of and excluding W Del Amo Blvd continuing onto SOUTH of and excluding E Del Amo
Blvd from I-710 to Cherry Ave.
WEST of and excluding Cherry Ave from E Del Amo Blvd to I-405.



*Note: When a Territory description includes a road, avenue, street, parkway, highway, route or
similar roadway, the Territory includes the U.S. Postal addresses assigned to either side of the
roadway.  When a Territory description excludes a road, avenue, street, parkway, highway,
route or similar roadway, the Territory excludes the U.S. Postal addresses assigned to either
side of such roadway.  If a map of the Territory is attached, the map approximates the Territory,
but the above legal description controls as to the Territory's precise boundaries.

**EXHIBIT G**

# PURCHASE AND SALE AND PARTIAL ASSIGNMENT AGREEMENT

This Purchase and Sale and Partial Agreement is made this <u>14th</u> day of <u>October</u> 2016 by and between JTH Tax, Inc. d/b/a Liberty Tax Service, a Delaware corporation ("Seller") and Amy Lu ("Purchaser");

WHEREAS Seller owns the license to operate a Liberty Tax Service franchise for the franchise territory known as CA610 (see Schedule A) as well as certain assets listed on Schedule B (together also known as the "Business");

WHEREAS Seller purchased the Business back from Quantum Investments and John Balkhi, individually and as CEO of Quantum Investments (collectively "Former Owner") pursuant to a separate Agreement of Purchase and Sale dated May 27, 2016 ("Former Owner Purchase Agreement") which contained a provision allowing for Seller to assign the rights and obligations under the Former Owner Purchase Agreement, in full or in part;

WHEREAS Seller has agreed to transfer and assign to Purchaser, and Purchaser has agreed to assume from Seller, certain of Seller's rights and obligations under the Former Owner Purchase Agreement as set forth herein;

WHEREAS Seller is also the Franchisor of Liberty Tax Service franchises and will, pursuant to a franchise agreement ("Franchise Agreement"), grant to the Purchaser the right to use the Liberty Tax Service operating system and Marks in the operation of an income tax preparation business under the terms and conditions contained in the Franchise Agreement; and

WHEREAS Purchaser desires to purchase the Business from Seller.

THEREFORE, for good and valuable consideration, Seller and Purchaser agree as follows:

1.    On the terms and subject to the conditions set forth in this Agreement, certain provisions of the Former Owner Purchase Agreement and the Franchise Agreement, Seller shall sell and assign the Business to Purchaser and Purchaser shall purchase and assume the Business as of the date of this Agreement. Purchaser shall assume all of Seller's duties, liabilities and obligations related to the Remaining Payments (as defined below), and agrees to pay, perform and discharge, as and when due, all of the obligations related to the Remaining Payments

2.    Purchaser agrees to execute the current Liberty Tax Service Franchise Agreement for the Franchise Territory described in Schedule A of this Agreement.

3.    The purchase price ("Purchase Price") to be paid by the Purchaser to the Seller for the Business shall be made up of a down payment in the amount of $27,450.00 and Purchaser's assumption of the obligations to pay the remaining payments owed from Seller to Former Owner pursuant to the Former Owner Purchase Agreement and described below ("Remaining Payments"). All amounts shall be

1

DocuSign Envelope ID: CE6A9E18-69FC-4E98-8E98-D6DA49F9A2D

8543

paid directly to Seller for Seller to make the Remaining Payments to Former Owner after any applicable deductions are applied, in Seller's determination, as allowed via the Former Owner Purchase Agreement. Net Revenue as used herein shall mean gross fees received less all discounts, Cash-in-a-Flash, Send-a-Friend, uncollected fees for the offices in the Territories and all other amounts paid for by Seller as a result of the operation of the Business. Net Revenue shall be determined by Seller. Fiscal Year as used herein shall mean January 1 through April 30.

    a.  First Payment. 10% of Net Revenue shall be paid to Seller on or about June 1, 2017 for amounts received during Fiscal Year 2017.

    b.  Second Payment. 10% of Net Revenue shall be paid to Seller on or about June 1, 2018 for amounts received during Fiscal Year 2018.

    c.  Third Payment. 10% of Net Revenue shall be paid to Seller on or about June 1, 2019 for amounts received during Fiscal Year 2019.

4.    Purchaser agrees to accept all assets in an "as is" condition. Purchaser also acknowledges that the license to use the customer list shall run simultaneously with the initial term of the Franchise Agreement and any renewal thereof.

5.    Upon execution of this Agreement by both parties, this Agreement shall be closed ("Closing"). At such time, all rents, utility charges and all other expenses associated with the Business shall be prorated.

6.    Seller has not made and does not make any warranties, representations or guaranties and Purchaser is not relying on any warranty, representation or guaranty made by any person acting on Seller's behalf as to the condition of any furniture, fixtures, and equipment, past or future income, expenses or operation of the business, or any other matter or thing affecting or related thereto, except as specifically set forth herein. Purchaser warrants to Seller that Purchaser has made such evaluations, projections, and studies regarding the potential income possibilities to serve its own purposes and hereby acknowledges that Seller has not made and does not make any representations, warranties, or guaranties regarding such evaluations, projections or studies.

7.    All expenses and liabilities arising out of or related to the Business that arise prior to Closing are and shall remain the responsibility of the Seller. Seller hereby indemnifies Purchaser from expenses and liabilities arising out of or related to the Business which arise prior to Closing. All expenses and liabilities (including obligations related to the Remaining Payments) arising out of or related to the Business that arise from the moment of Closing and thereafter shall be the responsibility of the Purchaser. Purchaser hereby indemnifies Seller from expenses and liabilities (including obligations related to the Remaining Payments) arising out of or related to the Business that arise after Closing. Expenses may include, but

DocuSign Envelope ID: C5FA9F13-69FC-4E92-8E92-D6DAA9F9A2D

              are not limited to, rent, payroll, telephone service charges, utilities, and maintenance agreements.

8.       Purchaser must change all leases and other accounts related to the operation of the Territory to the Purchaser's name immediately after execution of this Agreement.

9.       By executing this Agreement, Purchaser, individually and on behalf of Purchaser's officers, directors, employees, agents, legal representatives, successors and assigns, and each assignee of this Agreement by accepting assignment of the same, hereby forever releases and discharges Seller, its past and present employees, agents, officers, directors, Seller's subsidiary and affiliated corporations and franchisees, their respective past and present employees, agents, officers, directors, from any and all claims which could be asserted by the Purchaser against any such persons and entities through the date of this Agreement, except obligations set forth or re-affirmed herein.

10.     This Agreement is not assignable by Purchaser in whole or in part without Seller's written consent.

11.     This Agreement, together with all Schedules and Exhibits hereto, and the Franchise Agreement, constitute the entire agreement between the parties regarding the subject matter of this Agreement. Seller acknowledges that Seller has not been unduly influenced to enter into this Agreement and has fully considered and contemplated the terms contained herein. This Agreement shall be binding upon and inure to the benefit of the parties hereto, their successors, assigns and legal representatives.

12.     This Agreement is accepted in the Commonwealth of Virginia and, along with all claims which in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto, shall be governed by and interpreted in accordance with Virginia law. However, the Virginia Retail Franchising Act does not apply to any claims by or on Purchaser's behalf if the Territory shown on Schedule A below is outside of Virginia.

13.     In any suit brought by Seller, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, Purchaser consents to venue and personal jurisdiction in the state and federal court of the city or county of our National Office, presently Virginia Beach state courts and the United States District Court in Norfolk, Virginia. In any suit brought against Seller, including Seller's present and former employees and agents that in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, venue shall be proper only in the federal court located nearest our National Office (presently the U.S. District in Norfolk, Virginia), or if neither federal subject matter or diversity jurisdiction exists, in the city or county state court where Seller's National Office is located (presently the City of Virginia Beach, Virginia).

DocuSign Envelope ID: CE9A9F19-69FC-4E92-8E92-D6DAA9F9A3D

8543

14. In any trial between any of the parties hereto, including present and former employees and agents of Seller, the parties hereto agree to waive any rights to a jury trial and instead submit any action to be tried by a judge.

15. Purchaser agree that any claim Purchaser may have against Seller, including past and present employees and agents of Seller, shall be brought individually and Purchaser shall not join such claim with claims of any other person or entity or bring, join or participate in a class action against Seller.

16. In any lawsuit, dispute or claim between or against any of the parties hereto, including present and former agents and employees of Seller, the parties hereto agree to waive all rights to seek or recover punitive damages.

17. Each party agrees to be responsible for any tax consequences affecting said party as a result of this Agreement.

18. If any covenant or provision within this Agreement is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not effect or impair the validity of any other covenant or provision of this Agreement and no covenant or provision of this Agreement shall be deemed to be dependent upon any other unless specifically expressed herein.

19. This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (e.g. "pdf") format shall be effective as delivery of a manually executed counterpart of this Agreement. The words "execution," "signed," "signature," and words of similar import in the Agreement shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed signatures or a paper-based record keeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 USC § 7001 et seq.) or any other similar state or federal laws.

*Signatures on the following page.*

**Accepted and Agreed to:**

**Purchaser:**    Amy Lu

By: _____
   Amy Lu

**Seller:  JTH Tax, Inc. d/b/a Liberty
   Tax Service**

By: _____

Print Name: ___John Hewitt___

Title: ___CEO___

**Schedule A**

**Territory Description**

The Franchise Territory is as follows:

CA610

*Note: When a Territory description includes a road, avenue, street, parkway, highway, route or similar roadway, such Territory includes the U.S. Postal addresses assigned to either side of such roadway. When a Territory description excludes a road, avenue, street, parkway, highway, route or similar roadway, such Territory excludes the U.S. Postal addresses assigned to either side of such roadway. If a map of the Territory is attached, such map approximates your Territory, but the above legal description controls as to the Territory's precise boundaries.

**Schedule B**

**Furniture, Fixtures, Signs and Equipment**

**See attached Asset Price Lists and Marketing Inventory List.**

## Asset Price List

Office Number: **20433**

Completed By: **Sharif Vaughn**

Office Address: **279 S. Atlantic Blvd**

**Los Angeles Ca**

Date: **7/29/16**

| Quantity | Item | Value | Total | Sub Totals |
|---|---|---|---|---|
| | *Furniture* | | | |
| 6 | Desks | $125.00 | $750.00 | |
| 1 | Reception Desk(s) | $150.00 | $150.00 | |
| 0 | Credenzas | $125.00 | $0.00 | |
| 17 | Waiting room chairs | $35.00 | $595.00 | |
| 1 | Book Shelves | $50.00 | $50.00 | |
| 2 | File Cabinet | $65.00 | $130.00 | |
| 7 | Desk Chairs | $50.00 | $350.00 | |
| 0 | Folding Tables | $45.00 | $0.00 | $2,025.00 |
| | | | | |
| | *Equipment* | | | |
| 0 | Computers | $400.00 | $0.00 | |
| 0 | Scanner | $200.00 | $0.00 | |
| 1 | Printers | $200.00 | $200.00 | |
| 2 | Copier/Fax | $100.00 | $200.00 | |
| 1 | Microwave | $50.00 | $50.00 | |
| 1 | Fridge | $50.00 | $50.00 | |
| 0 | Calculator | $40.00 | $0.00 | |
| 1 | Telephones | $40.00 | $40.00 | |
| 0 | Exterior Sign - Panel Box | $2,200.00 | $0.00 | |
| 1 | Exterior Sign - Channel Letter | $4,200.00 | $4,200.00 | |
| 1 | TV/VCR Westinghouse | $125.00 | $125.00 | |
| 3 | Signature Pads | $75.00 | $225.00 | |

**Total Assets for P/P Reporting**    **$7,115.00**

\*    Other Items not listed

**NOTES**

*1  Water Dispenser
* 1 Storage Racks
* 1 BBQ Grill

| Asset Price List | | | | |
|---|---|---|---|---|
| Office Number 20433 | | Completed By: Sharif Vaughn | | |
| Item | Make | Model Number | Serial Number | Operating System |
| Computer 1 | Optiplex | 755 | 4PRZHF1 | VISTA |
| Computer 2 | Optiplex | 755 | X1882396 | VISTA |
| Computer 3 | Optiplex | 755 | 755WGH1 | VISTA |
| Computer 4 | Optiplex | 755 | 2X0WQJ1 | VISTA |
| Computer 5 | Optiplex | 755 | FV64HF1 | VISTA |
| Computer 6 | HP COMPAQ | 600 PRO | MXL03901D2 | |
| Computer 7 | | | | |
| Printer 1 | HP LaserJet | 600S PRO | VND3F40029 | |
| Printer 2 | | | | |
| All in One Printer/Copier/ Fax 3 | Brothers | MFC8710DW | U63088F5N185150 | |
| Printer 4 | Brothers | MFC8480DN | U62272C1J693040 | |
| Printer 5 | | | | |
| | | | | |
| Scanner | 0 | | | |
| Fax | 0 | | | |
| Copier | 0 | | | |
| Copier/Scanner/Fax | 0 | | | |

## Marketing Inventory

Completed By: Sharif Vaughn

Office Number: 20433

### Window Signage

| Description | Banner? | Poster? | Light Box Insert Panel | Light Box Insert Light | Amount |
|---|---|---|---|---|---|
| Light Box Sign | 1 | | | | |
| Neon Open Sign | 1 | | | | |
| Cash in a Flash | | | | | |
| Send a Friend | | | | | |
| Free Tax School | 1 | | | | |
| $750 Refund Advance | | Poster | | | |
| Accurate. Friendly. - Guaranteed | | | | | |
| Firefighters Free Tax Prep | | | | | |
| Military & Veteran's Free Tax Prep | | | | | |
| Police & Law Enforcement Free Tax Prep | | | | | |
| Teachers & School Employees | | | | | |
| Nurses & Health Prof. Free Tax Prep | | | | | |
| Non-Profit & Volunteer Free Tax Prep | | | | | |
| Additional Signs Not Noted | | | | | |
| Additional Signs Not Noted | | | | | |
| Additional Signs Not Noted | | | | | |

### Outside Signage

| Description | Color | Current Location | Verbiage on Sign | Note- | Amount |
|---|---|---|---|---|---|
| Liberty Tax Service Banner | | | | | |
| $50 Cash Now Banner | | | | | |
| Small Red Arrow Directional Signs | | | | | |
| Help Wanted Banner | | | | | |
| Wind Feathers 1 | | | | | |
| Wind Feathers 2 | | | | | |
| Clr Window Poster | | | | | |
| $750 OA Banner | | | | | |
| A-Frame Stand | | | | | |
| A-Frame Signage | | | | | |
| Waver Arrow Sign Liberty Tax | | | | | |
| Liberty Tax Service Tent | | | | | |
| Liberty Tax Posters | | | | | |
| Crowns | | | | | |
| Flags | | | | | |
| Additional Signs Not Noted | | | | | |
| Additional Signs Not Noted | | | | | |
| Additional Signs Not Noted | | | | | |

### Wall Signage

| Description | Color | Current Location | Verbiage on Sign | Note- | Amount |
|---|---|---|---|---|---|
| Cash in a Flash | | | | All wall Signage removed outdated. | |
| Send a Friend | | | | | |
| Now Hiring | | | | | |
| Free Tax School | | | | | |
| $750 Refund Advance | | | | | |
| Accurate. Friendly. - Guaranteed | | | | | |
| Firefighters Free Tax Prep | | | | | |
| Military & Veteran's Free Tax Prep | | | | | |
| Police & Law Enforcement Free Tax Prep | | | | | |
| Teachers & School Employees | | | | | |
| Nurses & Health Prof. Free Tax Prep | | | | | |
| Non-Profit & Volunteer Free Tax Prep | | | | | |
| Liberty Tax Posters - 4 Set | | | | | |
| Written Guarantee | | | | | |
| Federal Labor Law | | | | | |
| Crowns | | | | | |

### Wizard Costumes

| Description | | Amount |
|---|---|---|
| Lady Liberty Costume Dress | | 0 |
| Lady Liberty Costume Sash | | 0 |
| Red Liberty Tax Service Sash | | 0 |
| Regular Crown | | 0 |
| Light-Up Crown | | 0 |
| Libby Costume Head | | 0 |

DocuSign Envelope ID: 21B2A048-491B-42BF-A5C8-BBBD1581DFDB

8543

# PURCHASE AND SALE AND PARTIAL ASSIGNMENT AGREEMENT

This Purchase and Sale and Partial Agreement is made this <u>14th</u> day of <u>October</u>
2016 by and between JTH Tax, Inc. d/b/a Liberty Tax Service, a Delaware corporation ("Seller")
and Amy Lu ("Purchaser");

WHEREAS Seller owns the license to operate a Liberty Tax Service franchise for the
franchise territory known as CA647 (see Schedule A) as well as certain assets listed on Schedule
B (together also known as the "Business");

WHEREAS Seller purchased the Business back from Quantum Investments and John
Balkhi, individually and as CEO of Quantum Investments (collectively "Former Owner") pursuant
to a separate Agreement of Purchase and Sale dated May 27, 2016 ("Former Owner Purchase
Agreement") which contained a provision allowing for Seller to assign the rights and obligations
under the Former Owner Purchase Agreement, in full or in part;

WHEREAS Seller has agreed to transfer and assign to Purchaser, and Purchaser has agreed
to assume from Seller, certain of Seller's rights and obligations under the Former Owner Purchase
Agreement as set forth herein;

WHEREAS Seller is also the Franchisor of Liberty Tax Service franchises and will,
pursuant to a franchise agreement ("Franchise Agreement"), grant to the Purchaser the right to use
the Liberty Tax Service operating system and Marks in the operation of an income tax preparation
business under the terms and conditions contained in the Franchise Agreement; and

WHEREAS Purchaser desires to purchase the Business from Seller.

THEREFORE, for good and valuable consideration, Seller and Purchaser agree as follows:

1.     On the terms and subject to the conditions set forth in this Agreement, certain
provisions of the Former Owner Purchase Agreement and the Franchise
Agreement, Seller shall sell and assign the Business to Purchaser and Purchaser
shall purchase and assume the Business as of the date of this Agreement. Purchaser
shall assume all of Seller's duties, liabilities and obligations related to the
Remaining Payments (as defined below), and agrees to pay, perform and discharge,
as and when due, all of the obligations related to the Remaining Payments

2.     Purchaser agrees to execute the current Liberty Tax Service Franchise Agreement
for the Franchise Territory described in Schedule A of this Agreement.

3.     The purchase price ("Purchase Price") to be paid by the Purchaser to the Seller for
the Business shall be paid as follows:

      a.  A down payment in the amount of $96,077.00, via separate promissory note.

1

The promissory note shall be payable as follows:

February 28, 2017: $48,038.50, plus accrued interest; and
February 28, 2018: $48,038.50 plus all remaining interest.

The promissory note shall have an interest rate of 12% per annum.

b.  Purchaser's assumption of the obligations to pay the remaining payments
owed from Seller to Former Owner pursuant to the Former Owner Purchase
Agreement and described below ("Remaining Payments").

    i.  First Payment. 10% of Net Revenue shall be paid to Seller on or about
June 1, 2017 for amounts received during Fiscal Year 2017.

    ii.  Second Payment. 10% of Net Revenue shall be paid to Seller on or
about June 1, 2018 for amounts received during Fiscal Year 2018.

    iii.  Third Payment. 10% of Net Revenue shall be paid to Seller on or
about June 1, 2019 for amounts received during Fiscal Year 2019.

All amounts shall be paid directly to Seller for Seller to make the Remaining
Payments to Former Owner after any applicable deductions are applied, in
Seller's determination, as allowed via the Former Owner Purchase Agreement.
Net Revenue as used herein shall mean gross fees received less all discounts,
Cash-in-a-Flash, Send-a-Friend, uncollected fees for the offices in the Territories
and all other amounts paid for by Seller as a result of the operation of the
Business. Net Revenue shall be determined by Seller. Fiscal Year as used herein
shall mean January 1 through April 30.

4.  Purchaser agrees to accept all assets in an "as is" condition. Purchaser also
acknowledges that the license to use the customer list shall run simultaneously with
the initial term of the Franchise Agreement and any renewal thereof.

5.  Upon execution of this Agreement by both parties, this Agreement shall be closed
("Closing").   At such time, all rents, utility charges and all other expenses
associated with the Business shall be prorated.

6.  Seller has not made and does not make any warranties, representations or guaranties
and Purchaser is not relying on any warranty, representation or guaranty made by
any person acting on Seller's behalf as to the condition of any furniture, fixtures,
and equipment, past or future income, expenses or operation of the business, or any
other matter or thing affecting or related thereto, except as specifically set forth
herein.   Purchaser warrants to Seller that Purchaser has made such evaluations,
projections, and studies regarding the potential income possibilities to serve its own
purposes and hereby acknowledges that Seller has not made and does not make any

DocuSign Envelope ID: 21B2A048-491B-12BF-AEC8-BBBD4D81DFDB

8543

representations, warranties, or guaranties regarding such evaluations, projections or studies.

7.    All expenses and liabilities arising out of or related to the Business that arise prior to Closing are and shall remain the responsibility of the Seller. Seller hereby indemnifies Purchaser from expenses and liabilities arising out of or related to the Business which arise prior to Closing. All expenses and liabilities (including obligations related to the Remaining Payments) arising out of or related to the Business that arise from the moment of Closing and thereafter shall be the responsibility of the Purchaser. Purchaser hereby indemnifies Seller from expenses and liabilities (including obligations related to the Remaining Payments) arising out of or related to the Business that arise after Closing. Expenses may include, but are not limited to, rent, payroll, telephone service charges, utilities, and maintenance agreements.

8.    Purchaser must change all leases and other accounts related to the operation of the Territory to the Purchaser's name immediately after execution of this Agreement.

9.    By executing this Agreement, Purchaser, individually and on behalf of Purchaser's officers, directors, employees, agents, legal representatives, successors and assigns, and each assignee of this Agreement by accepting assignment of the same, hereby forever releases and discharges Seller, its past and present employees, agents, officers, directors, Seller's subsidiary and affiliated corporations and franchisees, their respective past and present employees, agents, officers, directors, from any and all claims which could be asserted by the Purchaser against any such persons and entities through the date of this Agreement, except obligations set forth or re-affirmed herein.

10.    This Agreement is not assignable by Purchaser in whole or in part without Seller's written consent.

11.    This Agreement, together with all Schedules and Exhibits hereto, and the Franchise Agreement, constitute the entire agreement between the parties regarding the subject matter of this Agreement. Seller acknowledges that Seller has not been unduly influenced to enter into this Agreement and has fully considered and contemplated the terms contained herein. This Agreement shall be binding upon and inure to the benefit of the parties hereto, their successors, assigns and legal representatives.

12.    This Agreement is accepted in the Commonwealth of Virginia and, along with all claims which in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto, shall be governed by and interpreted in accordance with Virginia law. However, the Virginia Retail Franchising Act does not apply to any claims by or on Purchaser's behalf if the Territory shown on Schedule A below is outside of Virginia.

DocuSign Envelope ID: 71B2A048-491B-12BF-AEC8-BBBDF581DFDB

13.    In any suit brought by Seller, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, Purchaser consents to venue and personal jurisdiction in the state and federal court of the city or county of our National Office, presently Virginia Beach state courts and the United States District Court in Norfolk, Virginia.  In any suit brought against Seller, including Seller's present and former employees and agents that in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, venue shall be proper only in the federal court located nearest our National Office (presently the U.S. District in Norfolk, Virginia), or if neither federal subject matter or diversity jurisdiction exists, in the city or county state court where Seller's National Office is located (presently the City of Virginia Beach, Virginia).

14.    In any trial between any of the parties hereto, including present and former employees and agents of Seller, the parties hereto agree to waive any rights to a jury trial and instead submit any action to be tried by a judge.

15.    Purchaser agree that any claim Purchaser may have against Seller, including past and present employees and agents of Seller, shall be brought individually and Purchaser shall not join such claim with claims of any other person or entity or bring, join or participate in a class action against Seller.

16.    In any lawsuit, dispute or claim between or against any of the parties hereto, including present and former agents and employees of Seller, the parties hereto agree to waive all rights to seek or recover punitive damages.

17.    Each party agrees to be responsible for any tax consequences affecting said party as a result of this Agreement.

18.    If any covenant or provision within this Agreement is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not effect or impair the validity of any other covenant or provision of this Agreement and no covenant or provision of this Agreement shall be deemed to be dependent upon any other unless specifically expressed herein.

19.    This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (e.g. "pdf") format shall be effective as delivery of a manually executed counterpart of this Agreement. The words "execution," "signed," "signature," and words of similar import in the Agreement shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed signatures or a paper-based record keeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National

Commerce Act of 2000 (15 USC § 7001 et seq.) or any other similar state or federal laws.

**Accepted and Agreed to:**

**Purchaser:**    Amy Lu

**Seller:  JTH Tax, Inc. d/b/a Liberty
                  Tax Service**

By: _____

By: _____

Print Name: ___John Hewitt___

Title: ___CEO___

**Schedule A**

**Territory Description**

The Franchise Territory is as follows:

CA647

\*Note: When a Territory description includes a road, avenue, street, parkway, highway, route or
similar roadway, such Territory includes the U.S. Postal addresses assigned to either side
of such roadway.  When a Territory description excludes a road, avenue, street, parkway,
highway, route or similar roadway, such Territory excludes the U.S. Postal addresses
assigned to either side of such roadway.  If a map of the Territory is attached, such map
approximates your Territory, but the above legal description controls as to the Territory's
precise boundaries.

## Schedule B

### Furniture, Fixtures, Signs and Equipment

**See attached Asset Price Lists and Marketing Inventory List.**

## Asset Price List

| | |
|---|---|
| Office Number | 13152 |
| Office Address | 795 Long Beach Blvd |
| | Long Beach Ca 90813 |

Completed By: Sharif Vaughn

Date: 7/28/16

| Quantity | Item | Value | Total | Sub Totals |
|---|---|---|---|---|
| | **_Furniture_** | | | |
| 8 | Desks | $125.00 | $1,000.00 | |
| 1 | Reception Desk(s) | $150.00 | $150.00 | |
| 1 | Credenzas | $125.00 | $125.00 | |
| 41 | Waiting room chairs | $35.00 | $1,435.00 | |
| 1 | Book Shelves | $50.00 | $50.00 | |
| 2 | File Cabinet | $65.00 | $130.00 | |
| 9 | Desk Chairs | $50.00 | $450.00 | |
| 2 | Folding Tables | $45.00 | $90.00 | $3,430.00 |
| | | | | |
| | **_Equipment_** | | | |
| 3 | Computers | $400.00 | $1,200.00 | |
| 0 | Scanner | $200.00 | $0.00 | |
| 1 | Printers | $200.00 | $200.00 | |
| 1 | Copier/Fax | $100.00 | $100.00 | |
| 1 | Microwave | $50.00 | $50.00 | |
| 2 | Fridge | $50.00 | $100.00 | |
| 0 | Calculator | $40.00 | $0.00 | |
| 0 | Telephones | $40.00 | $0.00 | |
| 1 | Exterior Sign - Panel Box | $2,200.00 | $2,200.00 | |
| | Exterior Sign - Channel Letter | $4,200.00 | $0.00 | |
| 1 | TV/VCR | $125.00 | $125.00 | |
| 8 | Signature Pads | $75.00 | $600.00 | |

**Total Assets for P/P Reporting**    $8,005.00

\*    Other Items not listed

**NOTES**

\*1 BBQ Grill
\*1 Pop Corn Maker
\*1  Water Dispenser
\*1 EZ Up
\* 3 Storage Racks

## Asset Price List

| Office Number  13152 | | Completed By:  Sharif Vaughn | | |

| Item | Make | Model Number | Serial Number | Operating System |
|---|---|---|---|---|
| Computer 1 | Dell | HP Professional | C58WFD17 | |
| Computer 2 | Dell | Inspiron touch screen 2330 | 7CDHWS1 | |
| Computer 3 | Dell | Inspiron touch screen 2330 | 42CHWS1 | |
| Computer 4 | | | | |
| Computer 5 | | | | |
| Computer 6 | | | | |
| | | | | |
| Printer 1 | HP LaserJet | P3015 | No Serial # | |
| Printer 2 | HP Laser Jet | p2055dn | No Serial # | |
| All in One Printer/Copier/ Fax 3 | Brothers | MFC8710DW | U63088J5N288255 | |
| Printer 4 | | | | |
| Printer 5 | | | | |
| | | | | |
| Scanner | 0 | | | |
| Fax | 0 | | | |
| Copier | 0 | | | |
| Copier/Scanner/Fax | 0 | | | |

## Marketing Inventory

**Completed By: Sharif Vaughn**

**Office Number: 13152**

### Window Signage

| Description | Banner? | Poster? | Light Box Insert | Amount |
|---|---|---|---|---|
| Light Box Sign | 1 | | LED or Panel? | Panel |
| Neon Open Sign | | | | |
| Cash in a Flash | | | | |
| Send a Friend | | | | |
| Now Hiring | | | | |
| Free Tax School | | | | |
| $750 Refund Advance | 1 | Poster | | |
| Accurate Friendly - Guaranteed | | | | |
| Firefighters Free Tax Prep | | | | |
| Military & Veteran's Free Tax Prep | | | | |
| Police & Law Enforcement Free Tax Prep | | | | |
| Teachers & School Employees | | | | |
| Nurses & Health Prof. Free Tax Prep | | | | |
| Non-Profit & Volunteer Free Tax Prep | | | | |
| Additional Signs Not Noted | | | | |
| Additional Signs Not Noted | | | | |
| Additional Signs Not Noted | | | | |

### Outside Signage

| Description | Color | Current Location | Verbiage on Sign | Notes |
|---|---|---|---|---|
| Liberty Tax Service Banner | | | | |
| 55¢ Cash Now Banner | | | | |
| Small Red Arrow Directional Signs | | | | |
| Help Wanted Banner | | | | |
| Wind Feathers 1 | | | | |
| Wind Feathers 2 | | | | |
| O' Window Poster | | | | |
| $750 RA Banner | | | | |
| A-Frame Stand | | | | |
| A-Frame Signage | | | | |
| Waver Arrow Sign Liberty Tax | | | | |
| Liberty Tax Service Tent | | | | |
| Liberty Tax Posters | | | | |
| Crowns | | | | |
| Flags | | | | |
| Additional Signs Not Noted | | | | |
| Additional Signs Not Noted | | | | |
| Additional Signs Not Noted | | | | |

### Wall Signage

| Description | Color | Current Location | Verbiage on Sign | Notes |
|---|---|---|---|---|
| Cash in a Flash | | | | All wall Signage removed outdated. Expired 6/16. |
| Send a Friend | | | | |
| Now Hiring | | | | |
| Free Tax School | | | | |
| $750 Refund Advance | | | | |
| Accurate Friendly - Guaranteed | | | | |
| Firefighters Free Tax Prep | | | | |
| Military & Veteran's Free Tax Prep | | | | |
| Police & Law Enforcement Free Tax Prep | | | | |
| Teachers & School Employees | | | | |
| Nurses & Health Prof. Free Tax Prep | | | | |
| Non-Profit & Volunteer Free Tax Prep | | | | |
| Liberty Tax Posters - 4 Set | | | | |
| Written Guarantee | | | | |
| Federal Labor Law | | | | |
| Crowns | | | | |

### Waste Costumes

| | |
|---|---|
| Lady Liberty Costume Dress | 7 |
| Lady Liberty Costume Sash | 0 |
| Red Liberty Tax Service Sash | 7 |
| Regular Crown | 7 |
| Light-Up Crown | 0 |
| Libby Costume Head | 0 |

DocuSign Envelope ID: 14DD1FC5F653B496CA0C90B664AB18D8
Case 2:22-cv-01715-SB-JC    Document 1    Filed 03/15/22    Page 167 of 265    Page ID
#:167

8543

# PURCHASE AND SALE AND PARTIAL ASSIGNMENT AGREEMENT

This Purchase and Sale and Partial Agreement is made this <u>14th</u> day of <u>October</u> 2016 by and between JTH Tax, Inc. d/b/a Liberty Tax Service, a Delaware corporation ("Seller") and Amy Lu ("Purchaser");

WHEREAS Seller owns the license to operate a Liberty Tax Service franchise for the franchise territory known as CA648 (see Schedule A) as well as certain assets listed on Schedule B (together also known as the "Business");

WHEREAS Seller purchased the Business back from Quantum Investments and John Balkhi, individually and as CEO of Quantum Investments (collectively "Former Owner") pursuant to a separate Agreement of Purchase and Sale dated May 27, 2016 ("Former Owner Purchase Agreement") which contained a provision allowing for Seller to assign the rights and obligations under the Former Owner Purchase Agreement, in full or in part;

WHEREAS Seller has agreed to transfer and assign to Purchaser, and Purchaser has agreed to assume from Seller, certain of Seller's rights and obligations under the Former Owner Purchase Agreement as set forth herein;

WHEREAS Seller is also the Franchisor of Liberty Tax Service franchises and will, pursuant to a franchise agreement ("Franchise Agreement"), grant to the Purchaser the right to use the Liberty Tax Service operating system and Marks in the operation of an income tax preparation business under the terms and conditions contained in the Franchise Agreement; and

WHEREAS Purchaser desires to purchase the Business from Seller.

THEREFORE, for good and valuable consideration, Seller and Purchaser agree as follows:

1.    On the terms and subject to the conditions set forth in this Agreement, certain provisions of the Former Owner Purchase Agreement and the Franchise Agreement, Seller shall sell and assign the Business to Purchaser and Purchaser shall purchase and assume the Business as of the date of this Agreement. Purchaser shall assume all of Seller's duties, liabilities and obligations related to the Remaining Payments (as defined below), and agrees to pay, perform and discharge, as and when due, all of the obligations related to the Remaining Payments

2.    Purchaser agrees to execute the current Liberty Tax Service Franchise Agreement for the Franchise Territory described in Schedule A of this Agreement.

3.    The purchase price ("Purchase Price") to be paid by the Purchaser to the Seller for the Business shall be paid as follows:

      a.   A down payment in the amount of $27,450.00, via separate promissory note.

1

The promissory note shall be payable as follows:

February 28, 2017: $13,725.00, plus accrued interest; and
February 28, 2018: $13,725.00 plus all remaining interest.

The promissory note shall have an interest rate of 12% per annum.

b.   Purchaser's assumption of the obligations to pay the remaining payments
owed from Seller to Former Owner pursuant to the Former Owner Purchase
Agreement and described below ("Remaining Payments").

i.   First Payment. 10% of Net Revenue shall be paid to Seller on or about
June 1, 2017 for amounts received during Fiscal Year 2017.

ii.   Second Payment. 10% of Net Revenue shall be paid to Seller on or
about June 1, 2018 for amounts received during Fiscal Year 2018.

iii.   Third Payment. 10% of Net Revenue shall be paid to Seller on or
about June 1, 2019 for amounts received during Fiscal Year 2019.

All amounts shall be paid directly to Seller for Seller to make the Remaining
Payments to Former Owner after any applicable deductions are applied, in
Seller's determination, as allowed via the Former Owner Purchase Agreement.
Net Revenue as used herein shall mean gross fees received less all discounts,
Cash-in-a-Flash, Send-a-Friend, uncollected fees for the offices in the Territories
and all other amounts paid for by Seller as a result of the operation of the
Business. Net Revenue shall be determined by Seller. Fiscal Year as used herein
shall mean January 1 through April 30.

4.   Purchaser agrees to accept all assets in an "as is" condition. Purchaser also
acknowledges that the license to use the customer list shall run simultaneously with
the initial term of the Franchise Agreement and any renewal thereof.

5.   Upon execution of this Agreement by both parties, this Agreement shall be closed
("Closing").   At such time, all rents, utility charges and all other expenses
associated with the Business shall be prorated.

6.   Seller has not made and does not make any warranties, representations or guaranties
and Purchaser is not relying on any warranty, representation or guaranty made by
any person acting on Seller's behalf as to the condition of any furniture, fixtures,
and equipment, past or future income, expenses or operation of the business, or any
other matter or thing affecting or related thereto, except as specifically set forth
herein.   Purchaser warrants to Seller that Purchaser has made such evaluations,
projections, and studies regarding the potential income possibilities to serve its own
purposes and hereby acknowledges that Seller has not made and does not make any

DocuSign Envelope ID: 14DD1FC5.F53B.496C.A0C9.0B664AB18D8

representations, warranties, or guaranties regarding such evaluations, projections or studies.

7.  All expenses and liabilities arising out of or related to the Business that arise prior to Closing are and shall remain the responsibility of the Seller. Seller hereby indemnifies Purchaser from expenses and liabilities arising out of or related to the Business which arise prior to Closing. All expenses and liabilities (including obligations related to the Remaining Payments) arising out of or related to the Business that arise from the moment of Closing and thereafter shall be the responsibility of the Purchaser. Purchaser hereby indemnifies Seller from expenses and liabilities (including obligations related to the Remaining Payments) arising out of or related to the Business that arise after Closing. Expenses may include, but are not limited to, rent, payroll, telephone service charges, utilities, and maintenance agreements.

8.  Purchaser must change all leases and other accounts related to the operation of the Territory to the Purchaser's name immediately after execution of this Agreement.

9.  By executing this Agreement, Purchaser, individually and on behalf of Purchaser's officers, directors, employees, agents, legal representatives, successors and assigns, and each assignee of this Agreement by accepting assignment of the same, hereby forever releases and discharges Seller, its past and present employees, agents, officers, directors, Seller's subsidiary and affiliated corporations and franchisees, their respective past and present employees, agents, officers, directors, from any and all claims which could be asserted by the Purchaser against any such persons and entities through the date of this Agreement, except obligations set forth or re-affirmed herein.

10. This Agreement is not assignable by Purchaser in whole or in part without Seller's written consent.

11. This Agreement, together with all Schedules and Exhibits hereto, and the Franchise Agreement, constitute the entire agreement between the parties regarding the subject matter of this Agreement. Seller acknowledges that Seller has not been unduly influenced to enter into this Agreement and has fully considered and contemplated the terms contained herein. This Agreement shall be binding upon and inure to the benefit of the parties hereto, their successors, assigns and legal representatives.

12. This Agreement is accepted in the Commonwealth of Virginia and, along with all claims which in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto, shall be governed by and interpreted in accordance with Virginia law. However, the Virginia Retail Franchising Act does not apply to any claims by or on Purchaser's behalf if the Territory shown on Schedule A below is outside of Virginia.

13.  In any suit brought by Seller, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, Purchaser consents to venue and personal jurisdiction in the state and federal court of the city or county of our National Office, presently Virginia Beach state courts and the United States District Court in Norfolk, Virginia.  In any suit brought against Seller, including Seller's present and former employees and agents that in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, venue shall be proper only in the federal court located nearest our National Office (presently the U.S. District in Norfolk, Virginia), or if neither federal subject matter or diversity jurisdiction exists, in the city or county state court where Seller's National Office is located (presently the City of Virginia Beach, Virginia).

14.  In any trial between any of the parties hereto, including present and former employees and agents of Seller, the parties hereto agree to waive any rights to a jury trial and instead submit any action to be tried by a judge.

15.  Purchaser agree that any claim Purchaser may have against Seller, including past and present employees and agents of Seller, shall be brought individually and Purchaser shall not join such claim with claims of any other person or entity or bring, join or participate in a class action against Seller.

16.  In any lawsuit, dispute or claim between or against any of the parties hereto, including present and former agents and employees of Seller, the parties hereto agree to waive all rights to seek or recover punitive damages.

17.  Each party agrees to be responsible for any tax consequences affecting said party as a result of this Agreement.

18.  If any covenant or provision within this Agreement is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not effect or impair the validity of any other covenant or provision of this Agreement and no covenant or provision of this Agreement shall be deemed to be dependent upon any other unless specifically expressed herein.

19.  This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (e.g. "pdf") format shall be effective as delivery of a manually executed counterpart of this Agreement. The words "execution," "signed," "signature," and words of similar import in the Agreement shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed signatures or a paper-based record keeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National

Commerce Act of 2000 (15 USC § 7001 et seq.) or any other similar state or federal laws.

**Accepted and Agreed to:**

**Purchaser:**    Amy Lu                    **Seller:  JTH Tax, Inc. d/b/a Liberty Tax Service**

By: _____            By: _____

                                        Print Name: ___John Hewitt___

                                        Title: ___CEO___

5

DocuSign Envelope ID: 14DD1FC5-F53B-496C-A0C9-0B66414B18D8

**Schedule A**

**Territory Description**

The Franchise Territory is as follows:

Liberty - CA648

*Note: When a Territory description includes a road, avenue, street, parkway, highway, route or
similar roadway, such Territory includes the U.S. Postal addresses assigned to either side
of such roadway.  When a Territory description excludes a road, avenue, street, parkway,
highway, route or similar roadway, such Territory excludes the U.S. Postal addresses
assigned to either side of such roadway.  If a map of the Territory is attached, such map
approximates your Territory, but the above legal description controls as to the Territory's
precise boundaries.

## Schedule B

### Furniture, Fixtures, Signs and Equipment

**See attached Asset Price Lists and Marketing Inventory List.**

# Asset Price List

| Office Number | 14221 |
| --- | --- |

Completed By:

Sharif Vaughn

| Office Address | 2511 Long Beach Blvd |
| --- | --- |
| | Long Beach Ca 90806 |
| | |

Date:  9/14/16

| Quantity | Item | Value | Total | Sub Totals |
| --- | --- | --- | --- | --- |
| | **_Furniture_** | | | |
| 6 | Desks | $125.00 | $750.00 | |
| 1 | Reception Desk(s) | $150.00 | $150.00 | |
| 0 | Credenzas | $125.00 | $0.00 | |
| 26 | Waiting room chairs | $35.00 | $910.00 | |
| 1 | Book Shelves | $50.00 | $50.00 | |
| 2 | File Cabinet | $65.00 | $130.00 | |
| 8 | Desk Chairs | $50.00 | $400.00 | |
| 4 | Folding Tables | $45.00 | $180.00 | $2,570.00 |
| | | | | |
| | **_Equipment_** | | | |
| 1 | Computers | $400.00 | $400.00 | |
| 0 | Scanner | $200.00 | $0.00 | |
| 2 | Printers | $200.00 | $400.00 | |
| 1 | Copier/Fax | $100.00 | $100.00 | |
| 1 | Microwave | $50.00 | $50.00 | |
| 1 | Fridge | $50.00 | $50.00 | |
| 0 | Calculator | $40.00 | $0.00 | |
| 0 | Telephones | $40.00 | $0.00 | |
| 1 | Exterior Sign - Panel Box | $2,200.00 | $2,200.00 | |
| 0 | Exterior Sign - Channel Letter | $4,200.00 | $0.00 | |
| 2 | TV/VCR Sceptre /Sanyo | $125.00 | $250.00 | |
| 5 | Signature Pads | $75.00 | $375.00 | |

**Total Assets for P/P Reporting**   $6,395.00

\*   Other Items not listed

## NOTES

\* 1  Pop Corn Machine
\* 4 Storage Racks
\* 1 BBQ Grill
\*1 Water Dispenser
\*1 EZ Up

## Asset Price List

| Office Number 14221 | | Completed By: Sharif Vaughn | | |
|---|---|---|---|---|
| **Item** | **Make** | **Model Number** | **Serial Number** | **Operating System** |
| Computer 1 | HP COMP | PRO 6005 | 2UA2240DWY | WINDOW 10 |
| Computer 2 | | | | |
| Computer 3 | | | | |
| Computer 4 | | | | |
| Computer 5 | | | | |
| Computer 6 | | | | |
| Computer 7 | | | | |
| Computer 8 | | | | |
| Computer 9 | | | | |
| Printer 1 | HP LASER JET | P3015 | VNBCCC20VZ | |
| Printer 2 | HP LASER JET | P3005 | CNJ1D66075 | |
| Printer 3 | | | | |
| All in One Printer/Copier/ Fax 3 | BROTHERS | MFC8710DW | U63088J5N288183 | |
| Printer 4 | | | | |
| Printer 5 | | | | |
| | | | | |
| Scanner | 0 | | | |
| Fax | 0 | | | |
| Copier | 0 | | | |
| Copier/Scanner/Fax | 0 | | | |

# Marketing Inventory

**Completed By: Sharif Vaughn**

**Office Number: 14221**

## Window Signage

| Description | Banner? | Poster? | Current Location | Light Box Insert | Amount | Notes |
|---|---|---|---|---|---|---|
| Light Box Sign | | | | 1 | | |
| Neon Open Sign | | | | 1 | | |
| Cash in a Flash | | | | | | |
| Send a Friend | | | | | | |
| Now Hiring | | | | | | |
| Free Tax School | 1 | | | | | |
| $750 Refund Advance | | Poster | | | | |
| Accurate-Friendly - Guaranteed | | | | | | |
| Firefighters Free Tax Prep | 1 | Decals | | | | |
| Military & Veteran's Free Tax Prep | | | | | | |
| Police & Law Enforcement Free Tax Prep | | | | | | |
| Teachers & School Employees | | | | | | |
| Nurses & Health Prof. Free Tax Prep | | | | | | |
| Non-Profit & Volunteer Free Tax Prep | | | | | | |
| Additional Signs Not Noted | | | 1 | | | fast refund decals |
| Additional Signs Not Noted | | | | | | liberty lady |
| Additional Signs Not Noted | | | | | | |

## Outside Signage

| Description | Color | Current Location | Verbiage on Sign | Notes | Amount |
|---|---|---|---|---|---|
| Liberty Tax Service Banner | | | | | |
| 16ft Cash Now Banner | | | | | |
| Small Red Arrow Directional Signs | RWB | Window | Decals | | |
| Help Wanted Banner | | | | | |
| Wind Feathers 1 | | | | | |
| Wind Feathers 2 | | | | | |
| Ci Window Poster | | | | | |
| $750 RA Banner | | | | | |
| A-Frame Stand | | | | | |
| A-Frame Signage | | | | | |
| Waver Arrow Sign Liberty Tax | | | | | |
| Liberty Tax Service Tent | | | | | |
| Liberty Tax Posters | | | | | |
| Crowns | | | | | |
| Flags | | | | | |
| Additional Signs Not Noted | | | | | |
| Additional Signs Not Noted | | | | | |
| Additional Signs Not Noted | | | | | |

## Wall Signage

| Description | Color | Current Location | Verbiage on Sign | Notes | Amount |
|---|---|---|---|---|---|
| Cash in a Flash | | | | All wall Signage removed outdated. | |
| Send a Friend | | | | | |
| Now Hiring | | | | | |
| Free Tax School | | | | | |
| $750 Refund Advance | | | | | |
| Accurate- Friendly - Guaranteed | | | | | |
| Enrollment Free Tax Prep | | | | | |
| Military & Veteran's Free Tax Prep | | | | | |
| Police & Law Enforcement Free Tax Prep | | | | | |
| Teachers & School Employees | | | | | |
| Nurses & Health Prof. Free Tax Prep | | | | | |
| Non-Profit & Volunteer Free Tax Prep | | | | | |
| Liberty Tax Posters - 4 Set | | 1 | | | |
| Written Guarantee | | | | | |
| Federal Labor Law | | | | | |
| Crowns | | | | | |

## Waiver Costumes

| Description | Amount |
|---|---|
| Lady Liberty Costume Dress | 7 |
| Lady Liberty Costume Sash | 7 |
| Red Liberty Tax Service Sash | 0 |
| Regular Crown | 7 |
| Light-Up Crown | 0 |
| Lady Liberty Costume Head | 0 |

# EXHIBIT H

# PURCHASE AND SALE AND PARTIAL ASSIGNMENT AGREEMENT

This Purchase and Sale and Partial Agreement is made this <u>14th</u> day of <u>October</u> 2016 by and between JTH Tax, Inc. d/b/a Liberty Tax Service, a Delaware corporation ("Seller") and Amy Lu ("Purchaser");

WHEREAS Seller owns the license to operate a Liberty Tax Service franchise for the franchise territory known as CA648 (see Schedule A) as well as certain assets listed on Schedule B (together also known as the "Business");

WHEREAS Seller purchased the Business back from Quantum Investments and John Balkhi, individually and as CEO of Quantum Investments (collectively "Former Owner") pursuant to a separate Agreement of Purchase and Sale dated May 27, 2016 ("Former Owner Purchase Agreement") which contained a provision allowing for Seller to assign the rights and obligations under the Former Owner Purchase Agreement, in full or in part;

WHEREAS Seller has agreed to transfer and assign to Purchaser, and Purchaser has agreed to assume from Seller, certain of Seller's rights and obligations under the Former Owner Purchase Agreement as set forth herein;

WHEREAS Seller is also the Franchisor of Liberty Tax Service franchises and will, pursuant to a franchise agreement ("Franchise Agreement"), grant to the Purchaser the right to use the Liberty Tax Service operating system and Marks in the operation of an income tax preparation business under the terms and conditions contained in the Franchise Agreement; and

WHEREAS Purchaser desires to purchase the Business from Seller.

THEREFORE, for good and valuable consideration, Seller and Purchaser agree as follows:

1.  On the terms and subject to the conditions set forth in this Agreement, certain provisions of the Former Owner Purchase Agreement and the Franchise Agreement, Seller shall sell and assign the Business to Purchaser and Purchaser shall purchase and assume the Business as of the date of this Agreement. Purchaser shall assume all of Seller's duties, liabilities and obligations related to the Remaining Payments (as defined below), and agrees to pay, perform and discharge, as and when due, all of the obligations related to the Remaining Payments

2.  Purchaser agrees to execute the current Liberty Tax Service Franchise Agreement for the Franchise Territory described in Schedule A of this Agreement.

3.  The purchase price ("Purchase Price") to be paid by the Purchaser to the Seller for the Business shall be paid as follows:

    a.  A down payment in the amount of $27,450.00, via separate promissory note.

1

DocuSign Envelope ID: 14DD1FC5-F53B-496C-A0C9-0B66A4AB18D8

8543

The promissory note shall be payable as follows:

February 28, 2017: $13,725.00, plus accrued interest; and
February 28, 2018: $13,725.00 plus all remaining interest.

The promissory note shall have an interest rate of 12% per annum.

    b.   Purchaser's assumption of the obligations to pay the remaining payments owed from Seller to Former Owner pursuant to the Former Owner Purchase Agreement and described below ("Remaining Payments").

        i.   First Payment. 10% of Net Revenue shall be paid to Seller on or about June 1, 2017 for amounts received during Fiscal Year 2017.

        ii.   Second Payment. 10% of Net Revenue shall be paid to Seller on or about June 1, 2018 for amounts received during Fiscal Year 2018.

        iii.   Third Payment. 10% of Net Revenue shall be paid to Seller on or about June 1, 2019 for amounts received during Fiscal Year 2019.

All amounts shall be paid directly to Seller for Seller to make the Remaining Payments to Former Owner after any applicable deductions are applied, in Seller's determination, as allowed via the Former Owner Purchase Agreement. Net Revenue as used herein shall mean gross fees received less all discounts, Cash-in-a-Flash, Send-a-Friend, uncollected fees for the offices in the Territories and all other amounts paid for by Seller as a result of the operation of the Business. Net Revenue shall be determined by Seller. Fiscal Year as used herein shall mean January 1 through April 30.

4.     Purchaser agrees to accept all assets in an "as is" condition. Purchaser also acknowledges that the license to use the customer list shall run simultaneously with the initial term of the Franchise Agreement and any renewal thereof.

5.     Upon execution of this Agreement by both parties, this Agreement shall be closed ("Closing").  At such time, all rents, utility charges and all other expenses associated with the Business shall be prorated.

6.     Seller has not made and does not make any warranties, representations or guaranties and Purchaser is not relying on any warranty, representation or guaranty made by any person acting on Seller's behalf as to the condition of any furniture, fixtures, and equipment, past or future income, expenses or operation of the business, or any other matter or thing affecting or related thereto, except as specifically set forth herein.  Purchaser warrants to Seller that Purchaser has made such evaluations, projections, and studies regarding the potential income possibilities to serve its own purposes and hereby acknowledges that Seller has not made and does not make any

DocuSign Envelope ID: 14DD1FC5-F53B-496C-A0C9-0B66414B18D8

8543

representations, warranties, or guaranties regarding such evaluations, projections or studies.

7.      All expenses and liabilities arising out of or related to the Business that arise prior to Closing are and shall remain the responsibility of the Seller. Seller hereby indemnifies Purchaser from expenses and liabilities arising out of or related to the Business which arise prior to Closing. All expenses and liabilities (including obligations related to the Remaining Payments) arising out of or related to the Business that arise from the moment of Closing and thereafter shall be the responsibility of the Purchaser. Purchaser hereby indemnifies Seller from expenses and liabilities (including obligations related to the Remaining Payments) arising out of or related to the Business that arise after Closing. Expenses may include, but are not limited to, rent, payroll, telephone service charges, utilities, and maintenance agreements.

8.      Purchaser must change all leases and other accounts related to the operation of the Territory to the Purchaser's name immediately after execution of this Agreement.

9.      By executing this Agreement, Purchaser, individually and on behalf of Purchaser's officers, directors, employees, agents, legal representatives, successors and assigns, and each assignee of this Agreement by accepting assignment of the same, hereby forever releases and discharges Seller, its past and present employees, agents, officers, directors, Seller's subsidiary and affiliated corporations and franchisees, their respective past and present employees, agents, officers, directors, from any and all claims which could be asserted by the Purchaser against any such persons and entities through the date of this Agreement, except obligations set forth or re-affirmed herein.

10.      This Agreement is not assignable by Purchaser in whole or in part without Seller's written consent.

11.      This Agreement, together with all Schedules and Exhibits hereto, and the Franchise Agreement, constitute the entire agreement between the parties regarding the subject matter of this Agreement. Seller acknowledges that Seller has not been unduly influenced to enter into this Agreement and has fully considered and contemplated the terms contained herein. This Agreement shall be binding upon and inure to the benefit of the parties hereto, their successors, assigns and legal representatives.

12.      This Agreement is accepted in the Commonwealth of Virginia and, along with all claims which in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto, shall be governed by and interpreted in accordance with Virginia law. However, the Virginia Retail Franchising Act does not apply to any claims by or on Purchaser's behalf if the Territory shown on Schedule A below is outside of Virginia.

13.     In any suit brought by Seller, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, Purchaser consents to venue and personal jurisdiction in the state and federal court of the city or county of our National Office, presently Virginia Beach state courts and the United States District Court in Norfolk, Virginia.  In any suit brought against Seller, including Seller's present and former employees and agents that in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, venue shall be proper only in the federal court located nearest our National Office (presently the U.S. District in Norfolk, Virginia), or if neither federal subject matter or diversity jurisdiction exists, in the city or county state court where Seller's National Office is located (presently the City of Virginia Beach, Virginia).

14.     In any trial between any of the parties hereto, including present and former employees and agents of Seller, the parties hereto agree to waive any rights to a jury trial and instead submit any action to be tried by a judge.

15.     Purchaser agree that any claim Purchaser may have against Seller, including past and present employees and agents of Seller, shall be brought individually and Purchaser shall not join such claim with claims of any other person or entity or bring, join or participate in a class action against Seller.

16.     In any lawsuit, dispute or claim between or against any of the parties hereto, including present and former agents and employees of Seller, the parties hereto agree to waive all rights to seek or recover punitive damages.

17.     Each party agrees to be responsible for any tax consequences affecting said party as a result of this Agreement.

18.     If any covenant or provision within this Agreement is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not effect or impair the validity of any other covenant or provision of this Agreement and no covenant or provision of this Agreement shall be deemed to be dependent upon any other unless specifically expressed herein.

19.     This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (e.g. "pdf") format shall be effective as delivery of a manually executed counterpart of this Agreement. The words "execution," "signed," "signature," and words of similar import in the Agreement shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed signatures or a paper-based record keeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National

Commerce Act of 2000 (15 USC § 7001 et seq.) or any other similar state or federal laws.

**Accepted and Agreed to:**

**Purchaser:**  Amy Lu                    **Seller:  JTH Tax, Inc. d/b/a Liberty Tax Service**

By: _____          By: _____
    Amy Lu

                                       Print Name: _John Hewitt_____

                                       Title: _CEO_____

5

**Schedule A**

**Territory Description**

The Franchise Territory is as follows:

Liberty - CA648

*Note: When a Territory description includes a road, avenue, street, parkway, highway, route or similar roadway, such Territory includes the U.S. Postal addresses assigned to either side of such roadway.  When a Territory description excludes a road, avenue, street, parkway, highway, route or similar roadway, such Territory excludes the U.S. Postal addresses assigned to either side of such roadway.  If a map of the Territory is attached, such map approximates your Territory, but the above legal description controls as to the Territory's precise boundaries.

**Schedule B**

**Furniture, Fixtures, Signs and Equipment**

**See attached Asset Price Lists and Marketing Inventory List.**

# Asset Price List

Office Number: 14221

Completed By:
Sharif Vaughn

Office Address: 2511 Long Beach Blvd

Long Beach Ca 90806

Date: 9/14/16

| Quantity | Item | Value | Total | Sub Totals |
|---|---|---|---|---|
| | **_Furniture_** | | | |
| 6 | Desks | $125.00 | $750.00 | |
| 1 | Reception Desk(s) | $150.00 | $150.00 | |
| 0 | Credenzas | $125.00 | $0.00 | |
| 26 | Waiting room chairs | $35.00 | $910.00 | |
| 1 | Book Shelves | $50.00 | $50.00 | |
| 2 | File Cabinet | $65.00 | $130.00 | |
| 8 | Desk Chairs | $50.00 | $400.00 | |
| 4 | Folding Tables | $45.00 | $180.00 | $2,570.00 |
| | | | | |
| | **_Equipment_** | | | |
| 1 | Computers | $400.00 | $400.00 | |
| 0 | Scanner | $200.00 | $0.00 | |
| 2 | Printers | $200.00 | $400.00 | |
| 1 | Copier/Fax | $100.00 | $100.00 | |
| 1 | Microwave | $50.00 | $50.00 | |
| 1 | Fridge | $50.00 | $50.00 | |
| 0 | Calculator | $40.00 | $0.00 | |
| 0 | Telephones | $40.00 | $0.00 | |
| 1 | Exterior Sign - Panel Box | $2,200.00 | $2,200.00 | |
| 0 | Exterior Sign - Channel Letter | $4,200.00 | $0.00 | |
| 2 | TV/VCR Sceptre /Sanyo | $125.00 | $250.00 | |
| 5 | Signature Pads | $75.00 | $375.00 | |

**Total Assets for P/P Reporting**    $6,395.00

\*    Other Items not listed

## NOTES

* 1  Pop Corn Machine
* 4 Storage Racks
* 1 BBQ Grill
*1 Water Dispenser
*1 EZ Up

## Asset Price List

| Office Number 14221 | | Completed By: Sharif Vaughn | | |
|---|---|---|---|---|

| Item | Make | Model Number | Serial Number | Operating System |
|---|---|---|---|---|
| Computer 1 | HP COMP | PRO 6005 | 2UA2240DWY | WINDOW 10 |
| Computer 2 | | | | |
| Computer 3 | | | | |
| Computer 4 | | | | |
| Computer 5 | | | | |
| Computer 6 | | | | |
| Computer 7 | | | | |
| Computer 8 | | | | |
| Computer 9 | | | | |
| Printer 1 | HP LASER JET | P3015 | VNBCCC20VZ | |
| Printer 2 | HP LASER JET | P3005 | CNJ1D66075 | |
| Printer 3 | | | | |
| All in One Printer/Copier/ Fax 3 | BROTHERS | MFC8710DW | U63088J5N288183 | |
| Printer 4 | | | | |
| Printer 5 | | | | |
| | | | | |
| Scanner | 0 | | | |
| Fax | 0 | | | |
| Copier | 0 | | | |
| Copier/Scanner/Fax | 0 | | | |

## Marketing Inventory

**Completed By: Sharif Vaughn**

**Office Number: 14221**

### Window Signage

| Description | Banner? | Poster? | Current Location | Light Box Insert | Amount | Notes |
|---|---|---|---|---|---|---|
| Light Box Sign | | | | 1 | | |
| Neon Open Sign | | | | 1 | | |
| Cash in a Flash | | | | | | |
| Send a Friend | | | | | | |
| Now Hiring | | | | | | |
| Free Tax School | 1 | Poster | | | | |
| $750 Refund Advance | | | | | | |
| Accurate-Friendly - Guaranteed | 1 | Decals | | | | |
| Firefighters Free Tax Prep | | | | | | |
| Military & Veteran's Free Tax Prep | | | | | | |
| Police & Law Enforcement Free Tax Prep | | | | | | |
| Teachers & School Employees | | | | | | |
| Nurses & Health Prof. Free Tax Prep | | | | | | |
| Non-Profit & Volunteer Free Tax Prep | | | | | | |
| Additional Signs Not Noted | | Poster | 1 | | | fast refund decals |
| Additional Signs Not Noted | | | | | | Liberty lady |
| Additional Signs Not Noted | | | | | | |

### Outside Signage

| Description | Color | Current Location | Verbiage on Sign | Notes | Amount |
|---|---|---|---|---|---|
| Liberty Tax Service Banner | | | | | |
| Liberty Tax Service Banner | RWB | Window | Decals | | |
| Small Red Arrow Directional Signs | | | | | |
| Help Wanted Banner | | | | | |
| Wind Feathers 1 | | | | | |
| Wind Feathers 2 | | | | | |
| Oil Window Poster | | | | | |
| $750 RA Banner | | | | | |
| A-Frame Stand | | | | | |
| A-Frame Signage | | | | | |
| Waver Arrow Sign Liberty Tax | | | | | |
| Liberty Tax Service Tent | | | | | |
| Liberty Tax Posters | | | | | |
| Crowns | | | | | |
| Flags | | | | | |
| Additional Signs Not Noted | | | | | |
| Additional Signs Not Noted | | | | | |
| Additional Signs Not Noted | | | | | |

### Wall Signage

| Description | Color | Current Location | Verbiage on Sign | Notes | Amount |
|---|---|---|---|---|---|
| Cash in a Flash | | | | All wall Signage removed/outdated. | |
| Send a Friend | | | | | |
| Now Hiring | | | | | |
| Free Tax School | | | | | |
| $750 Refund Advance | | | | | |
| Accurate-Friendly - Guaranteed | | | | | |
| Firefighters Free Tax Prep | | | | | |
| Military & Veteran's Free Tax Prep | | | | | |
| Police & Law Enforcement Free Tax Prep | | | | | |
| Teachers & School Employees | | | | | |
| Nurses & Health Prof. Free Tax Prep | | | | | |
| Non-Profit & Volunteer Free Tax Prep | | | | | |
| Liberty Tax Posters - 4 Set | | 1 | | | |
| Written Guarantee | | | | | |
| Federal Labor Law | | | | | |
| Crowns | | | | | |

### Waver Costume

| Lady Liberty Costume Dress | 7 |
|---|---|
| Lady Liberty Costume Sash | 7 |
| Red Liberty Tax Service Sash | 0 |
| Regular Crown | 7 |
| Light Up Crown | 0 |
| Lady Liberty Costume Head | 0 |

# EXHIBIT I

# PURCHASE AND SALE AND PARTIAL ASSIGNMENT AGREEMENT

This Purchase and Sale and Partial Agreement is made this <u>14th</u> day of <u>October</u> 2016 by and between JTH Tax, Inc. d/b/a Liberty Tax Service, a Delaware corporation ("Seller") and Amy Lu ("Purchaser");

WHEREAS Seller owns the license to operate a Liberty Tax Service franchise for the franchise territory known as CA648 (see Schedule A) as well as certain assets listed on Schedule B (together also known as the "Business");

WHEREAS Seller purchased the Business back from Quantum Investments and John Balkhi, individually and as CEO of Quantum Investments (collectively "Former Owner") pursuant to a separate Agreement of Purchase and Sale dated May 27, 2016 ("Former Owner Purchase Agreement") which contained a provision allowing for Seller to assign the rights and obligations under the Former Owner Purchase Agreement, in full or in part;

WHEREAS Seller has agreed to transfer and assign to Purchaser, and Purchaser has agreed to assume from Seller, certain of Seller's rights and obligations under the Former Owner Purchase Agreement as set forth herein;

WHEREAS Seller is also the Franchisor of Liberty Tax Service franchises and will, pursuant to a franchise agreement ("Franchise Agreement"), grant to the Purchaser the right to use the Liberty Tax Service operating system and Marks in the operation of an income tax preparation business under the terms and conditions contained in the Franchise Agreement; and

WHEREAS Purchaser desires to purchase the Business from Seller.

THEREFORE, for good and valuable consideration, Seller and Purchaser agree as follows:

1. On the terms and subject to the conditions set forth in this Agreement, certain provisions of the Former Owner Purchase Agreement and the Franchise Agreement, Seller shall sell and assign the Business to Purchaser and Purchaser shall purchase and assume the Business as of the date of this Agreement. Purchaser shall assume all of Seller's duties, liabilities and obligations related to the Remaining Payments (as defined below), and agrees to pay, perform and discharge, as and when due, all of the obligations related to the Remaining Payments

2. Purchaser agrees to execute the current Liberty Tax Service Franchise Agreement for the Franchise Territory described in Schedule A of this Agreement.

3. The purchase price ("Purchase Price") to be paid by the Purchaser to the Seller for the Business shall be paid as follows:

   a. A down payment in the amount of $27,450.00, via separate promissory note.

1

The promissory note shall be payable as follows:

February 28, 2017: $13,725.00, plus accrued interest; and
February 28, 2018: $13,725.00 plus all remaining interest.

The promissory note shall have an interest rate of 12% per annum.

b.  Purchaser's assumption of the obligations to pay the remaining payments
owed from Seller to Former Owner pursuant to the Former Owner Purchase
Agreement and described below ("Remaining Payments").

   i.   First Payment. 10% of Net Revenue shall be paid to Seller on or about
        June 1, 2017 for amounts received during Fiscal Year 2017.

   ii.  Second Payment. 10% of Net Revenue shall be paid to Seller on or
        about June 1, 2018 for amounts received during Fiscal Year 2018.

   iii. Third Payment. 10% of Net Revenue shall be paid to Seller on or
        about June 1, 2019 for amounts received during Fiscal Year 2019.

All amounts shall be paid directly to Seller for Seller to make the Remaining
Payments to Former Owner after any applicable deductions are applied, in
Seller's determination, as allowed via the Former Owner Purchase Agreement.
Net Revenue as used herein shall mean gross fees received less all discounts,
Cash-in-a-Flash, Send-a-Friend, uncollected fees for the offices in the Territories
and all other amounts paid for by Seller as a result of the operation of the
Business. Net Revenue shall be determined by Seller. Fiscal Year as used herein
shall mean January 1 through April 30.

4.  Purchaser agrees to accept all assets in an "as is" condition. Purchaser also
    acknowledges that the license to use the customer list shall run simultaneously with
    the initial term of the Franchise Agreement and any renewal thereof.

5.  Upon execution of this Agreement by both parties, this Agreement shall be closed
    ("Closing").   At such time, all rents, utility charges and all other expenses
    associated with the Business shall be prorated.

6.  Seller has not made and does not make any warranties, representations or guaranties
    and Purchaser is not relying on any warranty, representation or guaranty made by
    any person acting on Seller's behalf as to the condition of any furniture, fixtures,
    and equipment, past or future income, expenses or operation of the business, or any
    other matter or thing affecting or related thereto, except as specifically set forth
    herein.  Purchaser warrants to Seller that Purchaser has made such evaluations,
    projections, and studies regarding the potential income possibilities to serve its own
    purposes and hereby acknowledges that Seller has not made and does not make any

representations, warranties, or guaranties regarding such evaluations, projections or studies.

7.  All expenses and liabilities arising out of or related to the Business that arise prior to Closing are and shall remain the responsibility of the Seller. Seller hereby indemnifies Purchaser from expenses and liabilities arising out of or related to the Business which arise prior to Closing. All expenses and liabilities (including obligations related to the Remaining Payments) arising out of or related to the Business that arise from the moment of Closing and thereafter shall be the responsibility of the Purchaser. Purchaser hereby indemnifies Seller from expenses and liabilities (including obligations related to the Remaining Payments) arising out of or related to the Business that arise after Closing. Expenses may include, but are not limited to, rent, payroll, telephone service charges, utilities, and maintenance agreements.

8.  Purchaser must change all leases and other accounts related to the operation of the Territory to the Purchaser's name immediately after execution of this Agreement.

9.  By executing this Agreement, Purchaser, individually and on behalf of Purchaser's officers, directors, employees, agents, legal representatives, successors and assigns, and each assignee of this Agreement by accepting assignment of the same, hereby forever releases and discharges Seller, its past and present employees, agents, officers, directors, Seller's subsidiary and affiliated corporations and franchisees, their respective past and present employees, agents, officers, directors, from any and all claims which could be asserted by the Purchaser against any such persons and entities through the date of this Agreement, except obligations set forth or re-affirmed herein.

10. This Agreement is not assignable by Purchaser in whole or in part without Seller's written consent.

11. This Agreement, together with all Schedules and Exhibits hereto, and the Franchise Agreement, constitute the entire agreement between the parties regarding the subject matter of this Agreement. Seller acknowledges that Seller has not been unduly influenced to enter into this Agreement and has fully considered and contemplated the terms contained herein. This Agreement shall be binding upon and inure to the benefit of the parties hereto, their successors, assigns and legal representatives.

12. This Agreement is accepted in the Commonwealth of Virginia and, along with all claims which in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto, shall be governed by and interpreted in accordance with Virginia law. However, the Virginia Retail Franchising Act does not apply to any claims by or on Purchaser's behalf if the Territory shown on Schedule A below is outside of Virginia.

13.     In any suit brought by Seller, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, Purchaser consents to venue and personal jurisdiction in the state and federal court of the city or county of our National Office, presently Virginia Beach state courts and the United States District Court in Norfolk, Virginia.  In any suit brought against Seller, including Seller's present and former employees and agents that in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, venue shall be proper only in the federal court located nearest our National Office (presently the U.S. District in Norfolk, Virginia), or if neither federal subject matter or diversity jurisdiction exists, in the city or county state court where Seller's National Office is located (presently the City of Virginia Beach, Virginia).

14.     In any trial between any of the parties hereto, including present and former employees and agents of Seller, the parties hereto agree to waive any rights to a jury trial and instead submit any action to be tried by a judge.

15.     Purchaser agree that any claim Purchaser may have against Seller, including past and present employees and agents of Seller, shall be brought individually and Purchaser shall not join such claim with claims of any other person or entity or bring, join or participate in a class action against Seller.

16.     In any lawsuit, dispute or claim between or against any of the parties hereto, including present and former agents and employees of Seller, the parties hereto agree to waive all rights to seek or recover punitive damages.

17.     Each party agrees to be responsible for any tax consequences affecting said party as a result of this Agreement.

18.     If any covenant or provision within this Agreement is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not effect or impair the validity of any other covenant or provision of this Agreement and no covenant or provision of this Agreement shall be deemed to be dependent upon any other unless specifically expressed herein.

19.     This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (e.g. "pdf") format shall be effective as delivery of a manually executed counterpart of this Agreement. The words "execution," "signed," "signature," and words of similar import in the Agreement shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed signatures or a paper-based record keeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National

Commerce Act of 2000 (15 USC § 7001 et seq.) or any other similar state or federal laws.

**Accepted and Agreed to:**

**Purchaser:    Amy Lu**

By: _____
    Amy Lu

**Seller:   JTH Tax, Inc. d/b/a Liberty
Tax Service**

By: _____

Print Name: _John Hewitt_____

Title: _CEO_____

DocuSign Envelope ID: 24DD1FC5-F53B-496C-A0C9-0B66A1AB18D8

8543

**Schedule A**

**Territory Description**

The Franchise Territory is as follows:

Liberty - CA648

*Note: When a Territory description includes a road, avenue, street, parkway, highway, route or
similar roadway, such Territory includes the U.S. Postal addresses assigned to either side
of such roadway.  When a Territory description excludes a road, avenue, street, parkway,
highway, route or similar roadway, such Territory excludes the U.S. Postal addresses
assigned to either side of such roadway.  If a map of the Territory is attached, such map
approximates your Territory, but the above legal description controls as to the Territory's
precise boundaries.

## Schedule B

### Furniture, Fixtures, Signs and Equipment

**See attached Asset Price Lists and Marketing Inventory List.**

# Asset Price List

Office Number    14221

Completed By:
Sharif Vaughn

Office Address    2511 Long Beach Blvd

Long Beach Ca 90806

Date:    9/14/16

| Quantity | Item | Value | Total | Sub Totals |
|---|---|---|---|---|
| | *Furniture* | | | |
| 6 | Desks | $125.00 | $750.00 | |
| 1 | Reception Desk(s) | $150.00 | $150.00 | |
| 0 | Credenzas | $125.00 | $0.00 | |
| 26 | Waiting room chairs | $35.00 | $910.00 | |
| 1 | Book Shelves | $50.00 | $50.00 | |
| 2 | File Cabinet | $65.00 | $130.00 | |
| 8 | Desk Chairs | $50.00 | $400.00 | |
| 4 | Folding Tables | $45.00 | $180.00 | $2,570.00 |
| | | | | |
| | *Equipment* | | | |
| 1 | Computers | $400.00 | $400.00 | |
| 0 | Scanner | $200.00 | $0.00 | |
| 2 | Printers | $200.00 | $400.00 | |
| 1 | Copier/Fax | $100.00 | $100.00 | |
| 1 | Microwave | $50.00 | $50.00 | |
| 1 | Fridge | $50.00 | $50.00 | |
| 0 | Calculator | $40.00 | $0.00 | |
| 0 | Telephones | $40.00 | $0.00 | |
| 1 | Exterior Sign - Panel Box | $2,200.00 | $2,200.00 | |
| 0 | Exterior Sign - Channel Letter | $4,200.00 | $0.00 | |
| 2 | TV/VCR Sceptre /Sanyo | $125.00 | $250.00 | |
| 5 | Signature Pads | $75.00 | $375.00 | |

Total Assets for P/P Reporting    $6,395.00

\*    Other Items not listed

## NOTES

\* 1  Pop Corn Machine
\* 4 Storage Racks
\* 1 BBQ Grill
\*1 Water Dispenser
\*1 EZ Up

## Asset Price List

| Office Number 14221 | | | Completed By: Sharif Vaughn | |
|---|---|---|---|---|

| Item | Make | Model Number | Serial Number | Operating System |
|---|---|---|---|---|
| Computer 1 | HP COMP | PRO 6005 | 2UA2240DWY | WINDOW 10 |
| Computer 2 | | | | |
| Computer 3 | | | | |
| Computer 4 | | | | |
| Computer 5 | | | | |
| Computer 6 | | | | |
| Computer 7 | | | | |
| Computer 8 | | | | |
| Computer 9 | | | | |
| Printer 1 | HP LASER JET | P3015 | VNBCCC20VZ | |
| Printer 2 | HP LASER JET | P3005 | CNJ1D66075 | |
| Printer 3 | | | | |
| All in One Printer/Copier/ Fax 3 | BROTHERS | MFC8710DW | U63088J5N288183 | |
| Printer 4 | | | | |
| Printer 5 | | | | |
| | | | | |
| Scanner | 0 | | | |
| Fax | 0 | | | |
| Copier | 0 | | | |
| Copier/Scanner/Fax | 0 | | | |

## Marketing Inventory

Completed By: Sharif Vaughn

Office Number: 14221

### Window Signage

| Description | Banner? | Poster? | Light Box Insert | Amount |
|---|---|---|---|---|
| Light Box Sign | | | 1 | |
| Neon Open Sign | | | 1 | |
| Cash in a Flash | | | | |
| Send a Friend | | | | |
| Now Hiring | | | | |
| Free Tax School | 1 | | | |
| $750 Refund Advance | | Poster | | |
| Accurate-Friendly - Guaranteed | | | | |
| Firefighters Free Tax Prep | 1 | Decals | | |
| Military & Veteran's Free Tax Prep | | | | |
| Police & Law Enforcement Free Tax Prep | | | | |
| Teachers & School Employees | | | | |
| Nurses & Health Prof. Free Tax Prep | | | | |
| Non-Profit & Volunteer Free Tax Prep | | | | |
| Additional Signs Not Noted | | | 1 | fast refund decals |
| Additional Signs Not Noted | | | | Liberty lady |
| Additional Signs Not Noted | | | | |

### Outside Signage

| Description | Color | Current Location | Verbiage on Sign | Notes |
|---|---|---|---|---|
| Liberty Tax Service Banner | | | | |
| $50 Cash Now Banner | | | | |
| Small Red Arrow Directional Signs | RWB | Window | Decals | |
| Help Wanted Banner | | | | |
| Wind Feathers 1 | | | | |
| Wind Feathers 2 | | | | |
| Oil Window Poster | | | | |
| $750 RA Banner | | | | |
| A-Frame Stand | | | | |
| A-Frame Signage | | | | |
| Waver Arrow Sign Liberty Tax | | | | |
| Liberty Tax Service Tent | | | | |
| Liberty Tax Posters | | | | |
| Crowns | | | | |
| Flags | | | | |
| Additional Signs Not Noted | | | | |
| Additional Signs Not Noted | | | | |
| Additional Signs Not Noted | | | | |

### Wall Signage

| Description | Color | Current Location | Verbiage on Sign | Notes |
|---|---|---|---|---|
| Cash in a Flash | | | | All wall Signage removed outdated. |
| Send a Friend | | | | |
| Now Hiring | | | | |
| Free Tax School | | | | |
| $750 Refund Advance | | | | |
| Accurate- Friendly - Guaranteed | | | | |
| Firefighters Free Tax Prep | | | | |
| Military & Veteran's Free Tax Prep | | | | |
| Police & Law Enforcement Free Tax Prep | | | | |
| Teachers & School Employees | | | | |
| Nurses & Health Prof. Free Tax Prep | | | | |
| Non-Profit & Volunteer Free Tax Prep | | 1 | | |
| Liberty Tax Posters - 4 Set | | | | |
| Written Guarantee | | | | |
| Federal Labor Law | | | | |
| Crowns | | | | |

### Mascot Costumes

| Description | |
|---|---|
| Lady Liberty Costume Dress | 7 |
| Lady Liberty Costume Sash | 7 |
| Red Liberty Tax Service Sash | 0 |
| Regular Crown | 7 |
| Light-Up Crown | 0 |
| Lady Liberty Costume Head | 0 |

# EXHIBIT J

**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.**   Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.**   Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

| UPS Access Point™ | UPS Access Point™ | UPS Access Point™ |
|---|---|---|
| CVS STORE # 8302 | MICHAELS STORE # 2741 | THE UPS STORE |
| 2232 GENERAL BOOTH BLVD | 1169 NIMMO PKWY | 2133 UPTON DR |
| VIRGINIA BEACH ,VA 23456 | VIRGINIA BEACH ,VA 23456 | VIRGINIA BEACH ,VA 23454 |

FOLD HERE



UPS CampusShip: View/Print Label

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

| UPS Access Point™ | UPS Access Point™ | UPS Access Point™ |
|---|---|---|
| CVS STORE # 8302 | MICHAELS STORE # 2741 | THE UPS STORE |
| 2232 GENERAL BOOTH BLVD | 1169 NIMMO PKWY | 2133 UPTON DR |
| VIRGINIA BEACH ,VA 23456 | VIRGINIA BEACH ,VA 23456 | VIRGINIA BEACH ,VA 23454 |

FOLD HERE





1-866-871-1040
www.libertytax.com

January 31, 2020

Evergreen Tree Investments

Amy Lu
4233 Cypress Avenue, El Monte, CA 91731

cc: PO Box 660699, Arcadia, CA 91066

Re: ENT#8543

## NOTICE TO CURE DEFAULT
### Abandonment

Dear Franchisee(s):

Please be advised that you are currently in breach of your franchise agreement(s) with JTH Tax Inc. d/b/a Liberty Tax Service ("Liberty") and the operations manual in that you have abandoned your franchise and discontinued the active operation of the franchised business. You also have failed to maintain the required hours as described in the operations manual. Pursuant to Section 8, Liberty may terminate your franchise agreement(s) if you discontinue the active operation of the franchised business for three (3) business days during Tax Season or seven (7) business days otherwise.

This notice is sent to advise you of this breach and advise you of Liberty's right to terminate your franchise agreement(s) as a result of this breach. **You must immediately begin actively operating your business.** Additionally, please note that a breach of your Liberty franchise agreement(s) also constitutes a breach of any other franchise agreement that you may have with an affiliate company and may result in the termination of such agreement as described therein. This letter shall serve as a formal notice pursuant to the Liberty franchise agreement(s), as well as any franchise agreement that you may have with an affiliate company. Liberty and any affiliate company waive no other defaults under the franchise agreement(s) and reserve all rights and remedies they may have under the franchise agreement(s) or otherwise.

Compliance with your franchise agreement(s) is of the utmost importance to Liberty. We trust that you will take all actions necessary to comply with your franchise agreement(s) and the operations manual. Should you have questions about the franchise agreement(s) or the operations manual, please call your Area Developer.

Thank you for your immediate attention to this matter.

Yours truly,

**LIBERTY TAX SERVICE**

Compliance Committee

1716 Corporate Landing Parkway • Virginia Beach, VA 23454
(800) 790 3863 • (800) 880-6432 • office@libtax.com



1-866-871-1040
www.libertytax.com

January 31, 2020

Evergreen Tree Investments
Amy Lu
4233 Cypress Avenue, El Monte, CA 91731

cc: PO Box 660699, Arcadia, CA 91066

Re: ENT#8543

<u>**NOTICE TO CURE DEFAULT**</u>
**Failure to Continue Active Operation of an Approved Office**
Dear Franchisee(s):

Please be advised that you are in breach of your Franchise Agreement with JTH Tax Inc. d/b/a
Liberty Tax Service ("Liberty") for your failure to continue active operation of an approved
office as required by your Franchise Agreement for the franchise territories known as **CA610,
CA718, CA647 and CA648.**

     You must immediately begin to operate the Franchised Business at the approved office
location. Failure to take such action will severely compromise your ability to succeed and may
lead to termination of your Franchise Agreement.  This notice is sent to advise you of this breach
and advise you of Liberty's right to terminate your Franchise Agreement as a result of this breach.
Additionally, please note that a breach of your Liberty Franchise Agreement also constitutes a
breach of any other franchise agreement that you may have with an affiliate company and may
result in the termination of such agreement as described therein. This letter shall serve as a formal
notice pursuant to the Liberty Franchise Agreement, as well as any franchise agreement that you
may have with an affiliate company. Liberty and any affiliate company waive no other defaults
under the franchise agreement(s) and reserve all rights and remedies they may have under the
franchise agreement(s) or otherwise.

     Compliance with your Franchise Agreement(s) is of the utmost importance to Liberty. We
trust that you will take all actions necessary to comply with your Franchise Agreement(s) in all
manners. Thank you for your immediate attention to this matter.

     Yours truly,

     **LIBERTY TAX SERVICE**

     Compliance Committee



1-866-871-1040
www.libertytax.com

January 31, 2020

Evergreen Tree Investments
Amy Lu
4233 Cypress Avenue, El Monte, CA 91731

cc: PO Box 660699, Arcadia, CA 91066

Re: ENT#8543

## <u>NOTICE TO CURE DEFAULT</u>
### Failure to Maintain Required Tax Season Business Hours

Dear Franchisee(s):

Please be advised that you are in breach of your franchise agreement(s) with JTH Tax Inc. d/b/a Liberty Tax Service ("Liberty") in that you are not operating the franchised business during the appropriate hours as specified in the franchise agreement(s), the operations manual and updates thereto, Current required hours can be found at:

https://www.libertytax.net/Front%20Page%20Documents/Office%20Hours/2020%20Required%20Office%20Hours.pdf

**You must operate during these hours immediately.** Failure to take such action will severely compromise your ability to succeed and may lead to termination of your franchise agreement(s). Please note that Liberty may terminate the franchise agreement(s) if you discontinue the active operation of the franchised business for three (3) business days during tax season. Additionally, please note that a breach of your Liberty franchise agreement(s) also constitutes a breach of any other franchise agreement that you may have with an affiliate company and may result in the termination of such agreement as described therein. This letter shall serve as a formal notice pursuant to the Liberty franchise agreement(s), as well as any franchise agreement that you may have with an affiliate company. Liberty and any affiliate company waive no other defaults under the franchise agreement(s) and reserve all rights and remedies they may have under the franchise agreement(s) or otherwise.

We trust that you will take all actions necessary to comply with your franchise agreement(s) and the operations manual. Should you have questions about your franchise agreement(s) or the operations manual, please call your Area Developer.

Thank you for your immediate attention to this matter.

Yours truly,

**LIBERTY TAX SERVICE**

Compliance Committee

1716 Corporate Landing Parkway • Virginia Beach, VA 23454
(800) 790-3863 • (800) 880-6432 • office@libtax.com



1-866-871-1040
www.libertytax.com

January 31, 2020

Evergreen Tree Investments
Amy Lu
4233 Cypress Avenue, El Monte, CA 91731

cc: PO Box 660699, Arcadia, CA 91066

Re: ENT#8543

## NOTICE TO CURE DEFAULT
### Past Due Monies Owed

Dear Franchisee(s):

Please be advised that you are in breach of your franchise agreement(s) with JTH Tax Inc. d/b/a Liberty Tax Service ("Liberty") in that you owe Liberty monies which are more than 30 days past due. Monies owed may include, but are not limited to, the promissory note and/or accounts receivable balances. According to our records, your past due balance currently owed is **$348,818.96**, which may not include pending charges and/or pending payments.

**You must remit all amounts owed immediately.** Failure to take such action and comply with the terms of your franchise agreement(s) will result in the termination of your franchise agreement(s) in addition to other remedies available to Liberty. Additionally, please note that a breach of your Liberty franchise agreement(s) also constitutes a breach of any other franchise agreement that you may have with an affiliate company and may result in the termination of such agreement as described therein. This letter shall serve as a formal notice pursuant to the Liberty franchise agreement(s), as well as any franchise agreement that you may have with an affiliate company. Liberty and any affiliate company waive no other defaults under the franchise agreement(s) and reserve all rights and remedies they may have under the franchise agreement(s) or otherwise.

Compliance with your franchise agreement(s) is of the utmost importance to Liberty. We trust that you will take all actions necessary to comply with your franchise agreement(s) in all manners. Should you have questions about your franchise agreement(s) or the amounts now owing, please contact your Area Developer.

Thank you for your immediate attention to this matter.

Yours truly,

**LIBERTY TAX SERVICE**

Compliance Committee

# EXHIBIT K



February 28, 2020

**VIA OVERNIGHT AND CERTIFIED MAIL**
Evergreen Tree Investments, Inc.
Amy Lu, President
4233 Cypress Avenue
El Monte, CA 91731

P.O. Box 660699
Arcadia, CA 91066

      **Re:**    **Termination of Franchise Agreements: CA178, CA610, CA647 and CA648 Entity: 8543**

Dear Ms. Lu:

      This letter is to advise that effective immediately the Franchise Agreements for the JTH Tax LLC (formerly JTH Tax, Inc.) d/b/a Liberty Tax Service ("Liberty") franchise territories known as CA178, CA610, CA647 and CA648 (interchangeably referred to herein as "Franchise Agreements" and "Franchised Businesses") by and between you and Liberty, are terminated pursuant to paragraphs 6.e, 8.b(iv), 8.b(xii), 8.c(i), and 8.c(ii) of the Franchise Agreements. Prior notices to cure ("Notices") were sent to you on January 31, 2020, notifying you of these breaches. Despite our prior Notices, you have failed to cure these breaches and continue to be in violation of your Franchise Agreements. This termination is based upon your multiple breaches of the Franchise Agreements, which include, but are not limited to, your failure to continue active operations, your voluntary abandonment, your failure to maintain required tax season business hours, and your failure to pay amounts owing to Liberty.

      Accordingly, you must **IMMEDIATELY** comply with the post-termination provisions of the Franchise Agreements, which include, but are not limited to, the following:

- Refrain from any further use of any of the licensed marks;
- Not identify yourself as a current or former franchisee of Liberty;
- Pay to Liberty all monies owing;
- Transfer all telephone numbers used in relation to the Franchised Businesses to Liberty;
- Deliver to Liberty all paper and electronic copies of your customer lists, tax returns, files and records;
- Deliver to Liberty the Operations Manual and all updates which Liberty loaned to you;
- Upon Liberty's request, assign any interest you have in any lease, sublease or any other agreement related to the Franchised Businesses;
- Upon Liberty's request, provide to Liberty any or all equipment, signs, trade fixtures and furnishings used in the Franchised Businesses; and

  ▪ Adhere to the provisions of the post-termination covenants not to compete and not to solicit.

Liberty waives no defaults under the Franchise Agreements and reserves all rights and remedies it may have under the Franchise Agreements or otherwise.

Please contact your Area Developer immediately to discuss and ensure that the required post-termination arrangements are completed immediately. In the event that you fail to voluntarily comply with all post-termination obligations, Liberty will institute legal proceedings to enforce these obligations and seek all damages, costs, and expenses, including reasonable attorneys' fees incurred by Liberty in seeking damages and/or in obtaining injunctive relief for the enforcement of the post-termination obligations set forth in the Franchise Agreements.

Yours truly,
**JTH TAX LLC d/b/a**
**LIBERTY TAX SERVICE**

CC: Ted DeMarino
    Tim Magerle

Brent Turner
Chief Executive Officer

**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.**  Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.**  Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

| UPS Access Point™ | UPS Access Point™ | UPS Access Point™ |
|---|---|---|
| CVS STORE # 8302 | MICHAELS STORE # 2741 | THE UPS STORE |
| 2232 GENERAL BOOTH BLVD | 1169 NIMMO PKWY | 2133 UPTON DR |
| VIRGINIA BEACH ,VA 23456 | VIRGINIA BEACH ,VA 23456 | VIRGINIA BEACH ,VA 23454 |

FOLD HERE





## OPERATIONS REQUEST FOR TERMINATION

### Area Developer                                                    ☑ Show

#### GENERAL INFORMATION

Date `10/24/19`

AREA DEVELOPER 101 (Geoff Knapp)
ENTITY/FRANCHISEE 8543 (Evergreen Tree Investments)

- ◉ Mutual
- ○ Unilateral
- ○ Buy Back

CONTACT FIRST NAME `Amy`
CONTACT LAST NAME `Lu`
AD EMAIL `thomas.bartolomeo@libtax.com`

#### TOTAL MONIES OWED

| | | | |
|---|---|---|---|
| AR | $267,150.00 | PAST DUE AR | $258,498.81 |
| P-NOTES | $98,384.07 | PAST DUE P-NOTES | $57,374.27 |
| TOTAL | $365,534.07 | TOTAL PAST DUE | $315,873.08 |

DEBT FORGIVENESS `No`

*Debt Forgiveness is at the discretion of the RD.*

#### ENTITY INFORMATION

REASON FOR TERMINATION: MT of entity 8543. Entity is financially impaired and no longer able to secure financing to continue operating their (4) offices. Owned & operated to take over 2 corporate leased offices. Ent8543 is no longer responsive. If MT not returned within 10 business days, please flip to a UT.

STOP FAC PAYMENTS    Yes        ALL GRR's LOCKED    No

#### GUARANTEE/GUARANTOR ON OTHER AGREEMENT

#### TERRITORIES

#### TERRITORY CA610

| Office Id | Office Age | Returns | Free Returns | Gross Fees | Net Fees | Lease Exp Date |
|---|---|---|---|---|---|---|
| 14783 | 11 | 0 | 0 | $0.00 | $0.00 | 04/30/13 |
| 20433 | 4 | 67 | 1 | $42,381.66 | $33,725.90 | |
| 2 | | 67 | 1 | $42,381.66 | $33,725.90 | |

Brand Indicator

Liberty Only

## LEASE INFO

OFFICE `20433`    STOP LEASE PAYMENTS    <u>No</u>    DATE ACCOUNTING GIVEN LEASE(S) `10/24/19`

LEASE PER MONTH `$3,652.67`    LEASE TO BE ASSUMED Yes

UTILITIES/PHONE TRANSFERRED    ○ Yes  ⦿ No    LIBERTY TO ACQUIRE EQUIPMENT Yes

## COMPETITION OFFICE RETURNS

HRB `989`    JH [ ]

## GUARANTOR/GUARANTEE

Guarantor [ ]    Guarantee [ ]

## SALE INFO

SALES STATUS <u>2276 - Company Store for Sale</u>    HAS BUYER ☐

SALE NOTES    LIBERTY\alexa.king

Office 20433 is a corporate owned lease.  Client files to go to ent6935.

## TERRITORY  <u>CA178</u>

| Office Id | Office Age | Returns | Free Returns | Gross Fees | Net Fees | Lease Exp Date |
|-----------|-----------|---------|--------------|------------|----------|----------------|
| 16551 | 4 | 0 | 0 | $0.00 | $0.00 | 04/30/13 |
| 11005 | 5 | 133 | 13 | $89,346.64 | $54,358.60 | |
| 2 | | 133 | 13 | $89,346.64 | $54,358.60 | |

Brand Indicator

Liberty Only

## LEASE INFO

OFFICE `11005`    STOP LEASE PAYMENTS    <u>No</u>    DATE ACCOUNTING GIVEN LEASE(S) `10/24/19`

LEASE PER MONTH `$3,005.00`    LEASE TO BE ASSUMED Yes

UTILITIES/PHONE TRANSFERRED ○ Yes ● No          LIBERTY TO ACQUIRE EQUIPMENT <u>No</u>

## COMPETITION OFFICE RETURNS

HRB `1,910`          JH ` `

## GUARANTOR/GUARANTEE

Guarantor `5903`          Guarantee `8543`

## SALE INFO

SALES STATUS <u>1000 - Terminated for Sale</u>          HAS BUYER ☐

SALE NOTES ` `

Files for Offices 11005, 13152, 14221 will go to Entity 5903.

## TERRITORY <u>CA647</u> Y

| Office Id | Office Age | Returns | Free Returns | Gross Fees | Net Fees | Lease Exp Date |
|-----------|-----------|---------|--------------|------------|----------|----------------|
| 13152 | 13 | 286 | 13 | $190,102.41 | $141,996.29 | |
| 1 | | 286 | 13 | $190,102.41 | $141,996.29 | |

Brand Indicator
Liberty Only

## LEASE INFO

OFFICE `13152`   STOP LEASE PAYMENTS <u>No</u>          DATE ACCOUNTING GIVEN LEASE(S) `10/24/19`

LEASE PER MONTH `$3,532.44`          LEASE TO BE ASSUMED <u>Yes</u>

UTILITIES/PHONE TRANSFERRED ○ Yes ● No          LIBERTY TO ACQUIRE EQUIPMENT <u>No</u>

## COMPETITION OFFICE RETURNS

HRB `2,253`          JH `170`

## GUARANTOR/GUARANTEE

Guarantor ` `          Guarantee ` `

**SALE INFO**

SALES STATUS 2276 - Company Store for Sale          HAS BUYER ☐

SALE NOTES

Office 13152 is a corporate owned lease. Files for Offices 11005, 13152, 14221 will go to will go to Entity 5903.

**TERRITORY** CA648

| Office Id | Office Age | Returns | Free Returns | Gross Fees | Net Fees | Lease Exp Date |
|-----------|-----------|---------|--------------|------------|----------|----------------|
| 13179 | | 0 | 0 | $0.00 | $0.00 | |
| 16851 | 4 | 0 | 0 | $0.00 | $0.00 | 04/30/11 |
| 14221 | 10 | 155 | 12 | $106,005.92 | $80,430.85 | |
| 3 | | 155 | 12 | $106,005.92 | $80,430.85 | |

Brand Indicator

Liberty Only

**LEASE INFO**

OFFICE 14221       STOP LEASE PAYMENTS  No        DATE ACCOUNTING GIVEN LEASE(S) 10/24/19

LEASE PER MONTH $2,192.64        LEASE TO BE ASSUMED Yes

UTILITIES/PHONE TRANSFERRED ○ Yes ● No        LIBERTY TO ACQUIRE EQUIPMENT No

**COMPETITION OFFICE RETURNS**

HRB 1,292          JH 373

**GUARANTOR/GUARANTEE**

Guarantor          Guarantee

**SALE INFO**

SALES STATUS 1000 - Terminated for Sale          HAS BUYER ☐

SALE NOTES

Files for Offices 11005, 13152, 14221 will go to Entity 5903.

## Operations/Finance

### OPERATIONS

AMOUNT `$0.00`

DATE ACCEPTED

DEAL ACCEPTED ○ Yes ● No

DEAL NOTES `LIBERTY\ashley.a...`

COO approval attached; O&O to take on the 2 corporate lease locations. Go after for debt.

POSSIBLE RESCISSION ☐

### FINANCE NOTES

### CEO APPROVAL

CEO APPROVAL ☑        DATE APPROVED `1/12/2020`

## Notes

`LIBERTY\alexa.king`

PRF61B attached

## Signature

CEO: _____



**Notes** ☑ Show

LIBERTY\alexa.king

PRF61B attached

LIBERTY\ashley.acton

Save Note

**Attachments** ☑ Show

Attachments, if present, are required.  If a particular attachment is not pertinent click the arrow to the left and select "delete".

**Type**                                          **File**

[PDF] 8543-PRF61B - Franchisee P
Adobe Acrobat Document
18.6 KB

Other

P&L                              📎 Click here to attach a file

Inventory                        📎 Click here to attach a file

Add Attachment

**NTC**

NTC DOCUMENT    [PDF] NTC ENT8543.pdf    NTC DATE 8/22/2019
Adobe Acrobat Document
534 KB

REASON  Budget; GRR; NTC office hours off season ; past due monies ;phone an

Insert Notice

**History**

Click to view form history



8543 on 2019-10-24 - InfoPath



# OPERATIONS REQUEST FOR TERMINATION

| Save Form | | Refresh Data |
|---|---|---|

## Operations/Finance  ☑ Show

### OPERATIONS

AMOUNT $0.00          DEAL ACCEPTED ○ Yes ● No

DATE ACCEPTED [            ] 🔲

DEAL NOTES                          LIBERTY\ashley.a...

COO approval attached; O&O to take on the 2 corporate lease locations. Go after for debt.

POSSIBLE RESCISSION ☐

### CFO APPROVAL

CFO APPROVAL ☑          DATE APPROVED 1/10/2020 🔲

### FINANCE NOTES [            ]

### CEO APPROVAL

CEO APPROVAL ☑          DATE APPROVED 1/12/2020 🔲

| Back to RD | | Send to CFO |
|---|---|---|

## Area Developer  ☑ Show

### GENERAL INFORMATION

Date [10/24/19] 🔲

AREA DEVELOPER [101 (Geoff Knapp) ▽]          ● Mutual
ENTITY/FRANCHISEE [8543 (Evergreen Tree Investments) ▽]          ○ Unilateral
                                                                 ○ Buy Back

CONTACT FIRST NAME Amy

CONTACT LAST NAME Lu

AD EMAIL thomas.bartelsmes@libtay.com

## COMPETITION OFFICE RETURNS

HRB 1,292          JH 373

## GUARANTOR/GUARANTEE

Guarantor [                    ]          Guarantee [                    ]

## SALE INFO

SALES STATUS [ 1000 - Terminated for Sale ▾ ]     HAS BUYER ☐

SALE NOTES [                    ]

Files for Offices 11005, 13152, 14221 will go to Entity 5903.

☐ Insert Territory

## Operations/Finance                                    ☑ Show

## OPERATIONS

AMOUNT [ $0.00 ]                    DEAL ACCEPTED ○ Yes ● No

DATE ACCEPTED [                ] 🖩

DEAL NOTES

DocuSigned by:

[signature]

14332C1EEC55460...

POSSIBLE RESCISSION ☐

## CFO APPROVAL

CFO APPROVAL ☐          DATE APPROVED [                ] 🖩

## FINANCE NOTES

## CEO APPROVAL

CEO APPROVAL ☐          DATE APPROVED [                ] 🖩

| | |
|---|---|
| **From:** | Andrea Foran |
| **To:** | Joy Walker |
| **Subject:** | FW: Need Finance approval for UT of 8543 |
| **Date:** | Wednesday, February 26, 2020 1:20:10 PM |
| **Attachments:** | image006.png |
| | image007.png |

Joy,

Please see the approval below.

Thank you

**Andrea Foran** | Regional Support Coordinator
1716 Corporate Landing Pkwy. | Virginia Beach, VA 23454
Office: 800-790-3863 x 6063  | eFax:  800-572-2262
andrea.foran@libtax.com



**From:** Rory Walters <Rory.Walters@libtax.com>
**Sent:** Wednesday, February 26, 2020 1:18 PM
**To:** Andrea Foran <andrea.foran@libtax.com>
**Subject:** RE: Need Finance approval for UT of 8543

Yes, I approve
Thanks

**From:** Andrea Foran <andrea.foran@libtax.com>
**Sent:** Wednesday, February 26, 2020 1:13 PM
**To:** Rory Walters <Rory.Walters@libtax.com>
**Subject:** FW: Need Finance approval for UT of 8543

Hi Rory,

Entity 8543 Evergreen Tree Investments- Amy Lu MT/flip to a UT was previously approved, but finance approval wasn't received.
Zee does not have any active offices.
2 leases are under LTS, but I believe you were aware of this.  1 lease ends 4/30/2020.

Do you approve of this MT/flip to a UT?  Legal is prepared to proceed with a UT.

Thank you!

https://areadev.libertytax.net/sites/opssupport/collaboration/2016%20Request%20for%20Termination/8543%20on%202019-10-24.xml

1716 Corporate Landing Pkwy. | Virginia Beach, VA 23454
Office: 800-790-3863 x 6063 | eFax: 800-572-2262
andrea.foran@libtax.com



---

**From:** Joy Walker <joy.walker@libtax.com>
**Sent:** Wednesday, February 26, 2020 12:32 PM
**To:** Andrea Foran <andrea.foran@libtax.com>
**Subject:** Need Finance approval for UT of 8543

Hi Andrea,

Hope you're doing well!

As with previous days, I am preparing a UT for 8543. Her termination was approved before we needed approvals from either the controller Scott Slater or VP of Finance, Rory Walters.

Would you please secure either Scott or Rory's approval for the UT of 8543, Amy Lu and Evergreen Tree Investments, CA610, CA178, CA647, and CA648.

Thank you for your time and efforts.


Joy R. Walker | Legal Compliance Specialist
1716 Corporate Landing Pkwy. | Virginia Beach, VA 23454
Toll Free: 800-790-3863 x. 6001 | Fax: 800-880-6432
Office: (757) 453-6001
Joy.Walker@LibTax.com



Issue Number:

Ops <u>Committee</u> Meeting Notes: (date) 1 | A

Regional Director:

*gary*

<u>Zee Entity:</u> 8822

<u>Territory:</u> VT

<u>Notes:</u> no location - customers unresponsive

<u>Financial Impact:</u>

<u>Decision/Action Items:</u>

APPROVED

**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

UPS Access Point™
CVS STORE # 8302
2232 GENERAL BOOTH BLVD
VIRGINIA BEACH ,VA 23456

UPS Access Point™
MICHAELS STORE # 2741
1169 NIMMO PKWY
VIRGINIA BEACH ,VA 23456

UPS Access Point™
THE UPS STORE
2133 UPTON DR
VIRGINIA BEACH ,VA 23454

FOLD HERE



**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

| UPS Access Point™ | UPS Access Point™ | UPS Access Point™ |
|---|---|---|
| CVS STORE # 8302 | MICHAELS STORE # 2741 | THE UPS STORE |
| 2232 GENERAL BOOTH BLVD | 1169 NIMMO PKWY | 2133 UPTON DR |
| VIRGINIA BEACH ,VA 23456 | VIRGINIA BEACH ,VA 23456 | VIRGINIA BEACH ,VA 23454 |

FOLD HERE





1-866-871-1040
www.libertytax.com

January 31, 2020

Evergreen Tree Investments

Amy Lu
4233 Cypress Avenue, El Monte, CA 91731

cc: PO Box 660699, Arcadia, CA 91066

Re: ENT#8543

### <u>NOTICE TO CURE DEFAULT</u>
### Abandonment

Dear Franchisee(s):

Please be advised that you are currently in breach of your franchise agreement(s) with JTH Tax Inc. d/b/a Liberty Tax Service ("Liberty") and the operations manual in that you have abandoned your franchise and discontinued the active operation of the franchised business. You also have failed to maintain the required hours as described in the operations manual. Pursuant to Section 8, Liberty may terminate your franchise agreement(s) if you discontinue the active operation of the franchised business for three (3) business days during Tax Season or seven (7) business days otherwise.

This notice is sent to advise you of this breach and advise you of Liberty's right to terminate your franchise agreement(s) as a result of this breach. **You must immediately begin actively operating your business.** Additionally, please note that a breach of your Liberty franchise agreement(s) also constitutes a breach of any other franchise agreement that you may have with an affiliate company and may result in the termination of such agreement as described therein. This letter shall serve as a formal notice pursuant to the Liberty franchise agreement(s), as well as any franchise agreement that you may have with an affiliate company. Liberty and any affiliate company waive no other defaults under the franchise agreement(s) and reserve all rights and remedies they may have under the franchise agreement(s) or otherwise.

Compliance with your franchise agreement(s) is of the utmost importance to Liberty. We trust that you will take all actions necessary to comply with your franchise agreement(s) and the operations manual. Should you have questions about the franchise agreement(s) or the operations manual, please call your Area Developer.

Thank you for your immediate attention to this matter.

Yours truly,

**LIBERTY TAX SERVICE**

Compliance Committee



1-866-871-1040
www.libertytax.com

January 31, 2020

Evergreen Tree Investments
Amy Lu
4233 Cypress Avenue, El Monte, CA 91731

cc: PO Box 660699, Arcadia, CA 91066

Re: ENT#8543

## NOTICE TO CURE DEFAULT
### Failure to Continue Active Operation of an Approved Office
Dear Franchisee(s):

Please be advised that you are in breach of your Franchise Agreement with JTH Tax Inc. d/b/a Liberty Tax Service ("Liberty") for your failure to continue active operation of an approved office as required by your Franchise Agreement for the franchise territories known as **CA610, CA718, CA647 and CA648.**

You must immediately begin to operate the Franchised Business at the approved office location. Failure to take such action will severely compromise your ability to succeed and may lead to termination of your Franchise Agreement. This notice is sent to advise you of this breach and advise you of Liberty's right to terminate your Franchise Agreement as a result of this breach. Additionally, please note that a breach of your Liberty Franchise Agreement also constitutes a breach of any other franchise agreement that you may have with an affiliate company and may result in the termination of such agreement as described therein. This letter shall serve as a formal notice pursuant to the Liberty Franchise Agreement, as well as any franchise agreement that you may have with an affiliate company. Liberty and any affiliate company waive no other defaults under the franchise agreement(s) and reserve all rights and remedies they may have under the franchise agreement(s) or otherwise.

Compliance with your Franchise Agreement(s) is of the utmost importance to Liberty. We trust that you will take all actions necessary to comply with your Franchise Agreement(s) in all manners. Thank you for your immediate attention to this matter.

Yours truly,

**LIBERTY TAX SERVICE**

Compliance Committee

1716 Corporate Landing Parkway • Virginia Beach, VA 23454
(800) 790-3863 • (800) 880-6432 • office@libtax.com



1-866-871-1040
www.libertytax.com

January 31, 2020

Evergreen Tree Investments
Amy Lu
4233 Cypress Avenue, El Monte, CA 91731

cc: PO Box 660699, Arcadia, CA 91066

Re: ENT#8543

### NOTICE TO CURE DEFAULT
### Failure to Maintain Required Tax Season Business Hours

Dear Franchisee(s):

Please be advised that you are in breach of your franchise agreement(s) with JTH Tax Inc. d/b/a Liberty Tax Service ("Liberty") in that you are not operating the franchised business during the appropriate hours as specified in the franchise agreement(s), the operations manual and updates thereto, Current required hours can be found at:

https://www.libertytax.net/Front%20Page%20Documents/Office%20Hours/2020%20Required%20Office%20Hours.pdf

**You must operate during these hours immediately.** Failure to take such action will severely compromise your ability to succeed and may lead to termination of your franchise agreement(s). Please note that Liberty may terminate the franchise agreement(s) if you discontinue the active operation of the franchised business for three (3) business days during tax season. Additionally, please note that a breach of your Liberty franchise agreement(s) also constitutes a breach of any other franchise agreement that you may have with an affiliate company and may result in the termination of such agreement as described therein. This letter shall serve as a formal notice pursuant to the Liberty franchise agreement(s), as well as any franchise agreement that you may have with an affiliate company. Liberty and any affiliate company waive no other defaults under the franchise agreement(s) and reserve all rights and remedies they may have under the franchise agreement(s) or otherwise.

We trust that you will take all actions necessary to comply with your franchise agreement(s) and the operations manual. Should you have questions about your franchise agreement(s) or the operations manual, please call your Area Developer.

Thank you for your immediate attention to this matter.

Yours truly,

**LIBERTY TAX SERVICE**

Compliance Committee

1716 Corporate Landing Parkway • Virginia Beach, VA 23454
(800) 790-3863 • (800) 880-6432 • office@libtax.com



1-866-871-1040
www.libertytax.com

January 31, 2020

Evergreen Tree Investments
Amy Lu
4233 Cypress Avenue, El Monte, CA 91731

cc: PO Box 660699, Arcadia, CA 91066

Re: ENT#8543

## NOTICE TO CURE DEFAULT
### Past Due Monies Owed

Dear Franchisee(s):

Please be advised that you are in breach of your franchise agreement(s) with JTH Tax Inc. d/b/a Liberty Tax Service ("Liberty") in that you owe Liberty monies which are more than 30 days past due. Monies owed may include, but are not limited to, the promissory note and/or accounts receivable balances. According to our records, your past due balance currently owed is **$348,818.96**, which may not include pending charges and/or pending payments.

**You must remit all amounts owed immediately.** Failure to take such action and comply with the terms of your franchise agreement(s) will result in the termination of your franchise agreement(s) in addition to other remedies available to Liberty. Additionally, please note that a breach of your Liberty franchise agreement(s) also constitutes a breach of any other franchise agreement that you may have with an affiliate company and may result in the termination of such agreement as described therein. This letter shall serve as a formal notice pursuant to the Liberty franchise agreement(s), as well as any franchise agreement that you may have with an affiliate company. Liberty and any affiliate company waive no other defaults under the franchise agreement(s) and reserve all rights and remedies they may have under the franchise agreement(s) or otherwise.

Compliance with your franchise agreement(s) is of the utmost importance to Liberty. We trust that you will take all actions necessary to comply with your franchise agreement(s) in all manners. Should you have questions about your franchise agreement(s) or the amounts now owing, please contact your Area Developer.

Thank you for your immediate attention to this matter.

Yours truly,

**LIBERTY TAX SERVICE**

Compliance Committee

**Debt as of 2/27/2020**

**Entity**    8543

|  | Current | Past Due | Total |
|---|---|---|---|
| Notes | 43,934.85 | 57,805.12 | 101,739.97 |
| AR | 6,146.87 | 300,314.97 | 306,461.84 |
| *Total* | *50,081.72* | *358,120.09* | *408,201.81* |

 # Party Search Results

**Search Criteria:** Party Search; Jurisdiction Type: [Bankruptcy]; Last Name: [Lu]; SSN4: [1857]
**Result Count:** 17 (1 page)
**Current Page:** 1

| Party Name | Case Number | Case Title | Court | Date Filed | Date Closed |
|---|---|---|---|---|---|
| Lubonovic, Michael (db) | 4:2005bk40148 | Michael Lubonovic | Ohio Northern Bankruptcy Court | 01/13/2005 | 01/08/2007 |
| Lucas, Deloris (db) | 4:1994bk41758 | Deloris Lucas and Nicholas Lucas, Jr. | Ohio Northern Bankruptcy Court | 10/17/1994 | 03/20/1995 |
| Lucas, Deloris A. (db) | 4:2005bk44186 | Deloris A. Harrington | Ohio Northern Bankruptcy Court | 07/18/2005 | 11/30/2005 |
| Luce, Sheri Marie (jdb) | 1:2008bk13090 | Patrick Russell Luce and Sheri Marie Luce | Rhode Island Bankruptcy Court | 10/01/2008 | 01/12/2009 |
| Lucero, Edna (db) | 6:2001bk17948 | Edna Lucero | California Central Bankruptcy Court | 05/08/2001 | 09/05/2001 |
| Lucero, Edna Annabella (db) | 6:2001bk17948 | Edna Lucero | California Central Bankruptcy Court | 05/08/2001 | 09/05/2001 |
| Lucero-Aguilar, Edna A (db) | 6:2001bk17948 | Edna Lucero | California Central Bankruptcy Court | 05/08/2001 | 09/05/2001 |
| Luciano, Dawn Denise (db) | 5:2016bk52101 | Nicholas Luciano, Jr and Dawn Denise Luciano | Texas Western Bankruptcy Court | 09/15/2016 | 04/23/2018 |
| Luft, Ann F. (db) | 2:2016bk52866 | Ann F. Luft | Ohio Southern Bankruptcy Court | 04/29/2016 | 09/21/2016 |
| Luna, Joel (db) | 2:2012bk46903 | Joel Luna and Marian Luna | California Central Bankruptcy Court | 11/02/2012 | 05/01/2013 |
| Lund, David S. (db) | 8:2007bk08366 | David S. Lund | Florida Middle Bankruptcy Court | 09/13/2007 | 12/18/2007 |
| Lundberg, Judy K (db) | 2:1995bk01368 | Grey T Lundberg and Judy K Lundberg | Washington Western Bankruptcy Court | 02/17/1995 | 06/14/1995 |
| Lundberg, Judy K (db) | 2:1996bk10829 | Grey T Lundberg and Judy K Lundberg | Washington Western Bankruptcy Court | 09/17/1996 | 11/04/1997 |
| Lundberg, Judy Kathleen (jdb) | 2:2013bk21079 | Grey Theodore Lundberg and Judy Kathleen Lundberg | Washington Western Bankruptcy Court | 12/24/2013 | 03/31/2014 |
| Lundstrom, James Milton (db) | 2:2002bk14182 | James Milton Lundstrom and Deborah Jean Lundstrom | Washington Western Bankruptcy Court | 04/05/2002 | 08/21/2002 |
| Lupi, Anthony John (db) | 4:1994bk21195 | Anthony John Lupi, Jr. | Pennsylvania Eastern Bankruptcy Court | 07/12/1994 | 10/31/1994 |
| Lutes, Wilma E. (jdb) | 8:1989bk03064 | Kenneth Lutes and Wilma E. Lutes | Florida Middle Bankruptcy Court | 05/05/1989 | 12/08/1989 |

Save this Case to Saved Cases

| | |
|---|---|
| | **Receipt** 02/26/2020 15:55:46 487012078 |
| **User** | legalcompliance |
| **Client Code** | |
| **Description** | Bankruptcy Party Search |

| | All Courts; Name Lu; Jurisdiction BK; SSN4 1857; All Courts; Page: 1 |
|---|---|
| **Billable Pages** | 1 ($0.10) |



# Party Search Results

**Search Criteria:** Party Search; Jurisdiction Type: [Bankruptcy]; Last Name: [Lu]; SSN4:
[1857]
**Result Count:** 17 (1 page)
**Current Page:** 1

| Party Name | Case Number | Case Title | Court | Date Filed | Date Closed |
|---|---|---|---|---|---|
| Lubonovic, Michael (db) | 4:2005bk40148 | Michael Lubonovic | Ohio Northern Bankruptcy Court | 01/13/2005 | 01/08/2007 |
| Lucas, Deloris (db) | 4:1994bk41758 | Deloris Lucas and Nicholas Lucas, Jr. | Ohio Northern Bankruptcy Court | 10/17/1994 | 03/20/1995 |
| Lucas, Deloris A. (db) | 4:2005bk44186 | Deloris A. Harrington | Ohio Northern Bankruptcy Court | 07/18/2005 | 11/30/2005 |
| Luce, Sheri Marie (jdb) | 1:2008bk13090 | Patrick Russell Luce and Sheri Marie Luce | Rhode Island Bankruptcy Court | 10/01/2008 | 01/12/2009 |
| Lucero, Edna (db) | 6:2001bk17948 | Edna Lucero | California Central Bankruptcy Court | 05/08/2001 | 09/05/2001 |
| Lucero, Edna Annabella (db) | 6:2001bk17948 | Edna Lucero | California Central Bankruptcy Court | 05/08/2001 | 09/05/2001 |
| Lucero-Aguilar, Edna A (db) | 6:2001bk17948 | Edna Lucero | California Central Bankruptcy Court | 05/08/2001 | 09/05/2001 |
| Luciano, Dawn Denise (db) | 5:2016bk52101 | Nicholas Luciano, Jr and Dawn Denise Luciano | Texas Western Bankruptcy Court | 09/15/2016 | 04/23/2018 |
| Luft, Ann F. (db) | 2:2016bk52866 | Ann F. Luft | Ohio Southern Bankruptcy Court | 04/29/2016 | 09/21/2016 |
| Luna, Joel (db) | 2:2012bk46903 | Joel Luna and Marian Luna | California Central Bankruptcy Court | 11/02/2012 | 05/01/2013 |
| Lund, David S. (db) | 8:2007bk08366 | David S. Lund | Florida Middle Bankruptcy Court | 09/13/2007 | 12/18/2007 |
| Lundberg, Judy K (db) | 2:1995bk01368 | Grey T Lundberg and Judy K Lundberg | Washington Western | 02/17/1995 | 06/14/1995 |

| Party Name | Case Number | Case Title | Court | Date Filed | Date Closed |
|---|---|---|---|---|---|
| | | | Bankruptcy Court | | |
| Lundberg, Judy K (db) | 2:1996bk10829 | Grey T Lundberg and Judy K Lundberg | Washington Western Bankruptcy Court | 09/17/1996 | 11/04/1997 |
| Lundberg, Judy Kathleen (jdb) | 2:2013bk21079 | Grey Theodore Lundberg and Judy Kathleen Lundberg | Washington Western Bankruptcy Court | 12/24/2013 | 03/31/2014 |
| Lundstrom, James Milton (db) | 2:2002bk14182 | James Milton Lundstrom and Deborah Jean Lundstrom | Washington Western Bankruptcy Court | 04/05/2002 | 08/21/2002 |
| Lupi, Anthony John (db) | 4:1994bk21195 | Anthony John Lupi, Jr. | Pennsylvania Eastern Bankruptcy Court | 07/12/1994 | 10/31/1994 |
| Lutes, Wilma E. (jdb) | 8:1989bk03064 | Kenneth Lutes and Wilma E. Lutes | Florida Middle Bankruptcy Court | 05/05/1989 | 12/08/1989 |

**PACER Service Center**

                      **Receipt** 02/28/2020 13:58:47 487129541

| | |
|---|---|
| **User** | legalcompliance |
| **Client Code** | |
| **Description** | Bankruptcy Party Search |
| | All Courts; Name Lu; Jurisdiction BK; SSN4 1857; All Courts; Page: 1 |
| **Billable Pages** | 1 ($0.10) |

## Snapshot

### Contact Information

| | |
|---|---|
| **Entity Name:** | Evergreen Tree Investments |
| **Owner Name:** | Amy Lu |
| **Phone:** | (626) 236-8636 |
| **Email:** | Galanglu@gmail.com |
| **Address:** | 4233 Cypress Ave. El Monte, CA 91731 |

### Key Metrics

    Show

### Communication

| Category | Product | Sub Product |
|---|---|---|
| – select – ▼ | – select – ▼ | – select – ▼ |

| Status | Follow up |
|---|---|
| – select – ▼ | |

**Subject**

**Comment**

Add New

### Contact Log History

There is no contact log history found

### Issues

| ID | Status | Product | Department | Assigned | Issue Title | Owner | Modified |
|---|---|---|---|---|---|---|---|
| 2215163 | Waiting On Customer | Customer Opportunity | Operations (US) | liberty\ad8758 | Correa, CA | libertytax\lts13152 | 1/11/202 3:15:13 PM |
| 2211923 | Waiting On Customer | Document Request | Operations (US) | liberty\ad8758 | Liberty Tax Service - Franchise Disclosure Document 7-19 amd 12-19 | libertytax\ent8543 | 1/8/2020 8:45:07 PM |
| 2197213 | Waiting On Customer | Compliance | Operations (US) | liberty\ad8758 | Mandatory California Marketing Webinar | libertytax\ent8543 | 12/17/2( 3:00:57 PM |
| 2190049 | Waiting On Customer | Site Selection | Operations (US) | liberty\andrea.foran | Office 20433 | libertytax\ent8543 | 12/8/20' 6:42:53 PM |
| 2182129 | Waiting On Customer | Customer Opportunity | Operations (US) | liberty\ad8758 | Garcia, CA | libertytax\lts13152 | 11/20/2( 12:35:2' PM |

## General Information

| Entity Name | Entity Type | Entity Status |
|---|---|---|
| Evergreen Tree Investments | Franchisee ▼ | Contract Closed/Active ▼ |

| Ownership Type | EIN | Termination Date | Broker |
|---|---|---|---|
| Corporation ▼ | 82-1486176 | | None ▼ |

Corporate Entity
☐

### Contact Information

| Address | Zip/Postal Code | City |
|---|---|---|
| 4233 Cypress Ave. | 91731 | El Monte |

| State/Province | Phone | Fax |
|---|---|---|
| California ▼ | (626) 236-8636 | |

| Cell/Text Phone | Email |
|---|---|
| (626) 236-8636 | Galanglu@gmail.com |

## Insurance Information

| Participation | Licensed Agent - Franchisee | Licensed Agent - Employee | 3rd Party Agent - In Office |
|---|---|---|---|
| No - Not Participating ▼ | ☐ | ☐ | ☐ |

3rd Party Agent – Referral
☐

## Entity Office Count Goal

| Current | 2021 | 2022 | 2023 |
|---|---|---|---|
| 0 | 0 | 0 | 0 |

Last Modified
12/5/2018

| Schedule Opening: | 2021 | 2022 | 2023 |
|---|---|---|---|
| | 0 | 0 | 0 |

## Location Information

| Address | Zip/Postal Code | City |
|---|---|---|
| 4233 Cypress Ave. | 91731 | El Monte |

| State/Province | Phone |
|---|---|
| California ▼ | (626) 236-8636 |

## Billing Information

| Name | Address | Zip/Postal Code |
|---|---|---|
| Amy Lu | 4233 Cypress Ave. | 91731 |

| City | State/Province |
|---|---|
| El Monte | California ▼ |

## Entity Owner(s)

### Primary Owner

| | First Name | Last Name | Date Of Birth | SSN |
|---|---|---|---|---|
| Owner: | Amy | Lu | 05/03/1980 | ###-##-1857 |
| Spouse: | | | | |

## Settings

| Withholding Type | Support Level | Receive Daily Metrics Email | Top Gun A | Top Gun B |
|---|---|---|---|---|
| Standard Fee Intercept ▼ | [Select] ▼ | ☑ | | |

| Elite 18 | Millionaire | Large Entity Support | Fantastic 50 | ACA Certified |
|---|---|---|---|---|
| | | | | ☐ |

PHOENIX Remote Signing
☑

### Pricing Curve

| Start Date | Pricing Curve |
|---|---|
| 1/2 | 85% |
| 1/20 | 100% |
| 3/1 | 80% |
| 4/8 | 100% |

### Bank Account Information

| Name on Account | Routing Number (RTN) | Account Number (DAN) | Account Type |
|---|---|---|---|
| EVERGREEN TREE INVES | 122000247 | 1018373397 | Checking ▼ |

### Wire Transfer Information

Wire transfers are offered at a rate of $50 per request; this fee will be billed to your AR. Do you accept this fee for future wire requests?

Accept Wire Fees: ☐

Bank Name _____    Routing Number (RTN) _____

**Entity Debt Tracking**

---

**FAC Pre-Approval**

| Level | Amount | Start Date | End Date |
|-------|--------|-----------|----------|
| [None] ▼ | | | |

Note

---

**Legal**

**Legal Documents**

| | Name | Modified |
|---|------|----------|
| 📂 **8543** | | |
|   📁 Onboarding Documents | | |
|   📁 Entity Amendments & Guaranties | | |
|   📁 Correspondence | | |
|   📁 Promissory Notes | | |
|   📁 Miscellaneous | | |
|   📁 LTCA610 | | |
|   📁 LTCA647 | | |
|   📁 LTCA648 | | |
|   📁 LTCA178 | | |

Bankruptcy Indicator _____
☐

**Legal Notes**

10/3/17 - purchased CA178 from 5903, 1 active office 11005. elt
6/12/17 - entity amended from SP to Corp; only signatory remains Amy Lu as President of Evergreen Tree Investments. elt
10/14/16 8543 purchase of CA648 from 2276 (previous Balkhi territory) LTS Only. Purchase price is $27,450 down payment plus 10% of Net Revenue over next 3 years (2017 - 2019). 1 active office: 14221. Cgd; 10/14/16 8543 purchase of CA647 from 2276 (previous Balkhi territory) LTS Only. Purchase price is $96,077.00 down payment plus 10% of Net Revenue over next 3 years (2017 - 2019). 1 active office: 13152. Cgd; 10/14/16 8543 purchase of CA610 from 2276 (previous Balkhi territory) LTS Only. Purchase price is $27,450 down payment plus 10% of Net Revenue over next 3 years (2017 - 2019). 1 active office: 20433. Cgd; 8/30/16 - to purchase CA610; see Jamie M or Casey K for details. elt
Email: Galanglu@gmail.com

---

**Entity Breakdown**

| Id | Name | DMA | Sales Rep | DM | RD | AD | Address | City | State | Internal Open Support Date | Return Count | Status |
|----|------|-----|-----------|----|----|----|---------|------|-------|------------|------|--------|
| Region M8 (M&M Business Group L.P.) | | | | | Tim Magerle | | | | | | | |
| CA610 | LosAngelesCA-25 | Los Angeles, CA | Unassigned | Unassigned | Michael Budka | | | | | Andrea Foran | | Commission Agreement/For Sale |
| 14783 | East Los Angeles | | | | | | 2099 S Atlantic Blvd Suite D | Monterey Park | CA | 1/8/2008 | 0 | Inactive |
| 16902 | Montebello | | | | | | 3524 W Beverly Blvd | Montebello | CA | 1/8/2012 | 0 | Inactive |
| 20433 | East LA | | | | | | 279 S Atlantic Blvd | Los Angeles | CA | 1/2/2016 | 0 | Inactive |
| Region 101 (Geoff Knapp) | | | | | Tim Magerle | | | | | | | |

| Id | Name | DMA | Sales Rep | DM | RD | AD | Address | City | State | Internal Support | Open Date | Return Count | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CA178 | LongBeachCA-1 | Los Angeles, CA | Unassigned | Unassigned | | Geoff Knapp | | | | Andrea Foran | | | Active/Contract Closed |
| 11005 | Bixby Knolls Long Beach | | | | | | 1140 E San Antonio Dr | Long Beach | CA | | 1/8/2015 | 0 | Inactive |
| 16551 | | | | | | | | | CA | | 1/8/2011 | 0 | Inactive |
| 19988 | SiempreTax | | | | | | | | | | 1/2/2016 | 0 | Inactive |
| CA647 | LongBeachCA-4 | Los Angeles, CA | Unassigned | Unassigned | | Geoff Knapp | | | | Andrea Foran | | | Active/Contract Closed |
| 13152 | South - Long Beach | | | | | | 795 Long Beach Blvd | Long Beach | CA | | 1/2/2007 | 0 | Inactive |
| CA648 | LongBeachCA-5 | Los Angeles, CA | Unassigned | Unassigned | | Geoff Knapp | | | | Andrea Foran | | | Active/Contract Closed |
| 13179 | Liberty Tax S. LONG BEACH | | | | | | 729 Long Beach Blvd | Long Beach | CA | | Unknown | 0 | Inactive |
| 14221 | Willow - Long Beach | | | | | | 2511 Long Beach Blvd | Long Beach | CA | | 1/1/2010 | 0 | Inactive |
| 16851 | | | | | | | 1001 E Pacific Coast Highway | Long Beach | CA | | 1/13/2011 | 0 | Inactive |

## General Information

### Territory Information

| | |
|---|---|
| **Name** | **Status** |
| LongBeachCA-1 | Active/Contract Closed ▼ |
| **Previous Status** | **Entity** 🔍     **Area Developer** 🔍 |
| Commission Agreement/For | 8543     8758 |
| **Region** | **City** |
| 101 (Geoff Knapp) ▼ | Long Beach |
| **State** | **DMA** |
| California ▼ | Los Angeles, CA ▼ |

| **Type** | **Contract Effective** | **Contract Expires** | **FR Contract Effective** |
|---|---|---|---|
| Standard Market ▼ | 10/3/2017 | 10/3/2022 | |

| **FR Contract Expires** | **Buy Back** | **Projected Open Date** | **Commission Agree Exp.** |
|---|---|---|---|
| | | 1/6/2003 | |

| **Sale Price** | **Sale Price Includes Commission and Transfer Fee** | **For Sale By Owner** | **Advertising** |
|---|---|---|---|
| $110,000.00 | ☐ | ☐ | ☐ |

| **AD Support Rep** | **Guarantee** |
|---|---|
| Andrea Foran ▼ | 8543 |
| **Guarantor** | **Sales Rep** |
| 5903 | Unassigned ▼ |
| **District Manager** | **Last Locked GRR:** |
| Unassigned ▼ | 12/2019 |
| **Territory Transaction** | |
| [Select] ▼ | |

### Brand Information

| **Territory Brand Indicator** | | | |
|---|---|---|---|
| Liberty Only ▼ | | | |
| **SB Contract Effective** | **SB Contract Expires** | **SB FR Contract Effective** | **SB FR Contract Expires** |

### Agreement Type

**Royalty Type**

| |
|---|
| Third Year+ -14% of Gross Receipts, subject to $11,000 minimum (FA 7-12,7-11,7-10,7-09,7-08,7-07,7-06,7-05,7-04 ▼ |

**Advertising**

| |
|---|
| 5% of all Gross Receipts ▼ |

Market Maps

**Description**

## Description

NORTH of and including I-405 from Cherry Ave to I-710.
EAST of and including I-710 from I-405 to W Del Amo Blvd.
SOUTH of and excluding W Del Amo Blvd continuing onto SOUTH of and excluding E Del Amo Blvd from I-710 to Cherry Ave.
WEST of and excluding Cherry Ave from E Del Amo Blvd to I-405.

### Territory Map



### City Map



## Competition Offices

### Competition Office List

| | Office Name | Address | City | State/Province | Competitor | Return Count |
|---|---|---|---|---|---|---|
| Select | H&R BLOCK TAX SERVICES INC | 4520 ATLANTIC AVE | LONG BEACH | CA | H&R Block | 1910 |

### Competition Office Detail

Select an office above, or Add a new Competition Office

## Legal

### Legal Documents

- 📂 8543
  - 📂 **LTCA178**
    - 📁 Amendments
    - 📁 Special Stips
    - 📁 ADMIN Screens
- 📂 5903
  - 📂 STCA178(i)
    - 📁 Amendments
    - 📁 Special Stips
  - 📂 LTCA178(i)
    - 📁 Amendments
    - 📁 Special Stips
- 📂 5000
  - 📂 LTCA178(i)
    - 📁 Amendments

| Name | Modified |
|---|---|
| 📄 5903 Ohana Hana, Inc. TR CA178 100317.pdf | October 3rd 2017, 6:26:58 pm |
| 📄 CA178 PS 5903 to 8543.pdf | October 3rd 2017, 6:27:00 pm |
| 📄 8543 LTS FA CA State Addendum CA178 100317.pdf | October 3rd 2017, 6:27:02 pm |
| 📄 8543 LTS FA CA178 100317.pdf | October 3rd 2017, 6:27:04 pm |
| 📄 8543 AoD CA178 100317.pdf | October 3rd 2017, 6:27:06 pm |
| 📄 New Approvals - CA178 5903 to 8543.pdf | October 3rd 2017, 6:29:40 pm |

## Notes

### Territory Notes

10/24/19 AK- ent8543 in the process of terminating FAs. Client files for CA178-11005; CA647-13152; CA648-14221 to go to entity 5903 per Market Manager, Thomas Bartolomeo .

10/3/17 – 8543 purchased from 5903; 1 active office 11005. 5903 to guaranty. elt
9/28/17 – MT of ST rights finalized under 5903; CA178 is LTS Only, w/1 active office 11005. elt
(BRAND MIRROR-CA9C9)
CA expires 12/31/17 PP 109,400 5k trans fee - MJC (6/8/17)
Office 11005 Open Date rolled back to 1/8/15 Due to new Zee ownership and JTH approval (see e-mail titled "RE: Follow-up -

Dan Williams - 1st Year Store"). MBH 7/22/15
Royalty update 6.30.2015
Previously owned by Entity 2698 terminated on 10/31/2014 via non-renewal per entity 2698's request. Cgd
SPLIT (CA938) per issue 1361871. 10.04.14/drt
Previously owned by 2785 sold via z to z sale to 2698 on 10/14/09. jpm


(ADT-SWST046)

### Sale Notes

Under Contract to entity 8543 via zee to zee sale. (8/21/17 PRO)

### FA Address

## Entity Information

| | |
|---|---|
| Entity Name: | Evergreen Tree Investments |
| Entity Phone: | (626) 236-8636 |
| Entity Cell Phone: | (626) 236-8636 |
| Area Developer Name: | Geoff Knapp |

## Territory Breakdown

| Id | Name | DMA | Sales Rep | DM | RD | AD | Address | City | State | Internal Support | Open Date | Return Count | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CA178 | LongBeachCA-1 | Los Angeles, CA | Unassigned | Unassigned | | Geoff Knapp | | | | Andrea Foran | | | Active/Contract Closed |
| 11005 | Bixby Knolls Long Beach | | | | | | 1140 E San Antonio Dr | Long Beach | CA | | 1/8/2015 | 0 | Inactive |
| 16551 | | | | | | | | | CA | | 1/8/2011 | 0 | Inactive |
| 19988 | SiempreTax | | | | | | | | | | 1/2/2016 | 0 | Inactive |

┌─ **General Information** ──────────────────────────────────

┌─ Territory Information ────────────────────────────

Name
LosAngelesCA-25

Status
Commission Agreement/For Sale    ▼

Previous Status
Active/Contract Closed

Entity 🔍
8543

Area Developer 🔍
2532

Region
M8 (M&M Business Group L.P.)    ▼

City
Los Angeles

State
California    ▼

DMA
Los Angeles, CA    ▼

Type
Standard Market    ▼

Contract Effective
10/14/2016

Contract Expires
10/14/2021

FR Contract Effective

FR Contract Expires

Buy Back

Projected Open Date
1/2/2017

Commission Agree Exp.
12/31/2018

Sale Price
$40,000.00

Sale Price Includes
Commission and Transfer
Fee ☐

For Sale By Owner ☐

Advertising ☐

AD Support Rep
Andrea Foran    ▼

Guarantee

Guarantor

Sales Rep
Unassigned    ▼

District Manager
Unassigned    ▼

Last Locked GRR:
12/2019

Territory Transaction
[Select]    ▼

┌─ Brand Information ────────────────────────────

Territory Brand Indicator
Liberty Only    ▼

SB Contract Effective

SB Contract Expires

SB FR Contract Effective

SB FR Contract Expires

┌─ Agreement Type ────────────────────────────

Royalty Type
Third Year+ -14% of Gross Receipts, subject to $11,000 minimum (FA 7-12,7-11,7-10,7-09,7-08,7-07,7-06,7-05,7-04,7-03  ▼

Advertising
5% of all Gross Receipts    ▼

Market Maps

┌─ **Description** ──────────────────────────────────

NORTHEAST of and including I-5 from Garfield Ave to S Atlantic Blvd
EAST of and including S Atlantic Blvd from I-5 to SR-60
SOUTH of and excluding SR-60 from S Atlantic Blvd to N Garfield Ave
WEST of and excluding N Garfield Ave from SR-60 to I-5

**Territory Map**



**City Map**



## Competition Offices

**Competition Office List**

| | Office Name | Address | City | State/Province | Competitor | Return Count |
|---|---|---|---|---|---|---|
| Select | H&R BLOCK TAX SERVICE INC | 5534 WHITTIER BLVD UNIT C | COMMERCE | CA | H&R Block | 959 |
| Select | H&R BLOCK - 6312 | 5730 E WHITTIER BLVD | COMMERCE | CA | H&R Block | 30 |

**Competition Office Detail**

Select an office above, or Add a new Competition Office

## Legal

**Legal Documents**

| Folders | Name | Modified |
|---|---|---|
| 📂 8543 | 8543 - CA610 Purchase and Sale Agreement 101416.pdf | October 18th 2016, 8:12:59 am |
|   📂 **LTCA610** | 8543 Before Screen Shot 101416.pdf | October 18th 2016, 8:13:03 am |
|     📁 Amendments | Item 20 - CA610.pdf | October 18th 2016, 8:13:04 am |
|     📁 Special Stips | Deal with approvals.pdf | October 18th 2016, 8:13:05 am |
| 📂 4841(i) | LTS Confidentiality Agreement 101416.pdf | October 18th 2016, 8:13:06 am |
|   📂 LTCA610(i) | Sales Journal Entry.doc | October 18th 2016, 8:13:06 am |
|     📁 Amendments | Franchise Agreement CA610 101416.pdf | October 18th 2016, 8:13:07 am |
|     📁 Special Stips | CA610 Before Screen Shot 101416.pdf | October 18th 2016, 8:13:08 am |
|   📂 STCA610(i) | Checks CA610.pdf | October 18th 2016, 8:13:09 am |
|     📁 Amendments | LTS CA Addendum 101416.pdf | October 18th 2016, 8:13:10 am |
|     📁 Special Stips | | |

## Notes

**Territory Notes**

Notes
History
EFIN
Pending Update

View

View

View

View

More Info

10/24/19 ak- ent8543 in the process of terminating FAs. Client files for CA610-20433 to go to entity 6935 per AD (Chris Budka) .

10/14/16 8543 purchase of CA610 from 2276 (previous Balkhi territory) LTS Only. Purchase price is $27,450 down payment plus 10% of Net Revenue over next 3 years (2017 - 2019. 1 active office: 20433. Cgd;
Royalty update 05.20.2008 Royalty update 05.12.2009; 12/01/15 Entity 4841 purchased CA610 from entity 5117, LTS from 5117 and ST from SiempreTax. 0 active offices. Cgd; Previously owned by Entity 4841 terminated on 05/27/2016. 05/27/16 Liberty bought back CA008, CA610, CA634, CA042, CA594, CA606, CA820, CA906, CA074, CA161, CA162, CA477, CA478, CA687, CA899, CA311, CA783, CA638, CA647, CA648, CA829, CA830 and CA939 from entity 4841. 22 Active Offices: 20433, 13122, 15415, 14146, 19533, 18556, 19095, 14630, 14238, 14239, 13382, 16847, 18459, 19900, 16779, 14222, 12545, 13152, 14221, 16382, 17336, and 16996. Cgd;

(BRAND MIRROR-CA935) [AB 10.17.2016]

(ADT-SWST011)

### Sale Notes

CA Expires 12/31/19, PP $40K, $5 Trans Fee (4.15.2019 AMA)
CA Expires 12/31/18, PP $40K, $5K trans fee (6/6/18 PRO)
CA Expires 12/31/17, PP $80306, $5K trans fee (8/22/17 PRO)
8/30/16 - UC to 8543; see Jamie M or Casey K for details. elt
5117-CA610 is now being advertised for sale at the purchase price of $40,000.00 with a transfer fee of $5000.00 and commission at 10% of the purchase price, subject of a minimum of $5000.00.(11/7/14 jmc)

### FA Address

### Entity Information

|  |  |
|---|---|
| Entity Name: | Evergreen Tree Investments |
| Entity Phone: | (626) 236-8636 |
| Entity Cell Phone: | (626) 236-8636 |
| Area Developer Name: | Michael Budka |

### Territory Breakdown

| Id | Name | DMA | Sales Rep | DM | RD AD | Address | City | State | Internal Support | Open Date | Return Count | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CA610 | LosAngelesCA-25 | Los Angeles, CA | Unassigned | Unassigned | Michael Budka |  |  |  | Andrea Foran |  |  | Commission Agreement/For Sale |
| 14783 | East Los Angeles |  |  |  |  | 2099 S Atlantic Blvd Suite D | Monterey Park | CA |  | 1/8/2008 | 0 | Inactive |
| 16902 | Montebello |  |  |  |  | 3524 W Beverly Blvd | Montebello | CA |  | 1/8/2012 | 0 | Inactive |
| 20433 | East LA |  |  |  |  | 279 S Atlantic Blvd | Los Angeles | CA |  | 1/2/2016 | 0 | Inactive |

## General Information

### Territory Information

| | |
|---|---|
| **Name** | **Status** |
| LongBeachCA-4 | Active/Contract Closed ▼ |

| | | |
|---|---|---|
| **Previous Status** | **Entity** 🔍 | **Area Developer** 🔍 |
| Under Contract | 8543 | 8758 |

| **Region** | **City** |
|---|---|
| 101 (Geoff Knapp) ▼ | Long Beach |

| **State** | **DMA** |
|---|---|
| California ▼ | Los Angeles, CA ▼ |

| **Type** | **Contract Effective** | **Contract Expires** | **FR Contract Effective** |
|---|---|---|---|
| Standard Market ▼ | 10/14/2016 | 10/14/2021 | |

| **FR Contract Expires** | **Buy Back** | **Projected Open Date** | **Commission Agree Exp.** |
|---|---|---|---|
| | | 1/2/2007 | |

| **Sale Price** | **Sale Price Includes Commission and Transfer Fee** | **For Sale By Owner** | **Advertising** |
|---|---|---|---|
| $106,077.00 | ☐ | ☐ | ☐ |

| **AD Support Rep** | **Guarantee** |
|---|---|
| Andrea Foran ▼ | |

| **Guarantor** | **Sales Rep** |
|---|---|
| | Unassigned ▼ |

| **District Manager** | **Last Locked GRR:** |
|---|---|
| Unassigned ▼ | 12/2019 |

| **Territory Transaction** | |
|---|---|
| [Select] ▼ | |

### Brand Information

| **Territory Brand Indicator** | | | |
|---|---|---|---|
| Liberty Only ▼ | | | |

| **SB Contract Effective** | **SB Contract Expires** | **SB FR Contract Effective** | **SB FR Contract Expires** |
|---|---|---|---|
| | | | |

### Agreement Type

**Royalty Type**

Third Year+ -14% of Gross Receipts, subject to $11,000 minimum (FA 7-12,7-11,7-10,7-09,7-08,7-07,7-06,7-05,7-04 ▼

**Advertising**

5% of all Gross Receipts ▼

Market Maps

Description

## Description

NORTH of and including E 3rd St continuing onto NORTH of and including W 3rd St continuing onto NORTH of and including Latitude 33.77051°N from Alamitos Ave to Los Angeles River.
EAST of and including Los Angeles River from Latitude 33.77051°N to Latitude 33.77893°N.
SOUTH of and excluding Latitude 33.77893°N from Los Angeles River to W 10th St.
SOUTH of and excluding W 10th St continuing onto SOUTH of and excluding E 10th St from Latitude 33.77893°N to Alamitos Ave.
WEST of and excluding Alamitos Ave from E 10th St to E 3rd St.

### Territory Map



### City Map



## Competition Offices

### Competition Office List

|  | Office Name | Address | City | State/Province | Competitor | Return Count |
|---|---|---|---|---|---|---|
| Select | H & R BLOCK TAX SERVICES INC | 400 LONG BEACH BLVD. STE L100 | LONG BEACH | CA | H&R Block | 2253 |
| Select | JACKSON HEWITT TAX SERVICE | 151 EAST 5TH STREET | LONG BEACH | CA | Jackson Hewitt | 170 |

### Competition Office Detail

Select an office above, or Add a new Competition Office

## Legal

### Legal Documents

- 8543
  - **LTCA647**
    - Amendments
    - Special Stips
  - 4841(i)
    - LTCA647(i)
      - Amendments
      - Special Stips

| Name | Modified |
|---|---|
| 8543 Before Screen Shot 101416.pdf | October 18th 2016, 8:11:19 am |
| Checks CA647.pdf | October 18th 2016, 8:11:19 am |
| 8543 - CA647 Purchase and Sale Agreement 101416.pdf | October 18th 2016, 8:11:21 am |
| LTS CA Addendum 101416.pdf | October 18th 2016, 8:11:22 am |
| LTS Confidentiality Agreement 101416.pdf | October 18th 2016, 8:11:23 am |
| SJE Amy Lu CA647 9.19.16.pdf | October 18th 2016, 8:11:24 am |
| Franchise Agreement CA647 101416.pdf | October 18th 2016, 8:11:25 am |
| Item 20 - CA647.pdf | October 18th 2016, 8:11:26 am |
| CA647 Approved FFRF.pdf | October 18th 2016, 8:11:26 am |
| CA647 Before Screen Shot 101416.pdf | October 18th 2016, 8:11:28 am |

┌─ **Notes** ─────────────────────────────────────────────────────────────┐

　┌─ **Territory Notes** ──────────────────────────────────────────────┐

　│ 10/24/19 AK- ent8543 in the process of terminating FAs. Client files for CA178-11005; CA647-13152; CA648-14221 to go to entity 5903 per Market Manager, Thomas Bartolomeo .

　│ 10/14/16 8543 purchase of CA647 from 2276 (previous Balkhi territory) LTS Only. Purchase price is $96,077.00 down payment plus 10% of Net Revenue over next 3 years (2017 - 2019). 1 active office: 13152. Cgd;
Royalty update 07.23 Royalty update 05.20.2008 Previously owned by entity 4289- sold via z to z sale to entity 4841 12/30/09. jpm; Previously owned by Entity 4841 terminated on 05/27/2016. 05/27/16 Liberty bought back CA008, CA610, CA634, CA042, CA594, CA606, CA820, CA906, CA074, CA161, CA162, CA477, CA478, CA687, CA899, CA311, CA783, CA638, CA647, CA648, CA829, CA830 and CA939 from entity 4841. 22 Active Offices: 20433, 13122, 15415, 14146, 19533, 18556, 19095, 14630, 14238, 14239, 13382, 16847, 18459, 19900, 16779, 14222, 12545, 13152, 14221, 16382, 17336, and 16996. Cgd;

　│ (BRAND MIRROR-CA997) [AB 10.17.2016]

　│ (ADT-SWST046)

　└────────────────────────────────────────────────────────────────────┘

　┌─ **Sale Notes** ──────────────────────────────────────────────────┐

　│ 9/15/16 - UC to 8543; see Jamie M or Kristen I for details. elt

　└────────────────────────────────────────────────────────────────────┘

　┌─ **FA Address** ──────────────────────────────────────────────────┐

　└────────────────────────────────────────────────────────────────────┘

└──────────────────────────────────────────────────────────────────────────┘

## Entity Information

|  |  |
|---|---|
| Entity Name: | Evergreen Tree Investments |
| Entity Phone: | (626) 236-8636 |
| Entity Cell Phone: | (626) 236-8636 |
| Area Developer Name: | Geoff Knapp |

## Territory Breakdown

| Id | Name | DMA | Sales Rep | DM | RD | AD | Address | City | State | Internal Support | Open Date | Return Count | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CA647** | LongBeachCA-4 | Los Angeles, CA | Unassigned | Unassigned |  | Geoff Knapp |  |  |  | Andrea Foran |  |  | Active/Contract Closed |
| 13152 | South - Long Beach |  |  |  |  |  | 795 Long Beach Blvd | Long Beach | CA |  | 1/2/2007 | 0 | Inactive |

2/26/2020   Case 2:22-cv-01715-SB-JC   Document 1 Admin System - Territory CA648   Filed 03/15/22   Page 247 of 265   Page ID #:247

**Territory CA648**

## General Information

### Territory Information

Name
LongBeachCA-5

Status
Active/Contract Closed ▼

Previous Status
Under Contract

Entity 🔍
8543

Area Developer 🔍
8758

Region
101 (Geoff Knapp) ▼

City
Long Beach

State
California ▼

DMA
Los Angeles, CA ▼

Type
Standard Market ▼

Contract Effective
10/14/2016

Contract Expires
10/14/2021

FR Contract Effective

FR Contract Expires

Buy Back

Projected Open Date
1/8/2010

Commission Agree Exp.

Sale Price
$37,450.00

Sale Price Includes Commission and Transfer Fee ☐

For Sale By Owner ☐

Advertising ☐

AD Support Rep
Andrea Foran ▼

Guarantee

Guarantor

Sales Rep
Unassigned ▼

District Manager
Unassigned ▼

Last Locked GRR:
12/2019

Territory Transaction
[Select] ▼

### Brand Information

Territory Brand Indicator
Liberty Only ▼

SB Contract Effective

SB Contract Expires

SB FR Contract Effective

SB FR Contract Expires

### Agreement Type

Royalty Type
Third Year+ -14% of Gross Receipts, subject to $11,000 minimum (FA 7-12,7-11,7-10,7-09,7-08,7-07,7-06,7-05,7-04,7

Advertising
5% of all Gross Receipts ▼

Market Maps

## Description

NORTH of and including E Hill St continuing onto NORTH of and including W Hill St from Walnut Ave to Los Angeles River.
EAST of and including Los Angeles River from W Hill St to I-405/San Diego Fwy.
SOUTH of and excluding I-405/San Diego Fwy from Los Angeles River to Walnut Ave.
WEST of and excluding Walnut Ave from I-405/San Diego Fwy to E Hill St.

**Territory Map**



**City Map**



## Competition Offices

### Competition Office List

| | Office Name | Address | City | State/Province | Competitor | Return Count |
|---|---|---|---|---|---|---|
| Select | H&R BLOCK TAX SERVICES INC | 2620 LONG BEACH BLVD | LONG BEACH CA | | H&R Block | 1292 |
| Select | JACKSON HEWITT TAX SERVICE | 2006-A LONG BEACH BLVD. | LONG BEACH CA | | Jackson Hewitt | 373 |

### Competition Office Detail

Select an office above, or Add a new Competition Office

## Legal

### Legal Documents

| Name | Modified |
|---|---|
| 📄 8543 | |
|   📁 **LTCA648** | |
|     📁 Amendments | |
|     📁 Special Stips | |
| 📁 4841(i) | |
|   📁 LTCA648(i) | |
|     📁 Amendments | |
|     📁 Special Stips | |
| 📄 8543 - CA648 Purchase and Sale Agreement 101416.pdf | October 18th 2016, 8:09:52 am |
| 📄 CA648 Approved FFRF.pdf | October 18th 2016, 8:09:52 am |
| 📄 Franchise Agreement CA648 101416.pdf | October 18th 2016, 8:09:53 am |
| 📄 Item 20 - CA648.pdf | October 18th 2016, 8:09:54 am |
| 📄 LTS CA Addendum 101416.pdf | October 18th 2016, 8:09:55 am |
| 📄 LTS Confidentiality Agreement 101416.pdf | October 18th 2016, 8:09:55 am |
| 📄 Check CA648.pdf | October 18th 2016, 8:09:57 am |
| 📄 8543 Before Screen Shot 101416.pdf | October 18th 2016, 8:09:57 am |
| 📄 CA648 Before Screen Shot 101416.pdf | October 18th 2016, 8:09:58 am |
| 📄 CA648 SJE 9.20.16.pdf | October 18th 2016, 8:09:59 am |

## Notes

### Territory Notes

10/24/19 AK- ent8543 in the process of terminating FAs. Client files for CA178-11005; CA647-13152; CA648-14221 to go to entity 5903 per Market Manager, Thomas Bartolomeo .

10/14/16 8543 purchase of CA648 from 2276 (previous Balkhi territory) LTS Only. Purchase price is $27,450 down payment plus 10% of Net Revenue over next 3 years (2017 - 2019). 1 active office: 14221. Cgd; swap of CA687 into CA648 for John Balkhi #4841 11-25-09knk. Transferred R/s from CA687 to CA648. 12/3/09. jpm Royalty update 05.11.2010 Royalty update 05.15.2011; Previously owned by Entity 4841 terminated on 05/27/2016. 05/27/16 Liberty bought back CA008, CA610, CA634, CA042, CA594, CA606, CA820, CA906, CA074, CA161, CA162, CA477, CA478, CA687, CA899, CA311, CA783, CA638, CA647, CA648, CA829, CA830 and CA939 from entity 4841. 22 Active Offices: 20433, 13122, 15415, 14146, 19533, 18556, 19095, 14630, 14238, 14239, 13382, 16847, 18459, 19900, 16779, 14222, 12545, 13152, 14221, 16382, 17336, and 16996. Cgd;

(BRAND MIRROR-CA998) [AB 10.17.2016]

(ADT-SWST046)

### Sale Notes

9/19/16 - UC to 8543; see Jamie M or Briana K for details. elt

### FA Address

---

**Entity Information**

| | |
|---|---|
| Entity Name: | Evergreen Tree Investments |
| Entity Phone: | (626) 236-8636 |
| Entity Cell Phone: | (626) 236-8636 |
| Area Developer Name: | Geoff Knapp |

**Territory Breakdown**

| Id | Name | DMA | Sales Rep | DM | RD | AD | Address | City | State | Internal Support | Open Date | Return Count | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CA648** | LongBeachCA-5 | Los Angeles, CA | Unassigned | Unassigned | | Geoff Knapp | | | | Andrea Foran | | | Active/Contract Closed |
| 13179 | Liberty Tax S. LONG BEACH | | | | | | 729 Long Beach Blvd | Long Beach | CA | | Unknown | 0 | Inactive |
| 14221 | Willow - Long Beach | | | | | | 2511 Long Beach Blvd | Long Beach | CA | | 1/1/2010 | 0 | Inactive |
| 16851 | | | | | | | 1001 E Pacific Coast Highway | Long Beach | CA | | 1/13/2011 | 0 | Inactive |

## Snapshot

### Contact Information

| | |
|---|---|
| **Entity Name:** | Evergreen Tree Investments |
| **Owner Name:** | Amy Lu |
| **Phone:** | (626) 236-8636 |
| **Email:** | |
| **Address:** | 4233 Cypress Ave. El Monte, CA 91731 |

### Key Metrics

Show

### Communication

| **Category** | **Product** | **Sub Product** |
|---|---|---|
| -- select -- | -- select -- | -- select -- |

**Status**
-- select --

**Follow up**

**Subject**

**Comment**

Add New

### Contact Log History

There is no contact log history found

### Issues

| ID | Status | Product | Department | Assigned | Issue Title | Owner | Modif |
|---|---|---|---|---|---|---|---|
| 2211923 | Waiting On Customer | Document Request | Operations (US) | liberty\ad8758 | Liberty Tax Service - Franchise Disclosure Document 7-19 and 12-19 | libertytax\ent8543 | 1/8/20 8:45:0 PM |
| 2197213 | Waiting On Customer | Compliance | Operations (US) | liberty\ad8758 | Mandatory California Marketing Webinar | libertytax\ent8543 | 12/17 3:00:5 PM |
| 2190049 | Waiting On Customer | Site Selection | Operations (US) | liberty\andrea.foran | Office 20433 | libertytax\ent8543 | 12/8/2 6:42:± PM |
| 2183753 | Waiting On Customer | Site Selection | Site Selection | liberty\Renee.Harvey | 14221 Lease Expiring: Renewal Request | libertytax\ent8543 | 11/7/2 11:21: AM |
| 2182922 | Waiting On Customer | Customer Opportunity | Financial Products Support | | Checks Authorized/Not Printed 10+ Days - Office #13152 | libertytax\ent8543 | 11/1/2 10:30 AM |

## General Information

| Entity Name | Entity Type | Entity Status |
|---|---|---|
| Evergreen Tree Investments | Franchisee | Unilateral Termination |

| Ownership Type | EIN | Termination Date | Broker |
|---|---|---|---|
| Corporation | | 2/28/2020 | None |

Corporate Entity

### Contact Information

| Address | Zip/Postal Code | City |
|---|---|---|
| 4233 Cypress Ave. | 91731 | El Monte |

| State/Province | Phone | Fax | Cell/Text Phone |
|---|---|---|---|
| California | (626) 236-8636 | | (626) 236-8636 |

Email

### Insurance Information

| Participation | Licensed Agent – Franchisee | Licensed Agent – Employee | 3rd Party Agent – In Office | 3rd Party Agent – Referral |
|---|---|---|---|---|
| [Select] ▼ | ☐ | ☐ | ☐ | ☐ |

## Entity Office Count Goal

| Current | 2021 | 2022 | 2023 | Last Modified |
|---|---|---|---|---|
| 0 | 0 | 0 | 0 | 2/28/2020 |

| Schedule Opening: | 2021 | 2022 | 2023 |
|---|---|---|---|
| | 0 | 0 | 0 |

## Location Information

| Address | Zip/Postal Code | City |
|---|---|---|
| 4233 Cypress Ave. | 91731 | El Monte |

| State/Province | Phone |
|---|---|
| California ▼ | (626) 236-8636 |

## Billing Information

| Name | Address | Zip/Postal Code | City |
|---|---|---|---|
| | | | |

| State/Province |
|---|
| California ▼ |

## Entity Owner(s)

### Primary Owner

| | First Name | Last Name | Date Of Birth | SSN |
|---|---|---|---|---|
| Owner: | | | | |
| Spouse: | | | | |

## Settings

| Withholding Type | Support Level | Receive Daily Metrics Email | Top Gun A | Top Gun B |
|---|---|---|---|---|
| Standard Fee Intercept ▼ | [Select] ▼ | ☑ | | |

| Elite 18 | Millionaire | Large Entity Support | Fantastic 50 | ACA Certified |
|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ |

| PHOENIX Remote Signing |
|---|
| ☑ |

### Pricing Curve

| Start Date | Pricing Curve |
|---|---|
| 1/2 | 85% |
| 1/20 | 100% |
| 3/1 | 80% |
| 4/8 | 100% |

### Bank Account Information

| Name on Account | Routing Number (RTN) | Account Number (DAN) | Account Type |
|---|---|---|---|
| EVERGREEN TREE INVES | 122000247 | 1018373397 | Checking ▼ |

### Wire Transfer Information

Wire transfers are offered at a rate of $50 per request; this fee will be billed to your AR. Do you accept this fee for future wire requests?

Accept Wire Fees: ☐

| Bank Name | Routing Number (RTN) |
|---|---|
| | |

### Entity Debt Tracking

**FAC Pre-Approval**

Level          Amount          Start Date          End Date
[None]

Note

---

**Legal**

**Legal Documents**

📂 **8543(i)**
   📁 Onboarding Documents
   📁 Entity Amendments & Guaranties
   📁 Correspondence
   📁 Promissory Notes
   📁 Miscellaneous
   📁 LTCA610(i)
   📁 LTCA647(i)
   📁 LTCA648(i)
   📁 Legal Only
   📁 LTCA178(i)

| Name | Modified |
|---|---|

Bankruptcy Indicator

**Legal Notes**

02/28/2020 - Terminated 8543 via UT. Had four territories: CA610 with three inactive offices (14783, 16902, and 20433); CA178 with three inactive offices (11005, 16551, and 19988); CA647 with one inactive office (13152); and CA648 with three inactive offices (13179, 14221, and 16851). - JRW

Email for 8543 (2020): Galanglu@gmail.com

10/3/17 - purchased CA178 from 5903, 1 active office 11005. elt
6/12/17 - entity amended from SP to Corp; only signatory remains Amy Lu as President of Evergreen Tree Investments. elt
10/14/16 8543 purchase of CA648 from 2276 (previous Balkhi territory) LTS Only. Purchase price is $27,450 down payment plus 10% of Net Revenue over next 3 years (2017 - 2019). 1 active office: 14221. Cgd; 10/14/16 8543 purchase of CA647 from 2276 (previous Balkhi territory) LTS Only. Purchase price is $96,077.00 down payment plus 10% of Net Revenue over next 3 years (2017 - 2019). 1 active office: 13152. Cgd; 10/14/16 8543 purchase of CA610 from 2276 (previous Balkhi territory) LTS Only. Purchase price is $27,450 down payment plus 10% of Net Revenue over next 3 years (2017 - 2019). 1 active office: 20433. Cgd; 8/30/16 - to purchase CA610; see Jamie M or Casey K for details. elt

Email: Galanglu@gmail.com

Entity 8543 terminated on 02/28/2020.

---

**Entity Breakdown**

| Id | Name | DMA | Sales Rep | DM | RD | AD | Address | City | State | Internal Support | Open Date | Return Count | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

┌─ **General Information** ─────────────────────────────────────────────

┌─ **Territory Information** ────────────────────────────────────────

Name
LongBeachCA-1

Status
Terminated/For Sale                                                  ▼

Previous Status
Available

Entity 🔍          Area Developer 🔍
1000               8758

Region
101 (Geoff Knapp)                                                    ▼

City
Long Beach

State
California                                                           ▼

DMA
Los Angeles, CA                                                      ▼

Type                          Contract Effective        Contract Expires        FR Contract Effective
Standard Market       ▼

FR Contract Expires           Buy Back                  Projected Open Date      Commission Agree Exp.

Sale Price                    Sale Price Includes       For Sale By Owner        Advertising
$110,000.00                   Commission and Transfer   ☐                        ☐
                              Fee
AD Support Rep                ☐                         Guarantee
Andrea Foran          ▼                                 8543

Guarantor                                               Sales Rep
5903                                                    Unassigned                                       ▼

District Manager                                        Last Locked GRR:
Unassigned            ▼                                 12/2019

Territory Transaction
Territory Terminated via UT   ▼

┌─ **Brand Information** ────────────────────────────────────────────

Territory Brand Indicator
Liberty Only          ▼

SB Contract Effective         SB Contract Expires       SB FR Contract Effective  SB FR Contract Expires

┌─ **Agreement Type** ──────────────────────────────────────────────

Royalty Type
Third Year+ -14% of Gross Receipts, subject to $11,000 minimum (FA 7-12,7-11,7-10,7-09,7-08,7-07,7-06,7-05,7-04 ▼

Advertising
5% of all Gross Receipts                                                                                 ▼

Market Maps

─ Description ─

## Description

NORTH of and including I-405 from Cherry Ave to I-710.
EAST of and including I-710 from I-405 to W Del Amo Blvd.
SOUTH of and excluding W Del Amo Blvd continuing onto SOUTH of and excluding E Del Amo Blvd from I-710 to Cherry Ave.
WEST of and excluding Cherry Ave from E Del Amo Blvd to I-405.

### Territory Map



### City Map



## Competition Offices

### Competition Office List

| | Office Name | Address | City | State/Province | Competitor | Return Count |
|---|---|---|---|---|---|---|
| Select | H&R BLOCK TAX SERVICES INC | 4520 ATLANTIC AVE | LONG BEACH | CA | H&R Block | 1910 |

### Competition Office Detail

Select an office above, or Add a new Competition Office

## Legal

### Legal Documents

- 📂 5000
  - 📂 **LTCA178(i)**
    - 📁 Amendments
- 📂 5903
  - 📁 LTCA178(i)
    - 📁 Amendments
    - 📁 Special Stips
  - 📁 STCA178(i)
    - 📁 Amendments
    - 📁 Special Stips
- 📂 8543(i)
  - 📁 LTCA178(i)
    - 📁 Amendments
    - 📁 Special Stips
    - 📁 ADMIN Screens

| Name | Modified |
|---|---|
| 📄 17145.pdf | May 8th 2016, 6:16:40 pm |

## Notes

### Territory Notes

02/28/2020 - Terminated CA178 along with UT of 8543. CA178 had three inactive offices (11005, 16551, and 19988)- JRW

Email for 8543 (2020): Galanglu@gmail.com

10/24/19 AK- ent8543 in the process of terminating FAs. Client files for CA178-11005; CA647-13152; CA648-14221 to go to entity 5903 per Market Manager, Thomas Bartolomeo .

10/3/17 – 8543 purchased from 5903; 1 active office 11005. 5903 to guaranty. elt

9/28/17 – MT of ST rights finalized under 5903; CA178 is LTS Only, w/1 active office 11005. elt
(BRAND MIRROR-CA9C9)
CA expires 12/31/17 PP 109,400 5k trans fee - MJC (6/8/17)
Office 11005 Open Date rolled back to 1/8/15 Due to new Zee ownership and JTH approval (see e-mail titled "RE: Follow-up - Dan Williams – 1st Year Store"). MBH 7/22/15
Royalty update 6.30.2015
Previously owned by Entity 2698 terminated on 10/31/2014 via non-renewal per entity 2698's request. Cgd
SPLIT (CA938) per issue 1361871. 10.04.14/drt
Previously owned by 2785 sold via z to z sale to 2698 on 10/14/09. jpm


(ADT-SWST046)

Previously owned by Entity 8543 terminated on 02/28/2020.

Territory CA178 terminated on 02/28/2020.

### Sale Notes

Under Contract to entity 8543 via zee to zee sale. (8/21/17 PRO)

### FA Address

Email for 8543 (2020): Galanglu@gmail.com


#### Entity Information

| | |
|---|---|
| Entity Name: | JTH Tax Inc. |
| Entity Phone: | (757) 493-8855 |
| Entity Cell Phone: | |
| Area Developer Name: | Geoff Knapp |

#### Territory Breakdown

| Id | Name | DMA | Sales Rep | DM | RD AD | Address | City | State | Internal Support | Open Date | Return Count | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CA178** | LongBeachCA-1 | Los Angeles, CA | Unassigned | Unassigned | Geoff Knapp | | | | Andrea Foran | | | Terminated/For Sale |
| | 11005 | Bixby Knolls Long Beach | | | | 1140 E San Antonio Dr | Long Beach | CA | | 1/8/2015 | 0 | Inactive |
| | 16551 | | | | | | | CA | | 1/8/2011 | 0 | Inactive |
| | 19988 | SsiempreTax | | | | | | | | 1/2/2016 | 0 | Inactive |

2/28/2020 Case 2:22-cv-01715-SB-JC Document 1-4 Admin System - Territory CA610 Filed 03/15/22 Page 256 of 265 Page ID #:256

Territory CA610

---

## General Information

### Territory Information

| | |
|---|---|
| **Name** | **Status** |
| LosAngelesCA-25 | Terminated/For Sale ▼ |
| **Previous Status** | **Entity** 🔍 | **Area Developer** 🔍 |
| Available | 2276 | 2532 |

**Region**
M8 (M&M Business Group L.P.) ▼

**City**
Los Angeles

**State**
California ▼

**DMA**
Los Angeles, CA ▼

**Type**
Standard Market ▼

**Contract Effective**

**Contract Expires**

**FR Contract Effective**

**FR Contract Expires**

**Buy Back**

**Projected Open Date**

**Commission Agree Exp.**
12/31/2018

**Sale Price**
$40,000.00

**Sale Price Includes Commission and Transfer Fee** ☐

**For Sale By Owner** ☐

**Advertising** ☐

**AD Support Rep**
Andrea Foran ▼

**Guarantee**

**Guarantor**

**Sales Rep**
Unassigned ▼

**District Manager**
Unassigned ▼

**Last Locked GRR:**
12/2019

**Territory Transaction**
Territory Terminated via UT ▼

### Brand Information

**Territory Brand Indicator**
Liberty Only ▼

**SB Contract Effective**

**SB Contract Expires**

**SB FR Contract Effective**

**SB FR Contract Expires**

### Agreement Type

**Royalty Type**
Third Year+ -14% of Gross Receipts, subject to $11,000 minimum (FA 7-12,7-11,7-10,7-09,7-08,7-07,7-06,7-05,7-04,7-03

**Advertising**
5% of all Gross Receipts ▼

Market Maps

---

## Description

NORTHEAST of and including I-5 from Garfield Ave to S Atlantic Blvd
EAST of and including S Atlantic Blvd from I-5 to SR-60
SOUTH of and excluding SR-60 from S Atlantic Blvd to N Garfield Ave
WEST of and excluding N Garfield Ave from SR-60 to I-5

**Territory Map**



**City Map**



## Competition Offices

**Competition Office List**

| | Office Name | Address | City | State/Province | Competitor | Return Count |
|---|---|---|---|---|---|---|
| Select | H&R BLOCK TAX SERVICE INC | 5534 WHITTIER BLVD UNIT C | COMMERCE | CA | H&R Block | 959 |
| Select | H&R BLOCK - 6312 | 5730 E WHITTIER BLVD | COMMERCE | CA | H&R Block | 30 |

**Competition Office Detail**

Select an office above, or Add a new Competition Office

## Legal

**Legal Documents**

- 📂 8543(i)
  - 📂 **LTCA610(i)**
    - 📁 Amendments
    - 📁 Special Stips
- 📂 4841(i)
  - 📂 STCA610(i)
    - 📁 Amendments
    - 📁 Special Stips
  - 📂 LTCA610(i)
    - 📁 Amendments
    - 📁 Special Stips

| Name | Modified |
|---|---|
| | |

## Notes

**Territory Notes**

02/28/2020 - Terminated CA610 along with UT of 8543. CA610 had three inactive offices (14783, 16902, and 20433)– JRW

Email for 8543 (2020): Galanglu@gmail.com

Notes
History
EFIN
Pending Update

View

View

View

View


More Info


10/24/19 ak- ent8543 in the process of terminating FAs. Client files for CA610-20433 to go to entity 6935 per AD (Chris Budka) .


10/14/16 8543 purchase of CA610 from 2276 (previous Balkhi territory) LTS Only. Purchase price is $27,450 down payment plus 10% of Net Revenue over next 3 years (2017 - 2019. 1 active office: 20433. Cgd;
Royalty update 05.20.2008 Royalty update 05.12.2009; 12/01/15 Entity 4841 purchased CA610 from entity 5117, LTS from 5117 and ST from SiempreTax. 0 active offices. Cgd; Previously owned by Entity 4841 terminated on 05/27/2016. 05/27/16 Liberty bought back CA008, CA610, CA634, CA042, CA594, CA606, CA820, CA906, CA074, CA161, CA162, CA477, CA478, CA687, CA899, CA311, CA783, CA638, CA647, CA648, CA829, CA830 and CA939 from entity 4841. 22 Active Offices: 20433, 13122, 15415, 14146, 19533, 18556, 19095, 14630, 14238, 14239, 13382, 16847, 18459, 19900, 16779, 14222, 12545, 13152, 14221, 16382, 17336, and 16996. Cgd;


(BRAND MIRROR-CA935) [AB 10.17.2016]


(ADT-SWST011)


Previously owned by Entity 8543 terminated on 02/28/2020.


Email for 8543 (2020): Galanglu@gmail.com


### Sale Notes

CA Expires 12/31/19, PP $40K, $5 Trans Fee (4.15.2019 AMA)
CA Expires 12/31/18, PP $40K, $5K trans fee (6/6/18 PRO)
CA Expires 12/31/17, PP $80306, $5K trans fee (8/22/17 PRO)
8/30/16 – UC to 8543; see Jamie M or Casey K for details. elt
5117-CA610 is now being advertised for sale at the purchase price of $40,000.00 with a transfer fee of $5000.00 and commission at 10% of the purchase price, subject of a minimum of $5000.00.(11/7/14 jmc)


### FA Address

Email for 8543 (2020): Galanglu@gmail.com


#### Entity Information

|                    |                    |
|--------------------|--------------------|
| Entity Name:       | Liberty CoStores   |
| Entity Phone:      | (757) 493-6056     |
| Entity Cell Phone: |                    |
| Area Developer Name: | Michael Budka    |


#### Territory Breakdown

| Id | Name | DMA | Sales Rep | DM | RD | AD | Address | City | State | Internal Support | Open Date | Return Count | Status |
|----|------|-----|-----------|----|----|----|---------|------|-------|------------------|-----------|--------------|--------|
| CA610 | LosAngelesCA-25 | Los Angeles, CA | Unassigned | Unassigned | | Michael Budka | | | | Andrea Foran | | | Terminated/For Sale |
| | 14783 | East Los Angeles | | | | | | 2099 S Atlantic Blvd Suite D | Monterey Park | CA | | 1/8/2008 | 0 | Inactive |
| | 16902 | Montebello | | | | | | 3524 W Beverly Blvd | Montebello | CA | | 1/8/2012 | 0 | Inactive |

Admin System - Territory CA610

| Id | Name | DMA | Sales Rep | DM | RD AD | Address | City | State | Internal Support | Open Date | Return Count | Status |
|----|------|-----|-----------|----|----|---------|------|-------|------------------|-----------|--------------|--------|
| 20433 | East LA | | | | | 279 S Atlantic Blvd | Los Angeles | CA | | 1/2/2016 | 0 | Inactive |

## General Information

### Territory Information

Name
LongBeachCA-4

Status
Terminated/For Sale ▼

Previous Status
Available

Entity 🔍
2276

Area Developer 🔍
8758

Region
101 (Geoff Knapp) ▼

City
Long Beach

State
California ▼

DMA
Los Angeles, CA ▼

Type
Standard Market ▼

Contract Effective

Contract Expires

FR Contract Effective

FR Contract Expires

Buy Back

Projected Open Date

Commission Agree Exp.

Sale Price
$106,077.00

Sale Price Includes
Commission and Transfer
Fee ☐

For Sale By Owner ☐

Advertising ☐

AD Support Rep
Andrea Foran ▼

Guarantee

Guarantor

Sales Rep
Unassigned ▼

District Manager
Unassigned ▼

Last Locked GRR:
12/2019

Territory Transaction
Territory Terminated via UT ▼

### Brand Information

Territory Brand Indicator
Liberty Only ▼

SB Contract Effective

SB Contract Expires

SB FR Contract Effective

SB FR Contract Expires

### Agreement Type

Royalty Type
Third Year+ -14% of Gross Receipts, subject to $11,000 minimum (FA 7-12,7-11,7-10,7-09,7-08,7-07,7-06,7-05,7-04 ▼

Advertising
5% of all Gross Receipts ▼

Market Maps

—Description—

## Description

NORTH of and including E 3rd St continuing onto NORTH of and including W 3rd St continuing onto NORTH of and including Latitude 33.77051°N from Alamitos Ave to Los Angeles River.
EAST of and including Los Angeles River from Latitude 33.77051°N to Latitude 33.77893°N.
SOUTH of and excluding Latitude 33.77893°N from Los Angeles River to W 10th St.
SOUTH of and excluding W 10th St continuing onto SOUTH of and excluding E 10th St from Latitude 33.77893°N to Alamitos Ave.
WEST of and excluding Alamitos Ave from E 10th St to E 3rd St.

### Territory Map



### City Map



## Competition Offices

### Competition Office List

| | Office Name | Address | City | State/Province | Competitor | Return Count |
|---|---|---|---|---|---|---|
| Select | H & R BLOCK TAX SERVICES INC | 400 LONG BEACH BLVD. STE L100 | LONG BEACH | CA | H&R Block | 2253 |
| Select | JACKSON HEWITT TAX SERVICE | 151 EAST 5TH STREET | LONG BEACH | CA | Jackson Hewitt | 170 |

### Competition Office Detail

Select an office above, or Add a new Competition Office

## Legal

### Legal Documents

📁 4841(i)
   📁 **LTCA647(i)**
     📁 Amendments
     📁 Special Stips
📁 8543(i)
   📁 LTCA647(i)
     📁 Amendments
     📁 Special Stips

| Name | Modified |
|---|---|
| 📄 4841 LTS FA CA647 12-30-14 | March 11th 2019, 11:52:59 am |

## Notes

### Territory Notes

02/28/2020 - Terminated CA647 along with UT of 8543. CA647 had one inactive office (13152)- JRW

Email for 8543 (2020): Galanglu@gmail.com

10/24/19 AK- ent8543 in the process of terminating FAs. Client files for CA178-11005; CA647-13152; CA648-14221 to go to entity 5903 per Market Manager, Thomas Bartolomeo .

10/14/16 8543 purchase of CA647 from 2276 (previous Balkhi territory) LTS Only. Purchase price is $96,077.00 down payment

plus 10% of Net Revenue over next 3 years (2017 - 2019). 1 active office: 13152. Cgd;
Royalty update 07.23 Royalty update 05.20.2008 Previously owned by entity 4289- sold via z to z sale to entity 4841 12/30/09.
jpm; Previously owned by Entity 4841 terminated on 05/27/2016. 05/27/16 Liberty bought back CA008, CA610, CA634, CA042,
CA594, CA606, CA820, CA906, CA074, CA161, CA162, CA477, CA478, CA687, CA899, CA311, CA783, CA638, CA647, CA648,
CA829, CA830 and CA939 from entity 4841. 22 Active Offices: 20433, 13122, 15415, 14146, 19533, 18556, 19095, 14630,
14238, 14239, 13382, 16847, 18459, 19900, 16779, 14222, 12545, 13152, 14221, 16382, 17336, and 16996. Cgd;

(BRAND MIRROR-CA997) [AB 10.17.2016]

(ADT-SWST046)

Previously owned by Entity 8543 terminated on 02/28/2020.

## Sale Notes

9/15/16 - UC to 8543; see Jamie M or Kristen I for details. elt

## FA Address

Email for 8543 (2020): Galanglu@gmail.com

## Entity Information

|  |  |
|---|---|
| Entity Name: | Liberty CoStores |
| Entity Phone: | (757) 493-6056 |
| Entity Cell Phone: | |
| Area Developer Name: | Geoff Knapp |

## Territory Breakdown

| Id | Name | DMA | Sales Rep | DM | RD | AD | Address | City | State | Internal Support | Open Date | Return Count | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CA647 | LongBeachCA-4 | Los Angeles, CA | Unassigned | Unassigned | | Geoff Knapp | | | | Andrea Foran | | | Terminated/For Sale |
| 13152 | South - Long Beach | | | | | | 795 Long Beach Blvd | Long Beach | CA | | 1/2/2007 | 0 | Inactive |

## General Information

### Territory Information

Name
LongBeachCA-5

Status
Terminated/For Sale ▼

Previous Status
Available

Entity 🔍
1000

Area Developer 🔍
8758

Region
101 (Geoff Knapp) ▼

City
Long Beach

State
California ▼

DMA
Los Angeles, CA ▼

Type
Standard Market ▼

Contract Effective

Contract Expires

FR Contract Effective

FR Contract Expires

Buy Back

Projected Open Date

Commission Agree Exp.

Sale Price
$37,450.00

Sale Price Includes
Commission and Transfer
Fee ☐

For Sale By Owner ☐

Advertising ☐

AD Support Rep
Andrea Foran ▼

Guarantee

Guarantor

Sales Rep
Unassigned ▼

District Manager
Unassigned ▼

Last Locked GRR:
12/2019

Territory Transaction
Territory Terminated via UT ▼

### Brand Information

Territory Brand Indicator
Liberty Only ▼

SB Contract Effective

SB Contract Expires

SB FR Contract Effective

SB FR Contract Expires

### Agreement Type

Royalty Type
Third Year+ -14% of Gross Receipts, subject to $11,000 minimum (FA 7-12,7-11,7-10,7-09,7-08,7-07,7-06,7-05,7-04,7 ⌄

Advertising
5% of all Gross Receipts ▼

Market Maps

## Description

NORTH of and including E Hill St continuing onto NORTH of and including W Hill St from Walnut Ave to Los Angeles River.
EAST of and including Los Angeles River from W Hill St to I-405/San Diego Fwy.
SOUTH of and excluding I-405/San Diego Fwy from Los Angeles River to Walnut Ave.
WEST of and excluding Walnut Ave from I-405/San Diego Fwy to E Hill St.

### Territory Map



### City Map



## Competition Offices

### Competition Office List

| | Office Name | Address | City | State/Province | Competitor | Return Count |
|---|---|---|---|---|---|---|
| Select | H&R BLOCK TAX SERVICES INC | 2620 LONG BEACH BLVD | LONG BEACH | CA | H&R Block | 1292 |
| Select | JACKSON HEWITT TAX SERVICE | 2006-A LONG BEACH BLVD. | LONG BEACH | CA | Jackson Hewitt | 373 |

### Competition Office Detail

Select an office above, or Add a new Competition Office

## Legal

### Legal Documents

- 📂 4841(i)
  - 📂 **LTCA648(i)**
    - 📁 Amendments
    - 📁 Special Stips
- 📂 8543(i)
  - 📂 LTCA648(i)
    - 📁 Amendments
    - 📁 Special Stips

| Name | Modified |
|---|---|
| 📄 4841 LTS FA CA648 121713.pdf | March 11th 2019, 11:30:45 am |

## Notes

### Territory Notes

02/28/2020 - Terminated CA648 along with UT of 8543. CA648 had three inactive offices (13179, 14221, and 16851)- JRW

Email for 8543 (2020): Galanglu@gmail.com

10/24/19 AK- ent8543 in the process of terminating FAs. Client files for CA178-11005; CA647-13152; CA648-14221 to go to entity 5903 per Market Manager, Thomas Bartolomeo .

10/14/16 8543 purchase of CA648 from 2276 (previous Balkhi territory) LTS Only. Purchase price is $27,450 down payment plus 10% of Net Revenue over next 3 years (2017 - 2019). 1 active office: 14221. Cgd; swap of CA687 into CA648 for John Balkhi #4841 11-25-09knk. Transferred R/s from CA687 to CA648. 12/3/09. jpm Royalty update 05.11.2010 Royalty update 05.15.2011; Previously owned by Entity 4841 terminated on 05/27/2016. 05/27/16 Liberty bought back CA008, CA610, CA634, CA042, CA594, CA606, CA820, CA906, CA074, CA161, CA162, CA477, CA478, CA687, CA899, CA311, CA783, CA638, CA647, CA648, CA829, CA830 and CA939 from entity 4841. 22 Active Offices: 20433, 13122, 15415, 14146, 19533, 18556, 19095, 14630, 14238, 14239, 13382, 16847, 18459, 19900, 16779, 14222, 12545, 13152, 14221, 16382, 17336, and 16996. Cgd;

(BRAND MIRROR-CA998) [AB 10.17.2016]

(ADT-SWST046)

Previously owned by Entity 8543 terminated on 02/28/2020.

### Sale Notes

9/19/16 - UC to 8543; see Jamie M or Briana K for details. elt

### FA Address

Email for 8543 (2020): Galanglu@gmail.com

## Entity Information

| | |
|---|---|
| Entity Name: | JTH Tax Inc. |
| Entity Phone: | (757) 493-8855 |
| Entity Cell Phone: | |
| Area Developer Name: | Geoff Knapp |

## Territory Breakdown

| Id | Name | DMA | Sales Rep | DM | RD | AD | Address | City | State | Internal Support | Open Date | Return Count | Status |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CA648** | LongBeachCA-5 | Los Angeles, CA | Unassigned | Unassigned | | Geoff Knapp | | | | Andrea Foran | | | Terminated/For Sale |
| 13179 | Liberty Tax S. LONG BEACH | | | | | | 729 Long Beach Blvd | Long Beach | CA | | Unknown | 0 | Inactive |
| 14221 | Willow – Long Beach | | | | | | 2511 Long Beach Blvd | Long Beach | CA | | 1/1/2010 | 0 | Inactive |
| 16851 | | | | | | | 1001 E Pacific Coast Highway | Long Beach | CA | | 1/13/2011 | 0 | Inactive |